# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINE CONFORTI )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CHRISTINE GIORDANO HANLON, in her )<br>official capacity as Monmouth County Clerk, )<br>SCOTT M. COLABELLA, in his official )<br>Capacity as Ocean County Clerk; and PAULA )<br>SOLLAMI COVELLO, in her official capacity )<br>as Mercer County Clerk, )<br>)<br>Defendants. )<br>) | Civil Action No. 3:20-cv-08267-FLW-TJB |

---

## DEFENDANT CHRISTINE GIORDANO HANLON'S BRIEF IN SUPPORT OF HER MOTION TO DISMISS PLAINTIFF'S COMPLAINT, PURSUANT TO F.R.C.P. 12(b)(6)

---

Erik Anderson, Esq.
Attorney ID# 033232001
Thomas W. Carter, Esq.
Attorney ID# 212422017
REARDON ANDERSON, LLC
55 Gilbert Street North, Suite 2204
Tinton Falls, NJ 07701
*Attorneys for Defendant,*
*Christine Giordano Hanlon, in her*
*capacity as Monmouth County Clerk*

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**………………………………………………………......5

**PRELIMINARY STATEMENT**………...…………………………………………6-7

**PROCEDURAL HISTORY**…………………………………………………………8

**STATEMENT OF FACTS**………....………………………………………………9-14

**LEGAL ARGUMENT**…………………………………………………………...15-23

     I.     PLAINTIFF'S CLAIMS MUST BE DISMISSED, AS PLAINTIFF LACKS STANDING TO ASSERT HER CLAIMS……………….……....................................15-17

     II.     NEW JERSEY'S ELECTION LAWS CONCERNING BALLOT POSITIONING ARE CONSTITUTIONAL..……………………………………………….......………18-22

     (a)  New Jersey Courts Have Rejected Plaintiffs Arguments Challenging the Constitutionality of Laws Governing Ballot Positioning………………….....21-22

     III.    GRANTING THE DISMISSAL OF THIS ACTION IS APPROPRIATE AS PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED…………………………………………………………………....…23

**CONCLUSION**……………....……………………..…………………………....……24

## TABLE OF AUTHORITIES

### CASES

1. Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).....................15

2. Anderson v. Celebrezze, 460 U.S. 780, 788 (1983)...........................................................18

3. Ashcroft v. Iqbal, 556 US 662, 678 (2009)...................................................................23

4. Bell Atlantic Corp. v. Twombly, 550 US 544, 555 (2007).................................................23

5. Conley v. Gibson, 355 US 41, 47 (1957) ....................................................................23

6. FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231, 110 S.Ct. 596, 608, 107 L.Ed.2d 603 (1990)............16

7. Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 114–115, and n. 31, 99 S.Ct. 1601, 1614–1615, and n. 31, 60 L.Ed.2d 66 (1979) ....................................................................16

8. Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)................15

9. Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)....................................................15-17

10. Quaremba v. Allan, 76 N.J. 1 (1975).......................................................................21-22

11. Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976)......................................................................................15-16

12. Storer v. Brown, 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974).....................18

13. Warth v. Seldin, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975).................15-16

14. Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 1722, 109 L.Ed.2d 135 (1990)...........15

### STATUTES

U.S. CONST. ART. III, § 1................................................................................15
N.J.S.A. § 19:23-24........................................................................................6
N.J.S.A. § 19:23-26.1..............................................................................6, 18-20
N.J.S.A. § 19:49-2.............................................................................10, 18-19, 21

### RULES

F.R.C.P. 4(d) ............................................................................................8
F.R.C.P. 8(a)(2)..........................................................................................23
F.R.C.P. 12(b)(6).........................................................................................23

## PRELIMINARY STATEMENT

Defendant, Christine Giordano Hanlon, is the Clerk of Monmouth County. Plaintiff Christine Conforti (hereinafter "plaintiff") ran as a Democratic candidate for the U.S. House of Representatives in New Jersey's Fourth Congressional District in the July 2020 primary election. Hanlon, as Monmouth County Clerk, is responsible for overseeing the design, preparation, and printing of all ballots, the issuance of mail-in ballots, and conducting the drawing for ballot position for various elections held in Monmouth County. Plaintiff has brought this action for declaratory and injunctive relief against (1) Hanlon, (2) defendant Scott M. Colabella, in his official capacity as Ocean County Clerk (hereinafter "Colabella"), and (3) defendant Paula Sollami Covello (hereinafter "Covello"). Plaintiff seeks the Court to declare that New Jersey law governing ballot position selection in a Primary election is unconstitutional, and require defendants to use a ballot organized by office sought (rather than by column or row), and implement a "rotational" or "randomized" ballot order system.

