# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINE CONFORTI,<br><br>   Plaintiff,<br><br>v.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, SCOTT M. COLABELLA, in his official capacity as Ocean County Clerk, and PAULA SOLLAMI COVELLO, in her official capacity as Mercer County Clerk,<br><br>   Defendants. | Civ. A. No. _____ |

## COMPLAINT

Plaintiff Christine Conforti ("Plaintiff" or "Conforti") files this complaint for Declaratory and Injunctive Relief against Defendants CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, SCOTT M. COLABELLA, in his official capacity as Ocean County Clerk, and PAULA SOLLAMI COVELLO, in her official capacity as Mercer County Clerk (collectively "Defendants"), and alleges as follows:

### NATURE OF THE CASE

1. New Jersey primary election ballots are configured to stack the deck for certain candidates at the expense of others, thereby undermining the integrity of elections and hindering our democracy.  Ballot position is extremely important in elections.  Candidates listed first receive an advantage at the polls solely based on ballot position.  This is due to a principle known as "position bias" or "primacy effect", which has been the subject of extensive research across various

areas of human behavior, including electoral behavior of voters.  When state law systemically puts its thumb on the scale in favor of certain candidates by extending them preferential ballot treatment, it creates significant barriers to the electoral chances of those candidates who are arbitrarily excluded from inclusion in the ballot draw for first position.

2.      New Jersey is the <u>only</u> state in the nation that organizes its primary election ballots by bracketing groupings of candidates in a column (or row)[1], rather than by listing the office sought followed immediately by the names of all candidates running for that office.  *See* Julia Sass Rubin, *New Jersey's Primary Ballot Design Enables Party Insiders to Pick Winners* (2020), *retrieved from* http://dx.doi.org/doi:10.7282/t3-31dy-0j57 (discussing and compiling primary election ballots from all 50 states and the District of Columbia, with ballot images made available at drive.google.com/drive/folders/1vudVsxEcLvY2nZAfD_k88780nyh5sGCR (last visited June 29, 2020)).

3.      For the purposes of visual illustration, the overwhelming majority of states and the District of Columbia model their primary election ballot design by listing the office sought, and then displaying all candidates for that office directly underneath or to the side, as follows:

---

[1] For purposes of the Complaint and for ease of reference, unless otherwise specified, the word "column" is intended to refer to the column *or row* of the ballot where candidates are located, regardless of whether a County Clerk designs the ballot by listing offices vertically and candidates horizontally, or vice-versa.

Elko County, NV 2018 Democratic primary

Sussex County, DE 2018 Democratic primary



*Id.* However, New Jersey models its primary election ballot design such that candidates for the same office are listed in different columns which may not even be adjacent, and candidates for different offices are listed in the same column:

Camden County, NJ 2018 Democratic primary



*Id.*

4. New Jersey's outlier system of primary election ballot design results from a combination of state election laws and interpreting case law with respect to primary elections. This

law provides a mechanism for certain candidates of a party faction running for different offices to be featured together on the ballot in the same column with the same slogan ("bracketing").

5.      Bracketed candidates (which are disproportionately incumbents and "party elites") in New Jersey receive preferences over unbracketed candidates.  Among other things, bracketed candidates will be drawn first for ballot position in an initial ballot draw ("preferential ballot draw") and have an opportunity to obtain the first ballot position.  By contrast, unbracketed candidates have no ability to be featured on the first column of the ballot, and have been placed in obscure portions of the ballot, far away from other candidates running for the same office.

6.      New Jersey fails to treat similarly situated candidates the same, as state law bestows a significant and arbitrary ballot advantage upon certain candidates over others.

7.      In addition to injuring the electoral chances of unbracketed candidates, New Jersey's ballot design system also injures the voters who support unbracketed candidates, burdening their voting rights and their associational rights, making it more difficult to elect the candidates they prefer.  It also burdens voters at large through the creation of a confusing, manipulated ballot design that taints the outcome of the elections, as it puts the State's thumb on the scale in favor of certain bracketed candidates who receive a state-conferred ballot advantage.

8.      In order to remedy these injuries, Plaintiff seeks a declaration that New Jersey's primary election bracketing and ballot placement system is unconstitutional.

9.      Plaintiff also seeks injunctive relief to ensure that the primacy effect/positional bias does not continue to advantage bracketed candidates over other candidates running for the same office, and thereby arbitrarily undermine the integrity of New Jersey's elections and irreparably damage Plaintiff's rights.

## JURISDICTION AND VENUE

10.      Plaintiff brings this action under 42 *U.S.C.* §§ 1983 and 1988 to redress the deprivation, under color of state law, of rights secured by the United States Constitution.

11.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 *U.S.C.* §§ 1331 and 1343, because the matters in controversy arise under the Constitution and laws of the United States and involve the protection of civil rights, including the right to vote.

12.      This Court has supplemental jurisdiction over the state constitutional and state law claims pursuant to 28 *U.S.C.* § 1367(a), because such state constitutional and state law claims are so related to the claims that arise under the Constitution and laws of the United States that they form part of the same case or controversy.

13.      This Court has personal jurisdiction over the Defendants, the Monmouth County Clerk, the Ocean County Clerk, and the Mercer County Clerk, who are sued in their official capacities only.

14.      Venue is proper in the U.S. District Court for the District of New Jersey pursuant to 28 *U.S.C.* § 1391(b)(2) because, inter alia, a substantial part of the events that gave rise to Plaintiff's claims occurred there.

