## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

CHRISTINE CONFORTI,

               Plaintiff,

v.

CHRISTINE GIORDANO HANLON, in her
official capacity as Monmouth County Clerk,
SCOTT M. COLABELLA, in his official
capacity as Ocean County Clerk, and PAULA
SOLLAMI COVELLO, in her official capacity
as Mercer County Clerk,

               Defendants.

Case No. 3:20-cv-08267

---

## DEFENDANT HON. PAULA SOLLAMI COVELLO'S BRIEF
## IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

---

**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102
Telephone: 973-533-0777
Fax: 973-533-1112
*Counsel for Paula Sollami Covello*

*Of Counsel and On the Brief:*
Angelo J. Genova, Esq. (005501979)
Jennifer Borek, Esq. (041131997)

*On the Brief:*
Christopher Zamlout, Esq.  (302652019)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………...1

STATEMENT OF FACTS ..................................................................................2

PROCEDURAL HISTORY................................................................................2

LEGAL STANDARD.........................................................................................9

ARGUMENT .....................................................................................................9

   I.     Plaintiff Does Not Have Standing. ..........................................................10

   II.    Plaintiff's Claims Are Moot. ..................................................................12

   III.   Plaintiff Fails To State A Claim. ...........................................................14

      A.  Counts I, III, IV and VI Should be Dismissed. .....................................14

      B.  Counts II and V Should be Dismissed......................................................25

      C.  Count VII Should be Dismissed. ..............................................................27

CONCLUSION ...................................................................................................30

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Alden v. Maine*,
   527 U.S. 706 (1999) ........................................................................29

*Anderson v. Celebrezze*,
   460 U.S. 780 S. Ct. 1564, 75 L. Ed. 2d 547 (1983) ................................. 9, 10, 28

*Anderson. Council of Alternative Political Parties v. Hooks*,
   179 F.3d 64 (3d Cir.1999) .................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .........................................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .........................................................................9

*Bodine v. Elkhart Cty. Election Bd.*,
   788 F.2d 1270 (7th Cir. 1986)...........................................................20

*Burdick v. Takushi*,
   504 U.S. 428 (1992) ............................................................... 18, 27, 28

*Cal. Democratic Party v. Jones*,
   530 U.S. 567 (2000) ................................................................ 19, 22, 24, 27

*Cleburne v. Cleburne Living Center, Inc.*,
   473 U.S. 432 (1985) ........................................................................25

*Clingman v. Beaver*,
   544 U.S. 581 (2005) ........................................................................26

*Connelly v. Steel Valley Sch. Dist.*,
   706 F.3d 209 (3d Cir. 2013) ..............................................................26

*Democratic-Republican Org. v. Guadagno*,
   900 F. Supp. 2d 447 (D.N.J. 2012), *aff'd*, 700 F.3d 130 (3d Cir. 2012) ...... passim

*Donovan v. Punxsutawney Area Sch. Bd.*,
   336 F.3d 211 (3d Cir. 2003) ..................................................... 13, 21

*Edelman v. Jordan*,
　　415 U.S. 651 (1974) .......................................................................30

*Eu v. San Francisco County Democratic Central Committee*,
　　489 U.S. 214 (1989) ................................................................. passim

*Ex Parte Young*,
　　209 U.S. 123 (1908) ........................................................................29

*Farrington v. Falcey,*
　　96 N.J. Super. 409 (App. Div. 1967)........................................... 14, 26

*Figueroa v. City of Camden*,
　　580 F. Supp. 2d 390 (D.N.J. 2008).................................................30

*Friends of Earth, Inc.*,
　　528 U.S. 167 (2000) .......................................................................10

*Harrison v. Jones*
　　44 N.J. Super. 456 (App. Div. 1957)................................................15

*Hawkes v. Gates*,
　　129 N.J.L. 5 (1942)..........................................................................14

*Hennings v. Grafton*,
　　523 F.2d 861 (7th Cir. 1975) ...........................................................20

*Illinois Bd. of Elections v. Socialist Workers Party*,
　　440 U.S. 173 (1979) .......................................................................18

*James v. City of Wilkes-Barre*,
　　700 F.3d 675 (3d Cir. 2012) ...............................................................9

*Jenness v. Fortson*,
　　403 U.S. 431 (1971) ................................................................. 19, 28

*Johnson v. Duncan*,
　　719 Fed. App'x 144 (3rd Cir. 2017)................................................29

*Kay v. Austin*,
　　621 F.2d 809 (6th Cir.1980) ............................................................13

*Los Angeles County v. Davis*,
    440 U.S. 625 (1979) ................................................................. 13, 27

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ...................................................................10

*Major Tours, Inc. v. Colorel*,
    720. F. Supp. 2d 587 (D.N.J. 2010)......................................................30

*Maldonado v. Houstoun*,
    157 F.3d 179 (3d Cir. 1998) .............................................................26

*Mayer v. Belichick*,
    605 F.3d 223 (3d Cir. 2010), *cert denied*, 562 U.S. 1271 (2011) ........................6

*McKenney v. Byrne*,
    82 N.J. 304 (1980) .....................................................................25

*Minn. Voters Alliance v. Ritchie*,
    720 F.3d 1029 (8th Cir. 2013) ....................................................... 20, 21

*Mintz v. Cuomo*,
    45 N.Y. 2d 918 (1978)..................................................................16

*Moskowitz v. Grogan*,
    101 N.J. Super. 111 (App. Div. 1968).....................................................22

*Munro v. Socialist Workers Party*,
    479 U.S. 189 (1986) ...................................................................18

*Nader v. Schaffer*,
    417 F. Supp. 837 (D. Conn. 1976), aff'd, 429 U.S. 989 (1976) .................... 24, 26

*Norman v. Reed*,
    502 U.S. 279 (1992) ...................................................................28

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) .................................................................. 29-30

*Perry v. Judd*,
    471 F. App'x 219 (4th Cir. 2012).......................................................13

*Pettengill v. Putnam Cty. R-1 Sch. Dist., Unionville, Mo.*,
    472 F.2d 121 (8th Cir. 1973) ..................................................................19

*Powell v. McCormack*,
    395 U.S. 486 (1969) ..................................................................... 13, 19

*Quaremba v. Allan*,
    67 N.J. 1 (1975) ........................................................................... 15, 16

