| | |
|---|---|
| CHRISTINE CONFORTI,<br><br>Plaintiff<br><br>vs.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, SCOTT M. COLABELLA, in his official capacity as Ocean County Clerk, and PAULA SOLLAMI COVELLO, in her official capacity as Mercer County Clerk,<br><br>Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>Civil Action No.: 3:20-cv-08267-FLW-TJB<br><br>Civil Action<br><br>MOTION DATE: JANUARY 4, 2020 |

---

**BRIEF IN SUPPORT OF DEFENDANT OCEAN COUNTY CLERK
SCOTT M. COLABELLA'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT
F.R.C.P. 12(b)(6) AND (b)(7)**

---

**BERRY SAHRADNIK KOTZAS & BENSON, P.C.**
212 Hooper Avenue, P.O. Box 757
Toms River, NJ 08754-0757
Phone: (732) 349-4800
Fax: (732) 349-1983
*Attorneys for Defendant Scott M. Colabella, in his official capacity as Ocean County Clerk*

Christopher A. Khatami, Esq.
**Bar ID#043472013**
*On the Brief*

## TABLE OF CONTENTS

1.    Preliminary Statement.................................................................. 1-5

2.    Legal Argument
      Point I
      PLAINTIFF'S FEDERAL AND ANALOGOUS STATE CONSTITUTIONAL
      CLAIMS MUST BE DISMISSED UNDER F.R.C.P. 12(b)(6)

      A. MOTION TO DISMISS STANDARD........................................6-7
      B. PLAINTIFF LACKS ARTICLE III STANDING......................7-9
      C. PLAINTIFF'S COMPLAINT FAILS TO ESTABLISH FEDERAL AND
         STATE CONSTITUTIONAL VIOLATIONS............................. 9-20

3.    Conclusion.................................................................................... 21

## PRELIMINARY STATEMENT

This matter arises out of Plaintiff Christine Conforti's ("Plaintiff") Complaint for Declaratory Judgment on federal and state constitutional grounds against Ocean County Clerk, Scott M. Colabella, ("Ocean County Defendant"), Monmouth County Clerk, Christine Giordano Hanlon, ("Monmouth County Defendant"), and Mercer County Clerk, Paula Sollami Covello, ("Mercer County Clerk").

The gravamen of Plaintiff's Complaint is that the New Jersey bracketing statute, N.J.S.A. 19:49-2, violates her federally-protected constitutional rights of association (or right not to associate with a political party), equal protection of the laws as bracketed candidates obtain preferential ballot placement because of segregated ballot drawings between bracketed and unbracketed candidates, and causes her a loss of votes due to her disadvantaged ballot position as an unbracketed candidate.

Plaintiff's Complaint must be dismissed as a matter of law for failure to state a claim under F.R.C.P. 12(b)(6).

### PLAINTIFF LACKS STANDING:

As a threshold matter, Plaintiff lacks requisite standing to file suit in accordance with Article III standing requirements set forth in LaRoque v. Holder, 650 F.3d 777, 787 (D.C. Cir. 2011), Shays v. FEC, 414 F.3d 76, 82 (D.C. Cir.

2005), and <u>Lujan v. Defenders of Wildlife</u>, 504 <u>U.S.</u> 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The Democratic primary election forming the subject matter of this Complaint has already passed. Article III standing requires more than "'some day' intentions" to support a finding of the "'actual or imminent' injury that our cases require." <u>Nader v. Federal Election Com'n</u>, 725 <u>F.3d</u> 226, 229 (D.C. Cir. 2013)(quoting <u>Lujan v. Defenders of Wildlife</u>, 504 <u>U.S.</u> 555, 564, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

Similarly, Plaintiff lacks Article III standing due to the absence of proof that her injury is traceable to the Ocean County Clerk's lawful exercise of discretionary authority under <u>N.J.S.A.</u> 19:49-2. Proof of causation that the alleged injury is fairly traceable to the defendant's conduct is a touchstone of Article III standing that Plaintiff fails to meet in this case.

Further, Plaintiff sued the county clerks who are acting in good-faith under the color of state law, but did not name the State, or the Secretary of State as a defendant in this case. Naturally, naming either of these parties would bar this suit in federal court under Eleventh Amendment immunity principles. In the same vein, however, the Ocean County Clerk exercised his discretionary authority under New Jersey state election law, the subject and enforcement of which emanates from the State, with the Secretary of State as the chief election official in the

State.   Therefore, the Ocean County Clerk acting under the aegis of state election law should be conferred the same Eleventh Amendment immunity protections from suit in federal court as any other state official such as the Secretary of State.

