IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINE CONFORTI, ARATI KREIBICH, MICO LUCIDE, JOSEPH MARCHICA, KEVIN MCMILLAN, ZINOVIA SPEZAKIS, and NEW JERSEY WORKING FAMILIES ALLIANCE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, SCOTT M. COLABELLA, in his official capacity as Ocean County Clerk, PAULA SOLLAMI COVELLO, in her official capacity as Mercer County Clerk, JOHN S. HOGAN, in his official capacity as Bergen County Clerk, EDWARD P. MCGETTIGAN, in his official capacity as Atlantic County Clerk, and E. JUNIOR MALDONADO, in his official capacity as Hudson County Clerk, <br><br> Defendants. | Civ. A. No. 3:20-CV-08267-FLW-TJB |

## FIRST AMENDED COMPLAINT

Plaintiffs Christine Conforti, Arati Kreibich, Mico Lucide, Joseph Marchica, Kevin McMillan, Zinovia Spezakis, and New Jersey Working Families Alliance, Inc. (collectively, "Plaintiffs") file this First Amended Complaint for Declaratory and Injunctive Relief against Defendants Christine Giordano Hanlon, in her official capacity as Monmouth County Clerk, Scott M. Colabella, in his official capacity as Ocean County Clerk, Paula Sollami Covello, in her official capacity as Mercer County Clerk, John S. Hogan, in his official capacity as Bergen County Clerk,

Edward P. McGettigan, in his official capacity as Atlantic County Clerk, and E. Junior Maldonado, in his official capacity as Hudson County Clerk (collectively "Defendants"), and allege as follows:

## NATURE OF THE CASE

1.      New Jersey primary election ballots are configured to stack the deck for certain candidates at the expense of others, thereby undermining the integrity of elections and hindering our democracy.

2.      Ballot position is extremely important in elections.  Candidates listed first receive an advantage at the polls solely based on ballot position.  This is due to a principle known as "position bias" or "primacy effect", which has been the subject of extensive research across various areas of human behavior, including electoral behavior of voters.  When state law systemically puts its thumb on the scale in favor of certain candidates by extending them preferential ballot treatment, it creates significant barriers to the electoral chances of those candidates who are arbitrarily excluded from inclusion in the ballot draw for first position.

3.      New Jersey is the <u>only</u> state in the nation that organizes its primary election ballots by bracketing groupings of candidates in a column (or row)[1], rather than by listing the office sought followed immediately by the names of all candidates running for that office.  *See* Julia Sass Rubin, *New Jersey's Primary Ballot Design Enables Party Insiders to Pick Winners* (2020), *retrieved from* http://dx.doi.org/doi:10.7282/t3-31dy-0j57 (discussing and compiling primary election ballots from all 50 states and the District of Columbia) (with ballot images made available by clicking on the link at Endnote ii or directly accessible at

---

[1] For purposes of the Complaint and for ease of reference, unless otherwise specified, the word "column" is intended to refer to the column *or row* of the ballot where candidates are located, regardless of whether a County Clerk designs the ballot by listing offices vertically and candidates horizontally, or vice-versa.

https://drive.google.com/drive/folders/1vudVsxEcLvY2nZAfD_k88780nyh5sGCr   (last   visited

Jan. 21, 2021)).

4.      For the purposes of visual illustration, the overwhelming majority of states and the

District of Columbia model their primary election ballot design by listing the office sought, and

then displaying all candidates for that office directly underneath or to the side, as follows:

<u>Elko County, NV 2018 Democratic primary</u>                    <u>Sussex County, DE 2018 Democratic primary</u>



*Id*.  However, New Jersey models its primary election ballot design – which is in all instances held

at the expense of the taxpayers under *N.J.S.A.* 19:45-1 – such that candidates for the same office

are listed in different columns which may not even be adjacent, and candidates for different offices

are listed in the same column:

Camden County, NJ 2018 Democratic primary



*Id.* (a candidate for House of Representatives is listed in Column 2 and two other candidates for the same office are listed all the way in Column 9).

5.      New Jersey's outlier system of primary election ballot design results from a combination of state election laws and interpreting case law with respect to primary elections.[2] This law provides a mechanism for certain candidates of a party faction running for different offices to be featured together on the ballot in the same column with the same slogan ("bracketing").

6.      Bracketed candidates (which benefit from being associated in a slate with other candidates who are disproportionately incumbents, other highly-recognizable names, and "party

---

[2] The outlier nature of New Jersey's primary election ballot design scheme is further corroborated by the fact that when the U.S. Elections Assistance Commission ("EAC"), the federal agency charged with advising election officials on ballot designs, issued its report on ballot design practices, all of the ballot examples used in the EAC's Report were bubble ballots. *See, e.g.*, Election Assistance Commission, *Effective Designs for the Administration of Federal Elections*, Section 3: Optical scan ballots and Section 4: Full-face DRE ballots, https://www.eac.gov/election-officials/designing-polling-place-materials (last visited Jan. 24, 2021).

elites") in New Jersey receive preferences over unbracketed candidates.  Among other things, bracketed candidates will be drawn first for ballot position in an initial ballot draw ("preferential ballot draw") and have an opportunity to obtain the first ballot position.  By contrast, unbracketed candidates have no ability to be featured on the first column of the ballot, and have been placed in obscure portions of the ballot, far away from other candidates running for the same office.

7.     Almost always included among those candidates who are bracketed are the candidates endorsed by the county party, who all bracket together and thus appear on a full or almost-full slate of candidates for all available offices in a single column of the ballot with the same slogan, which is referred to as the "county line."  In addition to the ballot position advantage of being included in a drawing for first ballot position, these bracketed candidates on the county line also receive a ballot advantage from being featured on a full or almost-full slate of candidates, including being featured in a column with "top-of-the-ticket" candidates for higher level office with recognizable names.  The visual cue advantages enjoyed by the county line candidates is hereinafter referred to as the "weight of the line," which nudges voters toward selecting these county line candidates, and can be compared to "off-line" candidates who are often featured in a column by themselves or in a column with candidates with whom they did not bracket and with whom they do not share a slogan, and therefore are harder to find on the ballot, harder to know who they are running against and/or for what office, and who otherwise appear less legitimate on the ballot than the county line candidates.

8.     An August 2020 New Jersey Policy Perspective analysis of the July 7, 2020 Primary Election demonstrates that in some races, a candidate's "share of the vote varied by as much as 50 percentage points, based on whether or not they were on the county line."  *See* Julia Sass Rubin, *Does the County Line Matter?  An Analysis of New Jersey's 2020 Primary Election*

*Results*, New Jersey Policy Perspective (August 2020), https://njpppprevious.wpengine.com/wp-content/uploads/2020/08/NJPP-Report-Does-the-County-Line-Matter-Analysis-of-New-Jerseys-2020-Primary-Election-Results-Final-1.pdf (hereinafter "2020 Primary Analysis").   The 2020 Primary Analysis further found that "[o]nly two congressional incumbents have lost a primary in New Jersey in the last fifty years . . . . [a]nd, in both cases, they lost to other incumbents, following redistricting that eliminated one of their districts . . . . [a]nd, in both cases, the incumbent who won the primary had also received the party endorsement and the county line in the county that decided the election."  *Id.*  The 2020 Primary Analysis also examined 2020 Primary Election races where "different candidates were on the county line in different counties in the same congressional district," and found that "the average vote margin between appearing on the county line and having one's opponent on the county line was 35 percentage points."  *Id.*

9.     New Jersey fails to treat similarly situated candidates—candidates pursuing the same office in the same political party, and who have filed a petition containing a legally sufficient number of nominating signatures—the same, as state law bestows a significant and arbitrary ballot advantage upon certain candidates over others.

10.     In addition to injuring the electoral chances of unbracketed candidates, New Jersey's ballot design system also injures the voters who support unbracketed candidates, burdening their voting rights and their associational rights, making it more difficult to elect the candidates they prefer.   It also burdens voters at large through the creation of a confusing, manipulated ballot design that taints the outcome of the elections, as it puts the State's thumb on the scale in favor of certain bracketed candidates who receive a state-conferred ballot advantage.

11.     Partisan primary elections in New Jersey are an annual affair.  By virtue of when federal, state, and local terms expire, a primary election is guaranteed to be held every year.  The

unconstitutional ballot design laws and practices herein complained of have occurred annually and will continue to occur every year.

12. In order to remedy these injuries, Plaintiffs seek a declaration that New Jersey's primary election bracketing and ballot placement system is unconstitutional.

13. Plaintiffs also seek injunctive relief to ensure that the primacy effect/positional bias and the weight of the line do not continue to advantage bracketed candidates over other candidates running for the same office, and thereby arbitrarily undermine the integrity of New Jersey's elections and irreparably damage Plaintiffs' rights.

## JURISDICTION AND VENUE

14. Plaintiffs bring this action under 42 *U.S.C.* §§ 1983 and 1988 to redress the deprivation, under color of state law, of rights secured by the United States Constitution.

15. This Court has original jurisdiction over the subject matter of this action pursuant to 28 *U.S.C.* §§ 1331 and 1343, because the matters in controversy arise under the Constitution and laws of the United States and involve the protection of civil rights, including the right to vote.

16. This Court has personal jurisdiction over the Defendants, the Monmouth County Clerk, the Ocean County Clerk, the Mercer County Clerk, the Bergen County Clerk, the Atlantic County Clerk, and the Hudson County Clerk, who are sued in their official capacities only.

17. Venue is proper in the U.S. District Court for the District of New Jersey pursuant to 28 *U.S.C.* § 1391(b)(2) because, inter alia, a substantial part of the events that gave rise to Plaintiffs' claims occurred there.

18. This Court has authority to enter a declaratory judgment pursuant to 28 *U.S.C.* §§ 2201 and 2202.

**PARTIES**

**Plaintiffs**

<u>Christine Conforti:  Congressional Candidate in 2020 Primary and Future Democratic Candidate</u>

19.     Plaintiff Christine Conforti ("Conforti") was a federal candidate running for the U.S. House of Representatives in New Jersey's Fourth Congressional District in connection with New Jersey's July 7, 2020 Democratic Primary Election at the time the initial Complaint in this matter was filed.

20.     Conforti lost the 2020 primary election.  Conforti won by a significant majority of votes in Mercer County where both Conforti and her opponent were bracketed in the same column as the county-endorsed candidates for other offices.  Her opponent won by a significant majority of votes in Monmouth and Ocean Counties where she was bracketed in the same column as the county-endorsed candidates for other offices, and Conforti was not.

21.     At all times relevant to this matter, Conforti resided in Ocean Grove and continues to reside in Ocean Grove, where she was and still is registered to vote as a Democrat.