Plaintiff claims that the method in which ballot position was chosen in connection with the July 7, 2020 Democratic Primary Election was improper. Specifically, plaintiff alleges that current New Jersey law governing the County Clerks' drawings for candidate ballot position treats "bracketed" and "unbracketed" candidates in an unequal manner. Plaintiff argues that this unequal treatment stems from statutory language and New Jersey Courts' interpretations of N.J.S.A. § 19:23-24 other laws governing New Jersey elections. This statute sets forth the manner in which ballot position is selected in primary elections. Additionally, N.J.S.A. § 19:23-26.1 provides that during a year where there is an election for the United States Senate, ballot position is determined by the County Clerk first drawing the name of United States Senate candidates. Once United

States Senate candidate names are drawn and ballot positions set, names for candidates for other offices are drawn and their ballot positions are set.

Plaintiff alleges that the statutory method for selecting ballot position placed her at a disadvantage. Namely, as she elected not to affiliate with a United States Senate candidate, she did not have the opportunity to be placed in the first column on the ballot. She claims this, in turn, violated her equal protection rights.

Plaintiff's Complaint fails to state a claim upon which relief can be granted. Specifically, plaintiff does not have standing to bring her claims. Plaintiff has not suffered an "injury in fact." Also, if Plaintiff allegedly suffered an injury, no ruling can redress same. This is due to plaintiff's loss in the Primary Election. Plaintiff cannot establish her ballot position caused her loss. Further, as the election is over, the Court cannot correct the alleged wrong.

New Jersey's law establishing how ballot positions are selected is constitutional. The New Jersey Supreme Court has ruled that the State's interests in protecting the associational rights of its political candidates through its current ballot drawing process, when balanced against plaintiff's alleged injury, holds significantly more weight.

## PROCEDURAL HISTORY

On July 6, 2020, plaintiff filed her Complaint in the United States District Court for the District of New Jersey, one day prior to New Jersey's Primary Election, seeking a declaration that New Jersey's law governing the method in which ballot position is selected is unconstitutional.  (See, Exhibit 1).

On August 17, 2020, Hanlon waived service pursuant to F.R.C.P. 4(d).  The initial time to Answer or otherwise respond to plaintiff's Complaint was set to October 19, 2020.

On or about October 30, 2020, the Hon. Tonianne J. Bongiovanni entered an Order extending all defendants' time to respond to plaintiff's Complaint to November 16, 2020.  (See Docket No. 3:20-cv-08267-FLW-TJB on PACER.).  The time to respond was again extended, to December 7, 2020.

Defendant Hanlon now moves to dismiss plaintiff's Complaint, in its entirety, with prejudice.

## STATEMENT OF FACTS

1.    Plaintiff ran in the 2020 Primary Election as a candidate for U.S. House of Representatives in New Jersey's Fourth Congressional District.  (See a true and accurate copy of plaintiff's Complaint, filed July 6, 2020, attached hereto as Exhibit 1) (See, Exhibit 1, ¶ 16).

2.    New Jersey's Fourth Congressional District is comprised of portions of Mercer, Monmouth, and Ocean Counties.  Id. at ¶ 58.

3.    Defendant Christine Giordano Hanlon (hereinafter "Hanlon"), is the Monmouth County Clerk.  (See a true and accurate copy of the Certification of Defendant, Christine Giordano Hanlon, attached hereto as Exhibit 2).

4.    As Monmouth County Clerk, Hanlon is responsible for: (1) the designing, preparing, and printing of all ballots, (2) the issuance of mail-in ballots, and (3) conducting a drawing for ballot position for various elections held in Monmouth County.  (See, Exhibit 2).

5.    On or about March 30, 2020, plaintiff filed a petition with the Secretary of State's Office to run in the 2020 Democratic Primary Election for the U.S. House of Representatives in the Fourth Congressional District.  (See, Exhibit 1 at ¶ 58).