15.      This Court has authority to enter a declaratory judgment pursuant to 28 *U.S.C.* §§ 2201 and 2202.

## PARTIES

16.      Plaintiff Christine Conforti ("Conforti") is a federal candidate running for the U.S. House of Representatives in New Jersey's Fourth Congressional District in connection with New Jersey's July 7, 2020 Democratic Primary Election.  She resides in Ocean Grove, where she is registered to vote as a Democrat.  Win or lose, Conforti intends to run for office again.

17.     Defendant Christine Giordano Hanlon is the Monmouth County Clerk who is vested with certain statutory duties and obligations including but not limited to the designing, preparation, and printing of all ballots, the issuance of mail-in ballots, and conducting a drawing for ballot position for various elections held in Monmouth County.

18.     Defendant Scott M. Colabella is the Ocean County Clerk who is vested with the same statutory duties and obligations for various elections held in Ocean County.

19.     Defendant Paula Sollami Covello is the Mercer County Clerk who is vested with the same statutory duties and obligations for various elections held in Mercer County.

20.     The Defendants acted under color of law in designing ballots and conducting ballot drawings.

21.     The County Clerks for the remaining 18 counties in New Jersey are not parties to the Complaint but are being or will be furnished with a copy of the Complaint because they also enforce and administer ballot design and ballot placement laws which are called into question in this action in their respective counties:   Atlantic, Bergen, Burlington, Camden, Cape May, Cumberland, Essex, Gloucester, Hudson, Hunterdon, Middlesex, Morris, Passaic, Salem, Somerset, Sussex, Union, and Warren.

22.     The Secretary of State is not a party to the Complaint but is being or will be furnished with a copy of the Complaint because she is the State's Chief Election Official.  Further notice will be provided to the Court to enable compliance with 28 *U.S.C.* § 2403.

## STATEMENT OF FACTS AND LAW

### A. <u>Basic Ballot Layout</u>

23.     New Jersey primary election ballots generally consist of a grid of rows and columns, and depending on the County Clerk's discretion, candidates are listed horizontally, and the office sought is listed vertically, or vice versa.

24.     This is the manner in which 19 out of New Jersey's 21 counties have historically organized their primary election ballots, with respect to their full-face machine ballots. Upon information and belief, a majority but not all counties use a similar design technique with respect to their vote-by-mail ballots.

25.     Two counties in New Jersey, Salem and Sussex, have historically used the "office block" or "bubble ballot" structure for primary elections, which is also used by an overwhelming majority of other states and the District of Columbia, where the ballot is organized around the office sought, with each office listed, immediately followed by a list of all candidates running for that same office, without regard to bracketing.  Upon information and belief, Morris County has also historically used the office block structure, but only with respect to Republican primary elections.  A few additional counties implemented an office block ballot structure in connection with their vote-by-mail ballots with respect to the July 7, 2020 Primary Election.   Upon information and belief, those additional counties include Hunterdon, Passaic, and Warren County.

### B. <u>Pivot Point</u>

26.     Ballot position in New Jersey primary elections is tied to bracketing.  Once a specified candidate in the bracketed slate gets drawn for ballot position, all other candidates in that bracketed slate who are running for other offices get automatically placed on the same column of the ballot.  Thus, ballot position is impacted by which office the County Clerk chooses to draw

first in a preferential ballot draw.  The office which the County Clerk chooses to draw first, is hereinafter referred to as the "pivot point."

27.     Candidates running for the pivot point office used by a particular County Clerk, along with the candidates with whom they are bracketed, are hereinafter referred to as "bracketed candidates."

28.     Candidates not running with candidates for the particular pivot point office used by a County Clerk, and who thus are relegated to non-preferential ballot draws, are hereinafter referred to as "unbracketed candidates" or as being "not bracketed."  This includes a slate of candidates who choose to run together on the ballot, when none of them are running for the pivot point office.

29.     As set forth below, depending on the year and the offices up for election on the primary election ballot, New Jersey's 21 County Clerks have adopted unpredictable, varying, and internally inconsistent methods of which office to serve as the pivot point.

### C.  Bracketing

30.     New Jersey law requires candidates who want to bracket with candidates running for other offices to request to be bracketed with a slate of candidates who have filed a joint petition with the County Clerk ("joint petition county candidates").[2]  *N.J.S.A.* 19:23-18; *N.J.S.A.* 19:49-2.

31.     *N.J.S.A.* 19:49-2 sets forth the specific procedure for bracketing.  Candidates who file petitions with the Municipal Clerk or with the Secretary of State[3] must, within 48 hours of the

---

[2] In most instances, the joint petition county candidates will be a slate of county freeholder candidates.  Depending on the circumstances, there may be only one freeholder position up for election or no freeholder positions up for election.  In such instances, a petition filed by a single freeholder candidate or by another county candidate (e.g. sheriff, county clerk, surrogate) will satisfy the "joint petition" requirement of *N.J.S.A.* 19:49-2, for purposes of bracketing.
[3] *N.J.S.A.* 19:23-6 sets forth which candidates running for which offices must file their nominating petitions with the Municipal Clerk, County Clerk, or Secretary of State.

petition filing deadline, request permission from the campaign manager of joint petition county candidates to be bracketed with those joint petition county candidates.  Upon notification of the request, the campaign manager has 48 hours to grant permission to bracket with the joint petition county candidates.  Candidates for other offices that submit petitions with the County Clerk are also able to bracket with the joint petition county candidates.