*Ray v. Blair*,
    343 U.S. 214 (1952) .............................................................................24

*Regents of the Univ. of California v. Doe*,
    519 U.S. 425 (1997) ..................................................................... 29, 30

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011) ..................................................................11

*Republican Party of Pa. v. Cortés*,
    218 F. Supp. 3d 396 (E.D. Pa. 2016).............................................. 19, 21

*Reynolds v. Sims*,
    377 U.S. 533 (1964) .............................................................................20

*Richardson v. Caputo*,
    46 N.J. 39 (1965) ................................................................................14

*Rogers v. Corbett*,
    468 F.3d 188 (3d Cir. 2006) ............................................................ 9-10

*Rose v. Parker*,
    91 N.J.L. 84 (Sup. Ct. 1917) ..............................................................15

*Rutgers University Student Assembly v. Middlesex County Bd. of Elections*,
    446 N.J. Super. 221 (App. Div. 2016)..................................................27

*Sarvis v. Alcorn*,
    826 F.3d 708 (4th Cir. 2016) ..............................................................16

*Serpentfoot v. Rome City Comm'n*,
    426 F. App'x 884 (11th Cir. 2011)......................................................19

*Short v. Brown*,
   893 F.3d 671 (9th Cir. 2018) ...............................................................20

*Sojourner A. v. N.J. Dep't of Human Servs.*,
   177 N.J. 318 (2003) ........................................................................25

*Sonneman v. State*,
   969 P.2d 632 (Alaska 1998) ...............................................................19

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ............................................................... 10, 11

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ........................................................................10

*Tashjian v. Republican Party of Connecticut*,
   479 U.S. 208 (1986) ................................................................ 21-22

*Twp. of Pennsauken v. Schad*,
   160 N.J. 156 A.2d 1159, 1169 (1999) ...............................................21

*United Hunters Ass'n v. Adams*,
   36 N.J. 288 (1962) ........................................................................14

*Walsh v. Boyle*,
   179 A.D. 582 (First Dept. 1917) ......................................................16

*Will v. Michigan Dep't of State Police*,
   491 U.S. 58 (1989) ........................................................................29

## <u>STATUTES</u>

*N.J.S.A. § 10:6-2* .......................................................................8, 30

*N.J.S.A 19:23-6* ..................................................................... 3, 7, 8

*N.J.S.A. 19:23-18* ................................................................... 3, 7, 8

*N.J.S.A. 19:23-24* ................................................................... 4, 5, 8

*N.J.S.A. 19:49-2* ................................................................. passim

## <u>OTHER AUTHORITIES</u>

New Jersey Policy Perspective, <u>Does the County Line Matter? An Analysis
   of New Jersey's 2020 Primary Election Results</u> (Aug. 13, 2020) ............. 6, 7, 12

## <u>RULES</u>

Fed. R. Civ. Proc. 12(b)(6) ........................................................................2

Rule 12(b)(6)................................................................................. 6, 9, 21

## <u>CONSTITUTIONAL PROVISIONS</u>

489 U.S. at 222..........................................................................................25

Article I, Sec. 4 of the U.S. Constitution .................................................19

## PRELIMINARY STATEMENT

Through this action, plaintiff Christine Conforti ("Plaintiff") seeks to have this Court declare that the longstanding practices of counties and county clerks in preparing for primary and general elections violate the United States and New Jersey Constitutions.  However, the practices complained of – specifically, the ballot design, candidate ballot placement drawing, and the placement of candidates and bracketing procedures – have long been upheld despite numerous challenges. And although courts have held that equitable doctrines preclude late-filed constitutional challenges to elections rules, Plaintiff filed this federal court action on the eve of the July 7, 2020 primary election, long after ballots were printed, urging this Court to invalidate these practices.

Even though she had ample time to challenge the ballot design prior to the July primary – the ballot draw occurred on April 9, 2020 - Plaintiff rested on her rights.  As such, she does not and cannot satisfy the standing requirements necessary to properly invoke this Court's jurisdiction under Article III of the U.S. Constitution. That begins and ends this Court's inquiry as to all of Plaintiff's claims and makes any further proceedings in this case unnecessary. Even if jurisdiction was not an absolute bar, Plaintiff's claims are stale and have become moot as a result of the certification of the primary election results and the completion of the general election. Because Plaintiff has not been a candidate in any race in the State of New

1

Jersey since her unsuccessful race in the July primary, her claims are moot.

Even if the Court were to reach the merits of Plaintiff's claims, the United States Supreme Court in its *Eu v. San Francisco County Democratic Central Committee* decision, laid the groundwork for subsequent decisions that the States may not impinge on the various political parties' freedom of association, including ballot placement. Such State laws may control the manner of preparation of the ballot, so long as they do not prevent a qualified elector from exercising his constitutional right to vote for any person he chooses. For all these reasons, the Complaint should be dismissed.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]

### A.     Parties

Plaintiff is a federal candidate who ran for the U.S. House of Representatives in New Jersey's Fourth Congressional District in connection with New Jersey's July 7, 2020 Democratic Primary Election.[2] (Plaintiff's Complaint ("Pl. Comp."), Dkt. No. 1, ¶ 16.) Defendant Hon. Paula Sollami-Covello ("Covello") is the Mercer County Clerk (*Id.*, ¶19).  Defendant Hon. Christine Giordano Hanlon ("Hanlon") is the Monmouth County Clerk (*Id.*, ¶17), and defendant Hon. Scott M. Colabella

---

[1] The Statement of Facts and Procedural History are combined for judicial efficiency.

[2] Plaintiff's allegations in the Complaint are assumed to be true for the purpose of Covello's motion to dismiss only, pursuant to the standard of review for such a motion under Fed. R. Civ. Proc. 12(b)(6).

("Colabella") is the Ocean County Clerk (*Id.* ¶18).

### B.   Background of New Jersey's Statutory Framework for Ballot Placement

New Jersey organizes its primary election ballots through a grid of rows and columns, with the specific placement of the offices sought and the candidates for those offices varying by County. *See N.J.S.A.* 19:49-2. A candidate's placement on the ballot depends on various factors including, but not limited to, endorsements from county political party committees, affiliation with other candidates for the same office or others, and a ballot drawing conducted by the County Clerk. See *N.J.S.A.* 19:23-6, 19:23-18, and 19:23-24.