### PLAINTIFF'S CONSTITUTIONAL CLAIMS LACK MERIT:

Plaintiff's federal and state constitutional claims under the First and Fourth Amendments and the Equal Protection Clause of the Fourteenth Amendment fail as a matter of law.

Plaintiff's associational rights not to associate with a political party cannot interfere or trump the associational rights of political parties to express their cohesive ideology and shared political beliefs through bracketing of candidates on a primary ballot.

Likewise, Plaintiff's Associational and Equal Protection rights fail under the balancing test set forth in Eu v. San Francisco County Democratic Cent. Committee, 489 U.S. 214 (1989) and Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986).   Courts examine the constitutionality of a state election law first to determine whether it burdens rights protected by the First and Fourteenth Amendments, and secondly, whether the state can provide a compelling state interest justification for burdening such rights.  Tashjian v. Republican Party of Connecticut, supra, 479 U.S. at 217, 107 S.Ct. 544; Illinois Bd. of Elections v.

3

Socialist Workers Party, 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979).

It is well-settled that the associational rights of political parties are an essential right protected by the First Amendment. Eu v. San Francisco County Democratic Cent. Committee, 489 U.S. 214 (1989); Richardson v. Caputo, 46 N.J. 3, 9 (1965). For ballot drawing purposes, the county clerk's treatment of bracketed candidates as a single unit to be drawn for ballot placement is a statutory requirement under N.J.S.A. 19:49-2.

It is settled precedent under New Jersey law that the county clerk's exercise of discretion to conduct ballot drawing separately between bracketed and unbracketed candidates does not in itself constitute an Equal Protection Clause violation. Quaremba v. Allan, 67 N.J. 1, 10—18 (1975), relying on strong precedent in Hawkes v. Gates, 129 N.J.L. 5 (1942); In re Hoffman, 134 N.J.L. 155 (1946); Bado v. Gilfert, 13 N.J. Super. 363, 365 (App. Div. 1951); Harrison v. Jones, 44 N.J. Super. 456, 461 (App. Div. 1957); Moskowitz v. Grogan, 101 N.J. Super. 111, 116 (App. Div. 1968).

The county clerk's failure to draw ballot placement separately between bracketed and unbracketed candidates would defeat the legislative and constitutional purpose of bracketing. Plaintiff is challenging the system of bracketing itself without

4

which political parties are restrained from the expressive free speech activity safeguarded in Eu, Quaremba, Richardson, and other cases. Ballot drawings that included both bracketed and unbracketed candidates for the same office would *a fortiori* the ability of candidates for different offices to bracket with each other under the same slogan.

A viable Equal Protection claim requires proof of "'invidious discrimination' which offends the Constitution." Quaremba v. Allan, 67 N.J. 1 (1975)(quoting Ferguson v. Skrupa, 372 U.S. 726, 732, 83 S.Ct. 1028, 1032, 10 L.Ed.2d 93 (1963)). Plaintiff has not provided any proof of intentional discrimination. Instead, Plaintiff offers a professor's summary of the academic literature on positional ballot bias effect without any specific proof in this case that such bias occurred and resulted in loss of votes for Plaintiff that would have impacted the outcome of her primary election loss.

Plaintiff's facial challenge to N.J.S.A. 19:49-2 must also fail "where a statute has a "'plainly legitimate sweep.'" Crawford v. Marion County Election Bd., 553 U.S. 181, 202 (2008)(quoting Washington v. Glucksberg, 521 U.S. 702, 739–40, and n. 7, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)).

For these reasons, Plaintiff's federal and analogous state constitutional claims must be dismissed.