22.     She currently serves as an elected member of her local Board of Education.

23.     Conforti intends to run for office again as a Democrat.

<u>Arati Kreibich:  Congressional Candidate in 2020 Primary</u>

24.     Plaintiff Dr. Arati Kreibich ("Kreibich") was a federal candidate running for the U.S. House of Representatives in New Jersey's Fifth Congressional District in connection with New Jersey's July 7, 2020 Democratic Primary Election at the time the initial Complaint in this matter was filed.

25.     Kreibich lost the 2020 primary election.

26.     At all times relevant to this matter, she resided in Glen Rock and continues to reside in Glen Rock, where she was and still is registered to vote as a Democrat.

27.     Kreibich is a scientist and was the first South Asian person elected to the Glen Rock Borough Council.

<u>Mico Lucide:  Candidate for County Clerk in 2021 and Future Democratic Primaries</u>

28.     Plaintiff Mico Lucide ("Lucide") is currently a candidate running for County Clerk in Atlantic County in connection with New Jersey's June 8, 2021 Democratic Primary Election.

29.     In connection with that race, on December 24, 2020, he filed a Form D-1 Report, Single Candidate Committee – Certificate of Organization and Designation of Campaign Treasurer and Depository, thereby opening a candidate committee account with the New Jersey Election Law Enforcement Commission.

30.     He resides in Mays Landing, where he is registered to vote as a Democrat.

31.     Lucide is an elected member of the Atlantic County Democratic Committee.

32.     Win or lose, Lucide intends to run again for Atlantic County Clerk in 2026, the next time that this office appears on the ballot.

<u>Joseph Marchica:  County Committee Candidate in 2020 and 2022 Primaries</u>

33.     Plaintiff Joseph Marchica ("Marchica") was a candidate running for party office on the County Committee in Mercer County from Hamilton Township's 27th Election District in connection with New Jersey's July 7, 2020 Democratic Primary Election at the time the initial Complaint in this matter was filed.

34.     He lost the 2020 primary election.

35.     At all times relevant to this matter, he resided in Hamilton Township's 27th Election District and continues to reside there where he was and still is registered to vote as a Democrat.

36.     Marchica intends to run for County Committee again in 2022, when the next Democratic County Committee elections in Mercer County are scheduled to take place.

   <u>Kevin McMillan:  Township Committee Candidate in 2020 and Potential Future Primaries</u>

37.     Plaintiff Kevin McMillan ("McMillan") was an incumbent Township Committeeperson in Neptune Township seeking reelection to the Neptune Township Committee in connection with New Jersey's July 7, 2020 Democratic Primary Election at the time the initial Complaint in this matter was filed.

38.     He was elected to the Neptune Township Committee six times, where, during his tenure he held various positions including Police Commissioner, Deputy Mayor, and Mayor.

39.     McMillan was elected to serve on the Neptune Township Committee for three-year terms from 1998-2000 and 2001-2003, and then again from 2009-2011, 2012-2014, 2015-2017, and 2018-2020.

40.     With respect to the primary elections that immediately preceded the above terms of office, McMillan received the endorsement of the county party, was permitted to bracket with the full slate of candidates endorsed by the party for various offices on the ballot, and thus was eligible to be placed in the first ballot position based on a preferential ballot drawing.  He won all of these primary elections.

41.     In 2005, McMillan ran for Township Committee but did not win the endorsement of the county party, and therefore dropped out of the primary race prior to appearing on the ballot.

42.     With respect to the July 7, 2020 Democratic Primary Election, McMillan did not receive the endorsement of the county party, did not bracket with a full or nearly full slate of candidates for the various offices on the ballot, and thus was not eligible to be placed in the first ballot position.  He lost this primary election by a small margin, even though he was running as an

incumbent.   McMillan is contemplating running for office again in the future, but is highly discouraged by the unfair ballot placement that unbracketed and non-party endorsed candidates receive on the ballot.

43.     At all times relevant to this matter, he resided in Neptune and continues to reside in Neptune, where he was and still is registered to vote as a Democrat.

<u>Zinovia Spezakis:  Congressional Candidate in 2020 and 2022 Primaries</u>

44.     Zinovia Spezakis ("Spezakis") was a federal candidate running for the U.S. House of Representatives in New Jersey's Ninth Congressional District in connection with New Jersey's July 7, 2020 Democratic Primary Election at the time the initial Complaint in this matter was filed.

45.     Spezakis lost this primary election.

46.     At all times relevant to this matter, Spezakis resided in Tenafly and continues to reside in Tenafly where she was and still is registered to vote as a Democrat.

47.     She is a Clean Technology Executive, a Governing Board Member and Finance Committee Chair of Citizens Climate Education, and an environmental activist.  She intends to run again for the same congressional seat in connection with New Jersey's June 7, 2022 Democratic Primary Election.

<u>New Jersey Working Families Alliance, Inc.</u>

48.     Plaintiff New Jersey Working Families Alliance, Inc. ("NJWF") is a non-profit, 501(c)(4) grassroots independent organization fighting for a government that represents the needs and values of working families.  NJWF organizes campaigns to advance progressive policies and works to elect candidates who share its values and policy priorities.

49.     NJWF is comprised of various members and member organizations serving the interests of numerous individuals and voters across New Jersey.

50.     Among other issues, NJWF has championed and advocated for causes such as paid sick leave, $15 minimum wage, Millionaire's tax, ethics reform, eviction relief, cannabis legislation, Let's Drive NJ campaign for expanded access to driver's licenses, various labor and environmental issues, reigning in corporate tax incentives, responsible progressive budgeting, and borrowing for Covid relief.  NJWF has also advocated for election reforms in addition to fair ballot design, such as putting an end to prison-based gerrymandering and advancing online voter registration.

51.     Over the years, NJWF has endorsed numerous candidates for a variety of federal, state, and local offices in primary, general, and other elections.

52.     In 2020 alone, NJWF endorsed numerous candidates in connection with the July 7, 2020 Primary Election, including many federal, state, and local unbracketed candidates and candidates who did not receive the county party's endorsement and were not featured on the county line.

53.     As it does every year, NJWF intends to endorse candidates, and has already begun making endorsements, in connection with the June 8, 2021 Primary Election and further intends to endorse candidates in future contested primary elections.

54.     To achieve its mission, NJWF devotes substantial time, effort, and resources to educating voters about primary election ballots, educating prospective candidates about the electoral process and encouraging citizen-leaders to run for office, and advocating for the election of their candidates, chiefly through methods like hiring contractors to conduct targeted voter registration drives, get-out-the-vote drives, voter education, advertising for candidates, and, if allowed by law, in-kind donations to candidate committees.

55.     New Jersey's bracketing and ballot placement system impacts NJWF's mission and policy goals aimed at achieving a government that represents the needs and values of working families.  As a result, NJWF has had to and will continue to divert resources it could use for other activities, issues, and campaigns, as well as to expend additional resources, to educate voters about the county line and other ballot design and ballot placement issues to help them overcome the burdens that New Jersey's bracketing and ballot placement system place on the right to vote, equal protection, and the freedom of association.

56.     Consequently, NJWF and its members, as well as many of their endorsed candidates and the voters it educates and mobilizes have suffered and will continue to suffer an injury.

**Defendants**

57.     Defendant Christine Giordano Hanlon is the Monmouth County Clerk who is vested with certain statutory duties and obligations including but not limited to the designing, preparation, and printing of all ballots, the issuance of mail-in ballots, and conducting a drawing for ballot position for various elections held in Monmouth County.

58.     Defendant Scott M. Colabella is the Ocean County Clerk who is vested with the same statutory duties and obligations for various elections held in Ocean County.

59.     Defendant Paula Sollami Covello is the Mercer County Clerk who is vested with the same statutory duties and obligations for various elections held in Mercer County.

60.     Defendant John S. Hogan is the Bergen County Clerk who is vested with the same statutory duties and obligations for various elections held in Bergen County.

61.     Defendant Edward P. McGettigan is the Atlantic County Clerk who is vested with the same statutory duties and obligations for various elections held in Atlantic County.

62.    E. Junior Maldonado is the Hudson County Clerk who is vested with the same statutory duties and obligations for various elections held in Hudson County.

63.    The Defendants acted under color of law in receiving and acting on bracketing requests, designing ballots, and conducting ballot drawings.

64.    The County Clerks for the remaining 15 counties in New Jersey are not parties to the Complaint but are being or will be furnished with a copy of the First Amended Complaint because they also enforce and administer ballot design and ballot placement laws which are called into question in this action in their respective counties:  Burlington, Camden, Cape May, Cumberland, Essex, Gloucester, Hunterdon, Middlesex, Morris, Passaic, Salem, Somerset, Sussex, Union, and Warren.  With respect to the original Complaint, the non-party county clerks across the state were similarly furnished with a copy of the original Complaint, leading to the inclusion of the Bergen County Clerk as an intervening party.

65.    The Secretary of State is not a party to the Complaint but is being or will be furnished with a copy of the First Amended Complaint because she is the State's Chief Election Official.  Further notice will be provided to the Court to enable compliance with 28 *U.S.C.* § 2403. With respect to the original Complaint, the Secretary of State's Office was similarly provided with notice of and a copy of the original Complaint in this matter.

## STATEMENT OF FACTS AND LAW

### A.  <u>Basic Ballot Layout</u>

66.    New Jersey primary election ballots generally consist of a grid of rows and columns, and depending on the County Clerk's discretion, candidates are listed horizontally, and the office sought is listed vertically, or vice versa.

67.     This is the manner in which 19 out of New Jersey's 21 counties have historically organized their primary election ballots, with respect to their full-face machine ballots. Upon information and belief, a majority but not all counties use a similar design technique with respect to their vote-by-mail ballots.

68.     Two counties in New Jersey, Salem and Sussex, have historically used the "office block" or "bubble ballot" structure for primary elections, which is also used by an overwhelming majority of other states and the District of Columbia, *see, e.g.* ¶ 4, *supra*, where the ballot is organized around the office sought, with each office listed, immediately followed by a list of all candidates running for that same office, without regard to bracketing.  Upon information and belief, Morris County has also historically used the office block structure, but only with respect to Republican primary elections.  A few additional counties implemented an office block ballot structure in connection with their vote-by-mail ballots with respect to the July 7, 2020 Primary Election.  Upon information and belief, those additional counties include Hunterdon, Passaic, and Warren County.

## B. **Pivot Point**

69.     Ballot position in New Jersey primary elections is tied to bracketing.  Once a specified candidate in the bracketed slate gets drawn for ballot position, all other candidates in that bracketed slate who are running for other offices get automatically placed on the same column of the ballot.  Thus, ballot position is impacted by which office the County Clerk chooses to draw first in a preferential ballot draw.  The office which the County Clerk chooses to draw first, is hereinafter referred to as the "pivot point."