6.    Plaintiff's petition contained two hundred eighty-four (284) petition signatures, which met the threshold of two hundred (200) signatures required by statute to appear on the ballot. Plaintiff's petition was accepted by the Secretary of State's Office.  Id.

7.    Plaintiff voluntarily exercised her First Amendment right not to associate (i.e., "bracket") with either a Presidential or U.S. Senate candidate with respect to the Monmouth County ballot draw.  Id. at ¶ 61, 63.

8.    On April 9, 2020, the Monmouth County Clerk's Office conducted a ballot draw.  (See, Exhibit 2).

9. Candidates, pursuant to New Jersey law, are permitted to bracket with other candidates to form a "ticket" and appear together on the ballot either in the same column or row. Oftentimes, these bracketed candidates also utilize the same "slogan." Id.

10. Candidates wishing to bracket with other candidates and utilize slogans, must submit those requests to the County Clerk within 48 hours of the petition filing deadline. For the 2020 primary election, that date was April 1, according to N.J.S.A § 19:49-2. Id.

11. In the Democratic primary, the candidates for United States Senate were Corey Booker and Lawrence Hamm. The candidates for President were Joseph Biden and Bernie Sanders. The candidates for the United States House of Representatives were Christine Conforti, Stephanie Schmid and David Applefield. Id.

12. Pursuant to N.J.S.A. § 19:49-2, the only candidates that can file joint petitions under New Jersey law are county candidates (Freeholders) who are running for the same office for the same term. If a candidate seeks to be included "on the line" or bracketed with county candidates, they must make a written request for such inclusion to the County Clerk within two (2) days of the filing of the petition. The County Clerk in turn forwards that request to the County candidates' campaign manager for approval. The Campaign manager than may approve or disapprove of said request. Id.

13. Under New Jersey law, in the year in which there is an election for the United States Senate, ballot position is selected by first drawing the names of those United States Senate candidates who are bracketed with county candidates. The first name drawn goes in the first column with their slate of candidates, followed by the second name, and so on. (See, Exhibit 2).

14. In the Democratic Primary, Michael Penna and Moira Nelson filed a joint petition for their candidacy in connection with the office of the Board of Chosen Freeholders. They sought to run together on the same line (e.g. be bracketed together). Id.

15. Joseph Biden, who was seeking the office of the President, sought and was approved to appear on the line with Penna and Nelson. Id.

16. Cory Booker, who was seeking the office of United States Senate, sought and was approved to appear on the line with Penna and Nelson. Id.

17. Stephanie Schmid, who was seeking the office of the United States House of Representatives, sought and was approved to appear on the line with Penna and Nelson. Id.

18. Additionally, in the Democratic Primary, Angelica Ashford and Lucille Benafanti, filed a joint petition in connection with their candidacy for the office of the Board of Chosen Freeholders. They sought to run together on the same line (e.g. be bracketed together). Id.

19. Lawrence Hamm, who was seeking the office of the United States Senate, sought and was approved to appear on the line with Ashford and Benafanti. Id.

20. For the Democratic primary, there were two U.S. Senate candidates – Senator Cory Booker and Lawrence Hamm.

21. Senator Cory Booker's name was drawn first. Therefore, Senator Booker and his slate of candidates (including plaintiff's opponent for the House of Representatives, Stephanie Schmid) were positioned in the furthest left column on the ballot, under the common banner "Monmouth County Democrats." (See, Exhibit 1; see also a true and accurate copy of the "Official Democratic Mail-in Ballot" for the July 7, 2020 Primary Election in Monmouth County, New Jersey, annexed hereto as Exhibit 3).

22.     Senator Booker's opponent, Lawrence Hamm (as well as his "bracketed" candidates Angelica Ashford and Lucille Benfanti) were each placed in their respective positions in the second column on the ballot under the common slogan "Not Me. Us." (See, Exhibit 3).

23.     Presidential Candidate Bernie Sanders was then placed in the third column under the slogan "Bernie 2020. Not Me. Us."  Senator Sanders did not bracket with either Senate candidates Hamm or Booker. Id.

24.     The two (2) remaining candidates were for Congress (i.e., plaintiff and David Applefield), and were non-bracketed.  The Clerk's Office drew from these candidates. Id.

25.     Plaintiff's name was drawn first, which positioned plaintiff her in the fourth column (i.e., the fourth column from the left) under the slogan "Monmouth County Democrats for the People." Id.