32.     Successfully bracketed candidates will be featured on the same column of the ballot with the same slogan.  Once one of the bracketed candidates are placed on the ballot, all other candidates in the bracketed slate will be automatically placed in the same column.  In this manner, New Jersey organizes its primary election ballots by columns of groupings of candidates.

**D.  Ballot Position**

33.     The County Clerk is required to hold a ballot draw to determine the order of placement of various candidates running for the same office on the ballot.  *N.J.S.A.* 19:23-24.

34.     While *N.J.S.A.* 19:23-24 sets forth various procedures intended to ensure fairness as between the candidates being drawn, only some candidates get to enjoy those fair procedures on equal footing.  This is because New Jersey case law interpreting the relevant enabling statutes has determined that an initial drawing for ballot position should take place only as among candidates who are bracketed together with joint petition county candidates, except in years when candidates for U.S. Senate or Governor are on the ballot pursuant to *N.J.S.A.* 19:23-26.1 (in which case the latter offices are considered the pivot point, as further described in the next section).

35.     Once the pivot point candidate(s) are drawn, all candidates running for other offices who are bracketed with them are automatically placed on that same column.  These bracketed candidates running for other offices are therefore eligible to obtain the first ballot position, and

will be placed further to the left (or further to the top) of the ballot than other unbracketed candidates running for the same office.

36.    Once the initial ballot draw has taken place, then a series of non-preferential ballot draws take place between remaining unbracketed candidates for the other offices.   These candidates are not eligible to receive the first ballot position and will be placed further to the right (or further to the bottom) of the ballot than the bracketed candidates running for the same office.

37.    Such unbracketed candidates are not even guaranteed to receive the next available column after the bracketed candidates are placed on the ballot.  Instead, pursuant to the discretion of the County Clerk, unbracketed candidates have often been relegated to a ballot placement where they are (a) placed multiple columns away from the bracketed candidates, (b) stacked in the same column as another candidate for the exact same office, and/or (c) placed in the same column as candidates with whom they did not request to bracket and who requested a different ballot slogan. These candidates are harder to find in such obscure portions of the ballot commonly known as "Ballot Siberia" and otherwise appear less important, further confusing voters.

38.    In this manner, bracketing, preferential ballot draws, ballot position, and ballot placement of candidates are all inextricably intertwined with respect to New Jersey's primary election ballots.

**E.   United States Senate and Gubernatorial Candidates**

39.    Pursuant to *N.J.S.A.* 19:23-26.1, the names of all candidates for United States Senator, when such office is up for election, must be placed on the first column of the primary election ballot.  The same is true for candidates for Governor, if such position is up for election and United States Senator is not up for election.

40.     Interpreting New Jersey case law suggests that when United States Senator (or Governor) is on the ballot, county clerks should draw them first as the pivot point.

41.     All candidates for other offices who are bracketed with a candidate for United States Senator (or Governor) will then be automatically placed in the same column.  Such bracketed candidates thus have a chance at obtaining the first ballot position and will be placed further to the left (or further to the top) than all other candidates running for the same office who were not bracketed with a candidate for United States Senator (or Governor).  By contrast, all candidates who are not bracketed with a candidate for United States Senator (or Governor) are precluded from obtaining the first ballot position and will be placed further to the right (or further to the bottom) than all of the bracketed candidates running for the same office.

42.     In primary election cycles when candidates for President are on the ballot, some County Clerks have used President as the pivot point, and provided a similar ballot advantage to candidates who are bracketed with candidates for President, and corresponding disadvantage for all unbracketed candidates.

F.  **Arbitrary Criteria for Ballot Advantage and Varying Standards of County Clerks**

43.     In New Jersey primary elections, neither luck of the draw nor a rotational system is the primary factor in determining which candidates get the first ballot position.  Rather, eligibility to even have a chance at first ballot position depends most importantly on arbitrary considerations such as whether a candidate is bracketed with other candidates running for other offices, and which office the County Clerk uses as the pivot point.

44.     Ballot order thus becomes dependent upon other arbitrary criteria such as whether a candidate requested bracketing, whether bracketing was with a candidate that the County Clerk subsequently decides to use as the pivot point after petitions are already submitted, whether the

11

pivot point candidates with whom the candidate filed a bracketing request grants such request, whether the pivot point candidates with whom the candidate filed a bracketing request filed their petition properly so as to qualify for the ballot, etc. Such criteria rely on what actions occur with respect to other candidates running for other offices and how the County Clerk designs the ballot.

45.    Making matters worse, County Clerks have applied varying and internally inconsistent interpretations and unpredictable standards as to who the pivot point candidate should be. In election years where any combination of President, United States Senator, Governor, and joint petition county candidates are on the primary election ballot, New Jersey's 21 County Clerks have taken different approaches as to which office to serve as the pivot point to draw first and how to place candidates.

46.    With respect to the 2020 Primary Election, upon information and belief, the vast majority of counties used U.S. Senate as the pivot point. Upon information and belief, Atlantic County used President as the pivot point. Upon information and belief, Somerset County used U.S. Senator as the pivot point in the Republican draw; however, with respect to the Democratic draw, Somerset County featured a candidate for U.S. Senator in the first column, a candidate for President in the second column, and a bracketed slate of candidates in the third column, including a candidate for President and a candidate for U.S. Senator, making it unclear what if any office was the pivot point. A copy of a ballot/sample ballot in connection with the 2020 Democratic and Republican Primary Elections from one municipality in each of New Jersey's 21 counties is set forth in **Exhibit A**.