New Jersey law requires candidates who want to bracket with candidates running for other offices to file a joint petition with the County Clerk. (Pl. Comp., ¶ 30; *N.J.S.A.* 19:23-18; *N.J.S.A.* 19:49-2.) *N.J.S.A.* 19:49-2 sets forth the specific procedure for bracketing. Candidates who file petitions with the Municipal Clerk or with the Secretary of State must, within 48 hours of the petition filing deadline, request permission from the campaign manager of joint petition county candidates to be bracketed with those joint petition county candidates.[3] (Pl. Comp., ¶ 31.) Upon notification of the request, the campaign manager has 48 hours to grant permission to bracket with the joint petition county candidates. Candidates for other offices that

---

[3] *N.J.S.A* 19:23-6 sets forth which candidates running for which office must file their nominating petitions with the Municipal Clerk, County Clerk, or Secretary of State.

submit petitions with the County Clerk are also able to bracket with the joint petition county candidates. (*Id.*)  Successfully bracketed candidates will be featured on the same column of the ballot with the same slogan. (*Id*., ¶32.)

The clerk will then conduct a drawing to determine the order of the ballot, the procedures of which are dictated by *N.J.S.A.* 19:23-24. The County Clerk has discretion as to which office to draw first for ballot positioning (i.e., Governor, United States Senate, etc.)  The office which the County Clerk chooses to draw first, is referred to by Plaintiff as the "pivot point." (Pl. Comp., ¶26.)  "All candidates who shall file a joint petition with the county clerk of their respective county and who shall choose the same designation or slogan shall be drawn for position on the ballot as a unit and shall have their names placed on the same line of the voting machine." *N.J.S.A.* 19:23-24.  Thus, once one of the bracketed candidates – the pivot point - is placed on the ballot, all other candidates in that bracketed slate will be automatically placed in the same column, including those running for other offices. (Pl. Comp., ¶31.)  The County Clerk then draws for the second position and so on. *N.J.S.A.* 19:23-24.

Once the initial ballot draw for the pivot point office has taken place, then a series of ballot draws take place between remaining candidates for the other offices who were not bracketed with a pivot point candidate.  These candidates are not eligible to receive the first ballot position and will be placed further to the right (or

further to the bottom) of the ballot than the bracketed candidates running for the same office. (Pl. Comp. ¶36.)

Plaintiff specifically challenges the procedures delineated by *N.J.S.A.* 19:23-24 – although expressly stated in the Complaint as a challenge to the processes used by the County Clerks – and claims that the statute creates an unfair framework whereby certain candidates are automatically guaranteed more favorable ballot placement, on the "pivot point," due to their bracketing. (*See* Pl. Comp., ¶ 35. ) Plaintiff summarizes her allegations to the unconstitutionality of *N.J.S.A.* 19:23-24 in the following manner:

> unbracketed candidates have often been relegated to a ballot placement where they are (a) placed multiple columns away from the bracketed candidates, (b) stacked in the same column as another candidate for the exact same office, and/or (c) placed in the same column as candidates with whom they did not request to bracket and who requested a different ballot slogan. These candidates are harder to find in such obscure portions of the ballot commonly known as "Ballot Siberia" and otherwise appear less important, further confusing voters.

(Pl. Comp. ¶ 35.)  Plaintiff alleges that bracketing and the procedure for the ballot draw leads to unequal, and preferential ballot placement. (*Id.* at 38.)

## C.    Plaintiff's Candidacy

On or about March 30, 2020, Conforti filed a petition with the Secretary of State's Office so that her name would appear on the 2020 Democratic Primary Election ballot in New Jersey's Fourth Congressional District, which includes portions of Mercer, Monmouth, and Ocean Counties, to run against incumbent

Republican Congressman Christopher Smith. (Pl. Comp. ¶58.) Each County Clerk's Office conducted a ballot draw on April 9, 2020. (Id. ¶59.)

Plaintiff ran against two other candidates for the Democratic slot: Stephanie Schmid ("Schmid") and David Applefield ("Applefield"). (Pl. Comp., ¶¶ 60, 65, 69.) Plaintiff won the Democratic party endorsement in Mercer County, defeating Schmid and Applefield.  *See,* New Jersey Policy Perspective, <u>Does the County Line Matter? An Analysis of New Jersey's 2020 Primary Election Results</u> (Aug. 13, 2020) [https://www.njpp.org/publications/report/does-the-county-line-matter-an-analysis-of-new-jerseys-2020-primary-election-results/](https://www.njpp.org/publications/report/does-the-county-line-matter-an-analysis-of-new-jerseys-2020-primary-election-results/) ("<u>Does the County Line Matter?</u>").[4] Plaintiff was therefore listed in the first column in Mercer County. (Pl. Comp., ¶ 69.) Plaintiff alleges that she "was required to bracket with other candidates whom she did not wish to associate with in order to protect her ballot position" and that she "was placed in the same column as Schmid, even though she is running against her."[5] (Pl. Comp. ¶¶ 69-70.)

The Monmouth and Ocean County Clerks' offices drew for ballot position

---

[4] In deciding a Rule 12(b)(6) motion, a court may go outside the complaint to consider matters of public record.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010), *cert denied*, 562 U.S. 1271 (2011).

[5] Mercer County Democratic Party bylaws allow all candidates that receive at least 40% of the vote at the party's endorsement convention to appear on the county line. Schmid was also able to hit the 40% threshold, but Plaintiff received a larger percentage of the convention votes and the endorsement, so was listed first.  *Id.*

based on U. S. Senate candidates first.  (Pl. Comp. ¶¶ 61, 66.) Schmid won the Monmouth County Democratic endorsement and Ocean County Democratic endorsement, and therefore received the first line on the ballot in both counties.  (Pl. Comp., ¶62, 67; Does the County Line Matter, *supra*.)  Conforti was listed on the fourth line in both Monmouth and Ocean counties.  (*Id.*, ¶64, 68.) Applefield did not receive any endorsements from the county democratic committees in the fourth congressional district and, as such, was not placed on the county line on any of the county ballots. (Pl. Comp., ¶¶ 60, 65, 69.)