## LEGAL ARGUMENT

I.   **PLAINTIFF'S FEDERAL AND ANALOGOUS STATE CONSTITUTIONAL CLAIMS MUST BE DISMISSED UNDER F.R.C.P 12(b)(6)**

    A.   *MOTION TO DISMISS STANDARD*

*F.R.C.P. 12(b)(6):*

On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). A district undertakes a three-part analysis when considering a motion to dismiss under F.R.C.P. 12(b)(6). Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). First, the "court must take note of the elements a plaintiff must plead to state a claim." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Second, the court must review the complaint to strike any conclusory allegations. The court must accept as true all of the Plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The court is free to ignore legal conclusions or bald factual allegations that merely assert generalized harms. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Third, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for

6

relief.'" <u>Fowler v. UPMC Shadyside</u>, 578 <u>F.</u>3d 203, 210 (3d Cir. 2009)(<u>quoting</u> <u>Ashcroft v. Iqbal</u>, 556 <u>U.S.</u> 662, 678 (2009)).

Accordingly, for the reasons substantively set forth below, Plaintiff's Complaint must be dismissed for failure to state a claim based on the factual allegations made in the Complaint.

### B.   *PLAINTIFF LACKS ARTICLE III STANDING*

Plaintiff must satisfy all three requirements to establish Article III standing to bring a claim in federal court. First, Plaintiff must have suffered an "injury-in-fact." <u>Lujan v. Defenders of Wildlife</u>, 504 <u>U.S.</u> 555, 560 (1992). A "plaintiff must offer evidence showing actual harm or a threat of imminent harm to herself to show standing for damages or injunctive relief for her own benefit". <u>Hummel v. St. Joseph County Board of Commissioners,</u> <u>supra</u>, 817 F.3d 1010 at 1019. Second, Plaintiff must establish a causal connection between the conduct complained of and the injury, i.e., plaintiff's injury must be fairly traceable to the defendant's alleged conduct. <u>Id.</u> Third, Plaintiff must show a likelihood, as opposed to mere speculation, that her injury would be "redressed by a favorable decision." <u>Id.</u> at 561.

In this case, Plaintiff lacks Article III standing on multiple grounds. First, Plaintiff does not provide any specific evidence of an injury-in-fact or imminent harm. Article

III standing requires more than "'some day' intentions" to support a finding of the "'actual or imminent' injury that our cases require." Nader v. Federal Election Com'n, 725 F.3d 226, 229 (D.C. Cir. 2013)(quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 564, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

In Nader v. Federal Election Com'n, 725 F.3d 226, 229 (D.C. Cir. 2013), the Circuit Court of Appeals for the District of Columbia concluded that the plaintiff lacked standing as a competitor in the election that already passed because he speculated of a possible run again, but failed to concretely state that he will run again, unlike the plaintiffs in LaRoque v. Holder, 650 F.3d 777, 787 (D.C. Cir. 2011) and Shays v. FEC, 414 F.3d 76, 82 (D.C. Cir. 2005). Id. at 229.

In this case, Plaintiff commits the same fatal error in paragraph 16 of her Complaint in which asserts that "Win or lose, Conforti intends to run for office again."

Similarly, Plaintiff lacks standing based on her failure to provide evidence that establishes causation between the Ocean County Clerk's separate ballot drawing of bracketed and unbracketed candidates and her loss of votes and ultimately the primary election. Plaintiff only offers a summary of academic literature on positional bias effect instead of specific proof that she lost votes because of her placement on the ballot, which she drew against the only other unbracketed candidate,

David   Applefield.   The   Ocean   County   Clerk   treated   all unbracketed, unaffiliated candidates in the democratic primary the same in terms of ballot drawing and placement in accordance with N.J.S.A. 19:49-2.

Accordingly, Plaintiff lacks standing under Article III.

### C.   *PLAINTIFF'S COMPLAINT FAILS TO ESTABLISH FEDERAL AND STATE CONSTITUTIONAL VIOLATIONS*

For purposes of clarity, Plaintiff's federal and state constitutional claims will be treated same since the claims are identical in nature.

Plaintiff's constitutional claims fail to state a claim for relief under F.R.C.P. 12(b)(6).

States possess "'a broad power to prescribe the 'Times, Places, and Manner of holding Elections for Senators and Representatives,'[U.S. Const. Art I., §4, cl. 1, which power is matched by state control over the election process for state offices.'"  Clingman v. Beaver, 544 U.S. 581, 586, 125 S.Ct. 2029, 161 L.Ed.2d 920 (2005)(quoting Tashjian v. Republican Party of Connecticut, 479 U.S. 208,217,107 S.Ct. 544, 93 L.Ed.2d 514 (1986)).  That state authority over the election process is subject to limits established by the First Amendment rights of citizens, which includes the freedom of political association, or non-association.  Eu v. San Francisco County Democratic Cent.