70.    Candidates running for the pivot point office used by a particular County Clerk, along with the candidates with whom they are bracketed, are hereinafter referred to as "bracketed candidates."

71.    Candidates not running with candidates for the particular pivot point office used by a County Clerk, and who thus are relegated to non-preferential ballot draws, are hereinafter referred to as "unbracketed candidates" or as being "not bracketed."  This includes a slate of candidates who choose to run together on the ballot, when none of them are running for the pivot point office.

72.    As set forth below, depending on the year and the offices up for election on the primary election ballot, New Jersey's 21 County Clerks have adopted unpredictable, varying, and internally inconsistent methods of deciding which office to serve as the pivot point, and often do not decide and/or indicate which office will serve as the pivot point until after the petition filing deadline and after the deadline to submit bracketing requests has already passed.

### C. <u>Bracketing</u>

73.    New Jersey law generally requires candidates who want to bracket with candidates running for other offices to request to be bracketed with a slate of candidates who have filed a joint petition with the County Clerk ("joint petition county candidates").[3]  *N.J.S.A.* 19:23-18; *N.J.S.A.* 19:49-2.

---

[3] Joint petition county candidates can be a slate of county freeholder (now referred to as "county commissioner") candidates.  Depending on the circumstances, there may be only one freeholder position up for election or no freeholder positions up for election.  In such instances, state law ponders that a petition filed by a single freeholder candidate or by another county candidate (e.g. sheriff, county clerk, surrogate) will satisfy the "joint petition" requirement of *N.J.S.A.* 19:49-2, for purposes of bracketing.  While "county commissioner" is now the correct terminology to use in future elections, this First Amended Complaint will use the former name "county freeholder" to avoid confusion, as "county freeholder" is how the position was listed on the various ballots in connection with the July 7, 2020 Primary Election.

74.     *N.J.S.A.* 19:49-2 sets forth the specific procedure for bracketing.  Candidates who file petitions with the Municipal Clerk or with the Secretary of State[4] must, within 48 hours of the petition filing deadline, request permission from the campaign manager of joint petition county candidates to be bracketed with those joint petition county candidates.  Upon notification of the request, the campaign manager has 48 hours to grant permission to bracket with the joint petition county candidates.  Candidates for other offices that submit petitions with the County Clerk are also able to bracket with the joint petition county candidates.

75.     Successfully bracketed candidates will be featured on the same column of the ballot with the same slogan.  Once one of the bracketed candidates are placed on the ballot, all other candidates in the bracketed slate will be automatically placed in the same column.  In this manner, New Jersey organizes its primary election ballots by columns of groupings of candidates.[5]

**D.  Ballot Position**

76.     The County Clerk is required to hold a ballot draw to determine the order of placement of various candidates running for the same office on the ballot.  *N.J.S.A.* 19:23-24.

77.     While *N.J.S.A.* 19:23-24 sets forth various procedures intended to ensure fairness as between the candidates being drawn, only some candidates get to enjoy those fair procedures on equal footing.  This is because New Jersey case law interpreting the relevant enabling statutes has determined that an initial drawing for ballot position should take place only as among candidates who are bracketed together with joint petition county candidates, except in years when

---

[4] *N.J.S.A.* 19:23-6 sets forth which candidates running for which offices must file their nominating petitions with the Municipal Clerk, County Clerk, or Secretary of State.

[5] In races where there is a different pivot point candidate used by the County Clerk, instead of joint petition county candidates, *N.J.S.A.* 19:49-2 has not always been followed to the letter by County Clerks and a similar bracketing request process has sometimes been used vis-à-vis the campaign manager of the pivot point candidate.  *See infra* ¶ 88.

candidates for U.S. Senate or Governor are on the ballot pursuant to *N.J.S.A.* 19:23-26.1 (in which case the latter offices are considered the pivot point, as further described in the next section).

78.    Once the pivot point candidate(s) are drawn, all candidates running for other offices who are bracketed with them are automatically placed on that same column.  These bracketed candidates running for other offices are therefore eligible to obtain the first ballot position, and will be placed further to the left (or further to the top) of the ballot than other unbracketed candidates running for the same office.

79.    Once the initial ballot draw has taken place, then a series of non-preferential ballot draws take place between remaining unbracketed candidates for the other offices.  These candidates are not eligible to receive the first ballot position and will be placed further to the right (or further to the bottom) of the ballot than the bracketed candidates running for the same office.

80.    Such unbracketed candidates are not even guaranteed to receive the next available column after the bracketed candidates are placed on the ballot.  Instead, pursuant to the discretion of the County Clerk, unbracketed candidates have often been relegated to a ballot placement where they are (a) placed multiple columns away from the bracketed candidates, (b) stacked in the same column as another candidate for the exact same office, and/or (c) placed in the same column as candidates with whom they did not request to bracket and who requested a different ballot slogan. These candidates are harder to find in such obscure portions of the ballot commonly known as "Ballot Siberia," as demonstrated in ¶ 4, and otherwise appear less important, further confusing voters and depriving candidates and their supporters of a fair chance to compete for the same office.

81.     In this manner, bracketing, preferential ballot draws, ballot position, and ballot placement of candidates are all inextricably intertwined with respect to New Jersey's primary election ballots.

**E.  United States Senate and Gubernatorial Candidates**

82.     Pursuant to *N.J.S.A.* 19:23-26.1, the names of all candidates for United States Senator, when such office is up for election, must be placed on the first column of the primary election ballot.  The same is true for candidates for Governor, if such position is up for election and United States Senator is not up for election.

83.     Interpreting New Jersey case law suggests that when United States Senator (or Governor) is on the ballot, county clerks should draw them first as the pivot point.

84.     All candidates for other offices who are bracketed with a candidate for United States Senator (or Governor) will then be automatically placed in the same column.  Such bracketed candidates thus have a chance at obtaining the first ballot position and will be placed further to the left (or further to the top) than all other candidates running for the same office who were not bracketed with a candidate for United States Senator (or Governor).  By contrast, all candidates who are not bracketed with a candidate for United States Senator (or Governor) are precluded from obtaining the first ballot position and will be placed further to the right (or further to the bottom) than all of the bracketed candidates running for the same office.

85.     In primary election cycles when candidates for President are on the ballot, some County Clerks have used President as the pivot point, and provided a similar ballot advantage to candidates who are bracketed with candidates for President, and corresponding disadvantage for all unbracketed candidates.  *See also infra*, ¶ 88.

**F.  Arbitrary Criteria for Ballot Advantage and Varying Standards of County Clerks**

86.     In New Jersey primary elections, neither luck of the draw nor a rotational system is the primary factor in determining which candidates get the first ballot position.  Rather, eligibility to even have a chance at first ballot position depends most importantly on arbitrary considerations such as whether a candidate is bracketed with other candidates running for other offices, and which office the County Clerk uses as the pivot point, a determination which is often not made and/or announced to the public until after petitions are already filed and the deadline for bracketing requests has already passed.

87.     Ballot order thus becomes dependent upon other arbitrary criteria such as whether a candidate requested bracketing, whether bracketing was with a candidate that the County Clerk subsequently decides to use as the pivot point after petitions are already submitted, whether the pivot point candidates with whom the candidate filed a bracketing request grants such request, whether the pivot point candidates with whom the candidate filed a bracketing request filed their petition properly so as to qualify for the ballot, etc.  Such criteria rely on what actions occur with respect to other candidates running for other offices and how the County Clerk designs the ballot.

88.     Making matters worse, County Clerks have applied varying and internally inconsistent interpretations and unpredictable standards as to who the pivot point candidate should be.  In election years where any combination of President, United States Senator, Governor, and joint petition county candidates are on the primary election ballot, New Jersey's 21 County Clerks have taken different approaches as to which office to serve as the pivot point to draw first and how to place candidates.

89.     With respect to the 2020 Primary Election, upon information and belief, the vast majority of counties used U.S. Senate as the pivot point.  Upon information and belief, Atlantic

County used President as the pivot point.  Upon information and belief, Somerset County used U.S. Senator as the pivot point in the Republican draw; however, with respect to the Democratic draw, Somerset County featured a candidate for U.S. Senator in the first column, a candidate for President in the second column, and a bracketed slate of candidates in the third column, including a candidate for President and a candidate for U.S. Senator, making it unclear what office, if any, was the pivot point.  A copy of a ballot/sample ballot in connection with the 2020 Democratic and Republican Primary Elections from one municipality in each of New Jersey's 21 counties is set forth in **Exhibit A**.

### G. <u>Position Bias/Primacy Effect and Other Poor Ballot Design Features</u>

90.     It has been well-documented that when choosing between a set of visually-presented options, a significant percentage of people will demonstrate a bias toward choosing the first option, including in the context of selecting candidates listed on the ballot.  This phenomenon, known as the primacy effect or positional bias, has a strong influence on decisions across a range of various forms of human behavior.

91.     The primacy effect has also been widely proven to impact elections where first-listed candidates enjoy a meaningful advantage solely due to the fact that they are listed first.  Thus, candidates listed first among others running for the same office receive an advantage of additional votes solely due to their position on the ballot over all other candidates for that same office.

92.     To avoid a constitutional injury where some candidates are arbitrarily favored over others, other states have implemented some form of rotational system where ballots in different jurisdictions rotate which candidate receives first ballot position, or have drawn candidates for the same office by lot, so that each candidate running for the same office has an equal chance of obtaining the first ballot position.  These mechanisms ensure fairness and an equal playing field

by either minimizing ballot order effects and distributing those effects equally, or by providing all candidates for the same office with an equal chance of being drawn first so as not to arbitrarily favor one category of candidates over another.

93.     In the past, other states have implemented ballot order practices which provided an advantage to certain favored candidates such as incumbents or based on the majority political party currently in power.  State and federal courts applying both the federal and state constitutions have repeatedly found such ballot ordering arrangements to be unconstitutional, including a United States Supreme Court summary affirmance.

94.     Even ballot order practices that do not appear to advantage one group of candidates over another have nevertheless been struck down by courts based on their effect, namely the advantage they provide to certain candidates over similarly situated but later-listed candidates and due to the arbitrary nature of the criteria.

95.     New Jersey's bracketing and ballot order system provides a systemic advantage to candidates that bracket with candidates for certain pivot point offices.  Any ballot advantage based on or resulting from the actions or affiliations of different candidates running for different offices is unjustifiably arbitrary.