26.     Mr. Applefield's name was positioned in the fifth and final column (immediately to the right of plaintiff), under the slogan "Fairness in Healthcare, Schools, Local Businesses." Id.

27.     Plaintiff voluntarily exercised her First Amendment right not to bracket in the Ocean County ballot draw either.  (See, Exhibit 1; see also a true and accurate copy of the "Official Primary Election" for the July 7, 2020 Primary Election in Ocean County, New Jersey, annexed hereto as Exhibit 4).

28.     The Ocean County Clerk appears to have employed the same process for determining ballot position for the Democratic Primary election.  (See Exhibit 4).

29.     In Mercer County, plaintiff elected to "bracket" with other candidates including Senator Booker and Vice President Biden under the banner "Regular Democratic Organization." (See a true and accurate copy of the "Official Primary Election Sample Ballot – Robbinsville

Borough, Mercer County, New Jersey" for the July 7, 2020 Primary Election in Mercer County, New Jersey, annexed hereto as Exhibit 5).

30.   The Mercer County Clerk drew Senator Booker's name first.  Plaintiff was placed in the first column (specifically "3A" – the third spot down in "Column A").  Id.

31.   The Mercer County ballot shows that neither of plaintiff's opponents (i.e. Stephanie Schmid and David Applefield) "bracketed" with any other candidate in Mercer County.  Ms. Schmid and Mr. Applefield were positioned in separate columns, under separate slogans (i.e., "Mercer County Democrats" for Ms. Schmid, and "Fairness in Healthcare, Schools, Local Businesses" for Mr. Applefield).  Id.

31.   On or about July 6, 2020, plaintiff filed her Complaint in the United States District Court for the District of New Jersey, one day prior to New Jersey's Primary Election.  The case was assigned docket number 3:20-cv-08267-FLW-TJB.  (See, Exhibit 1).

32.   The Primary Election occurred on or about July 7, 2020.

33.   Plaintiff lost the Primary Election to Stephanie Schmid.  Ms. Schmid won 67.4% of the popular vote (a total of 38,444 votes), which Ms. Conforti won 25.1% of the popular vote (a total of 14,331 votes).  (See a true and accurate copy of the results of the 2020 Primary Election for New Jersey's Fourth Congressional District, presented on Ballotpedia, and annexed hereto as Exhibit 6).

34.   On or about November 3, 2020, Ms. Schmid lost the General Election for a seat in the U.S. House of Representatives, Fourth Congressional District, to incumbent Republican Congressman Chris Smith.  Mr. Smith won 57.2% of the popular vote (a total of 161,245 votes), which Ms. Schmid won 41.3% of the popular vote (a total of 116,506 votes).  (See a true and

accurate copy of the results of the 2020 General Election for New Jersey's Fourth Congressional

District, presented on Ballotpedia, and annexed hereto as Exhibit 7).

35.  Plaintiff has failed to state a claim upon which relief can be granted.

36.  Plaintiff does not have standing to bring this matter.

37.  Therefore, it is proper for this Court to grant this Motion to Dismiss Plaintiff's Complaint in

its entirety, and with prejudice.

## LEGAL ARGUMENT

## POINT I

## PLAINTIFF'S CLAIMS MUST BE DISMISSED,
## AS PLAINTIFF LACKS STANDING TO ASSERT HER CLAIMS

Article III of the United States Constitution "limits the jurisdiction of federal courts to 'Cases' and "Controversies'. . . ." Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992), *citing* U.S. CONST. ART. III, § 1. As the Lujan Court explained, the doctrine of standing is used "to identify those disputes which are appropriately resolved through the judicial process." Lujan 504 at 560, *citing* Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 1722, 109 L.Ed.2d 135 (1990). Indeed, standing is "an essential and unchanging part" of Article III's requirement that a "case" or "controversy" be before the court. Lujan 504 U.S. at 550, see, *e.g.*, Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).

The Lujan Court articulated a three part test to determine whether a plaintiff has standing. Id. at 560. First, the plaintiff must have suffered an "injury in fact" (i.e., "the invasion of a legally protected interest"). The "injury in fact must be both (a) 'concrete and particularized,' and (b) 'actual or imminent,' not 'conjectual' or 'hypothetical.'" Id. at 560; *citing* Allen 468 U.S. at 756; Warth v. Seldin, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975); Sierra Club v. Morton, 405 U.S. 727, 740–741, n. 16, 92 S.Ct. 1361, 1368–1369, n. 16, 31 L.Ed.2d 636 (1972); Whitmore, *supra,* 495 U.S., at 155, 110 S.Ct., at 1723 (quoting Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)).