### G. Position Bias/Primacy Effect

47.    It has been well-documented that when choosing between a set of visually-presented options, a significant percentage of people will demonstrate a bias toward choosing the

first option, including in the context of selecting candidates listed on the ballot. This phenomenon, known as the primacy effect or positional bias, has a strong influence on decisions across a range of various forms of human behavior.

48.     The primacy effect has also been widely proven to impact elections where first-listed candidates enjoy a meaningful advantage solely due to the fact that they are listed first. Thus, candidates listed first among others running for the same office receive an advantage of additional votes solely due to their position on the ballot over all other candidates for that same office.

49.     To avoid a constitutional injury where some candidates are arbitrarily favored over others, other states have implemented some form of rotational system where ballots in different jurisdictions rotate which candidate receives first ballot position, or have drawn candidates for the same office by lot, so that each candidate running for the same office has an equal chance of obtaining the first ballot position. These mechanisms ensure fairness and an equal playing field by either minimizing ballot order effects and distributing those effects equally, or by providing all candidates for the same office with an equal chance of being drawn first so as not to arbitrarily favor one category of candidates over another.

50.     In the past, other states have implemented ballot order practices which provided an advantage to certain favored candidates such as incumbents or based on the majority political party currently in power. State and federal courts applying both the federal and state constitutions have repeatedly found such ballot ordering arrangements to be unconstitutional, including a United States Supreme Court summary affirmance.

51.     Even ballot order practices that do not appear to advantage one group of candidates over another have nevertheless been struck down by courts based on the advantage they provide

to certain candidates over similarly situated but later-listed candidates and due to the arbitrary nature of the criteria.

52.     New Jersey's bracketing and ballot order system provides a systemic advantage to candidates that bracket with candidates for certain pivot point offices.  Any ballot advantage based on or resulting from the actions or affiliations of different candidates running for different offices is unjustifiably arbitrary.

53.     Among the myriad of academic and scholarly reports regarding the impact of the primacy effect on voter behavior in elections is an Executive Summary prepared by Joanne M. Miller, Associate Professor of Political Science and International Relations at the University of Delaware.  The Executive Summary discusses in detail the primacy effect and other ballot design features set forth in Paragraph 56 of this Complaint.  Among the principal findings in the Executive Summary are the following:  (a) the overwhelming evidence demonstrates that the primacy effect affords a systematic first position advantage such that candidates listed first receive more votes solely due to their name order on the ballot; (b) the primacy effect is a least as large, and sometimes larger in primary elections than in general elections; (c) poor ballot design features regarding how candidate names are displayed, including many prevalent in New Jersey's primary election ballots, can nudge voters for or against voting for certain candidates, lead to other indicia of voter confusion, disenfranchise a substantial number of voters, and exacerbate the primacy effect; and (d) primacy effects are extremely likely to have occurred and to continue to occur in New Jersey primary elections.  *See generally* **Exhibit B**, Joanne M. Miller, *The Electoral Effects of Ballot Design* (June 21, 2020).

54.     New Jersey's bracketing and ballot order practices systematically prevent unbracketed candidates from having any opportunity to ever be listed in the first column on the primary election ballot, resulting in a serious electoral disadvantage.

55.     New Jersey's ballot system is problematic for additional reasons.  Research has specifically shown that the primacy effect is at least as large, and sometimes even more pronounced in the context of a primary election, and would thus lead to an even greater arbitrary advantage.

56.     The primary election ballots also contain other poor ballot design features which can exacerbate the impact of the primacy effect, nudge voters toward bracketed candidates, and contribute to voter confusion and other systemic biases such as over and under votes, proximity mistake votes, and ballot-flaw-induced votes which can disenfranchise substantial numbers of voters.  Such poor ballot design features include (a) placing a candidate far away from other candidates running for the same office with multiple blank spaces in between; (b) the visual cue from a full ballot column with candidates for all offices up for election as compared to columns with fewer candidates; (c) including additional information on the ballot such as slogans; (d) arbitrarily grouping candidates for different office in the same column; and (e) featuring candidates in a column all by themselves.

57.     The column form of ballot coupled with all of the poor ballot design features contribute to a confusing ballot for voters.  New Jersey's voters are further deprived of a fair and democratic process as they are forced to cast their vote on a ballot in a system that provides an arbitrary advantage to certain candidates over others from the inception, based simply on whether or not they are bracketed with other candidates for a completely different office.

### H. Conforti Ballot Draw/Ballot Placement

58.     On or about March 30, 2020, Conforti filed a petition with the Secretary of State's Office so that her name would appear on the 2020 Democratic Primary Election ballot in New Jersey's Fourth Congressional District, which includes portions of Mercer, Monmouth, and Ocean Counties.  Conforti's petition contained 284 valid petition signatures and was duly accepted by the Secretary of State's Office, above the 200 signatures required by statute to appear on the ballot.

59.     Each County Clerk's Office conducted a ballot draw on April 9, 2020.

### a.  Conforti's Monmouth County Ballot Draw and Ballot Placement

60.     A sample ballot[4] from the Monmouth County Clerk's Office for the July 7, 2020 Democratic Primary Election in the Township of Freehold shows Conforti's ballot position:

---

[4] All 2020 Primary Election ballot images included in the text of this Complaint have been excerpted and contain other minor formatting and sizing adjustments to enhance readability.  They include the relevant portions of the ballot to demonstrate the offices up for election and position of the various candidates.  A complete copy of the ballot images can be found in **Exhibit A**, which contains Democratic and Republican ballots for each county listed alphabetically.