Plaintiff was ultimately unsuccessful in her bid to be the Democratic candidate to challenge incumbent Christopher Smith, losing to Schmid.  Although Plaintiff won Mercer county, receiving 57% of the vote, Schmid won Monmouth and Ocean counties, receiving 70% and 77% of the vote, respectively.[6]

### D.    Plaintiff's Complaint

On July 6, 2020, the eve of the primary election, Plaintiff brought this federal action against Hanlon, Colabella and Covello, challenging various provisions of *N.J.S.A.* §§ 19:23-6; 19:23-18; 19:23-24; and 19:49-2 (the "Election Laws"). Specifically in the context of primary elections Plaintiff asserts that the processes

---

[6] *See* New Jersey Policy Perspective, Does the County Line Matter? An Analysis of New Jersey's 2020 Primary Election Results (Aug. 13, 2020) https://www.njpp.org/publications/report/does-the-county-line-matter-an-analysis-of-new-jerseys-2020-primary-election-results/

resulting from Election Laws are unconstitutional: (1) ballots designed by columns or rows, rather than by office sought; (2) ballot draws that do not include a separate drawing for every office and where every candidate running for the same office does not have an equal chance at the first ballot position; (3) positioning candidates on the ballot automatically based upon a ballot draw among candidates for a different office; (4) placement of candidates such that there is an incongruous separation from other candidates running for the same office; (5) placement of  candidates underneath another candidate running for the same office, where the rest of the candidates are listed horizontally; or to the side of another candidate running for the same office, where the rest of the candidates are listed vertically; and (6) bracketing candidates together on the ballot such that candidates for different offices are featured on the same column (or row) of the ballot. (Pl. Comp. ¶ 123; *N.J.S.A. §§* 19:23-6; 19:23-18; 19:23-24; and 19:49-2.)

Plaintiff claims that the above procedures and Election Laws violate her right to vote, right to free speech, and her freedom of association under both the United States and New Jersey Constitutions, with a claim of vote dilution (Counts I, III, IV, and VI ).  Further, Plaintiff claims violations to her right to equal protection under both Constitutions (Counts II and V).  Finally, Plaintiff claims a violation of the New Jersey Civil Rights Act, pursuant to *N.J.S.A. §* 10:6-2(c) in Count VII.

8

## LEGAL ARGUMENT

### I.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must "take all of the factual allegations in the complaint as true," *id*. (citing *Twombly*, 550 U.S. at 555), "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, in reviewing a Rule 12(b)(6) motion to dismiss, courts should "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679, 681 (3d Cir. 2012).

The standard of review for election law challenges that allege constitutional violations is set forth in *Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S. Ct. 1564, 75 L. Ed. 2d 547 (1983).

"[T]he strict scrutiny, intermediate scrutiny, and rational basis categories represent a convenient and familiar linguistic device by which courts . . . have characterized their review. *Anderson* [however] promulgated a less categorical system of classification . . . Put another way, ballot access cases should not be pegged into the three aforementioned categories. Rather, following *Anderson*, [the Court's] scrutiny is a weighing process." *Rogers v. Corbett*, 468 F.3d 188, 194 (3d Cir. 2006)

(citation omitted); *Anderson*, 460 U.S. at 789.

Accordingly, in reviewing Plaintiff's complaint, the Court must consider "what burden is placed on the rights which plaintiffs seek to assert and then balance that burden against the precise interests identified by the [S]tate and the extent to which these interests require that plaintiffs' rights be burdened. Only after weighing these factors can [the Court] decide whether the challenged statute is unconstitutional." *Democratic-Republican Org. v. Guadagno*, 900 F. Supp. 2d 447, 452 (D.N.J. 2012), *aff'd*, 700 F.3d 130 (3d Cir. 2012).

## II.   PLAINTIFF DOES NOT HAVE STANDING.

This Court should reject Plaintiff's claims without reaching the merits because she did not challenge the Election Laws until after the primary concluded and thus does not have standing.  Article III standing is necessary for each form of relief sought by Plaintiff. *Friends of Earth, Inc.*, 528 U.S. 167, 185 (2000). To properly invoke federal jurisdiction, a plaintiff must demonstrate that (1) they are under an actual threat of suffering a concrete and particularized injury in fact to a legally protected interest that is "concrete and particularized;" (2) the injury is fairly traceable to the defendant's conduct; and (3) it is likely that a favorable judicial decision will prevent or redress the injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Unsubstantiated allegations of "possible

future injury" are not sufficient to satisfy Article III. *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011). Nor are injuries that are "conjectural or hypothetical." *Robins,* 136 S. Ct. 1540 at 1548.

Here, Plaintiff is under no actual threat of suffering a concrete and particularized injury in fact to a legally protected interest. Plaintiff fails to allege any threat to any legally recognized protected interest, as detailed in Section III below. Indeed, because the July 7, 2020 primary election was conducted and the results certified, Plaintiff suffers no threat of any injury. Plaintiff was unsuccessful in her race for the Democratic primary for U.S. House New Jersey District 4. The certified results reflect that Plaintiff lost the Democratic nomination. This "injury" cannot be fairly traceable to Defendants conduct – Plaintiff could have lost the election for any number of reasons not associated with the ballot drawing or her ultimate placement on the ballot. It may very well be such that Plaintiff lost the primary election due to a lack of public support. Plaintiff's allegations that obtaining the first ballot position is directly related to favorable election results is purely conjecture and would require this Court to prophesize that Plaintiff would have been successful against Stephanie Schmid *but for* her ballot position – a conclusion that is not alleged in the Complaint.

Finally, a favorable decision for Plaintiff would not prevent or redress the injury. Should the Court agree with Plaintiff, and grant the declaratory judgment

and permanent injunction sought, these measures provide no recourse for Plaintiff as both the primary and the general election have been completed. The results of the primary election have long been certified.  In fact, the general election results are now even certified, with Christopher Smith, the republican candidate, winning the U.S. House seat.[7]  Plaintiff fails to plead facts sufficient to satisfy the standing requirement; instead, Plaintiff merely provides speculative theories on her loss.