Committee, 489 U.S. 214, 222 (1989)(quoting Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 217, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986).

Election regulations imposing a severe burden on associational rights are subject to scrutiny by the courts and may be upheld only if they are narrowly tailored to serve a compelling state interest. Clingman v. Beaver, 544 U.S. 581, 586, 125 S.Ct. 2029, 161 L.Ed.2d 920 (2005).

Election regulations that impose only modest burdens on associational rights requires a lower form of scrutiny in which the state shows important regulatory interests justify reasonable, non-discriminatory restrictions. Anderson v. Celebrezze, 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). The U.S. Supreme Court has "repeatedly upheld reasonable, politically neutral regulations that have the effect of channeling expressive activity at the polls." Burdick v. Takushi, 504 U.S. 428, 438, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992).

Plaintiffs claiming an equal protection violation bear the burden of providing some substantive proof of discrimination. American Party of Texas v. White, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974). The Equal Protection clause requires proof of invidious or intentional discrimination. Williamson v.

Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955).

As the New Jersey Appellate Division explained in Quaremba v. Allan, 128 N.J. Super. 570, 574 (App. Div. 1974), quoting from the U.S. Supreme Court's reasoning in Williamson:

> Legislatures are presumed to have acted constitutionally and their statutory classifications will be set aside only if no grounds can be concerned to justify them. The measure of equal protection has been described variously as whether 'the distinctions drawn have some basis in practical experience,…or whether the legislature's action falls short of 'the invidious discrimination,…or whether 'any state of facts reasonably may be conceived to justify' the statutory discrimination,…or whether the classification is 'on the basis of criteria wholly unrelated to the objective of (the) statute.'

Plaintiff's precise constitutional challenge to N.J.S.A. 19:49-2 has already been litigated before the New Jersey Appellate Division and the Supreme Court of New Jersey.

### i.  *LEGAL BACKGROUND OF N.J.S.A. 19:49-2:*

N.J.S.A. 19:49-2 provides in relevant part:

> For the primary election for the general election in all counties where voting machines are or shall be used, all candidates who shall file a joint petition with the county clerk of their respective county and who shall choose the same designation or slogan shall be drawn for position on the ballot as a unit and shall have their names placed on the same line of the voting machine; and provided further, that all candidates for municipal or party office in municipalities in counties where voting machines are or shall be used who shall file a petition with the clerk of

11

their municipality bearing the same designation or slogan as that of the candidates filing a joint petition with the county clerk as aforesaid, may request that his or her name be placed on the same line of the voting machine with the candidates who have filed a joint petition with the county clerk as aforesaid by so notifying the county clerk of said county in writing within two days after the last day for filing nominating petitions and thereupon the county clerk shall forthwith notify the campaign manager of such candidates filing a joint petition as aforesaid of said request, and if the said campaign manager shall file his consent in writing with the said county clerk within two days after the receipt of said notification from said county clerk, the clerk of said county shall place the name of such candidate on the same line of the voting machine on which appears the names of the candidates who have filed the joint petition as aforesaid; provided, also, that any candidate filing a petition with the Attorney General may request that his or her name be placed on the same line of the voting machine with the candidates who have filed a joint petition with the county clerk as aforesaid by so notifying the county clerk of said county in writing within two days after the last day for filing nominating petitions, and thereupon the county clerk shall forthwith notify the campaign manager of such candidates filing a joint petition as aforesaid of said request, and if the said campaign manager shall file his consent in writing with the said county clerk within two days after the receipt of said notification from said county clerk, the clerk of said county shall place the name of such candidate on the same line of the voting machine on which appears the names of the candidates who have filed the joint petition as aforesaid.

As early as 1942, the former Supreme Court of New Jersey examined N.J.S.A. 19:49-2 and concluded that the statutory language revealed no express legislative direction "as to the

drawing for positions upon the ballot where there are present in the field both independent unaffiliated candidates and candidates affiliated under a slogan." Hawkes v. Gates, 129 N.J.L. 5, 11 (1942). Therefore, the Hawkes court reasoned that the legislature's silence on ballot drawing between bracketed and unbracketed candidates indicated that discretion rests with the county clerk, and it was not for the court to read into the statute legislative meaning where no has been expressed in the statute. Id. at 11.