96.     Among the myriad of academic and scholarly reports regarding the impact of the primacy effect on voter behavior in elections is an Executive Summary prepared by Joanne M. Miller, Associate Professor of Political Science and International Relations at the University of Delaware.  The Executive Summary discusses in detail the primacy effect and other ballot design features set forth in Paragraph 99 of this Complaint.  Among the principal findings in the Executive Summary are the following:  (a) the overwhelming evidence demonstrates that the primacy effect affords a systematic first position advantage such that candidates listed first receive more votes

solely due to their name order on the ballot; (b) the primacy effect is a least as large, and sometimes larger in primary elections than in general elections; (c) poor ballot design features regarding how candidate names are displayed, including many prevalent in New Jersey's primary election ballots, can nudge voters for or against voting for certain candidates, lead to other indicia of voter confusion, disenfranchise a substantial number of voters, and exacerbate the primacy effect; and (d) primacy effects are extremely likely to have occurred and to continue to occur in New Jersey primary elections. *See generally* **Exhibit B**, Joanne M. Miller, *The Electoral Effects of Ballot Design* (June 21, 2020).

97.     New Jersey's bracketing and ballot order practices systematically prevent unbracketed candidates from having any opportunity to ever be listed in the first column on the primary election ballot, resulting in a serious electoral disadvantage.

98.     New Jersey's ballot system is problematic for additional reasons.  Research has specifically shown that the primacy effect is at least as large, and sometimes even larger in the context of a primary election, and would thus lead to an even greater arbitrary advantage.

99.     The primary election ballots also contain other poor ballot design features which can exacerbate the impact of the primacy effect, nudge voters toward bracketed candidates, and contribute to other systemic biases and voter confusion leading to over and under votes, proximity mistake votes, and ballot-flaw-induced votes which can disenfranchise substantial numbers of voters.  Such poor ballot design features include (a) placing a candidate far away from other candidates running for the same office with multiple blank spaces in between, i.e. Ballot Siberia; (b) the visual cue from a full ballot column with candidates for all offices up for election as compared to columns with fewer candidates, i.e. the weight of the line; (c) including additional

23

information on the ballot such as slogans; (d) arbitrarily grouping candidates for different office in the same column; and (e) featuring candidates in a column all by themselves.

100.    The column form of ballot and weight of the line coupled with all of the poor ballot design features contribute to a confusing ballot for voters.  New Jersey's voters are further deprived of a fair and democratic process as they are forced to cast their vote on a ballot in a system that provides an arbitrary advantage to certain candidates over others from the inception, based simply on whether or not they are bracketed with other candidates for a completely different office. Likewise, candidates are also deprived of a fair opportunity to compete by virtue of New Jersey's ballot design laws, practices, and customs.

**H.  Conforti Ballot Draw/Ballot Placement**

101.    On or about March 30, 2020, Conforti filed a petition with the Secretary of State's Office so that her name would appear on the 2020 Democratic Primary Election ballot in New Jersey's Fourth Congressional District, which includes portions of Mercer, Monmouth, and Ocean Counties.  Conforti's petition contained valid petition signatures in excess of the amount required by statute to appear on the ballot, and was duly accepted by the Secretary of State's Office.

102.    Each County Clerk's Office conducted a ballot draw on April 9, 2020.

**a.  Conforti's Monmouth County Ballot Draw and Ballot Placement**

103.    A sample ballot[6] from the Monmouth County Clerk's Office for the July 7, 2020 Democratic Primary Election in the Township of Freehold shows Conforti's ballot position:

---

[6] All 2020 Primary Election ballot images included in the text of this Complaint have been excerpted and contain other minor formatting and sizing adjustments to enhance readability.  They include the relevant portions of the ballot to accurately demonstrate the offices up for election and position of the various candidates.



**Vote Both Sides ⇨**

104.    The Monmouth County Clerk's Office drew for ballot position based on U.S. Senate candidates first.  Because Conforti chose to exercise her First Amendment right not to associate with a U.S. Senate candidate, she was not included in the preferential ballot draw. Therefore, she was prohibited from having any chance to receive the first ballot position.

105.    Only one congressional candidate running against Conforti, Stephanie Schmid ("Schmid"), was automatically placed (in the first column) as a result of the initial ballot draw, due to the fact that Schmid was bracketed with a Senate candidate.

106.    The Monmouth County Clerk's Office next drew from candidates for President, but because Conforti chose to exercise her First Amendment right not to associate with a candidate for President, she was not included in this next drawing, and thus was not eligible for the third column.

107.    Eventually, Conforti was placed in the fourth column, all by herself.  By contrast, the candidates in the first column, including Schmid, are all featured on a column of multiple candidates for a variety of available office, and are all featured with the same slogan.  A gap in the

ballot exists between Schmid and the other candidates running for the same congressional office, including Conforti.

108. Based on official primary election results posted on the Secretary of State's website, Schmid received approximately 70.2% of the votes cast for candidates on the ballot in Monmouth County, while Conforti received approximately 22.6%. *See* Official 2020 Primary Election Results: U.S. House of Representatives (Amended Aug. 26, 2020), *available at* state.nj.us/state/elections/assets/pdf/election-results/2020/2020-official-primary-results-us-house-amended-0826.pdf (last visited Dec. 28, 2020).

**b. <u>Conforti's Ocean County Ballot Draw and Ballot Placement</u>**

109. A sample ballot from the Ocean County Clerk's Office for the July 7, 2020 Democratic Primary Election in the Township of Plumsted shows Conforti's ballot position:

COUNTY OF OCEAN — SCOTT M. COLABELLA, County Clerk

THIS OFFICIAL PRIMARY SAMPLE BALLOT IS AN EXACT COPY OF THE OFFICIAL PRIMARY BALLOT TO BE USED ON PRIMARY ELECTION DAY. THIS BALLOT CANNOT BE VOTED.

**OFFICIAL PRIMARY ELECTION COUNTY OF OCEAN JULY 7, 2020**

Jennifer Witham, Municipal Clerk
Township of Plumsted

**OFFICIAL DEMOCRATIC PARTY PRIMARY BALLOT**

| OFFICE TITLE | DEMOCRATIC COLUMN F | DEMOCRATIC COLUMN G | DEMOCRATIC COLUMN H | DEMOCRATIC COLUMN I | DEMOCRATIC COLUMN J | DEMOCRATIC COLUMN K | DEMOCRATIC COLUMN L | PERSONAL CHOICE |
|---|---|---|---|---|---|---|---|---|
| CHOICE FOR PRESIDENT<br>FOUR YEAR TERM<br>(VOTE FOR ONE) | **Joseph R. BIDEN**<br>Official Regular Democratic Organization | **Bernie SANDERS**<br>Bernie 2020. Not Me. Us. | **UNCOMMITTED** | | | | | WRITE-IN |
| DELEGATES TO THE NATIONAL CONVENTION<br>DISTRICT DELEGATES<br>(5th Delegate District)<br>A vote for Choice For President is an automatic vote for all affiliated Male and Female District Delegates. | OFFICIAL REGULAR DEMOCRATIC ORGANIZATION<br>MALINI GUHA<br>BRETT CANNON<br>MARY CAMPBELL CRUZ | BERNIE 2020. NOT ME. US.<br>TARA ASTOR<br>ANNA GOTT-GRAF<br>NICK SODANO | UNCOMMITTED<br>ISRAEL DEL RIO | | | | | |
| MEMBER OF THE<br>UNITED STATES SENATE<br>SIX YEAR TERM<br>(VOTE FOR ONE) | **Cory BOOKER**<br>Official Regular Democratic Organization | **Lawrence HAMM**<br>Not Me. Us. | | | | | | WRITE-IN |
| MEMBER OF THE<br>HOUSE OF REPRESENTATIVES<br>(4th Congressional District)<br>TWO YEAR TERM<br>(VOTE FOR ONE) | **Stephanie SCHMID**<br>Official Regular Democratic Organization | | **David APPLEFIELD**<br>Fairness In Healthcare, Schools, Local Businesses. | **Christine CONFORTI**<br>Ocean County Democrats For The People | | | | WRITE-IN |
| COUNTY CLERK<br>FIVE YEAR TERM<br>(VOTE FOR ONE) | **Kathy M. RUSSELL**<br>Official Regular Democratic Organization | | | | | | | WRITE-IN |
| MEMBER OF THE<br>BOARD OF CHOSEN FREEHOLDERS<br>THREE YEAR TERM<br>(VOTE FOR ONE) | **Helen DELA CRUZ**<br>Official Regular Democratic Organization | | | | | | | WRITE-IN |
| MEMBER OF THE<br>TOWNSHIP COMMITTEE<br>THREE YEAR TERM<br>(VOTE FOR ONE) | **NO PETITION FILED** | | | | | | | WRITE-IN |

110. The Ocean County Clerk's Office drew for ballot position based on U.S. Senate candidates first. Because Conforti chose to exercise her First Amendment right not to associate with a U.S. Senate candidate, she was not included in the preferential ballot draw. Therefore, she was prohibited from having any chance to receive the first ballot position.

111.    Only one congressional candidate running against Conforti, Schmid, was automatically placed (in the first column) as a result of the initial ballot draw, due to the fact that Schmid was bracketed with a Senate candidate.

112.    Eventually, Conforti was placed in the fourth column, all by herself.  By contrast, the candidates in the first column, including Schmid, are all featured on a column of multiple candidates for a variety of available office, and are all featured with the same slogan.  A gap in the ballot exists between Schmid and the other candidates running for the same congressional office, including Conforti.

113.    Based on official primary election results posted on the Secretary of State's website, Schmid received approximately 77.0% of the votes cast for candidates on the ballot in Ocean County, while Conforti received approximately 16.4%.  *See* Official 2020 Primary Election Results:   U.S. House of Representatives (Amended Aug. 26, 2020), *available at* state.nj.us/state/elections/assets/pdf/election-results/2020/2020-official-primary-results-us-house-amended-0826.pdf (last visited Dec. 28, 2020).

### c.  Conforti's Mercer County Ballot Draw and Ballot Placement

114.    A sample ballot from the Mercer County Clerk's Office for the July 7, 2020 Democratic Primary Election in Robbinsville Borough shows Conforti's ballot position:



**OFFICIAL PRIMARY ELECTION SAMPLE BALLOT**
**Robbinsville Borough**
Mercer County, New Jersey
July 7, 2020
4th Congressional District

**ATTENTION VOTERS**
IN ORDER FOR YOU TO PROPERLY CAST YOUR VOTE,
THE OVERHEAD LIGHT MUST BE LIT AND
THERE SHOULD BE AN 'X' NEXT TO EACH SELECTION.