Second, the plaintiff must demonstrate "a causal connection between the injury and the conduct complained of." Lujan 504 U.S. at 560-561; *citing* Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976). That is, the injury must be "'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e]

result [of] the independent action of some third party not before the court.'" Id.

Third, the plaintiff must demonstrate that the injury complained of is "'likely,' as opposed to merely "speculative,'" and that the plaintiff's injury will be "redressed by a favorable decision." Lujan 504 U.S. at 561; *citing* Simon, 426 U.S. at 38.  It is critical to note that "[t]he party invoking federal jurisdiction bears the burden" of establishing each of these three elements. Lujan 504 U.S. at 561; *citing* FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231, 110 S.Ct. 596, 608, 107 L.Ed.2d 603 (1990); Warth, *supra,* 422 U.S., at 508, 95 S.Ct. at 2210.  These elements are "not mere pleading requirements but rather **an indispensable part of the plaintiff's case**." Lujan 504 U.S. at 561, *citing* Lujan v. National Wildlife Federation, 497 U.S. 871, 883–889, 110 S.Ct. 3177, 3185–3189, 111 L.Ed.2d 695 (1990); Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 114–115, and n. 31, 99 S.Ct. 1601, 1614–1615, and n. 31, 60 L.Ed.2d 66 (1979); Simon, *supra*, 426 U.S. at 45, n. 25, 96 S.Ct., at 1927, and n. 25; Warth, *supra*, 422 U.S. at 527, and n. 6, 95 S.Ct., at 2219, and n. 6 (Brennan, J., dissenting) (**emphasis added**).  Therefore, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." Id.

Here, plaintiff does not have standing to bring her claim.  Specifically, plaintiff lost the Democratic Primary Election for Representative in the U.S. House of Representatives Stephanie Schmid.  At this time, there simply is no controversy or injury for the Court to address and/or redress.  Plaintiff elected to file this action the day before the Democratic Primary (which had been postponed from the original June date due to COVID-19).  Plaintiff had the opportunity to file this action when arguably a controversy existed (e.g., when the ballot draw occurred on April 9, 2020).  However, she elected not to do so at that time.

Under the standard set in <u>Lujan</u>, plaintiff does not have an injury in fact.  Simply losing an election (by a wide margin) does not equate to an injury.  Second, there is no causal connection between the alleged injury and plaintiff's ballot position.  Plaintiff lost because voters did not support her candidacy.  Finally, there is currently no injury to redress.  The election is over as is the opportunity to address the alleged "wrong."

Accordingly, Plaintiff lacks standing and it is appropriate to dismiss her Complaint.

## POINT II

## NEW JERSEY'S ELECTION LAWS CONCERNING BALLOT POSITIONING ARE CONSTITUTIONAL.

The United States Supreme Court has set forth a framework for the review of the constitutionality of state laws relating to voting rights. In <u>Anderson v. Celebrezze</u>, 460 U.S. 780, 788 (1983), the Court articulated a standard by which states could enact laws to properly administer elections, while balancing the threat of infringement on voter and candidates' rights. In its decision, the Court provided that "not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally-suspect burdens on voters' rights to associate or to choose among candidates." <u>Id</u>. The Court added that there must be "a substantial regulation of elections if they are to be fair and honest," and indicated a preference for "some sort of order, rather than chaos." <u>Id</u>., *citing* <u>Storer v. Brown</u>, 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974). The Court acknowledged that any state law governing the election process has at least some effect on "the individual's right to vote and his right to associate with others for political ends," <u>Anderson</u> 460 U.S. at 788. However, "the state's important regulatory interests are generally sufficient to justify **reasonable, nondiscriminatory restrictions**." <u>Id.</u>

The <u>Anderson</u> Court provided that, where a state law is alleged to  burden the right of voters and candidates, the reviewing court must analyze "the character and magnitude of the asserted injury," as well as the "precise interests put forward by the State as justifications for the burden imposed by its rule." <u>Anderson</u> 460 U.S. at 789. Courts must then weigh the burdens against the state interests, and also must take into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." <u>Id</u>.