61.    The Monmouth County Clerk's Office drew for ballot position based on U.S. Senate candidates first.  Because Conforti chose to exercise her First Amendment right not to associate with a U.S. Senate candidate, she was not included in the preferential ballot draw. Therefore, she was prohibited from having any chance to receive the first ballot position.

62.    Only one congressional candidate running against Conforti, Stephanie Schmid ("Schmid"), was automatically placed (in the first column) as a result of the initial ballot draw, due to the fact that Schmid was bracketed with a Senate candidate.

63.    The Monmouth County Clerk's Office next drew from candidates for President, but because Conforti chose to exercise her First Amendment right not to associate with a candidate for President, she was not included in this next drawing, and thus was not eligible for the third column.

64.    Eventually, Conforti was placed in the fourth column, all by herself.  By contrast, the candidates in the first column, including Schmid, are all featured on a column of multiple candidates for a variety of available office, and are all featured with the same slogan.  A gap in the

ballot exists between Schmid and the other candidates running for the same congressional office, including Conforti.

### b. Conforti's Ocean County Ballot Draw and Ballot Placement

65.     A sample ballot from the Ocean County Clerk's Office for the July 7, 2020 Democratic Primary Election in the Township of Plumsted shows Conforti's ballot position:



66.     The Ocean County Clerk's Office drew for ballot position based on U.S. Senate candidates first.  Because Conforti chose to exercise her First Amendment right not to associate with a U.S. Senate candidate, she was not included in the preferential ballot draw.  Therefore, she was prohibited from having any chance to receive the first ballot position.

67.     Only one congressional candidate running against Conforti, Schmid, was automatically placed (in the first column) as a result of the initial ballot draw, due to the fact that Schmid was bracketed with a Senate candidate.

68.     Eventually, Conforti was placed in the fourth column, all by herself.  By contrast, the candidates in the first column, including Schmid, are all featured on a column of multiple candidates for a variety of available office, and are all featured with the same slogan.  A gap in the

ballot exists between Schmid and the other candidates running for the same congressional office, including Conforti.

### c. Conforti's Mercer County Ballot Draw and Ballot Placement

69.     A sample ballot from the Mercer County Clerk's Office for the July 7, 2020 Democratic Primary Election in Robbinsville Borough shows Conforti's ballot position:



**OFFICIAL PRIMARY ELECTION SAMPLE BALLOT**
**Robbinsville Borough**
Mercer County, New Jersey
**July 7, 2020**
**4th Congressional District**

*Paula Sollami Covello*
Paula Sollami Covello
Mercer County Clerk

**ATTENTION VOTERS**
IN ORDER FOR YOU TO PROPERLY CAST YOUR VOTE,
THE OVERHEAD LIGHT MUST BE LIT AND
THERE SHOULD BE AN 'X' NEXT TO EACH SELECTION.

## DEMOCRATIC

| OFFICE TITLE | Column A Democratic | Column B Democratic | Column C Democratic | Column D Democratic | PERSONAL CHOICE |
|---|---|---|---|---|---|
| U.S. President 4 Year Term - Vote for One | Joseph R. BIDEN [1A] | | Bernie SANDERS [1C] | A VOTE ABOVE IS A VOTE FOR ALL UNCOMMITTED DELEGATES BELOW [1D] | NO PERSONAL CHOICE FOR DELEGATES [1] |
| 8th District Delegates to Democratic National Convention | A VOTE ABOVE IS A VOTE FOR ALL DELEGATES JOSEPH R. BIDEN Linda CALCEPETER Zuhaira LEHIA Sharon DeHARLE Steve STECH Kelvin DANGET | | A VOTE ABOVE IS A VOTE FOR ALL DELEGATES BERNIE SANDERS Russ BARENT Linda DELOACO Francoise EVANT Sandy RIVERA Nachelka DHUMAEL | A VOTE ABOVE IS A VOTE FOR ALL UNCOMMITTED DELEGATE UNCOMMITTED Joseph WOLFKANE | |
| U.S. Senate 6 Year Term - Vote for One | Cory BOOKER [2A] | Lawrence HAMM [2B] | | | [2] |
| U.S. House of Representatives 2 Year Term - Vote for One | Christine CONFORTI [3A] Stephanie SCHMID | David APPLEFIELD [3B] | | | [3] |
| Sheriff 3 Year Term - Vote for One | John A. "Zuck" KEMLER [5A] | | | | [5] |
| County Clerk 5 Year Term - Vote for One | Paula SOLLAMI COVELLO [6A] | | | | [6] |
| Board of Chosen Freeholders 3 Year Term - Vote for Two | Lucylle RIB WALTER [7A] John A. CIMINO | | | | [7] |
| County Committee 2 Year Term - Vote for Two | | | | | |

Mercer ENG 4th
Robbinsville, Form 13,   D1

70.     In Mercer County, Conforti was required to bracket with other candidates whom she did not wish to associate with in order to protect her ballot position.  Most egregiously, she was placed in the same column with the same slogan as Schmid, even though she is running against Schmid.  Thus, even though voters can only vote for one candidate for the Fourth Congressional District, two candidates appeared on the same column.

## CLAIMS FOR RELIEF

### COUNT I

#### U.S. Const. Amend. I and XIV, 42 *U.S.C.* § 1983

**Violation of Plaintiff's First and Fourteenth Amendment Rights Under Federal Constitution (Right to Vote/Vote Dilution)**

71.      Plaintiff realleges and incorporates by reference the above paragraphs as though fully set forth herein.

72.      The United States Constitution protects the rights of voters to effectively cast their votes and the right of individuals to associate for the purpose of advancing their political beliefs. If an electoral system fails to provide fundamental fairness, fundamental constitutional principles are implicated.