Specifically, with respect to claims against Covello, Plaintiff actually won the Democratic line in Mercer County and was listed in the first column. *See* Plaintiff's Complaint, Exhibit A, pg. 67.  Since Schmid was also able to hit the 40% threshold, she and Plaintiff were both included on the Mercer County line, but Plaintiff was listed first. Does the County Line Matter?, *supra*. Thus, with regard to Covello, Plaintiff's claim of injury is even more speculative, and falls well short of alleging facts to establish standing.

### III.   PLAINTIFF'S CLAIMS ARE MOOT.

Plaintiff seeks an injunction to permanently enjoin the current ballot draw processes and ballot design for primary elections, but as of the date of this filing, both the primary and general election have occurred, and Plaintiff is no longer a candidate.  Thus the issues presented by Plaintiff are no longer "live." A case

---

[7] If the Court were to grant the relief sought by Plaintiff, it would do nothing to impact the general election in which the democratic candidate was unsuccessful.

becomes moot when the issues presented are no longer live, or there is no longer an actual or ongoing "case or controversy" between the parties, and neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law. *See Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979); *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir. 2003). Because the availability of relief "lies at the very heart of the mootness doctrine," and because the case must remain "live" throughout all stages of litigation, when events occur that deprive a court of its ability to grant the requested relief, the case must be dismissed as moot. *Donovan*, 335 F.3d at 211.

Here, Plaintiff sat on her rights until after she failed to receive the party's nomination and on the eve of losing the primary.[8]  Because she is no longer a candidate, her claims are no longer live and there is no actual or ongoing case or controversy. The procedures and statutes which Plaintiff seeks to have declared violative of the United States and New Jersey Constitutions no longer apply to her and must be dismissed as moot.

---

[8] Courts have also denied late filed election claims as barred by laches and/or estoppel if a suit was filed after the close of a nomination period, or an election day for example. *See, e.g.*, *Perry v. Judd*, 471 F. App'x 219 (4th Cir. 2012) (claim barred where candidates challenged law governing circulation of candidate petitions after deadline for petitions); *Kay v. Austin*, 621 F.2d 809, 813 (6th Cir.1980) (claim barred where candidate waited to file suit until two weeks after not being listed on ballot). The *Perry* Court reasoned that a candidate cannot choose to sit on his rights to challenge a provision until after receiving an unfavorable result.  *Perry* at 224.

## IV.   PLAINTIFF FAILS TO STATE A CLAIM.

Should this Court find that Plaintiff does, in fact, have standing to bring her claims and that they are not moot, the Complaint must still be dismissed on the merits because Plaintiff has failed to set forth facts to support any cognizable claim under New Jersey or federal constitutional or election law.

First, this Court must defer to the county clerk's exercise of discretion under the election laws.  In reviewing *N.J.S.A.* 19:49-2, the New Jersey Supreme Court held that the decision on how to structure the drawing as between bracketed and independent candidates rested with the county clerk. *Hawkes v. Gates*, 129 N.J.L. 5 (1942). And, while a clerk's discretionary action is not "beyond judicial approval," the Court has stated that "it is not for a court to choose one of several reasonable courses, for that choice is precisely what the Legislature left to another"; rather, the court would only act "if it clearly appears the course taken is not rooted in reason…." *Richardson v. Caputo*, 46 N.J. 3, 9 (1965) (*citing, United Hunters Ass'n v. Adams*, 36 N.J. 288 (1962)).

A clerk's discretion has consistently been upheld in New Jersey.  "The county clerk is given a wide discretion in these matters, and that the court will not interfere with the exercise of that discretion unless clearly unreasonable, is well established." *Farrington v. Falcey,* 96 N.J. Super. 409, 414 (App. Div. 1967). Indeed, "there can be no doubt about the authority of the Legislature to adopt reasonable regulations

for the conduct of primary and general elections. Such regulations, of course, may control the manner of preparation of the ballot, so long as they do not prevent a qualified elector from exercising his constitutional right to vote for any person he chooses." *Quaremba v. Allan,* 67 N.J. 1, 11 (1975) (*citing Rose v. Parker, 91 N.J.L. 84, 86 (Sup. Ct. 1917)).*

In *Quaremba*, plaintiffs' principal criticism was of the county clerk's refusal to structure the ballot in the form of a single column with the names of the candidates for each office, affiliated and non-affiliated, following each other in the sequence determined by a drawing, and these in turn followed by a similar listing of candidates for the next office and so on. *Quaremba v. Allan,* 67 N.J. 1, 10 (1975). Under that proposal, the names of those who had filed a joint petition for different offices and those who had affiliated with them, although appearing in a single column, would be separated from each other by the names of unaffiliated candidates seeking the same offices. *Id.* The Court reviewed that proposal and held that there was "no merit to plaintiffs' contention that the ballots should be structured as they suggest. Indeed, such a separation of the names of those affiliated candidates – unless they consent thereto – would be contrary to the legislative purpose evident in *N.J.S.A.* 19:49-2. 67 N.J. at 6; *see, Harrison v. Jones* 44 N.J. Super. 456, 461 (App. Div. 1957).[9]

---

[9] Even in other jurisdictions, similar challenges to a State's ballot design and bracketing procedures have been unsuccessful. *See Sarvis v. Alcorn*, 826 F.3d 708

Here, Plaintiff criticizes New Jersey's ballot system and claims that it "systematically prevent[s] unbracketed candidates from having any opportunity to ever be listed in the first column on the primary election ballot, resulting in a serious electoral disadvantage." Pl. Comp., ¶ 54. While not expressly advocating for a similar ballot design to that of the plaintiff in *Quaremba*, to achieve Plaintiff's desired design the ballot would need to be constituted in a similar way.   And although the *Quaremba* Court held that "the county clerk must act in good faith and may not intentionally discriminate against any candidate or group of candidates." *Quaremba,* 67 N.J. at 16, Plaintiff does not allege here that the county clerks acted in bad faith or intentionally discriminated against anyone.

Specifically, and as set forth in more detail below, Plaintiff cannot establish a claim that that the ballot drawing and design processes violated Plaintiff's right to vote, freedom of association, freedom of speech,  or equal protection rights, or that they constituted vote dilution.  In *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214 (1989), the United States Supreme Court held that parties and political organizations enjoy freedom of association protected by the First and

---

(4th Cir. 2016) (court found that Virginia's tiered ballot law imposed modest burdens on Constitutional rights but, because all parties were subject to the same state law, the proportional nondiscrimination of the application of the law was upheld); *Walsh v. Boyle*, 179 A.D. 582 (First Dept. 1917) (holding that it is improper for the judiciary to force a ballot ordering); *Mintz v. Cuomo*, 45 N.Y. 2d 918 (1978) (appellate court restored an original ballot design after the lower court improperly reordered the ballot).