The Hawkes line of cases reinforced the court's position that N.J.S.A. 19:49-2's silence meant that the legislature afforded the county clerks discretionary authority to conduct ballot drawing as it pertains to bracketed and unbracketed candidates. See, In re Hoffman, 134 N.J.L. 155 (1946); Bado v. Gilfert, 13 N.J. Super. 363, 365 (App. Div. 1951); Harrison v. Jones, 44 N.J. Super. 456, 461 (App. Div. 1957); Moskowitz v. Grogan, 101 N.J. Super. 111, 116 (App. Div. 1968).

The Supreme Court of New Jersey established the court's responsibility to check the seemingly amorphous discretionary authority of the county clerks in this realm. In Richardson v. Caputo, 46 N.J. 3 (1965), the court addressed whether the Essex County Clerk properly exercised his discretionary authority by reassigning ballot positions for remaining candidates for different offices after candidates for one particular political

13

party withdrew from the race.  Crucially for our purposes, the court held that although the court generally defers to the legislative scheme and delegated authority, "if it clearly appears the course taken is not rooted in reason, the bounds of the delegated authority have been exceeded and it is the duty of the court to say so."  Id. at 9. Put simply, the county clerk's discretionary authority is subject to judicial review when his exercise of discretion is not "rooted in reason."

With that judicial responsibility in mind, the court underscored the county clerk's authority to place bracketed candidates on separate columns from unbracketed unaffiliated candidates.  Farrington v. Falcey, 96 N.J. Super. 409, 412–14 (App. Div. 1967).

The Appellate Division's opinion in Moskowitz v. Grogan, 101 N.J. Super. 111, 116 (App. Div. 1968) is the court's clearest undergirding of the county clerk's authority to draw ballots separately between bracketed candidates as a single unit and unbracketed, unaffiliated candidates.

Moskowitz was a consolidated case involving two separate county clerks but the same candidates in the same Democratic primary.  In both primary ballots, an unbracketed, unaffiliated candidate-plaintiff requested that the county clerks draw for positions on the ballot among all four slates of candidates, including as between bracketed and unbracketed candidates.

14

Moskowitz v. Grogan, 101 N.J. Super. 111, 113—116 (App. Div. 1968)

Relying on Hawkes and its progeny as well as the statutory language of N.J.S.A. 19:49-2, the court held that "where there are two or more groups of candidates whose joint petitions were filed with the County Clerk (hereafter called, for brevity, county candidates), there must be a drawing for position as between those groups, drawn as a unit," regardless of whether candidates for municipal or state-wide office affiliated with the county candidates. Moskowitz v. Grogan, 101 N.J. Super. 111, 116 (App. Div. 1968).

Similarly, the court reasoned, two or more groups of state candidates who are bracketed but not affiliated with county candidates are entitled, as units, to a drawing position on the ballot as among themselves, but not as against those affiliated with the county candidates because that would displace state candidates bracketed with county candidates from being on the same line. Id. at 116.

The Quaremba set of cases yielded judicial opinions from the Appellate Division and the Supreme Court of New Jersey that essentially confronted the same constitutional challenge to N.J.S.A. 19:49-2 presented in Plaintiff's Complaint. These separate opinions stem from the same lawsuit. In Quaremba, plaintiffs were candidates who lost in the Republican primary

15

election.   Two of the plaintiffs were candidates for state senator and one plaintiff was a candidate for county freeholder. Analogous to the instant complaint, these plaintiffs filed a declaratory judgment action that N.J.S.A. 19:49-2 was unconstitutional on equal protection grounds because it arbitrarily favors bracketed primary candidates with advantageous ballot placement. Quaremba v. Allan, 128 N.J. Super. 570, 572 (App. Div. 1974).

The Appellate Division underscored the Legislature's authority to adopt reasonable regulations for the conduct of primary and general elections, and found "nothing inherently wrong or invidious in permitting candidates with like views to be grouped together on the ballot." Id. at 575.  Importantly, the Appellate Division rejected the argument that simply pointing to the statutory scheme's separate ballot drawing of bracketed and unbracketed candidates constituted evidence of an equal protection violation.  The state's interest in permitting political parties and candidates to affiliate with political parties on the ballot is the quintessence of free speech and associational rights.