## DEMOCRATIC

| OFFICE TITLE | Column A Democratic | | Column B Democratic | | Column C Democratic | | Column D Democratic | | PERSONAL CHOICE |
|---|---|---|---|---|---|---|---|---|---|
| **U.S. President** 4 Year Term – Vote for One | Regular Democratic Organization Joseph R. **BIDEN** Biden for President | 1A | | | Bernie 2020. Not Me. Us. Bernie **SANDERS** | 1C | A VOTE HERE IS A VOTE FOR ALL UNCOMMITTED DELEGATES BELOW | 1D | 1 |
| **8th District Delegates to Democratic National Convention** | A VOTE ABOVE IS A VOTE FOR ALL DELEGATES JOSEPH R. BIDEN Biden for President Linda GREENSTEIN Cathleen LEWIS Sharon SHINKLE Bruce STERN Kelvin GANGES | | | | A VOTE ABOVE IS A VOTE FOR ALL DELEGATES BERNIE SANDERS Bernie 2020. Not Me. Us. Rano BANERJEE Lizette DELGADO Franceline EHRET Brady RIVERA Neetanka THURAHIL | | A VOTE ABOVE IS A VOTE FOR ALL UNCOMMITTED DELEGATES UNCOMMITTED Joseph WOLFGANG | | NO PERSONAL CHOICE FOR DELEGATES |
| **U.S. Senate** 6 Year Term – Vote for One | Regular Democratic Organization Cory **BOOKER** | 2A | Not Me. Us. Lawrence **HAMM** | 2B | | | | | 2 |
| **U.S. House of Representatives** 2 Year Term – Vote for One | Regular Democratic Organization Christine **CONFORTI** | 3A | Fairness in Healthcare, Schools, Local Businesses. David **APPLEFIELD** | 3B | | | | | 3 |
| | Mercer County Democrats Stephanie **SCHMID** | 4A | | | | | | | |
| **Sheriff** 3 Year Term – Vote for One | Regular Democratic Organization John A. "Jack" **KEMLER** | 5A | | | | | | | 5 |
| **County Clerk** 5 Year Term – Vote for One | Regular Democratic Organization Paula **SOLLAMI COVELLO** | 6A | | | | | | | 6 |
| **Board of Chosen Freeholders** 3 Year Term – Vote for Two | Regular Democratic Organization Lucyile RS **WALTER** | 7A | | | | | | | 7 |
| | John A. **CIMINO** | 8A | | | | | | | 8 |
| **County Committee** 2 Year Term – Vote for Two | | | | | | | | | |

Master ENG 4th
Robbinsville, Form 13,   D1

115.    In Mercer County, Conforti was required to bracket with other candidates whom she did not wish to associate with in order to protect her ballot position.  Most egregiously, she was placed in the same column as Schmid, even though she was running against Schmid.  Thus, even though voters could only vote for one candidate for the Fourth Congressional District, two candidates appeared on the same column.

116.    Based on official primary election results posted on the Secretary of State's website, Schmid received approximately 32.3% of the votes cast for candidates on the ballot in Mercer County, while Conforti received approximately 57.2%.  *See* Official 2020 Primary Election Results:   U.S. House of Representatives (Amended Aug. 26, 2020), *available at* state.nj.us/state/elections/assets/pdf/election-results/2020/2020-official-primary-results-us-house-amended-0826.pdf (last visited Dec. 28, 2020).

28

117.    Upon information and belief, approximately one-third of all Mercer County voters in the Fourth Congressional District who attempted to cast a vote in this race were disenfranchised because they voted for more than one candidate for the same office, and thus their over-votes were disqualified.

## I.   Kreibich Ballot Draw/Ballot Placement

118.    On or about March 29, 2020, Kreibich filed a petition with the Secretary of State's Office so that her name would appear on the 2020 Democratic Primary Election ballot in New Jersey's Fifth Congressional District, which includes Bergen County, in addition to Passaic, Sussex, and Warren Counties. Kreibich's petition contained valid petition signatures in excess of the amount required by statute to appear on the ballot, and was duly accepted by the Secretary of State's Office.

119.    The Bergen County Clerk conducted a ballot draw on April 9, 2020.

120.    A sample ballot from the Bergen County Clerk's Office for the July 7, 2020 Democratic Primary Election in the Borough of Allendale shows Kreibich's ballot position:

121.	The Bergen County Clerk's Office drew for ballot position based on U.S. Senate candidates first.  Because Kreibich chose to exercise her First Amendment right not to associate with a U.S. Senate candidate, she was not included in the preferential ballot draw.  Therefore, she was prohibited from having any chance to receive the first ballot position.

122.	Only one congressional candidate running against Kreibich, Josh Gottheimer ("Gottheimer"), was automatically placed (in the first column) as a result of the initial ballot draw, due to the fact that Gottheimer was bracketed with a Senate candidate.

123.	Eventually, Kreibich was placed in the third column, along with two candidates for county freeholder with whom she bracketed.  Beyond these two county freeholder candidates, no other candidates for any other office are listed on the same column as Kreibich, leaving four blank spaces above her.  By contrast, the candidates in the first column, including Gottheimer, are all

featured on a column of multiple candidates for virtually all available offices, and are all featured with the same slogan.  A gap in the ballot exists between Gottheimer and Kreibich, who were both running for the same congressional office.

124.   Even though Kreibich bracketed with county freeholder candidates, she was nevertheless excluded from the preferential ballot draw and from obtaining the first column on the ballot because she did not bracket with a Senate candidate.

125.   Based on official primary election results posted on the Secretary of State's website, Gottheimer received approximately 67.1% of the votes cast for candidates on the ballot in Bergen County, while Kreibich received approximately 32.9%.  *See* Official 2020 Primary Election Results:   U.S. House of Representatives (Amended Aug. 26, 2020), *available at* state.nj.us/state/elections/assets/pdf/election-results/2020/2020-official-primary-results-us-house-amended-0826.pdf (last visited Dec. 29, 2020).  This percentage margin of victory for Gottheimer over Kreibich was greater in Bergen County than in any of the three other counties (Passaic, Sussex, and Warren) in the Fifth Congressional District.  *Id.*  Passaic, Sussex, and Warren Counties used vote-by-mail ballots in the 2020 Primary Election which separated candidates for each office from candidates running for other offices, rather than using the column/row grid format, and thus, did not allow for bracketing.

**J.   Atlantic County Ballot Draw/Ballot Placement and Lucide's Upcoming Primary**

126.   The Atlantic County Clerk's Office conducted a ballot draw on April 9, 2020.

127.   A sample ballot from the Atlantic County Clerk's Office for the July 7, 2020 Democratic Primary Election in the City of Absecon, Ward 1, shows the ballot position of various candidates running within Atlantic County:



DEMOCRATIC MAIL-IN BALLOT / OFFICIAL PRIMARY ELECTION

**Absecon Ward 1**
Atlantic County, New Jersey
2nd Congressional District – July 7, 2020

**EDWARD P. McGETTIGAN**
Atlantic County Clerk



| OFFICE TITLE | Column A Democratic | Column B Democratic | Column C Democratic | Column D Democratic | Column E Democratic | Column F Democratic | PERSONAL CHOICE |
|---|---|---|---|---|---|---|---|
| **Choice for President** VOTE FOR ONE | *Atlantic County Democratic Committee* Joseph R. BIDEN ○ | *Bernie 2020, NoVote, Inc.* Bernie SANDERS ○ | | | | | NO PERSONAL CHOICE FOR DELEGATES |
| **2nd District Delegates to Democratic National Convention** | A VOTE ABOVE IS A VOTE FOR ALL DELEGATES **JOSEPH R. BIDEN** *Atlantic County Democratic Committee* Ernesta BRAYMANTE Michael SULDIMAN Philip NUPNO | A VOTE ABOVE IS A VOTE FOR ALL DELEGATES **BERNIE SANDERS** *Bernie 2020, NoVote, Inc.* Leary Ann DIAZ Sean LOFTUS Cristian MORENO-RODRIGUEZ | | A VOTE ABOVE IS A VOTE FOR ALL DELEGATES *(Uncommitted)* Jayne MULLINEAUX | | | |
| **U.S. Senator** VOTE FOR ONE | *Atlantic County Democratic Committee* Amy KENNEDY ○ | *Bernie 2020, NoVote, Inc.* Lawrence HAMM ○ | *Atlantic County Regular Democratic Org.* Cory BOOKER ○ | | | | ○ |
| **House of Representatives** VOTE FOR ONE | *Atlantic County Democratic Committee* Amy KENNEDY ○ | | *Atlantic County Regular Democratic Org.* Brigid CALLAHAN HARRISON ○ | *Real Democrats* Will CUNNINGHAM ○ | *Atlantic County Unfunded Democrat* Robert D. TURKAVAGE ○ | *Making it Move* John FRANCIS ○ | ○ |
| **Sheriff** VOTE FOR ONE | *Atlantic County Democratic Committee* Eric SCHEFFLER ○ | | | | | | ○ |
| **Surrogate** VOTE FOR ONE | *Atlantic County Democratic Committee* Stephen DICHY ○ | | *Atlantic County Regular Democratic Org.* Levi FOX ○ | | | | ○ |
| **Freeholder-at-Large** VOTE FOR TWO | *Atlantic County Democratic Committee* Caren FITZPATRICK ○ | | | | | | ○ |
| | *Atlantic County Democratic Committee* Celeste FERNANDEZ ○ | | | | | | ○ |
| **Mayor** VOTE FOR ONE | *Atlantic County Democratic Committee* Kimberly A. HORTON ○ | | | | | | ○ |
| **Council** VOTE FOR ONE | *Atlantic County Democratic Committee* Elizabeth (Betty) HOWELL ○ | | | | | | ○ |

128. The Atlantic County Clerk's Office drew for ballot position based on President candidates first. Candidates who chose to exercise their First Amendment right not to associate with a candidate for President were not included in the preferential ballot draw, and thus were prohibited from having any chance to receive the first ballot position. Candidates for other offices who bracketed with a candidate for President were automatically placed on the ballot as a result of the initial ballot draw.

129. The Atlantic County Clerk's Office next drew from U.S. Senate candidates. Candidates who were not placed as a result of the initial ballot draw and who chose to exercise their First Amendment right not to associate with a U.S. Senate candidate were not included in this next drawing, and thus were not eligible for the third column.

130. The candidates who did not bracket with anyone, including three congressional candidates, were placed in columns D, E, and F, columns with either no candidates for any other offices, or in a column with uncommitted delegates to the Democratic National Convention, with whom the candidates did not request to bracket.

131.    Lucide is running for County Clerk in Atlantic County in connection with the June 8, 2021 Democratic Primary Election.  He does not want to bracket with any other candidates running for any other offices.  However, because of the substantial advantage provided on the ballot to bracketed candidates, Lucide is forced to consider seeking the county party endorsement and bracketing with the other endorsed candidates solely to protect his ballot position.  If he does not get the endorsement of the county party, he does not intend to bracket with any other candidates for any other offices.  He is being forced to decide between his desire to not associate with candidates for other offices and his ability to be treated on the ballot like other candidates running for the same office, such as bracketed candidates, who have the ability to obtain the first ballot position and be featured in a full column of candidates running for all offices with the same slogan. It is virtually certain that Lucide will not be included in the preferential ballot draw or that he will be forced to associate with candidates running for other offices to protect his ballot position.