As the primary election which forms the basis of this matter involved a U.S. Senate election, <u>N.J.S.A.</u> § 19:23-26.1 and <u>N.J.S.A.</u> § 19:49-2 are implicated. <u>N.J.S.A.</u> § 19:23-26.1

18

provides that "in the case of a primary election for the nomination of a candidate for the office of

United States Senator...the names of all candidates for the office of United States Senator...shall

be printed on the official primary ballot in the first column or horizontal row designated for the

part of those candidates." N.J.S.A. § 19:49-2 provides in relevant part, "in those counties where

voting machines are used, the county clerk shall have the authority to determine the

specifications for, and the final arrangement of, the official ballots." Further, it is provided that:

> For the primary election for the general election in all counties
> where voting machines are or shall be used, all candidates who
> shall file a joint petition with the county clerk of their respective
> county and who shall choose the same designation or slogan shall
> be drawn for position on the ballot as a unit and shall have their
> names placed on the same line of the voting machine; and
> provided further, that all candidates for municipal or party office
> in municipalities in counties where voting machines are or shall
> be used who shall file a petition with the clerk of their
> municipality bearing the same designation or slogan as that of the
> candidates filing a joint petition with the county clerk as
> aforesaid, may request that his or her name be placed on the same
> line of the voting machine with the candidates who have filed a
> joint petition with the county clerk as aforesaid by so notifying
> the county clerk of said county in writing within two days after
> the last day for filing nominating petitions and thereupon the
> county clerk shall forthwith notify the campaign manager of such
> candidates filing a joint petition as aforesaid of said request, and
> if the said campaign manager shall file his consent in writing with
> the said county clerk within two days after the receipt of said
> notification from said county clerk, the clerk of said county shall
> place the name of such candidate on the same line of the voting
> machine on which appears the names of the candidates who have
> filed the joint petition as aforesaid Id.

Pursuant to New Jersey Law, the ballot position selection for the primary election was

"driven" by the fact that there was a United States Senate race.  Accordingly, N.J.S.A. § 19:23-

26.1 mandates that the first columns of the ballot be allocated to United States Senate candidates.

Further, N.J.S.A. § 19:49-2 establishes the manner in which candidates may affiliate with other

candidates.  Specifically, the only candidates that can file joint petitions under New Jersey law

are county candidates (in this case Freeholders) who are running for the same office for the same term.  If a candidate seeks to be included "on the line" or bracketed with county candidates, they must make a written request for such inclusion to the County Clerk within two (2) days of the filing of the petition.  The County Clerk in turn forwards that request to the County candidates' campaign manager for approval.  The Campaign manager than may approve or disapprove of said request.

In connection with the Democratic Primary, Michael Penna and Moira Nelson filed a joint petition in connection with their candidacy for the office of the Board of Chosen Freeholders.  They sought to run together on the same line (e.g. be bracketed together).  Joseph Biden, who was seeking the office of the President, sought and was approved to appear on the line with Penna and Nelson.  Cory Booker, who was seeking the office of United States Senate, sought and was approved to appear on the line with Penna and Nelson.  Stephanie Schmid, who was seeking the office of the United States House of Representatives, sought and was approved to appear on the line with Penna and Nelson.  The candidates were bracketed together.

Additionally, in connection with the Democratic Primary, Angelica Ashford and Lucille Benafanti, filed a joint petition in connection with their candidacy for the office of the Board of Chosen Freeholders.  They sought to run together on the same line (e.g. be bracketed together).  Lawrence Hamm, who was seeking the office of the United States, sought and was approved to appear on the line with Ashford and Benafanti.

Pursuant to N.J.S.A. § 19:23-26.1, a drawing for ballot position between Booker and Hamm was conducted.  Booker's name was selected first and his slate was assigned column one. Hamm and his slate were assigned column two.

20

Next, the remaining candidate for President was Bernie Sanders and he was assigned column three.

The remaining candidates for the Democratic primary (excluding municipal offices) were plaintiff and David Applefield. A blind draw was then conducted for ballot position assignment. Plaintiff's name as drawn and she was assigned column four and Mr. Applefield was assigned column five.

### a.   New Jersey Courts Have Rejected Plaintiffs arguments challenging the Constitutionality of laws governing ballot positioning.