73.      Courts considering challenges to state election laws pertaining to fundamental rights under the First and Fourteenth Amendments to the United States Constitution must balance the character and magnitude of the injury to the plaintiffs' rights against specific justifications advanced by the State for imposing such burdens.  Regardless of the severity of the burden imposed, the state's law/rule must be justified by state interests that are legitimate and sufficiently weighty to justify the limitations imposed.

74.      New Jersey's bracketing and ballot placement system directly and substantially injure Plaintiff's First and Fourteenth Amendment rights.  This includes the rights of candidates like Conforti who are similarly situated to other candidates running for the same office, yet not treated equally on the ballot, and the qualified voters in New Jersey who support them.

75.      New Jersey's bracketing and ballot placement system skews New Jersey's elections, providing a meaningful, yet arbitrary advantage to bracketed candidates, as well as a meaningful, yet arbitrary disadvantage to unbracketed candidates like Conforti.

76.     In the 2020 primary election and beyond, New Jersey's bracketing and ballot placement system is virtually certain to injure various candidates like Conforti and their supporters, including but not limited to the primary elections for nomination to the House of Representatives in New Jersey's Fourth Congressional District in Mercer, Monmouth, and Ocean Counties.  It makes it harder to successfully elect such candidates, arbitrarily diminishing their chances solely because they were not bracketed with certain candidates running for other offices.  This also lessens the impact of votes cast by the supporters of such candidates, as the ballot placement system was designed from the outset to favor bracketed opponents.  The same principles will impact various elections up and down the ballot and across various counties in the 2020 primary election and beyond, and is virtually certain to allow the State to put its thumb on the scales in favor of certain bracketed candidates in all subsequent primary elections, as it has in past primary elections.

77.     The impact of positional bias is heightened because New Jersey's bracketing and ballot placement system impacts primary elections, as compared to general elections.

78.     New Jersey's bracketing and ballot placement system are also particularly suspect for a variety of reasons.  Providing a state-conferred ballot advantage to bracketed candidates inherently advantages party-endorsed candidates who have historically run candidates for every position up for election on the ballot, and who have the resources to do so, thereby further entrenching the power of incumbents and political elites.  Additionally, the discretion afforded to County Clerks, who are themselves elected officials who benefit from receiving a ballot placement advantage, has led to varying standards across New Jersey's 21 counties and from election cycle to election cycle impacting which candidates for which offices other candidates need to bracket with and how and where those candidates will be located on the ballot.  Upon information and

belief, no County Clerk publishes practices or standards on ballot design, relying solely on unbridled and unpredictable discretion in each election cycle.

79.     New Jersey's ballots also contain other poor ballot design features which exacerbate the impact of the primacy effect, nudge voters toward bracketed candidates, and contribute to voter confusion and other systemic biases such as over and under votes, proximity mistake votes, and ballot-flaw-induced votes which can disenfranchise substantial numbers of voters.  Conforti is impacted by many of these poor ballot design features with respect to the July 7, 2020 Democratic Primary Election, including (a) placing a candidate far away from other candidates running for the same office with multiple blank spaces in between; (b) the visual cue from a full ballot column with candidates for all offices up for election as compared to columns with fewer candidates; (c) including additional information on the ballot such as slogans; (d) arbitrarily grouping candidates for different office in the same column; and (e) featuring candidates in a column all by themselves.  Conforti is further impacted by being listed in the same column with the same slogan as her opponent, despite the fact that voters can only choose one candidate. This inherently causes voter confusion and risk of over votes which will not be counted, further disenfranchising voters who support her.

80.     As a direct and proximate cause of state law and Defendants' ballot design procedures, Conforti has been injured by a diminution in her chance to succeed in the election.

81.     No state interest in New Jersey's bracketing and ballot placement system can justify the burdens it places on Plaintiff's rights.

## COUNT II

### U.S. Const. Amend. I and XIV, 42 *U.S.C.* § 1983

### Violation of Plaintiff's First and Fourteenth Amendment Rights Under Federal Constitution (Equal Protection)

82.     Plaintiff realleges and incorporates by reference the above paragraphs as though fully set forth herein.

83.     New Jersey's bracketing and ballot placement system violate equal protection rights as they fail to treat similarly situated persons—that is, candidates pursuing the same office in the same political party, and who have filed a petition containing a legally sufficient number of nominating signatures—the same with respect to ballot order and the display of the ballot.  State election laws have been interpreted to provide for a preferential ballot draw as between candidates running for the pivot point office.  Those bracketed with candidates for the pivot point office are in turn granted preferential ballot position, including the ability to obtain the first ballot position.  Any other unbracketed candidates running for the same exact office are not included in the preferential ballot draw, will not obtain a favorable ballot position, and are wholly excluded from any chance at receiving the first ballot position.

84.     Unbracketed candidates are further disadvantaged when their names are placed multiple columns away from bracketed candidates running for the same office, or when listed underneath other candidates running for the same office (who are displayed horizontally).

85.     The unequal treatment of such candidates and voters who support them is based on an entirely arbitrary characteristic, namely whether or not a candidate is bracketed with a pivot point candidate, coupled by the varying and unpredictable standards employed by the County Clerks.