Fourteenth Amendments, and these rights mean not only that an individual voter has the right to associate with the political party of his choice, but also that "a political party has the right to identify the people who constitute the association,"  and to select a "standard bearer who best represents the party's ideologies and preferences." *Eu*, at 224 (internal citations omitted). The *Eu* Court's precedence laid the groundwork for subsequent decisions that established not only that the State *could* take party affiliation into consideration when designing the ballot, but that it was constitutionally impermissible *to ban this type of affiliation* absent a compelling state interest. In *Eu*, the Court found no compelling state interest, as the state made no showing that voters were unduly influenced by party endorsements or that such a ban was necessary to ensure an election that was orderly and fair.  *Eu*, 233-34.

This precedence has been followed in New Jersey as well.  Courts have plainly stated that "States may treat candidates affiliated with political parties differently than unaffiliated candidates." *Guadagno*, 900 F. Supp. 2d at 456.  In fact, in *Guadagno*, the District Court for the District of New Jersey, reviewed a challenge very similar to that of Plaintiff, in the general election context, and held:

> placing political party candidates on the left side of the ballot and all other candidates on the right side does not violate Plaintiffs' constitutional rights. These statutes impose, at most, a minimal burden on Plaintiffs' ballot access. Because the Plaintiffs' burden, if any, is negligible, any reasonable regulatory interest provided by the State will ensure the statutes' constitutionality under *Anderson*. *Council of Alternative Political Parties v. Hooks*, 179 F.3d 64, 78 (3d Cir.1999) … Here, the State has explained that the statute is grounded in the

integrity of the election process by ensuring that voters can clearly identify which candidates are affiliated with political parties.

*Id*. at 458, *aff'd*, 700 F.3d 130 (3d Cir. 2012).

Thus, the Court should dismiss Plaintiff's complaint and defer to the actions of the county clerks in accordance with Title 19, as it is clear the regulations complained of are necessary to the integrity of the electoral process. *See Eu*, at 232.

### A.   <u>Counts I, III, IV and VI Should be Dismissed.</u>

Plaintiff's claims that that the ballot drawing and design processes violate Plaintiff's right to vote and/or constitute vote dilution, freedom of association, and freedom of speech should be dismissed because Plaintiff fails to plead facts sufficient to support any alleged right and they assert constitutional violations that are not cognizable.

#### i.  **Right to Vote / Vote Dilution**

Plaintiff's constitutional right to cast her vote is not being infringed in any way. In fact, Plaintiff conflates the right to vote with some alleged entitlement to a more favorable ballot placement. Although "voting is of the most fundamental significance under our constitutional structure", *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (*quoting Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)), "[i]t does not follow ... that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Id*. (*citing Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986)). "States have a major

role to play in structuring and monitoring the election process, including primaries." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 572 (2000); *see also* Article I, Sec. 4 of the U.S. Constitution. It necessarily follows that if a candidate's ballot access can be regulated by the state, *see Jenness v. Fortson*, 403 U.S. 431,441–42 (1971), a candidate's ballot placement can also be regulated, as placement is surely a less important aspect of voting rights than access. *See*, *Guadagno*, at 456 (*citing Sonneman v. State*, 969 P.2d 632, 638 (Alaska 1998) ("[T]he statute in question, however, does not restrict access to the ballot or deny any voters the right to vote for candidates of their choice… Instead, it merely allocates the benefit of positional bias, which places a lesser burden on the right to vote.")).

Here, Plaintiff's right to vote was not obstructed in any way. Plaintiff does not claim that her position on the ballot restricted her or any voter's access to the ballot or denied any voter the right to vote for any candidate of their choice. As such, Plaintiff's claim under her right to vote is unfounded.

Similarly, vote dilution based on the potential for bracketed candidates to gain an advantage is not a cognizable claim. *Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396, 406–07 (E.D. Pa. 2016) (finding plaintiffs' "vote-dilution theory is based on speculation"); *see also Serpentfoot v. Rome City Comm'n*, 426 F. App'x 884, 887 (11th Cir. 2011); *Pettengill v. Putnam Cty. R-1 Sch. Dist., Unionville, Mo.*, 472 F.2d 121, 122 (8th Cir. 1973); *Powell v. Power*, 436 F.2d 84, 88 (2d Cir. 1970).

To be sure, vote dilution can, in certain circumstances, unconstitutionally impinge the right to vote, but only when the law systematically or invidiously devalues one community's votes as compared to otherwise similarly situated voters. Plaintiffs' allegations only claim vote dilution as they relate to ballot position drawing and placement, which does not rise to the level of recognized dilution.[10] That is because "[t]he Constitution is not an election fraud statute," *Minn. Voters Alliance v. Ritchie*, 720 F.3d 1029, 1031 (8th Cir. 2013) (*quoting Bodine v. Elkhart Cty. Election Bd.*, 788 F.2d 1270, 1271 (7th Cir. 1986)), and does not support claims "premised on potential harm in the form of vote dilution caused by" election processes that Plaintiffs dislike, *id.* at 1033.

Here, Plaintiff's vote dilution claim is not sufficiently supported by the facts set forth in her complaint – she states nothing more than her own concerns that she may be disadvantaged due to her conscious choice not to bracket with other candidates. Moreover, New Jersey's drawing and bracketing processes do not favor one community's votes over another. *See Short v. Brown*, 893 F.3d 671, 678 (9th Cir. 2018) (rejecting vote dilution claim based on an improper reading of *Reynolds*, which "stand[s] for something narrower: that a state may not allocate representation

---

[10] *See Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975) (infringements of voting rights found to have risen to a constitutional level include dilution of votes by reason of malapportioned voting districts or weighted voting systems); *Reynolds v. Sims*, 377 U.S. 533, 567 (1964) (involving a challenge to unequally apportioned voting districts).

differently based on a voter's county of residence"). Each registered New Jersey voter, regardless of a candidate's location on the ballot, can choose to vote for whomever they please.