Likewise, the Supreme Court of New Jersey in Quaremba v. Allan, 67 N.J. 1 (1975) reaffirmed the Appellate Division's reasoning on this equal protection point.  The court also amplified the point that even if plaintiffs' allegation that

unaffiliated candidates would draw more votes if other candidates were not permitted to bracket together, "it affords no basis for invalidating, as unreasonable, the legislative determination that whatever the effect on an unaffiliated candidate, the public interest is better served by permitting a group of candidates having common aims or principles and authorizing those candidates 'to have this fact brought to the attention of the voter in a primary election with the additional effectiveness produced by alignment of their names on the machine ballot.'" Quaremba v. Allan, 67 N.J. 1, 13(1975)(quoting Harrison v. Jones, 44 N.J. Super. 456, 461 (App. Div. 1957)).

More recently, in Schundler v. Donovan, 377 N.J. Super. 339 (App. Div. 2005), the Appellate Division confronted the same constitutional claim that separate ballot draws for ballot placement between bracketed and unbracketed candidates constituted discrimination violative of the equal protection clause. Id. at 343. The court followed the Hawkes line of cases in affirming the county clerk's discretion in this statutory scheme and indicated that the court will not substitute the clerk's judgment unless that judgment is not "rooted in reason." Id. at 343—44. Equally significant, the court grounded its decision in the plain meaning and language of N.J.S.A. 19:49-2.

Against the weight of seventy-eight years of precedent, Plaintiff in this case challenges the constitutionality of the

bracketing statute on equal protection grounds analogous to prior challenges to the same statute, except in this case Plaintiff offers nascent research of positional bias effect to establish an equal protection clause violation.

Plaintiff alleges that N.J.S.A. 19:49-2 imposes severe burdens on her right of association, or not to associate with a political party and her right to be treated the same as bracketed candidates in the ballot drawing by drawing for ballot placement in the same drawing as bracketed candidates.

Under Eu's balancing test, N.J.S.A. 19:49-2 arguably burdens Plaintiff's right of association, or non-association, and her right to equal treatment in ballot placement in Democratic primary elections. Plaintiff's Complaint myopically views this balancing test in terms of her rights burdened instead of examining the burdens imposed on political parties and bracketed candidates associational rights if the bracketing statute was invalidated.

The state's interest in drawing separate ballot placement for bracketed and unbracketed candidates is rooted in the plain language of N.J.S.A. 19:49-2. The statute and precedential case law interpreting this statute have reached a point that it is a well-settled legal expectation, if not requirement, that the county clerk draw ballots for bracketed candidates as a single unit; therefore, ballot drawings for bracketed candidates cannot

include unbracketed candidates. The state's interest in upholding N.J.S.A. 19:49-2 is to permit candidates of similar political views to associate through the expressive activity of bracketing on the ballot. Conversely, bracketing also permits candidates of similar views to draw a contrast or disassociation with candidates of differing views for voters.

Moreover, Plaintiff's facial challenge to N.J.S.A. 19:49-2 runs counter to the U.S. Supreme Court's jurisprudence in this area that requires facial challenges to a statute to fail where the statute has a "plainly legitimate sweep." Crawford v. Marion County Election Bd., 553 U.S. 181, 202 (2008)(quoting Washington v. Glucksberg, 521 U.S. 702, 739–40, and n. 7, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)). N.J.S.A. 19:49-2's plainly legitimate sweep is the fostering and promotion of constitutionally protected expressive activity and political speech through bracketing and ballot placement.

If Plaintiff's challenge prevails in this case, it will impose severe burdens on the associational rights of political parties, small and large, and candidates who share similar views and want to express those views to the voters by grouping together on the ballot in accordance with N.J.S.A. 19:49-2 and the rest of the statutory scheme created by the Legislature.

Accordingly, there is no valid federal constitutional basis to invalidate a statute created and passed by democratically elected Legislatures in New Jersey since 1941.

## CONCLUSION

For the reasons set forth herein, it is respectfully submitted that Plaintiff's Complaint should be dismissed as a matter of law.

<div style="margin-left: 45%;">

**BERRY, SAHRADNIK, KOTZAS & BENSON**
**Attorneys for Defendant Ocean**
**County Clerk, Scott M. Colabella**

s/ *CHRISTOPHER A. KHATAMI*

</div>

Dated: December 7, 2020