### K.  Marchica Ballot Draw/Ballot Placement

132.    On or about March 21, 2020 Marchica filed a petition with the Hamilton Township Municipal Clerk so that his name would appear on the 2020 Democratic Primary Election ballot for County Committee in Hamilton Township's 27th Election District in Mercer County. Marchica's petition contained a sufficient number of valid petition signatures required by statute to appear on the ballot, and was duly accepted by the Municipal Clerk's Office.

133.    The Mercer County Clerk's Office conducted a ballot draw on April 9, 2020.

134.    A sample ballot from the Mercer County Clerk's Office for the July 7, 2020 Democratic Primary Election in Hamilton Township's 27th Election District shows Marchica's ballot position:

135.    The Mercer County Clerk's Office drew for ballot position based on U.S. Senate candidates first.  Because Marchica chose to exercise his First Amendment right not to associate with a U.S. Senate candidate, he was not included in the preferential ballot draw.  Therefore, he was prohibited from having any chance to receive the first ballot position.

136.    Two other candidates running for County Committee in Hamilton Township's 27th Election District, Timothy L. Bauersachs ("Bauersachs") and Wendy Sturgeon ("Sturgeon"), were automatically placed (in the first column) as a result of the initial ballot draw, due to the fact that they were bracketed with a Senate candidate.

137.    Marchica was eventually placed in the second column, with a candidate for United States Senate, Lawrence Hamm ("Hamm"), and a candidate for New Jersey's Fourth Congressional District, David Applefield ("Applefield").  None of these three candidates requested to bracket with one another and all three had different ballot slogans than one another.  Beyond Hamm and Applefield, no other candidates for any other office are listed on the same column as

Marchica, leaving a blank space for President at the top of the column and six blank spaces between Marchica and the closest candidate in the same column.

138.    By contrast, the candidates in Column A, including Bauersachs and Sturgeon, are all featured on a complete column of candidates for every available office, and are all featured with the same slogan.

139.    Marchica is featured in the same column as Applefield, even though Marchica was a campaign volunteer for and vocal supporter of one of Applefield's rival candidates for New Jersey's Fourth Congressional District, Christine Conforti, who was featured in a different column.

140.    Marchica is featured horizontally from Bauersachs and Sturgeon in Column B, even though the other candidates running for the same exact position are both featured vertically on the ballot in the same column, Column A.

141.    Based on official primary election results posted on the County of Mercer's website, Bauersachs received approximately 31.1% and Sturgeon received approximately 47.7% of the votes cast for candidates on the ballot for the two available seats on County Committee up for election in Hamilton Township's 27th Election District in Mercer County in connection with the Democratic Primary Election, while Marchica received approximately 21.2%.  *See* Official 2020 Primary Election Results (last updated July 24, 2020), *available at* results.enr.clarityelections.com/NJ/Mercer/104397/web.255599/#/summary (last visited Dec. 29, 2020).

### L.  <u>McMillan Ballot Draw/Ballot Position</u>

142.    On or about March 30, 2020, McMillan filed a petition with the Neptune Township Municipal Clerk so that his name would appear on the 2020 Democratic Primary Election ballot for Township Committee in Neptune Township in Monmouth County.  McMillan's petition

contained valid petition signatures in excess of the amount required by statute to appear on the ballot, and was duly accepted by the Municipal Clerk's Office.

143.    The Monmouth County Clerk's Office conducted a ballot draw on April 9, 2020.

144.    A ballot from the Monmouth County Clerk's Office for the July 7, 2020 Democratic Primary Election in Neptune Township's 1st Election District shows McMillan's ballot position:



145.    The Monmouth County Clerk's Office drew for ballot position based on U.S. Senate candidates first.  Because McMillan chose to exercise his First Amendment right not to associate with a U.S. Senate candidate, he was not included in the preferential ballot draw. Therefore, he was prohibited from having any chance to receive the first ballot position.

146.    The other candidate running for Neptune Township Committee, Keith Cafferty ("Cafferty"), was automatically placed (in the first column) as a result of the initial ballot draw, due to the fact that he was bracketed with a Senate candidate.

36

147.   The Monmouth County Clerk's Office next drew from candidates for President, but because McMillan chose to exercise his First Amendment right not to associate with a candidate for President, he was not included in this next drawing, and thus was not eligible for the third column.

148.   The Monmouth County Clerk's Office next drew from candidates for New Jersey's Fourth Congressional District, but because McMillan chose to exercise his First Amendment right not to associate with a candidate for New Jersey's Fourth Congressional District, he was not included in this next drawing, and thus was not eligible for the fourth or fifth column.

149.   McMillan was eventually placed in the sixth column, with two candidates running for county committee with whom McMillan chose to bracket.  Beyond these county committee candidates, no other candidates for any other office are listed on the same column as McMillan, leaving 5 blank spaces above him.

150.   By contrast, the candidates in the first column, including Cafferty, are all featured on a complete column of candidates for every available office, and are all featured with the same slogan.  A gap in the ballot exists between Cafferty and McMillan, who are running for the same office, yet are featured five spaces apart on the ballot.

151.   Based on official primary election results posted on the County of Monmouth's website, Cafferty received approximately 52.3% of the votes cast for candidates on the ballot for Township Committee, while McMillan received approximately 47.5%.  *See* Official 2020 Primary Election Results (last updated Aug. 12, 2020), *available at* results.enr.clarityelections.com/NJ/Monmouth/104472/web.255599/#/summary (last visited Dec. 29, 2020).

**M. Bergen and Hudson County Ballot Draws/Ballot Placement and Spezakis' Upcoming Primary**

152.    On or about March 27, 2020, Spezakis filed a petition with the Secretary of State's Office so that her name would appear on the 2020 Democratic Primary Election ballot in New Jersey's Ninth Congressional District, which includes portions of Bergen and Hudson Counties, in addition to Passaic County.  Spezakis' petition contained valid petition signatures in excess of the amount required by statute to appear on the ballot, and was duly accepted by the Secretary of State's Office.

153.    The Bergen and Hudson County Clerks conducted a ballot draw on April 9, 2020.

**a.   Bergen County Ballot Draw/Ballot Placement**

154.    A sample ballot from the Bergen County Clerk's Office for the July 7, 2020 Democratic Primary Election in the Borough of Tenafly shows the ballot position of the various candidates running within Bergen County:

155.    The Bergen County Clerk's Office drew for ballot position based on U.S. Senate candidates first.  Candidates who chose to exercise their First Amendment right not to associate with a U.S. Senate candidate were not included in the preferential ballot draw and therefore were prohibited from having any chance to receive the first ballot position.  Candidates for other offices who bracketed with a candidate for U.S. Senate were automatically placed on the ballot as a result of the initial ballot draw.

156.    The Bergen County Clerk's Office next drew for ballot position based on County Freeholder candidates.  Candidates who chose to exercise their First Amendment right not to associate with County Freeholder candidates were not included in this next ballot draw, and thus were not eligible for the third column.

157.    The Bergen County Clerk's Office next drew for ballot position based on candidates for President.  Candidates who chose to exercise their First Amendment right not to associate with candidates for President were not included in this next ballot draw, and thus were not eligible for the fourth column.

158.    Eventually, an unbracketed congressional candidate was placed in the fifth column, all by himself.  A gap in the ballot exists between the unbracketed congressional candidate and the other bracketed candidates running for the same congressional office.

159.    The candidates in Column A are all featured on a complete column of candidates for every available office, and are all featured with the same slogan.

160.    Spezakis intends to run for the U.S. House of Representatives in New Jersey's Ninth Congressional District in connection with the June 7, 2022 Democratic Primary Election.  She does not intend to bracket with any other candidates for any other offices.  As a result of this decision to exercise her First Amendment right to not associate with other candidates running for

other offices, it is virtually certain that Spezakis will not be included in the preferential ballot draw, and therefore will be prohibited from having any chance to receive the first ballot position, as was the case with the unbracketed congressional candidate in the July 7, 2020 Democratic Primary Election, who was placed only after other candidates for other offices were placed on the ballot, including County Freeholder.   Unlike other bracketed candidates, it is virtually certain that Spezakis will be placed in a column all by herself or with candidates for other offices with different slogans and with whom she did not request to bracket.

**b. Hudson County Ballot Draw/Ballot Placement**

161.   A sample ballot from the Hudson County Clerk's Office for the July 7, 2020 Democratic Primary Election in the Town of Secaucus shows the ballot position of the various candidates running within Hudson County:



162.   The Hudson County Clerk's Office drew for ballot position based on U.S. Senate candidates first.   Candidates who chose to exercise their First Amendment right not to associate with a U.S. Senate candidate were not included in the preferential ballot draw and therefore were prohibited from having any chance to receive the first ballot position.   Candidates for other offices

who bracketed with a candidate for U.S. Senate were automatically placed on the ballot as a result of the initial ballot draw.

163.   The Hudson County Clerk's Office next drew for ballot position based on candidates for President.  Candidates who chose to exercise their First Amendment right not to associate with a candidate for President were not included in this next ballot draw, and thus were not eligible for the third column.

164.   Eventually, an unbracketed congressional candidate was placed in the fourth column, all by himself.  A gap in the ballot exists between the unbracketed congressional candidate and the other bracketed candidates running for the same congressional office.

165.   The candidates in Column B are all featured on a complete column of candidates for every available office, and are all featured with the same slogan.

166.   Spezakis intends to run for the U.S. House of Representatives in New Jersey's Ninth Congressional District in connection with the June 7, 2022 Democratic Primary Election. She does not intend to bracket with any other candidates for any other offices.  As a result of this decision to exercise her First Amendment right to not associate with other candidates running for other offices, it is virtually certain that Spezakis will not be included in the preferential ballot draw, and therefore will be prohibited from having any chance to receive the first ballot position, as was the case with the unbracketed congressional candidate in the July 7, 2020 Democratic Primary Election, who was placed only after other candidates for other offices were placed on the ballot. Unlike other bracketed candidates, it is virtually certain that Spezakis will be placed in a column all by herself or with candidates for other offices with different slogans and with whom she did not request to bracket.

### N.  NJWF

167.    NJWF's endorsed unbracketed candidates in the July 7, 2020 Primary Election were disadvantaged in similar ballot scenarios as the other Plaintiffs set forth above.  NJWF intends to continue its operations in support of progressive candidates, many of whom will be unbracketed and/or not be bracketed with the county line.  Even those NJWF endorsed candidates who are bracketed with the county line will be harmed to the extent that they are forced to engage in the gamesmanship and forced associations that go hand-in-hand with obtaining the county line.  NJWF and its endorsed candidates will continue to suffer analogous harms and will continue to have to divert resources toward voter education and other related efforts.