The issues presented in plaintiff's complaint have previously been decided by the New Jersey Supreme Court. Specifically, the Court ruled that the manner in which New Jersey assigns ballot positions is constitutional.

In Quaremba v. Allan, 76 N.J. 1 (1975) affirming and modifying 128 N.J. Super 570 (App. Div. 1974), the New Jersey Supreme Court was called upon to rule on the constitutionality of N.J.S.A 19:49-2. In Quaremba, the plaintiffs argued the bracketing requirements set forth in N.J.S.A. 19:49-2 were unconstitutional and denied Equal Protection under the law. The plaintiffs in Quaremba were candidates for State Senate and Freeholder and sought an order requiring "the listing of all candidates for election of a political party in a single column or row determined by drawing." Quaremba 128 N.J. Super at 572. Those candidates contended "that their names should have been placed in the same column or line with other candidates for the same office, their respective positions to be determined by lot, but were assigned, instead, a separate column or line alongside the others." Id. at 573. Further, they claimed that joint petition and bracketing structure established under N.J.S.A. § 19:49-2 violated their right to equal protection. The Court rejected these arguments.

The Supreme Court initially recognized "there can be no doubt about the authority of the Legislature to adopt reasonable regulations for the conduct of primary and general elections. Such regulations, of course, may control the manner of preparation of the ballot, so long as they do not prevent a qualified elector from exercising his constitutional right to vote for any person he chooses." Quaremba, 67 NJ at 11.  The Court continued "nothing in the challenged section inhibits any voter from voting for any person he chooses or limits the right of any candidate to run for office." Id.

In addressing the claim that affiliated candidates receive more votes than unaffiliated candidates, the Court noted that even if that was true "it affords no basis for invalidating, as unreasonable, the legislative determination that whatever the effect on an unaffiliated candidate, the public interest is better served by permitting a grouping of candidates having common aims or principles and authorizing those candidates 'to have this fact brought to the attention of the voter in a primary election with the additional effectiveness produced by alignment of their names on the machine ballot." Id. at 13.

In the Appellate Division's decision, it was noted "[w]hile candidates not affiliated with the county candidate may be entitled to a drawing for position as among themselves, they are not entitled under the statute to have their names appear in the same column with jointly listed county candidates and those affiliated with them." Id. at 574.

As was noted by the New Jersey Supreme Court, the laws which govern ballot position selection do not infringe on a candidate's constitutional rights.  Accordingly, plaintiff fails to state a claim upon which relief can be granted.  As such, it is proper to dismiss plaintiff's complaint with prejudice.

## POINT III

## GRANTING THE DISMISSAL OF THIS ACTION IS APPROPRIATE AS PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief and give notice of what the claim is and the ground upon which it rests. Conley v. Gibson, 355 U.S. 41, 47 (1957). The pleading standard of Rule 8 does not require "detailed factual allegations." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That claim has "facial plausibility when [a party] pleads factual content that allows the court to draw the reasonable inference that [the other party] is liable for the misconduct alleged." Id. at 679. Further, "factual allegations must be enough to raise a right to relief above speculative level." Twombly 550 U.S. at 555.

In reviewing a Rule 12(b)(6) motion, the Court must first accept as true all of the allegations contained in the complaint. The Court must then determine whether the claims asserted state a plausible claim for relief. To do this, the court must engage in a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

As is set forth above, plaintiff does not having standing to pursue this matter. Additionally, she fails to state a claim upon which relief can be granted. Therefore, it is appropriate to dismiss plaintiff's Complaint with prejudice.

23

## <u>CONCLUSION</u>

For the foregoing reasons, it is proper to grant the Motion to Dismiss of Defendant, Christine Giordano Hanlon (in her capacity as Monmouth County Clerk), with prejudice, in its entirety, for failing to state a claim upon which relief can be granted.  We thank the Court in advance for its consideration of defendant's Motion.

DATED: December 7, 2020

<div style="margin-left: 40%;">

*/S/ Erik Anderson*

ERIK ANDERSON, ESQ.
THOMAS W. CARTER, ESQ.
**Reardon Anderson, LLC**
*Attorneys for Defendant,*
*Christine Giordano Hanlon,*
*in her official capacity as*
*Monmouth County Clerk*

</div>