86.     Conforti did not bracket with any candidates for any other offices in Monmouth and Ocean Counties.

87.     The Monmouth and Ocean County Clerks failed to allow Conforti to participate in a drawing as against all other candidates running for the same office and denied her of any opportunity to draw for first ballot position.  Yet, by virtue of bracketing alone, the Monmouth and Ocean County Clerks afforded one of Conforti's opponents the opportunity to be placed in an initial ballot draw for first ballot position.

88.     The Monmouth and Ocean County Clerks placed Conforti and other unbracketed candidates multiple ballot spaces away from her opponent with no other candidates running for the same office in between them.

89.     Based on how the County Clerk's Offices conducted the ballot draw and designed the ballot, the first ballot position that Schmid could have received as a result of the ballot draw was the first column, whereas the first ballot position Conforti could have received was the fourth column in Monmouth County, and the third column in Ocean County.

90.     As a direct and proximate cause of state law and Defendants' ballot design procedures, Conforti has been injured by a diminution in her chance to succeed in the election as a result of her unequal treatment.

91.     No state interest in New Jersey's bracketing and ballot placement system can justify the burdens it places on Plaintiff's rights.

## COUNT III

### U.S. Const. Amend. I and XIV, 42 *U.S.C.* § 1983

### Violation of Plaintiff's First and Fourteenth Amendment Rights Under Federal Constitution (Freedom of Association)

92.     Plaintiff realleges and incorporates by reference the above paragraphs as though fully set forth herein.

93.     New Jersey's bracketing and ballot placement system place additional burdens on Plaintiff's associational rights.  The right of association includes the corresponding right not to associate.  State law burdens this right by leaving candidates, including those like Conforti who do not wish to associate with certain other candidates, with a Hobson's Choice; they can either (1) forfeit their right to not associate with certain other candidates, and nevertheless bracket just to get a fair shot at the first ballot position; or (2) exercise their right not to associate and be punished for doing so by being excluded from the preferential ballot draw and risk getting relegated to obscure portions of the ballot in Ballot Siberia.  Having to choose between equal and fair ballot treatment and First Amendment rights punishes candidates and the voters who support them simply based on their decision to bracket or not bracket with candidates running for a different office.

94.     In order to be included in the preferential ballot draw, candidates are forced to try to engage in gamesmanship and associate with existing pivot point candidates for other offices with whom they may not want to associate and whose policies they may disagree with, or are forced to try to recruit candidates to run for offices such as United States Senator, just to avoid getting treated unfairly on the ballot.  And even if they try to associate in this manner, they can be rejected by other candidates exercising their own associational rights and right not to associate. Either way, candidates lose the opportunity for fair treatment on the ballot.

95.     The Monmouth and Ocean County Clerk's Offices forfeited Conforti's right to be included in the preferential ballot draw because she exercised her right not to associate with candidates running for other offices.

96.     In Mercer County, Conforti was required to bracket with candidates she did not wish to associate with in order to protect her ballot position, including most egregiously, her opponent Schmid, who was placed in the same column and with the same slogan as Conforti, even though voters could only vote for one of them.

97.     Furthermore, because the initial ballot draw and preferential ballot placement depends on bracketing with specific pivot point candidates for specific offices (e.g. President, United States Senator, Governor, joint petition county candidates), but not with candidates for other offices (e.g. House of Representatives, State Senate, General Assembly, municipal council, etc.), New Jersey state law arbitrarily favors and bestows ballot advantages upon certain candidate associations over other associations in such manner as to simultaneously violate both associational rights and Equal Protection rights under the First and Fourteenth Amendments.

98.     As a direct and proximate cause of state law and Defendants' ballot design procedures, Conforti has been injured by punishing the exercise of her right to not associate with a diminution in her chance to succeed in the election and by requiring her to associate with candidates for the same and other offices in order to protect her ballot position.

99.     No state interest in New Jersey's bracketing and ballot placement system can justify the burdens it places on Plaintiff's rights.

## COUNT IV

### N.J. Const. Art. II, Sec. 1, Para. 3

**Violation of Plaintiff's Rights Under New Jersey Constitution (Right to Vote/Vote Dilution)**

100.   Plaintiff realleges and incorporates by reference the above paragraphs as though fully set forth herein.

101.   Article II, Section 1, Paragraph 1 of the New Jersey Constitution provides for the right to vote directly from the State Constitution.

102.   New Jersey's bracketing and ballot placement system burdens voting rights for all the reasons set forth above.  This includes the rights of candidates like Conforti who are similarly situated to other candidates running for the same office, yet not treated equally on the ballot, and the qualified voters in New Jersey who support them.

103.   New Jersey's bracketing and ballot placement system skews New Jersey's elections, providing a meaningful, yet arbitrary advantage to bracketed candidates, as well as a meaningful, yet arbitrary disadvantage to unbracketed candidates like Conforti.  It makes it harder to successfully elect such candidates, arbitrarily diminishing their chances solely because they were not bracketed with certain candidates running for other offices.  This also lessens the impact of votes cast by the supporters of such candidates, as the ballot placement system was designed from the outset to favor bracketed opponents.

104.   As a direct and proximate cause of state law and Defendants' ballot design procedures, Conforti has been injured by a diminution in her chance to succeed in the election.

105.   No state interest in New Jersey's bracketing and ballot placement system can justify the burdens it places on Plaintiff's rights.