There is simply no authority for transmogrifying the vote dilution line of cases into a weapon that may be used by a candidate to seek a supposed favorable placement on the ballot, based entirely on unfounded and speculative allegations. To the contrary, courts have routinely and appropriately rejected such efforts. *See Ritchie*, 720 F.3d at 1031–32 (*affirming Rule* 12(b)(6) dismissal of vote dilution claim); *see also Cortés*, *supra*, 218 F. Supp. 3d at 406–07. Because Plaintiff has failed to allege facts that give rise to a plausible claim for relief, or even alleged a cognizable legal theory, Counts I and IV should be dismissed.

### ii. Freedom of Association and Speech

Counts III and VI claim violations of Plaintiff's constitutional rights of freedom of association and freedom of speech, however, Plaintiff fails to plausibly state a claim that her freedoms have been infringed upon in any way.[11] In *Schundler v. Donovan,* the court held that "no rights guaranteed by the First Amendment are absolute, 377 N.J. Super. 339 (2005); s*ee also, Tashjian v. Republican Party of*

---

[11] The Free Speech Clause contained within the New Jersey Constitution "is generally interpreted as co-extensive with the First Amendment," so the analysis of a state free speech claim is identical to its federal counterpart. *Twp. of Pennsauken v. Schad*, 160 N.J. 156, 733 A.2d 1159, 1169 (1999).

*Connecticut*, 479 U.S. 208, 217-18 (1986). Even fundamental rights, such as those involving expressive exercises, are subject to limitation if a sufficiently compelling public interest exists in particular circumstances at hand. *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214 (1989). Where a limitation on protected expressive interests emanates from a provision regarding elections, the test for compelling public interest is whether the "regulation . . . is necessary to the integrity of the electoral process." *Id.* at 232.

The Supreme Court in *Eu* also recognized freedom of association enjoyed by political parties. 489 U.S. at 216. The Court held that political parties have a role in selecting their organization, claiming that "partisan political organizations enjoy freedom of association protected by the First and Fourteenth Amendments. Freedom of association means … also that a political party has a right to identify the people who constitute the association…." *Ibid*. Here, bracketing follows the principle established in *Eu*, which allows the political parties to organize in advance of elections as they see fit.

As the court found in *Balsam v. Guadagno*, 2014 WL 2126579 (D.N.J.), "the freedom of association would "prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being." *See Cal. Democratic Party*, 530 U.S. at 574-75. Similarly, in *Moskowitz v. Grogan*, the court, relying on *N.J.S.A.* 19:49-2, held

22

that since one slate of delegates to a national party convention was affiliated with a group of county candidates, another unaffiliated slate was not entitled to a drawing for position on the ballot as against the affiliated slate, "for the state candidates who affiliate with county candidates may not be displaced from their position on the same line with their affiliated county candidates." 101 N.J. Super. 111, 116 (App. Div. 1968).

Even if this Court found that the statutes complained of burdened Plaintiff's associational rights, the burden is minimal.  Plaintiff was able to choose between associating or not associating with other candidates, political parties, etc. and was able to exercise that right however she pleased. In fact, as explained above, Plaintiff did exercise her right to associate in Mercer County and was successful in receiving the first position for her race, and the endorsement in Mercer County. Plaintiff was never placed in the position where she was forced to associate with any other candidates.  At all relevant times, Plaintiff was fully apprised of the bracketing process and had ample time to opt to bracket with other candidates to secure her ability to obtain the pivot point.

Accordingly, Plaintiff's challenges to the statutes under her freedom of association must fail because the State's legitimate interests in protecting the associational rights of political associations, maintaining ballot integrity, avoiding voter confusion, and ensuring electoral fairness outweigh any burden Plaintiff

alleges. *See, Balsam v. Guadagno*, 2014 WL 2126579 (D.N.J.); *Ray v. Blair*, 343 U.S. 214, 221, 222 (1952); *Nader v. Schaffer*, 417 F. Supp. 837, 848 (D. Conn. 1976), aff'd, 429 U.S. 989 (1976)

The United States Supreme Court rejected the same arguments raised by Plaintiff here in *Cal. Democratic Party v. Jones*, when it invalidated Proposition 198, under which the voters of California had adopted to change California's electoral system from a closed primary to a blanket primary. 530 U.S. at 570, 582-86. Previously, California held a closed primary, in which only persons who were members of the political party were permitted to vote on its nominee. Proposition 198 changed the system to a blanket primary, which allowed the voter to choose freely among candidates regardless of party affiliations. *Id.* Several political parties challenged the rule, claiming it violated their First Amendment rights of association. *Id.* The Court rejected the arguments similar to those of Plaintiff, here – stating that those alleged interests were not compelling.[12] *Id.*

Similarly, Plaintiff has failed to plead any facts establishing a burden on her right to freedom of speech. For a freedom of speech claim to survive a motion to dismiss, a plaintiff must allege that they engaged in speech protected by the First

---

[12] Ultimately, the Court did overturn the blanket primary for reasons inapplicable here – finding that it imposed on political parties' freedom to prevent "party raiding," a process in which dedicated members of one party formally switch to another party to alter the outcome of that party's primary. *Id.*

Amendment and that the protected speech was limited or circumscribed in some way. For example, in *Eu*, the Supreme Court held that California's regulation prohibiting primary endorsements by the official governing bodies of political parties directly affected speech, which was at the core of the electoral process, and violative of the First Amendment freedoms. 489 U.S. at 222.

Here, there are insufficient facts in the Complaint which connect Plaintiff's speech with the election statutes at issue or the outcome of the primary election. Plaintiff's position on the ballot does nothing to limit her freedom to put forth any protected speech as a candidate or to choose to associate with any party or not.  As such, Plaintiff's freedom of speech and association claims must be dismissed.