### CLAIMS FOR RELIEF[7]

### COUNT I

### U.S. Const. Amend. I and XIV, 42 *U.S.C.* § 1983

### Violation of Plaintiffs' First and Fourteenth Amendment Rights Under Federal Constitution (Right to Vote/Vote Dilution)

168.    Plaintiffs reallege and incorporate by reference the above paragraphs as though fully set forth herein.

169.    The United States Constitution protects the rights of voters to effectively cast their votes and the right of individuals to associate for the purpose of advancing their political beliefs. If an electoral system fails to provide fundamental fairness, fundamental constitutional principles are implicated.

---

[7] In this First Amended Complaint, Plaintiffs are not bringing any claims under state law or the state constitution.  They reserve the right to do so in another proceeding in state court.  By way of example and not limitation, this constitutional challenge is not an election contest in a state forum under *N.J.S.A.* 19:29-1 *et seq.* seeking a new election or a different result.

170.     Courts considering challenges to state election laws pertaining to fundamental rights under the First and Fourteenth Amendments to the United States Constitution must balance the character and magnitude of the injury to the plaintiffs' rights against specific justifications advanced by the State for imposing such burdens.   Regardless of the severity of the burden imposed, the state's law/rule must be justified by state interests that are legitimate and sufficiently weighty to justify the limitations imposed.

171.     New Jersey's bracketing and ballot placement system directly and substantially injure Plaintiffs' First and Fourteenth Amendment rights.   This includes the rights of candidates like Plaintiffs who are similarly situated to other candidates running for the same office, yet not treated equally on the ballot, and the qualified voters in New Jersey who support them.

172.     New Jersey's bracketing and ballot placement system skews New Jersey's elections, providing a meaningful, yet arbitrary advantage to bracketed candidates, as well as a meaningful, yet arbitrary disadvantage to unbracketed candidates like Plaintiffs.

173.     In addition to injuring Plaintiffs and their supporters in the 2020 primary election in their respective races, New Jersey's bracketing and ballot placement system is virtually certain to injure various candidates like Plaintiffs and their supporters, in future primary races.   It makes it harder to successfully elect such candidates, arbitrarily diminishing their chances solely because they were not bracketed with certain candidates running for other offices.   This also lessens the impact of votes cast by the supporters of such candidates, as the ballot placement system was designed from the outset to favor bracketed opponents.   The same principles impacted various elections up and down the ballot and across various counties in the 2020 primary election and beyond, and is virtually certain to allow the State to put its thumb on the scales in favor of certain bracketed candidates in all subsequent primary elections, as it has in past primary elections.

174.    The impact of positional bias is heightened because New Jersey's bracketing and ballot placement system impacts primary elections, as compared to general elections.

175.    New Jersey's bracketing and ballot placement system are also particularly suspect for a variety of reasons.  Providing a state-conferred ballot advantage to bracketed candidates inherently advantages party-endorsed candidates who have historically run candidates for every position up for election on the ballot, and who have the resources to do so, thereby further entrenching the power of incumbents and political elites.

176.    The 2020 Primary Analysis found that the difference between being on the county line and not being on the county line varied a candidate's share of the vote by as much as 50 percentage points in some 2020 Primary Election races, and found that in the 2020 congressional races where different candidates for the same race were featured on the county line in different counties, there was on average a 35% margin difference when candidates were featured on the county line as compared to when their opponent was featured on the line.  *See* 2020 Primary Analysis, *supra* ¶ 8.  For example, the 2020 Primary Analysis shows a similar and consistent point swing for Conforti in the 2020 Democratic Primary Election for House of Representatives in New Jersey's Fourth Congressional District, when comparing the approximately 57% vote share she received in Mercer County – where she was listed first on county line and bracketed with the other party-endorsed candidates – with the close to 20% average vote share she received in Monmouth and Ocean Counties – where she was not on the county line and not bracketed with the other party-endorsed candidates.  *Id.*

177.    Additionally, the discretion afforded to County Clerks, who are themselves elected officials who benefit from receiving a ballot placement advantage, has led to varying standards across New Jersey's 21 counties and from election cycle to election cycle impacting which

candidates for which offices other candidates need to bracket with and how and where those candidates will be located on the ballot.  Upon information and belief, no County Clerk publishes practices or standards on ballot design, relying solely on unbridled and unpredictable discretion in each election cycle.

178.   New Jersey's ballots also contain other poor and unconstitutional ballot design features, including the weight of the line, which exacerbate the impact of the primacy effect, nudge voters toward bracketed candidates, and contribute to other systemic biases and voter confusion leading to over and under votes, proximity mistake votes, and ballot-flaw-induced votes which can disenfranchise substantial numbers of voters.  Plaintiffs were impacted by many of these poor ballot design features with respect to the July 7, 2020 Democratic Primary Election, including (a) placing a candidate far away from other candidates running for the same office with multiple blank spaces in between, i.e., Ballot Siberia; (b) the visual cue from a full ballot column with candidates for all offices up for election as compared to columns with fewer candidates, i.e., the weight of the line; (c) including additional information on the ballot such as slogans; (d) arbitrarily grouping candidates for different office in the same column; and (e) featuring candidates in a column all by themselves.

179.   Conforti was further impacted by being listed in the same column as her opponent, despite the fact that voters could only choose one candidate.  This inherently caused voter confusion and risk of over votes which would not be counted, further disenfranchising voters who support her.  Upon information and belief, approximately one-third of Mercer County voters in the Fourth Congressional District who attempted to cast a vote in Conforti's race ended up being disenfranchised for casting an over vote.

180.    As a direct and proximate cause of state law and Defendants' ballot design procedures, Plaintiffs and the voters that support them have been injured by a diminution in their chance to succeed in their respective elections and/or are virtually certain to be injured by a diminution in their chance to succeed in their respective upcoming elections.

181.    No state interest in New Jersey's bracketing and ballot placement system can justify the burdens it places on Plaintiffs' rights.

182.    The constitutional injuries that have been and will be inflicted upon Plaintiffs are redressable by the entry of an order from this Court consistent with the relief requested in this Complaint.

## COUNT II

### U.S. Const. Amend. I and XIV, 42 *U.S.C.* § 1983

### Violation of Plaintiffs' First and Fourteenth Amendment Rights Under Federal Constitution (Equal Protection)

183.    Plaintiffs reallege and incorporate by reference the above paragraphs as though fully set forth herein.

184.    New Jersey's bracketing and ballot placement system violate equal protection rights as they fail to treat similarly situated persons—that is, candidates pursuing the same office in the same political party, and who have filed a petition containing a legally sufficient number of nominating signatures—the same with respect to ballot order and the display of the ballot.  State election laws have been interpreted to provide for a preferential ballot draw as between candidates running for the pivot point office.  Those bracketed with candidates for the pivot point office are in turn granted preferential ballot position, including the ability to obtain the first ballot position. Any other unbracketed candidates running for the same exact office are not included in the

preferential ballot draw, will not obtain a favorable ballot position, and are wholly excluded from any chance at receiving the first ballot position.

185.    Unbracketed candidates are further disadvantaged when their names are placed multiple columns away from bracketed candidates running for the same office, or when listed underneath other candidates running for the same office (who are displayed horizontally).

186.    The unequal treatment of such candidates and voters who support them is based on an entirely arbitrary characteristic, namely whether or not a candidate is bracketed with a pivot point candidate, coupled by the varying and unpredictable standards employed by the County Clerks.

187.    By way of example, Conforti did not bracket with any candidates for any other offices in Monmouth and Ocean Counties.  Kreibich bracketed with county freeholder candidates, but did not bracket with any candidates for any other offices in Bergen County.  Marchica did not bracket with any candidates for any other offices in Mercer County.  McMillan bracketed with county committee candidates, but did not bracket with any candidates for any other offices in Monmouth County.

188.    The Monmouth and Ocean County Clerks, the Bergen County Clerk, the Mercer County Clerk, and the Monmouth County Clerk failed to allow Conforti, Kreibich, Marchica, and McMillan, respectively, to participate in a drawing as against all other candidates running for the same office and denied them of any opportunity to draw for first ballot position.  Yet, by virtue of bracketing alone, these County Clerks afforded each of these Plaintiffs' opponents the opportunity to be placed in an initial ballot draw for first ballot position.

189.    The Monmouth and Ocean County Clerks placed Conforti and other unbracketed candidates multiple ballot spaces away from her opponent with no other candidates running for

the same office in between them, as did the Bergen County Clerk with respect to Kreibich, and the Monmouth County Clerk with respect to McMillan.

190.    Based on how the County Clerks' Offices conducted the ballot draws and designed the ballots, the first ballot position that Conforti, Kreibich, Marchica, and McMillan's respective opposing candidates could have received as a result of the ballot draw was the first column, and in fact, these opposing candidates, Schmid, Gottheimer, Bauersachs and Sturgeon, and Cafferty all received the first column of their ballots.  By contrast, the first ballot position Conforti could have received was the fourth column in Monmouth County, and the third column in Ocean County.  The first ballot position Kreibich could have received was the third column in Bergen County.  The first ballot position Marchica could have received was the second column in Mercer County.  The first ballot position McMillan could have received was the sixth column in Monmouth County.

191.    Plaintiffs were also impacted by the various bad ballot design features employed by the Defendants, including having to compete against the weight of the line, which nudges voters to vote for certain bracketed candidates, including those featured on a full column of candidates running for every office with the same slogan.

192.    As a direct and proximate cause of state law and Defendants' ballot design procedures, Plaintiffs have been injured by a diminution in their chance to succeed in their respective elections as a result of their unequal treatment, and/or are virtually certain to be injured by a diminution in their chance to succeed in their respective upcoming elections as a result of their unequal treatment.

193.    No state interest in New Jersey's bracketing and ballot placement system can justify the burdens it places on Plaintiffs' rights.

194.     The constitutional injuries that have been and will be inflicted upon Plaintiffs are redressable by the entry of an order from this Court consistent with the relief requested in this Complaint.

<div align="center">

**COUNT III**

**U.S. Const. Amend. I and XIV, 42 *U.S.C.* § 1983**

**Violation of Plaintiffs' First and Fourteenth Amendment Rights Under Federal Constitution (Freedom of Association)**

</div>

195.     Plaintiffs reallege and incorporate by reference the above paragraphs as though fully set forth herein.

196.     New Jersey's bracketing and ballot placement system place additional burdens on Plaintiffs' associational rights.  The right of association includes the corresponding right not to associate.  State law burdens this right by leaving candidates, including those like Plaintiffs who do not wish to associate with certain other candidates, with a Hobson's Choice; they can either (1) forfeit their right to not associate with certain other candidates, and nevertheless bracket just to get a fair shot at the first ballot position; or (2) exercise their right not to associate and be punished for doing so by being excluded from the preferential ballot draw and risk getting relegated to obscure portions of the ballot in Ballot Siberia.  Having to choose between equal and fair ballot treatment and First Amendment rights punishes candidates and the voters who support them simply based on their decision to bracket or not bracket with candidates running for a different office.