## COUNT V

### N.J. Const. Art. I, Para. 1

### Violation of Plaintiff's Rights Under New Jersey Constitution (Equal Protection)

106.    Plaintiff realleges and incorporates by reference the above paragraphs as though fully set forth herein.

107.    Article I, Paragraph 1 of the New Jersey Constitution has been interpreted so as to confer an analogous equal protection right as to that under the Fourteenth Amendment.

108.    Courts have recognized that the equal protection rights under the New Jersey State Constitution can often be even broader than such rights under the Fourteenth Amendment.

109.    New Jersey's bracketing and ballot placement system violates Plaintiff's rights to equal protection for all the reasons set forth above.

110.    New Jersey's bracketing and ballot placement system fails to treat similarly situated candidates and voters alike and denies equal treatment between candidates running for the same office based on arbitrary criteria related to an entirely separate office.

111.    As a direct and proximate cause of state law and Defendants' ballot design procedures, Conforti has been injured by a diminution in her chance to succeed in the election as a result of her unequal treatment.

112.    No state interest in New Jersey's bracketing and ballot placement system can justify the burdens it places on Plaintiff's rights.

## COUNT VI

### N.J. Const. Art. I, Para. 6

**Violation of Plaintiff's Rights Under New Jersey Constitution (Free Speech and Association)**

113.    Plaintiff realleges and incorporates by reference the above paragraphs as though fully set forth herein.

114.    Article I, Paragraph 6 of the New Jersey Constitution has been interpreted so as to confer analogous free speech and association rights as to that under the First Amendment.

115.    Courts have recognized that the free speech and association rights under the New Jersey State Constitution can often be even broader than the rights protected under the First Amendment, and have been described as being "broader than practically all other [free speech guarantees] in the nation."

116.    New Jersey's bracketing and ballot placement system violates Plaintiff's rights to freedom of association, and more particularly, the corresponding right to not associate, for all the reasons set forth above.

117.    New Jersey's bracketing and ballot placement system prevents candidates from exercising their rights to not associate and punishes candidates who choose to exercise such rights by denying them equal protection with respect to the ballot draw and position on the ballot.

118.    As a direct and proximate cause of state law and Defendants' ballot design procedures, Conforti has been injured by punishing the exercise of her right to not associate with a diminution in her chance to succeed in the election and by requiring her to associate with candidates for the same and other offices in order to protect her ballot position.

119.    No state interest in New Jersey's bracketing and ballot placement system can justify the burdens it places on Plaintiff's rights.

## COUNT VII

### N.J.S.A. 10:6-2(c)

### Violation of the New Jersey Civil Rights Act

120.    Plaintiff realleges and incorporates by reference the above paragraphs as though fully set forth herein.

121.    The New Jersey Civil Rights Act provides relief to any person who has been deprived or interfered with the enjoyment of any substantive due process or equal protection rights, privileges or immunities secured by the federal and state constitutions or implementing laws.

122.    Defendants deprived or interfered Plaintiff with the exercise of substantive rights as protected by the state and federal constitution, as set forth above.

123.    Defendants acted under the color of law when conducting the ballot draw so as to conduct a preferential ballot drawing excluding unbracketed candidates like Conforti from drawing for first ballot position, when designing the ballot so as to place unbracketed candidates like Conforti multiple columns away from other candidates running for the same office, and when placing Conforti in the same column as another candidate running for the same office.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment:

(a) Declaring, under the authority granted to this Court by 28 *U.S.C.* § 2201 that the following practices and the statutes that enable them violate the United States Constitution and New Jersey Constitution with respect to primary elections in New Jersey:  (1) ballots designed by columns or rows, rather than by office sought; (2) ballot draws that do not include a separate drawing for every office and where every candidate running for the same office does not have an equal chance at the first ballot position; (3) positioning candidates on

the ballot automatically based upon a ballot draw among candidates for a different office; (4) placement of candidates such that there is an incongruous separation from other candidates running for the same office; (5) placement of candidates underneath another candidate running for the same office, where the rest of the candidates are listed horizontally, or to the side of another candidate running for the same office, where the rest of the candidates are listed vertically; and (6) bracketing candidates together on the ballot such that candidates for different offices are featured on the same column (or row) of the ballot;

(b) Permanently enjoining the Defendants from implementing and carrying out any of the above unconstitutional practices under the authority granted to this Court by 28 *U.S.C.* § 2202;

(c) Awarding Plaintiff all reasonable attorneys' fees, costs, and disbursements incurred in connection with bringing this action pursuant to 42 *U.S.C.* § 1988, *N.J.S.A.* 10:6-2(f), and other applicable laws; and

(d) Granting such other and further relief as the Court deems just and proper, including requiring the Defendants to use a ballot organized by office sought, rather than by column or row, and which implements for each office on the ballot, either (1) a rotational ballot order system which ensures to the greatest extent possible that each candidate running for the same office obtains the first ballot position in an equitable proportion; or (2) a randomized ballot order system which affords each candidate for the same office an equal chance at obtaining the first ballot position, until such time as a new ballot order system

which protects fundamental constitutional rights is passed by the Legislature and becomes law.

Dated this 6th day of July, 2020.

Respectfully submitted,

/s/ Brett M. Pugach
Brett M. Pugach (032572011)
/s/ Yael Bromberg
Yael Bromberg (036412011)
BROMBERG LAW LLC
43 West 43rd Street, Suite 32
New York, NY 10036-7424
Telephone:  212-859-5083
Facsimile:  201-586-0427
bpugach@bromberglawllc.com
ybromberg@bromberglawllc.com

*Counsel for the Plaintiff*