### B.    Counts II and V Should be Dismissed.

Plaintiff's claims for Equal Protection rights violations in Counts II and V are equally without merit and should be dismissed.[13] The Equal Protection Clause is essentially a directive that all individuals similarly situated should be treated alike. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). However, "[t]he state's creation of a classification is not 'per se unconstitutional or automatically

---

[13] The Supreme Court has recognized that the concept of equal protection is implicit in Art. I, par. I of the 1947 New Jersey Constitution. *McKenney v. Byrne*, 82 N.J. 304, 316 (1980). That provision is analogous to the federal equal protection clause in terms of analysis, *Sojourner A. v. N.J. Dep't of Human Servs*., 177 N.J. 318, 332 (2003) and the counts will be addressed together.

subject to heightened scrutiny.'" *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 213 (3d Cir. 2013) (*quoting Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998)). Courts will, as a result, uphold a classification "so long as it bears a rational relation to some legitimate end" and it neither burdens a fundamental right nor targets a suspect class. *Id.*

In the context of election law, the Courts have held that "in facilitating the effective operation of [a] democratic government, a state might reasonably classify voters or candidates according to political affiliations." *Clingman v. Beaver*, 544 U.S. 581, 594 (2005) (*quoting Nader v. Schaffer*, 417 F. Supp. at 845-46). Indeed, it has been recognized that a state does not deprive an individual of equal protection in drawing a distinction between affiliated and unaffiliated voters. *Nader*, 417 F. Supp. at 848; *see also Balsam v. Guadagno,* 2014 WL 2126579 (D.N.J.)

At all times leading up to the election, Plaintiff was treated like all other candidates in the election - the ballot draw is done irrespective of the individual candidates themselves but, rather, for the offices for which they are running. Moreover, Plaintiff has failed to plead sufficient facts warranting this Court to scrutinize the actions taken by a county clerk. A county clerk has wide latitude in crafting the ballot, unless an abuse of discretion is apparent, and such discretion has been upheld consistently in New Jersey. *See Farrington v. Falcey,* 96 N.J. Super. 409 (App. Div. 1967) ("the county clerk is given a wide discretion in these matters,

and that the court will not interfere with the exercise of that discretion unless clearly unreasonable, is well established by our decisions.).

Plaintiffs' equal protection challenge fails because plaintiff is not a member of a suspect class, nor does she allege such a membership.  While she asserts that there is a fundamental right to vote in primaries, there is, in fact, no constitutional right to participate in primary elections. *Cal. Democratic Party*, 530 U.S. at 573 n.5; *Consumer Party v. Davis*, 633 F. Supp. 877, 888 (E.D. Pa. 1986).  The Election Laws are therefore subject only to rational basis review, which they easily survive because the statutes are rationally related to the State's legitimate interests in protecting the associational rights of party members, maintaining ballot integrity, avoiding voter confusion and ensuring electoral fairness.

As this Court knows, states are entitled to broad leeway in regulating elections to ensure they are carried out in a fair and efficient manner.  *See Rutgers University Student Assembly v. Middlesex County Bd. of Elections*, 446 N.J. Super. 221 (App. Div. 2016).  A court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick v. Takushi*, 504 U.S. 428 (1992) *citing*

*Anderson v. Celebrezze*, 460 U.S. 780 (1983). When those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 289 (1992). But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions. *Anderson*, 460 U.S., at 788; *see also Burdick*, 504 U.S., at 434.

Here, it is undisputed that the State has an important, legitimate interest in ensuring an accessible ballot, which avoids voter confusion, and permits voters to easily identify candidates and the political parties they are affiliated with.[14]  Plaintiff fails to present any facts or allegations that the Defendants imposed any "severe" restrictions upon her rights.   Indeed, even if Plaintiff had, the statutes being challenged are narrowly drawn to advance the State's interest.   However, in following the process set forth in the challenged statutes, Defendants at most imposed a reasonable, nondiscriminatory restriction upon Plaintiff, which are certainly justified by the underlying compelling interests. As such, the statutes meet rational basis review and Plaintiff's Equal Protection claim must fail.

---

[14] "There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot—the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election." *Guadagno*, at 456 (*citing Jenness v. Fortson*, 403 U.S. 431, 442 (1971)).

## C.    Count VII Should be Dismissed.

Finally, Plaintiff's civil rights claims must fail as the Eleventh Amendment to the United States Constitution prohibits Plaintiff's state law claims in their entirety.

It is well-recognized that the states, state agencies and state officials acting in their official capacity cannot be sued under the principles of sovereign immunity and the Eleventh Amendment. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 69-71 (1989). "[T]he states' immunity from suit is a fundamental aspect of the sovereignty which the states enjoyed before the ratification of the Constitution, and which they retain today." *Alden v. Maine*, 527 U.S. 706, 712-13 (1999) (citations omitted). This immunity extends to state agencies and state officers who act on behalf of the state, *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997). Similarly, counties, county sheriff's, county prosecutor's offices, and department officials (including county clerks), in their official capacities, are entitled to Eleventh Amendment sovereign immunity. *Johnson v. Duncan*, 719 Fed. App'x 144 (3rd Cir. 2017).

Although the Eleventh Amendment does not bar plaintiffs from bringing suit for prospective injunctive relief, *see Ex Parte Young*, 209 U.S. 123 (1908), "[public] officials are immune from suits in federal court based on violations of state law, including suits for prospective injunctive relief under state law, unless the state waives sovereign immunity." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S.

89, 106 (1984); *Major Tours, Inc. v. Colorel*, 720. F. Supp. 2d 587, 602 (D.N.J. 2010). Moreover, the supplemental jurisdiction statute, 28 U.S.C. § 1367, does not authorize district courts to exercise jurisdiction over claims against non-consenting States. *Raygor v. Regents of the University of Minnesota*, 534 U.S. 533, 541 (2002); *see also Figueroa v. City of Camden*, 580 F. Supp. 2d 390, 405 (D.N.J. 2008) (acknowledging that "Supreme Court has stated unequivocally that § 1367(a)" does not override State's sovereign immunity).

Therefore, Plaintiff's state constitutional claims brought under the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2, must be dismissed because the State has not unequivocally waived its immunity. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss should be granted.

By:   */s/ Angelo J. Genova*

**GENOVA BURNS LLC**
Angelo J. Genova, Esq.
Jennifer Borek, Esq.
Christopher Zamlout, Esq.
AGenova@genovaburns.com
JBorek@genovaburns.com
CZamlout@genovaburns.com
494 Broad Street
Newark, New Jersey 07102
Telephone: 973-533-0777
Fax: 973-533-1112

DATED:  December 7, 2020     *Attorneys for Paula Sollami Covello*