197.     In order to be included in the preferential ballot draw, candidates are forced to try to engage in gamesmanship and associate with existing pivot point candidates for other offices with whom they may not want to associate and whose policies they may disagree with, or are forced to try to recruit candidates to run for offices such as United States Senator, just to avoid getting treated unfairly on the ballot.  And even if they try to associate in this manner, they can be

rejected by other candidates exercising their own associational rights and right not to associate. Either way, candidates lose the opportunity for fair treatment on the ballot.

198.   The Monmouth and Ocean County Clerk, the Bergen County Clerk, the Mercer County Clerk, and the Monmouth County Clerk respectively forfeited Conforti, Kreibich, Marchica, and McMillan's right to be included in the preferential ballot draw because they exercised their right not to associate with candidates running for other offices and/or their right not to associate with candidates running for the specific office that the County Clerks used as the pivot point in this election cycle.  In this regard, these particular County Clerks rewarded preferential ballot treatment to candidates who associated with candidates running for United States Senate, while simultaneously punishing candidates like Conforti, Kreibich, Marchica, and McMillan who chose not to associate with certain other candidates by excluding them from the preferential ballot draw for first position and creating multiple spaces between them and other candidates running for the same office and/or relegating them to Ballot Siberia.

199.   In Hamilton Township's 27th Election District, even after the Mercer County Clerk's Office forfeited Marchica's ballot position for not bracketing with any other candidates for other offices, he was nevertheless placed in the same column as a congressional candidate, Applefield, with whom he did not wish to associate, did not request to bracket with, and whose opponent (Conforti) Marchica had volunteered for and vocally supported.

200.   In Bergen and Hudson Counties, Spezakis was required to bracket and otherwise associate with candidates for U.S. Senate and County Freeholder in order to protect her ballot position.

201.   In Mercer County, Conforti was required to bracket with candidates she did not wish to associate with in order to protect her ballot position, including most egregiously, her

opponent Schmid, who was placed in the same column as Conforti, even though voters could only vote for one of them.

202.    A similarly nonsensical scenario resulting from New Jersey's bracketing and ballot placement system occurred in Monmouth County, where Conforti was also running as a candidate for County Committee in Neptune Township's 1st Election District.  With respect to that office, she received the party endorsement for her County Committee seat, and thus, in order to be eligible for first ballot position, was forced to bracket with the other party-endorsed candidates who were running for other offices, including her opponent in the congressional race, Schmid, rather than bracketing with herself.

203.    Forcing candidates to choose between favorable ballot position and associational rights violates their First Amendment rights.

204.    Furthermore, because the initial ballot draw and preferential ballot placement depends on bracketing with specific pivot point candidates for specific offices (e.g. President, United States Senator, Governor, joint petition county candidates), but not with candidates for other offices (e.g. House of Representatives, State Senate, General Assembly, municipal council, county committee, etc.), New Jersey state law arbitrarily favors and bestows ballot advantages upon certain candidate associations over other associations in such manner as to simultaneously violate both associational rights and Equal Protection rights under the First and Fourteenth Amendments.

205.    For example, the Bergen County Clerk and the Monmouth County Clerks' Offices forfeited Kreibich and McMillan's respective rights to be included in the preferential ballot draw because, even though they bracketed with certain candidates running for other offices, they exercised their right to not associate with candidates running for other specific offices, such as

United States Senate.  In this regard, the Bergen County Clerk and the Monmouth County Clerk valued certain associations over others, rewarding preferential ballot treatment to candidates who associated with candidates running for United States Senate, while simultaneously punishing candidates like Kreibich and McMillan, who associated with candidates running for different offices by excluding them from the preferential ballot draw for first position and creating multiple spaces between them and other candidates running for the same office and/or relegating them to Ballot Siberia.

206.    As a direct and proximate cause of state law and Defendants' ballot design procedures, Plaintiffs have been injured and/or are virtually certain to be injured in their respective upcoming elections by punishing the exercise of their right to not associate with a diminution in their chance to succeed in their election and by otherwise requiring them to associate with candidates for the same and other offices in order to protect their ballot position.

207.    No state interest in New Jersey's bracketing and ballot placement system can justify the burdens it places on Plaintiffs' rights.

208.    The constitutional injuries that have been and will be inflicted upon Plaintiffs are redressable by the entry of an order from this Court consistent with the relief requested in this Complaint.

**COUNT IV**

**U.S. Const. Art. I, § 4, cl. 1, 42 *U.S.C.* § 1983**

**Violation of Elections Clause Under Federal Constitution**

209.    Plaintiffs reallege and incorporate by reference the above paragraphs as though fully set forth herein.

210.    Article I, Section 4, Clause 1 of the United States Constitution (hereinafter "the Elections Clause") states as follows: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but Congress may at any time make or alter such Regulations, except as to the Place of chusing Senators."

211.    The Elections Clause is the exclusive delegation of power to States over congressional elections, and as such the Constitution does not provide for any State authority over congressional elections beyond regulating the time, place, and manner of such elections.

212.    The authority under the Elections Clause to regulate the time, place, and manner of congressional elections cannot be exercised so as to dictate electoral outcomes or to favor of disfavor a particular class of candidates.

213.    New Jersey's bracketing and ballot placement system does not regulate the "time" of federal elections.

214.    New Jersey's bracketing and ballot placement system does not regulate the "place" of federal elections.

215.    New Jersey's bracketing and ballot placement system does not regulate the "manner" of federal elections.

216.    New Jersey's bracketing and ballot placement system is not merely a procedural regulation and instead dictates electoral outcomes.

217.    New Jersey's bracketing and ballot placement system are designed to favor bracketed candidates who choose to align themselves with certain candidates running for certain other offices, and thus are eligible to be placed on the ballot as a result of a preferential ballot draw for first position.

218.    New Jersey's bracketing and ballot placement system are designed to disfavor and penalize a class of unbracketed federal candidates, such as Conforti and Kreibich with respect to the 2020 Primary Election, and Spezakis with respect to the 2022 Primary Election, who choose not to align with candidates running for any other office and/or who choose not to align with candidates running for the particular office that the county clerk subsequently decides to use as the pivot point office, and thus are prohibited from being placed on the ballot as a result of a preferential ballot draw and excluded from eligibility to obtain the first ballot position.

219.    New Jersey's bracketing and ballot placement system attaches a further penalty to a class of unbracketed federal candidates, such as Conforti, Kreibich, and Spezakis for expressing their view that they do not want to associate with any candidate running for the pivot point office by subjecting them to a series of other disfavored treatment such as being relegated to Ballot Siberia, being listed multiple spaces away from bracketed candidates running for the same office, being listed in a column by themselves as compared to a column with a full slate of candidates for all offices on the ballot, and/or being featured on a column with candidates with whom they did not wish to associate.

220.    These various penalties and disfavored treatment handicap unbracketed federal candidates in ways that exceed State authority to regulate the manner of congressional elections under the Elections Clause.

221.    Having exceeded state authority under the Elections Clause, New Jersey's bracketing and ballot placement system must be struck down as unconstitutional.

**COUNT V**

**42 *U.S.C.* § 1983**

**Violation of Civil Rights Act**

222.     Plaintiffs reallege and incorporate by reference the above paragraphs as though fully set forth herein.

223.     The Civil Rights Act provides relief to any person who has been deprived of the rights, privileges, and immunities guaranteed to them under the United States Constitution.

224.     Defendants deprived Plaintiffs and will continue to deprive Plaintiffs of their rights, privileges, and immunities as protected by the federal constitution, as set forth above, including but not limited to those rights guaranteed to them by the First and Fourteenth Amendments.

225.     Defendants acted under the color of law when designing the ballot and arranging the names on the ballot, including but not limited to their actions in conducting the ballot draw so as to conduct a preferential ballot drawing excluding unbracketed candidates like Plaintiffs from drawing for first ballot position, designing the ballot so as to place unbracketed candidates like Plaintiffs multiple columns away from other candidates running for the same office, forcing candidates for different offices to associate with one another in order to protect their ballot position or penalizing them for exercising their right to not associate, and forcing unaffiliated candidates for different offices to affiliate with each other and even adversarial candidates for the same office to affiliate with each other in the same column.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment:

(a) Declaring, under the authority granted to this Court by 28 *U.S.C.* § 2201 that the following practices and the statutes that enable them violate the United States Constitution with respect to primary elections in New Jersey:  (1) ballots

designed by columns or rows, rather than by office sought; (2) ballot draws that do not include a separate drawing for every office and where every candidate running for the same office does not have an equal chance at the first ballot position; (3) positioning candidates on the ballot automatically based upon a ballot draw among candidates for a different office; (4) placement of candidates such that there is an incongruous separation from other candidates running for the same office; (5) placement of candidates underneath another candidate running for the same office, where the rest of the candidates are listed horizontally, or to the side of another candidate running for the same office, where the rest of the candidates are listed vertically; and (6) bracketing candidates together on the ballot such that candidates for different offices are featured on the same column (or row) of the ballot;

(b) Permanently enjoining the Defendants from implementing and carrying out any of the above unconstitutional practices under the authority granted to this Court by 28 *U.S.C.* § 2202;

(c) Requiring the Defendants to use a ballot organized by office sought, rather than by column or row, and which implements for each office on the ballot, either (1) a rotational ballot order system which ensures to the greatest extent possible that each candidate running for the same office obtains the first ballot position in an equitable proportion; or (2) a randomized ballot order system which affords each candidate for the same office an equal chance at obtaining the first ballot position;

(d)  Awarding Plaintiffs all reasonable attorneys' fees, costs, and disbursements incurred in connection with bringing this action pursuant to 42 *U.S.C.* § 1988, and other applicable laws;

(e)  Retaining jurisdiction of this matter; and

(f)  Granting such other and further relief as the Court deems just and proper.

Dated this 25th day of January, 2021.

Respectfully submitted,

/s/ Brett M. Pugach
Brett M. Pugach (032572011)
/s/ Yael Bromberg
Yael Bromberg (036412011)
BROMBERG LAW LLC
43 West 43rd Street, Suite 32
New York, NY 10036-7424
Telephone:  212-859-5083
Facsimile:  201-586-0427
bpugach@bromberglawllc.com
ybromberg@bromberglawllc.com

*Counsel for the Plaintiffs*