UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF TRENTON

| | | |
|---|---|---|
| CHRISTINE CONFORTI, ARATI KREIBICH, MICO LUCIDE, JOSEPH MARCHICA, KEVIN MCMILLAN, ZINOVIA SPEZAKIS, and NEW JERSEY WORKING FAMILIES ALLIANCE, INC., | ) ) ) ) | HON. FREDA L. WOLFSON, U.S.D.J. Civil Action No. 20-8267 (FLW-TJB) |
| Plaintiffs, | ) | |
| v. | ) | Civil Action |
| CHRISTINE GIORDANO HANLON, in her Official capacity as Monmouth County Clerk, SCOTT M. COLABELLA, in his official capacity as Ocean County Clerk, PAULA SOLLAMI COVELLO, in her official capacity as Mercer County Clerk, JOHN S. HOGAN, in his Official capacity as Bergen County Clerk, EDWARD P. MCGETTIGAN, in his official capacity as Atlantic County Clerk, and E. JUNIOR MALDONADO, in his official capacity as Hudson County Clerk, | ) ) ) ) ) ) ) | (Electronically Filed) |
| Defendants. | ) | |

BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
COMPLAINT, PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND
12(b)(6), ON BEHALF INTERVENOR, GURBIR S. GREWAL, ATTORNEY GENERAL OF
NEW JERSEY

GURBIR S. GREWAL
Attorney General of New Jersey
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625
(609) 376-2955
George.Cohen@law.njog.gov

George N. Cohen
Deputy Attorney General
On the Brief

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT……………………………………….…..…..1

PROCEDURAL HISTORY AND STATEMENT OF FACTS…………………..2

STANDARD OF REVIEW……………...…………………………………...…7

ARGUMENT…………………………………………………………………...8

   I.     PLAINTIFFS' COMPLAINT MUST BE DISMISSED BECAUSE
        IT DOES NOT PRESENT A JUSTICIABLE CASE OR
        CONTROVERSY……………………………………………………8

       A.   PLAINTIFFS' CLAIMS REGARDING THE 2020 PRIMARY
           ELECTION ARE MOOT BECAUSE IT HAS BEEN HELD…  9

       B.   PLAINTIFFS' CLAIMS CONCERNING THE 2021 ATLANTIC
           COUNTY CLERK PRIMARY ELECTION, 2022 PRIMARY
           ELECTION, OR OTHER FUTURE ELECTIONS ARE NOT YET
           RIPE FOR REVIEW.………………………………………12

       C.   PLAINTIFF NEW JERSEY WORKING FAMILIES ALLIANCE
           SHOULD BE DISMISSED FOR LACK OF STANDING...……15

  II.    PLAINTIFFS' FIRST AMENDED COMPLAINT MUST BE
        DISMISSED FOR FAILURE TO STATE A CLAIM..………..……19

       A.   NEW JERSEY'S BRACKETING STATUTES DO NOT
           VIOLATE THE FIRST AND FOURTEENTH
           AMENDMENTS.....………...……………………………20

       B.   NEW JERSEY'S BRACKETING STATUTES DO NOT
           VIOLATE THE EQUAL PROTECTION
           CLAUSE.…………………………………………...29

       C.   THE BRACKETING STATUTES DO NOT ALTER THE
           TIMES, PLACES OR MANNER OF CONGRESSIONAL
           ELECTIONS…………………………………………..30

i

CONCLUSION……………………………………………………………...…32

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983)............................................................22, 25, 31

*Anspach v. City of Philadelphia*,
  503 F.3d 256 (3d Cir. 2007) ...................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................8

*Bi-Metallic Inv. Co. v. State Bd. of Equalization*,
  239 U.S. 441 (1915)...............................................................18

*Blunt v. Lower Merion Sch. Dist.*,
  767 F.3d 247 (3d Cir. 2014) .........................................15, 16, 17, 18

*Bruni v. City of Pittsburgh*,
  824 F.3d 353 (3d Cir. 2016) ...................................................20

*Burdick v. Takushi*,
  504 U.S. 428 (1992)...............................................................24, 25

*Clough v. Guzzi*,
  416 F. Supp. 1057 (D. Mass. 1976)...................................28

*Coastal Outdoor Adver. Grp., LLC v. Township of Union*,
  676 F. Supp. 337 (D.N.J. 2009) .........................................8, 9

*Doe v. Reed*,
  561 U.S. 186 (2010)...............................................................25

*Donatelli v. Mitchell*,
  2 F.3d 508 (3d Cir. 1993) ......................................................25, 30

*Eu v. San Francisco Cty. Democratic Cent. Comm.*,
  489 U.S. 214 (1989)............................................................................20, 23

*FEC v. Wis. Right to Life, Inc.*,
  551 U.S. 449 (2007)............................................................................11, 12

*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015) ...................................................................16

*Free Speech Coal., Inc. v. Att'y Gen. of United States*,
  825 F.3d 149 (3d Cir. 2016) .......................................................................12

*Gillen v. Sheil*,
  416 A.2d 935 (N.J. Super. Ct. Law Div., 1980) .........................................26, 27

*Gould Elecs., Inc. v. United States*,
  220 F.3d 169 (3d Cir. 2000) .........................................................................7

*Graham v. Connor*,
  490 U.S. 386 (1989)......................................................................................19

*Harris v. Kellogg Brown & Root Servs.*,
  724 F.3d 458 (3d Cir. 2013) .........................................................................7

*Lesniak v. Budzash*,
  626 A.2d 1073 (1993).....................................................................................26

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)........................................................................................16

*Mills v. Green*,
  159 U.S. 651 (1895)........................................................................................10

*N.A.A.C.P. v. City of Kyle, Tex.*,
  626 F.3d 233 (5th Cir. 2010) ........................................................................17

*Nader v. Schaffer*,
  417 F. Supp. 837 (D. Conn.), *aff'd*, 429 U.S. 989 (1976) ................................25

*Nat'l Taxpayers Union, Inc. v. United States*,
  68 F.3d 1428 (D.C. Cir. 1995).......................................................................17

iii

*New Alliance Party v. New York State Bd. of Elections*,
   861 F. Supp. 282 (S.D.N.Y. 1994) .......................................................................27

*New Jersey Conservative Party, Inc. v. Farmer*,
   753 A.2d 192 (N.J. Super. Ct. Ch. Div. 1999) .............................................27, 28

*New Jersey Turnpike Auth. v. Jersey Cent. Power & Light*,
   772 F.2d 25 (3d Cir. 1985) .............................................................................11

*Newark Cab Ass'n v. City of Newark*,
   901 F.3d 146 (3d Cir. 2018) ...........................................................................30

*Plains All Am. Pipeline L.P. v. Cook*,
   866 F.3d 534 (3d Cir. 2017) .........................................................12, 13, 14, 15

*Porta v. Klagholz*,
   19 F. Supp. 2d 290 (D.N.J. 1998) .....................................................................9

*Presbytery of the Orthodox Presbyterian Church v. Florio*,
   902 F. Supp. 492 (D.N.J. 1995) ........................................................................8

*Schundler v. Donovan*,
   872 A.2d 1092 (2005) .................................................................................27, 28

*Smith v. Penta*,
   405 A.2d 350 (N.J. 1979) ...............................................................................25

*Smolow v. Hafer*,
   353 F. Supp. 2d 561 (E.D. Pa. 2005) ................................................................7

*Step-Saver Data Systems, Inc. v. Wyse Technology*,
   912 F.2d 643 (3d Cir. 1990) ..........................................................................13

*Texas v. United States*,
   523 U.S. 296 (1998) ......................................................................................15

*Timmons v. Twin Cities Area New Party*,
   520 U.S. 351 (1997) ........................................................................21, 24, 31

*U.S. Parole Comm'n v. Geraghty*,
   445 U.S. 388 (1980) ....................................................................................9, 10

iv

*United States v. Antar*,
38 F.3d 1348 (3d Cir. 1994) .............................................................10

*United States v. Marcavage*,
609 F.3d 264 (3d Cir. 2010) .............................................................20

*Willis v. USP Canaan*,
635 Fed. Appx. 5 (3d Cir. 2015)..........................................................7

## **STATUTES**

N.J. Stat. Ann. §19:23-17 and-25.1 ....................................................32

N.J. Stat. Ann. §19:23-18...................................................................26

N.J. Stat. Ann. §19:23-18, -25.1 ...........................................................3

N.J. Stat. Ann. §19:23-18 and §19:49-2 ...............................................28

N.J. Stat. Ann. §19:23-24...............................................................2, 3, 7

N.J. Stat. Ann. §19:49-2..................................................................3, 26

42 U.S.C. § 1983.........................................................................19, 20

## **CONSTITUTION**

U.S. Const., art. 1, sec. 4, cl. 1.....................................................30, 31

N.J. Const., Art. II, §2.......................................................................14

## **RULES**

Rule 12(b)(1)....................................................................................7

Rule 12(b)(6)....................................................................................8

## **PRELIMINARY STATEMENT**

Plaintiffs' Complaint challenging the constitutionality of New Jersey's laws governing the placement of candidate names on ballots for primary elections should be dismissed.  Plaintiffs allege that New Jersey's statutes allowing candidates for various offices to appear associated or "bracketed" together on the Primary Election ballot—along with a shared slogan—violates their rights as candidates to associate, or not to associate, the right to vote, the Equal Protection Clause, and the Constitution's Elections Clause.  Plaintiffs' Complaint fails both for lack of subject matter jurisdiction and for failure to state a claim.

There are two threshold reasons this Court lacks jurisdiction at this time.  First, Plaintiffs' challenge to the operations of the 2020 Primary Election is rendered moot by the fact that the Election—which took place just one day after the initial complaint was filed by Plaintiff Conforti—has come and gone for five of the six candidate Plaintiffs.  Plaintiffs' claims—including the sixth candidate Plaintiff challenging ballot positions that have not even been drawn for the June 8, 2021 Primary Election—remains speculative and not yet ripe for review, because it is insufficiently certain whether Plaintiffs will run in the next election cycles, whether they will be opposed, and whether they will ultimately be affected by the statutes that govern ballot bracketing.

Even beyond these threshold issues, Plaintiffs' First Amended Complaint fails to state a claim upon which relief can be granted because New Jersey's bracketing statutes survive First and Fourteenth Amendment constitutional scrutiny on the merits, and do not violate the Elections Clause.  Importantly, while Plaintiffs offer a number of policy arguments against bracketing and the laws that allow it, the question here is <u>not</u> whether it is good policy to allow bracketing.  Instead, the only issue for this federal court to decide is whether allowing bracketing violates the federal Constitution.  It does not.  Accordingly, Plaintiffs' First Amended Complaint should be dismissed with prejudice.

## **PROCEDURAL HISTORY AND STATEMENT OF FACTS**[1]

The county clerks have sole jurisdiction over the primary election ballot design and candidate placement for primary election ballots.  N.J. Stat. Ann. §19:23-24 ("The position which the candidates and bracketed groups of names of candidates for the primary for the general election shall have upon the ballots ... shall be determined by the county clerks in their respective counties.").  This includes the ballot placement of candidates for nomination for the office of U.S. House of Representatives, as well for candidates seeking the nomination for the office of county clerk, municipal office, and political party county committee seats.

---

[1] As the Procedural History and Statement of Facts are inextricably intertwined, they have been presented together for the purpose of clarity and for the Court's convenience.

Candidates for nomination to the same office may request that the county clerk group their names together and that their identified common designation or slogan be printed opposite their names.  N.J. Stat. Ann. §19:23-18, -25.1.  In order for a candidate to use the same designation or slogan as the candidates filing a joint petition, the campaign manager of the candidates filing the joint petition must consent in writing to the county clerk.  N.J. Stat. Ann. §19:49-2.  The term for candidates filing a joint petition, as well as other candidates sharing the same slogan with joint petition candidates, is "bracketed."  N.J. Stat. Ann. §19:23-24.  Pursuant to N.J. Stat. Ann. §19:49-2, "bracketed" candidates shall have their names placed on the same line [or column] of the ballot by the county clerk.  The county clerk randomly draws for the ballot position of candidates on the primary election ballot. N.J. Stat. Ann. §19:23-24.  For the primary ballot, the bracketed candidates shall be drawn as a unit for ballot position.  *Id.*

Plaintiffs Christine Conforti, Arati Kreibich and Zinovia Spezakis sought the Democratic Party's nomination for the office of U.S. House of Representatives in New Jersey's Fourth, Fifth and Ninth Congressional District, respectively, in the July 7, 2020 Primary Election.  First Am. Compl., ECF No. 33 ¶¶19, 24 and 44. Plaintiffs Joseph Marchica and Kevin McMillan were on the July 7, 2020 Democratic Primary Election ballot for county committee in Hamilton Township in Mercer County and municipal committeeperson for Neptune Township Committee

3

in Monmouth County, respectively.  ECF No. 33 ¶¶33, 37.  Plaintiff Mico Lucide has filed paperwork to become a candidate for nomination for Atlantic County Clerk in the June 8, 2021 Democratic Primary Election.  ECF No. 33 ¶28.  Finally, Plaintiff New Jersey Working Families Alliance, Inc. ("NJWF") alleges to have endorsed unspecified unbracketed candidates in the July 7, 2020 Primary Election, ECF No. 33 ¶167.

In the July 7, 2020 Democratic Primary Election, Plaintiff Conforti, a candidate for the U.S. House of Representatives in the Fourth Congressional District, chose to be bracketed with other candidates for local, state, and national office, including Joseph R. Biden and Cory Booker, in ballots distributed in Mercer County.[2]  ECF No. 33 ¶114-15.  According to the Complaint, Plaintiff Conforti appeared on a Monmouth County ballot twice for different positions:  the House of Representatives and County Committee.  ECF No. 33 ¶144.  She was bracketed with other candidates for local, state, and national office for the County Committee position.  She was not bracketed with any other candidate for the House of Representatives position.  ECF No. 33 ¶144.  Plaintiff Conforti was not bracketed with candidates for any other office on the Ocean County Democratic Primary Election ballots.  ECF No. 33 ¶110

---

[2] The Mercer County ballot also placed one of Conforti's opponents, Stephanie Schmid, in the same column as Conforti and other candidates with whom Conforti bracketed.  However, Schmid did not have the same slogan as the bracketed candidates.  ECF No. 33 ¶¶114-15.

Plaintiff Conforti filed the initial complaint in this matter on July 6, 2020, ECF No. 1, one day before the July 7, 2020 Primary Election in New Jersey.  Plaintiff Conforti did not receive the nomination of the Democratic Party for U.S. House of Representatives.  ECF No. 33 ¶20.  Plaintiff Conforti asserts that she "intends to run for office again as a Democrat," but did not specify what office and at what time. ECF No. 33 ¶23.  Thereafter, Plaintiff Conforti was joined by the other Plaintiffs in filing the First Amended Complaint on January 25, 2021.  ECF No. 33.

Plaintiff Kreibich's name appeared on the Bergen County ballot for the Fifth Congressional District on the row or column designated for "Member of the House Representatives" with all other candidates for the Fifth Congressional District in the July 7, 2020 Democratic Primary Election.  ECF No. 33 ¶¶120.  On that ballot, she was bracketed with two other candidates for county freeholder.  ECF No. 33 ¶¶120, 123. For the Passaic, Sussex and Warren County ballots in the July 7, 2020 Democratic Primary Election for the Fifth Congressional District, candidates were not bracketed and did not appear on a specific row or column.  ECF No. 33 ¶125. Plaintiff Kreibich does not allege she has any intention to run for any office in the future.

Plaintiff Spezakis was bracketed with candidates on the Bergen and Hudson County Primary Election ballot, appearing on the second column on the Bergen County ballot and the first column on the Hudson County ballot.  ECF No. 33 ¶¶154

and 161 respectively.  Plaintiff Spezakis' name appeared on the ballot for the Ninth Congressional District on the row designated for "Member of the House Representatives" as all other candidates for the Ninth Congressional District in the July 7, 2020 Democratic Primary Election.  *Id.*   Plaintiff Spezakis alleges she plans to again seek the Democratic Party nomination for the Ninth Congressional District in the 2022 Primary.

Plaintiff Marchica ran for Hamilton Township Democratic County Committee in the July 7, 2020 primary.  His name appeared in the second column, along with other candidates for other positions who had different slogans and who did not bracket with each other.  ECF No. 33 ¶¶134-137.  Plaintiff Marchica's name appeared on the ballot for County Committee on one of the two rows designated for "County Committee."  ECF No. 33 ¶134.  He alleges that he plans to seek elected office again in the 2022 Democratic Primary.

Plaintiff McMillan ran for Neptune Township Committee in the July 7, 2020 Democratic Primary Election.   Plaintiff McMillan was bracketed with two candidates for County Committee on the Monmouth County Democratic Primary Election ballot.  ECF No. 33 ¶¶144 and 149.  Plaintiff McMillan's name appeared on the ballot in the row designated for "Member of the Township Committee" in Neptune Township's First Election District in the same row as all other candidates for Neptune Township Committee in the July 7, 2020 Democratic Primary Election.

6

ECF No. 33 ¶144.  McMillan does not allege specific plans to run for elected office again, only that he "is contemplating" it.  ECF No. 33 ¶42.

Plaintiff Lucide alleges that he has filed paperwork to be a candidate for the nomination for Atlantic County Clerk in the June 8, 2021 Democratic Primary Election.  ECF No. 33 ¶131.  "He does not want to bracket with any other candidates running for any other offices."  *Id.*  The filing deadline for candidate petitions to appear on the ballot for the June 8, 2021 Democratic Primary is April 5, 2021.  N.J. Stat. Ann. §19:23-24.

This motion to dismiss the First Amended Complaint follows.

## **STANDARD OF REVIEW**

On a motion to dismiss under Rule 12(b)(1), a District Court must distinguish between facial and factual challenges to its subject matter jurisdiction.  *See Willis v. USP Canaan*, 635 Fed. Appx. 5, 8 (3d Cir. 2015); *Harris v. Kellogg Brown & Root Servs.*, 724 F.3d 458, 464 (3d Cir. 2013).  "In a facial attack a Defendant argues that the Plaintiff did not properly plead jurisdiction . . . [whereas] a 'factual attack' asserts that jurisdiction is lacking on the basis of facts outside of the pleadings."  *Smolow v. Hafer*, 353 F. Supp. 2d 561, 566 (E.D. Pa. 2005).  The court should "consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the Plaintiff."  *Gould Elecs., Inc. v. United States*, 220

F.3d 169, 176 (3d Cir. 2000) (citations omitted).  Here, Plaintiffs bear the burden to prove jurisdiction.

Under Rule 12(b)(6), a reviewing court must accept the plaintiff's factual allegations as true.  However, the plaintiff's conclusory allegations and legal conclusions are not entitled to the same assumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Anspach v. City of Philadelphia*, 503 F.3d 256, 260 (3d Cir. 2007) (quoting *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (conclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent dismissal).

## **ARGUMENT**

### I.   **PLAINTIFFS' COMPLAINT MUST BE DISMISSED BECAUSE IT DOES NOT PRESENT A JUSTICIABLE CASE OR CONTROVERSY**

Plaintiffs' First Amended Complaint should be dismissed because there is no case or controversy for this court to review.  "Federal courts possess the power to resolve only actual 'cases' or 'controversies'."  *Presbytery of the Orthodox Presbyterian Church v. Florio*, 902 F. Supp. 492, 503 (D.N.J. 1995) (citing U.S. Const., art. III, sec. 2).  Courts are entitled to "enforce the case-or-controversy requirement through the several justiciability doctrines that cluster about Article III." *Coastal Outdoor Adver. Grp., LLC v. Township of Union*, 676 F. Supp. 337, 344 (D.N.J. 2009).  "The justiciability doctrines include 'standing, ripeness, mootness .

. . and the prohibition on advisory opinions.'" *Id.* (quoting *Toll Brothers, Inc. v. Township of Readington*, 555 F.3d 131, 137 (3d Cir. 2009)). Plaintiffs' claims are either moot, unripe, or lack requisite injury-in-fact. They should thus be dismissed in their entirety.

### A. Plaintiffs' Claims Regarding the 2020 Primary Election Are Moot Because It has Been Held.

"Although a person may have standing, the court may be prevented from exercising jurisdiction if the matter is moot." *Porta v. Klagholz*, 19 F. Supp. 2d 290, 296 (D.N.J. 1998). "Courts may not render opinions in moot cases, because to do so would be to issue an advisory opinion." *Id.* "[M]ootness has two aspects: when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980). To fulfill the latter requirement, "federal courts [must be] presented with disputes they are capable of resolving." *Id.* "The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Id.* (internal citations omitted).

In this case, Plaintiffs ask the court to issue declaratory and injunctive relief regarding something that has taken place in the past—the classic definition of a moot issue. Here, five of the six individual Plaintiffs' claims are rendered moot by the fact that the 2020 Primary Election has already occurred. In that election, Plaintiffs Conforti, Kreibich, Spezakis, Marchica, and McMillan all appeared already on the

Democratic Primary Election ballot on the same line or column as other candidates seeking nomination in the July 7, 2020 Primary Election. ECF No. 3 at ¶¶103, 109, 114, 120, 134, 144, 154 and 161. To now consider Plaintiffs' claims regarding that election, the court would in effect be rendering an advisory opinion. As the Supreme Court explained in *Mills v. Green*, 159 U.S. 651, 653 (1895), a case in which plaintiffs sought injunctive relief against officials administering voter registration, if "an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment but will dismiss the appeal." In that case and this one, that event is the election that already took place. The Court held it must dismiss the case on jurisdiction grounds, because courts may not "give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Id.* at 653.

To the extent that Plaintiffs claims that they will, or are considering to be candidates in future elections, ECF No. 33 ¶¶23, 32, 36, 42 and 47, those allegations falls short of the standard to meet the exception for mootness. A case is not moot where the dispute between the parties is "capable of repetition, yet evading review." *Geraghty*, 445 U.S. at 398; *see* also *United States v. Antar*, 38 F.3d 1348, 1356 (3d Cir. 1994). But "'[c]apable of repetition' is not a synonym for 'mere speculation;' it is a substantive term on which the moving party must provide reasonable quantity

of proof – perhaps even by the preponderance of evidence." *New Jersey Turnpike Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 33 (3d Cir. 1985).  Plaintiffs must demonstrate there is a "'reasonable expectation' or a 'demonstrated probability' that 'the same controversy will recur involving the same complaining party.'" *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 463 (2007) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).  Merely repeating the required language to demonstrate a lack of mootness is no proof in itself.

First, as to Plaintiffs Kreibich and McMillan, the First Amended Complaint contains no allegation that they intend to ever run for office again.  There is thus no basis to believe their personal stake in this dispute is "capable of repetition."  Second, as to Plaintiffs Conforti, Marchica, and Spezakis, the mere statement that they intend to run in the future do not meet the required showing.  The mere act of running for office is not the triggering event for the application of the bracketing statutes, nor injury to the Plaintiff.  In order for these Plaintiffs to have a claim based on bracketing in the 2021 or 2022 Democratic Primary Election (or, in Plaintiff Conforti's case, an unknown Democratic primary sometime in the future), numerous facts yet unknown would have to take place.  First, Plaintiffs must meet the qualifications to appear on those ballots.  Second, Plaintiffs must run in contested races.  Third, other candidates in Plaintiffs' races—whose identities and political leanings are currently unknown—must successfully filed a joint petition and sought

11

to bracket with other candidates.  Fourth, Plaintiffs must choose not to join the county joint petition bracket.  The exercise of this associative right by Plaintiffs or other, unknown, candidates in 2021, 2022 or thereafter is speculative.  This falls far short of meeting the standard to be excepted from the mootness doctrine.  *See FEC v. Wis. Right to Life*, 551 U.S. at 463 (holding the matter was capable for repetition when the defendant "credibly claimed that it planned on running '*materially similar*' future targeted broadcast ads") (emphasis added).

Accordingly, Plaintiffs' claim should be dismissed as moot.

### B. Plaintiffs' Claims Concerning the 2021 Atlantic County Clerk Primary Election, 2022 Primary Election, or Other Future Elections Are Not Yet Ripe for Review.

Plaintiffs also challenge the law based on the role it will play in the 2021 Atlantic County Clerk Primary Election and the 2022 Democratic Primary Election. However, such arguments fare no better because they are not ripe for review.

"[W]hether Plaintiffs have standing or their claims are ripe ... both turn on whether the threat of future harm ... is sufficiently immediate to constitute a cognizable injury." *Free Speech Coal., Inc. v. Att'y Gen. of United States*, 825 F.3d 149, 167 n.15 (3d Cir. 2016).  "[R]ipeness works 'to determine whether a party has brought an action prematurely ... and counsels abstention until such a time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'"  *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534,

539 (3d Cir. 2017).  In other words, courts must ensure that "the facts of the case are sufficiently developed, and whether a party is genuinely aggrieved" before exercising jurisdiction.  *Id.* (internal quotation marks omitted).

As Plaintiffs seek declaratory relief and injunctive relief, the Third Circuit utilizes a three-part test to determine whether a matter is ripe for judicial review first articulated in *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643 (3d Cir. 1990).  "Under the *Step-Saver* test, we look to '(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment.'"  *Plains All Am. Pipeline*, 866 F.3d at 540 (quoting *Khodara Envtl., Inc. v. Blakely*, 376 F.3d 187, 196 (3d Cir. 2004)).

As to the first factor in the *Step-Saver* test, Plaintiffs must show that "harm will result if the declaratory judgment is not entered."  *Id*. at 541.  "[W]hen 'the plaintiff's action is based on a contingency, it is unlikely that the parties' interests will be sufficiently adverse to give rise to a case or controversy within the meaning of Article III.'"  *Id.*  Here, Plaintiffs' allegations as to future elections are based on a series of contingencies.  The first is whether they will even run for office again, as they have only stated that they "intend" to seek the nomination of their party to run for office in 2021 or 2022 or at an undefined time.  Moreover, Plaintiffs' alleged harm is also entirely contingent on whether Plaintiffs will meet the qualifications to appear on the ballot in those future races, whether those races will be contested,

13

whether Plaintiffs ultimately decide to seek to join with other, yet unknown candidates in a joint petition, and whether any joint petition is filed by other candidates that would permit bracketing in the ballots on which Plaintiffs may appear.  This speculation is compounded for races in 2022 and thereafter, given the unknown redistricted boundaries of the 2022 Congressional Districts and other State election district boundaries, (*see* N.J. Const., Art. II, §2), which could very well impact who will be candidates in 2022 and whether Plaintiffs will want to petition to bracket with those candidates.  If any of those contingent events do not come true, there is no case or controversy for the court to review.  Because Plaintiffs' Complaint is based entirely on events that may never occur in 2021, 2022 or any election thereafter, the court lacks jurisdiction to adjudicate its unripe claims.

As to the second factor, the court should consider whether the cause of action is based on a "real and substantive controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be on a hypothetical set of facts."  *Plains All Am. Pipeline*, 866 F.3d at 542-43 (citations omitted).  In doing so, courts examine whether "'the legal status of the parties'" will change or be clarified by an opinion, as well as "'whether further factual development . . . would facilitate decision or 'the question presented is predominantly legal.'"  *Id.* (citations omitted).  As discussed above, the legal status of the parties in the controversy is entirely dependent on the contingencies discussed

14

above.  A court ruling today about the yet undrawn ballots listing yet unknown candidates for an election in the future is necessarily advisory.  Further development of facts is necessary before a "real and substantive controversy" as to those elections has occurred.

As to the final prong, courts look to "whether the parties' plans of actions are likely to be affected by a declaratory judgment . . . and considers the hardship to the parties of withholding judgment." *Plains All Am. Pipeline*, 866 F.3d at 543. Plaintiffs' broad speculation about the candidates that may run in the 2021 or 2022 Primary Elections, such that bracketing will occur to their detriment, is insufficient to show that the candidates' plan of action in 2021 or over one year from now in 2022 and beyond, will be affected by a declaratory judgment in this matter.  With such speculative contingencies, Plaintiffs cannot justify this court's review of an unripe matter. *Texas v. United States*, 523 U.S. 296, 300 (1998).

**C.    Plaintiff New Jersey Working Families Alliance Should Be Dismissed for Lack of Standing.**

Plaintiff NJWF lacks standing to bring a claim in the instant matter.  NJWF is "a non-profit, 501(c)(4) grassroots independent organization."  ECF No. 33 ¶48.  An organization may have standing to bring a claim where 1) the organization itself has suffered an injury to the rights and/or immunities it enjoys; or 2) where it is asserting claims on behalf of its members and those individual members have standing to bring those claims themselves. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 279

(3d Cir. 2014).  Where an organization asserts standing to sue on its own behalf, "a mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved.'"  *Id.* (quoting *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972)).  Plaintiff NJWF cannot show an injury-in-fact as to any particularized interest that was impacted by the challenged bracketing statute, as it is neither a candidate nor a voter who suffered any abridgement of constitutional rights.  Its only allegation as to its own affected interest is that it has to expend resources "to educate voters about the county line and other ballot design and ballot placement issues."  ECF No. 33 ¶55.  But this is precisely the kind of generalized "interest in the problem" that does not suffice for organizational standing.  That NJWF's voter education includes ballot education does not mean anything it disagrees with on the ballot is "an invasion of a legally protected interest," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "[A]n organization does not suffer an injury in fact where it expends resources to educate its members and others unless doing so subjects the organization to operational costs beyond those normally expended."  *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919–20 (D.C. Cir. 2015) (internal quotation marks and alterations omitted).  Here, NJWF acknowledges it already "devotes substantial time, effort, and resources to educating voters about primary election ballots" by "hiring

16

contractors to conduct … voter education." ECF No. 33 ¶54. It does not allege that it would no longer do so, or that it would cost less to do so, if each county's ballot were to look different. ECF No. 33 ¶54. NJWF "cannot convert its ordinary program costs into an injury in fact[.]" *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995). In short, NJWF's allegation that "its resources could have been spent on other unspecified . . .activities" is not sufficiently to confer organizational standing. *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 239 (5th Cir. 2010). It has "not demonstrated that the diversion of resources here concretely and 'perceptibly impaired' [its] ability to carry out its purpose." *Id.* (internal citations omitted).

Moreover, NJWF does not have standing to sue on behalf of its members. Where an organization is asserting that it has standing on behalf of its membership, it is asserting that it has "representational standing," which requires the organization to meet three criteria: "(1) the organization's members must have standing to sue on their own; (2) the interests the organization seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires individual participation by its members." *Blunt,* 767 F.3d at 279 (citations omitted). The Third Circuit in *Blunt* notes that "the plaintiff organization must 'make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Id*. (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)).

17

Plaintiff NJWF cannot assert standing as to its members because it fails to identify "at least one" member who has suffered or will suffer harm, and further, has no particularized injury-in-fact.   Plaintiff NJWF asserts it "endorsed numerous candidates in connection with the July 7, 2020 Primary Election" and "intends to endorse candidates, and has already begun making endorsements, in connection with the June 8, 2021 Primary Election," but this is not sufficient to confer standing.   ECF No. 33 ¶¶52-53.   Importantly, NJWF does not allege any "identified member"—any candidate or voter who is a member of NJWF—for whom it asserts suffered or will suffer from any alleged harm from the challenged bracketing statutes.   *Blunt*, 767 F.3d at 279.   In any event, any claim of harm would have the same mootness and ripeness problems as described above.

While Plaintiff NJWF may disagree with the bracketing statutes, the Supreme Court has been clear that "[t]here must be a limit to individual argument in such matters if government is to go on."   *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915).   The rights of all Plaintiffs, including NJWF, "are protected . . . by their power [to vote]" but they do not have standing to seek redress in court.   *Id.*   Plaintiff NJWF fails to meet the requirements for standing to bring suit and should be dismissed from the action with prejudice.   Accordingly, this court should dismiss Plaintiffs' First Amended Complaint.

## II.   PLAINTIFFS' FIRST AMENDED COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Even if the Court were to consider Plaintiffs' constitutional challenges to the bracketing statutes, they should be dismissed for failure to state a claim.  In Counts I to IV of their First Amended Complaint, Plaintiffs allege New Jersey's bracketing statutes violate the First and Fourteenth Amendments' right to vote, right to the freedom of association, or not to associate, and the right to equal protection.  ECF No. 33 ¶¶171, 184, 196 and 204.  They also allege that the state's bracketing statutes exceed the state's authority under the Elections Clause of the Constitution.  ECF No. 33 ¶¶218-221. These claims follow the common premise that Plaintiffs interest in not associating with any other candidates should be elevated above all other interests, including the interest of the state in ensuring that candidate associations are made clear to voters who seek that information and that ballots are organized in a cognizable manner.  Because that is wrong and contrary to the Constitution and Supreme Court precedents, Plaintiffs' claims must be dismissed.

Further, to the extent that Plaintiffs seek to assert an independent 42 U.S.C. § 1983 cause of action premised on the alleged deprivations of rights set forth in Counts I through I-IV of the First Amended Complaint, (*see* ECF No. 33 ¶¶ 224 and 225), that claim is subsumed within Counts I-IV. Section 1983 is not itself a source of substantive rights.  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  Rather, it is "a method for vindicating federal rights elsewhere conferred." *Id.* (quoting *Baker*

*v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Section 1983 provides the cause of action for Plaintiffs to assert a deprivation of constitutional rights under color of law.  Thus, Plaintiffs' independent Section 1983 cause of action premised on those constitutional violations asserts in Counts I-IV is redundant and should be dismissed.

### A. New Jersey's Bracketing Statutes Do Not Violate the First and Fourteenth Amendments.

Plaintiffs' claims as to violations of the right to associate or right to vote should be rejected because the challenged bracketing statutes do not burden those rights.  Alternatively, any burden is outweighed by the State's legitimate interests. [3]

The Supreme Court has enunciated a test for when election laws are challenged on First Amendment grounds.  First, courts "examine whether [the challenged law] burdens rights protected by the First and Fourteenth Amendments." *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 222 (1989).  If it does, then courts must "weigh the character and magnitude of the burden the State

---

[3] Plaintiffs contend that New Jersey's bracketing statutes are facially invalid.  "A facial challenge 'seeks to vindicate not only [Plaintiffs'] own rights, but those of others who may also be adversely impacted by the statute in question.'" *Bruni v. City of Pittsburgh*, 824 F.3d 353, 362 (3d Cir. 2016) (quoting *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 623 (3d Cir. 2013)).  In order to prevail on a facial challenge, Plaintiffs must establish "that no set of circumstances exists under which [the laws] would be valid, or that the [laws] lack[] any plainly legislative sweep." *Id.* (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010)).  Plaintiffs cannot clear that high bar. The as-applied claim fares no better.  An as-applied challenge "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010).  Plaintiffs' as-applied challenge to the bracketing statutes fails because Plaintiffs do not plead sufficient facts to show that the application of the bracketing statutes to Plaintiffs deprived them of the rights they describe any more than anyone else.

rule imposes on [First Amendment] rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357-58 (1997) (citing *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)) (internal quotation marks omitted). Simply put, the degree of scrutiny to which a law is subject depends on the burdens it imposes on candidates and on voters.  In short, any "[r]egulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest." *Id*. But "lesser burdens ... trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Id*. (quotation marks omitted).

First, Plaintiffs fail to allege a burden on the right to vote because the bracketing law does not restrict voters' ability to vote for the candidate of their choice.  Each of the five Plaintiffs who sought their party's nomination in the June 7, 2020 primary were on the ballot and received votes.[4]  Voters could see what positions Plaintiffs were running for, and who Plaintiffs chose to associate or not associate with by virtue of the shared slogans.  No voter "dilution" has occurred since each voter was able to vote for the candidate of their choosing.  There is neither exclusion of "certain classes of candidates from the electoral process," nor exclusion

---

[4] If Plaintiff Lucida meets the qualifications for placement on the ballot in the June 2021 Democratic Primary Election, the same will be true for him.

of voters' ability to cast votes for those candidates.  *Anderson v. Celebrezze*, 460 U.S. 780, 793 (1983).

Second, Plaintiffs fail to allege a violation of their freedom of association rights.  In fact, four of the Plaintiffs who ran in the June 7, 2020 primary willingly chose to bracket with at least some other candidates and in doing so, exercised their freedom to associate with some candidates and not with others.  For example, Conforti, who ran for the Fourth Congressional District, chose to bracket with other candidates for various positions in the Mercer County ballot, allowing her name to be placed on what Plaintiffs call the "county line."  ECF No. 33 ¶¶7, 114, 115.[5]  She also chose to bracket with other "county line" candidates in her race for County Committee on a Monmouth County ballot.  ECF No. 33 ¶144.  Kreibich, who ran for the Tenth Congressional District, chose to be bracketed with two candidates for other offices in the Bergen County ballot.  ECF No. 33 ¶120.  Spezakis, who ran for the Ninth Congressional District, bracketed with a U.S. Senate candidate (and at least some local race candidates, such as two candidates for Freeholder in Tenafly).  ECF No. 33 ¶154.  In fact, on the Hudson County ballot, she and the Senate candidate

---

[5] Plaintiff Conforti alleges she "was required to bracket with candidates she did not wish to associate with in order to protect her ballot position," ECF No. 33 ¶¶ 115, 201, referring to the fact that a different candidate for the same position was listed in the same column as her.  However, the placement of that candidate in the same column is not an operation of the New Jersey bracketing statutes; Plaintiff Conforti's complaint is thus really to how a particular county clerk designed a particular ballot, not to the New Jersey law of statewide operation.  That candidate did not have the same slogan as Plaintiff Conforti and other candidates in the "county line."  *Id.*

with whom she bracketed were listed first.  ECF No. 33 161.  And McMillan, who ran for Neptune Township Committee, bracketed with two other candidates for Monmouth County Committee.  ECF No. 33 ¶144.  While Plaintiffs allege that they did not *want* to associate with certain candidates but believed that doing so advantaged their position on the ballot, this choice is not one that arises to constitutional injury.  After all, every association or non-association can carry with it perceived benefits and harms.

More importantly, what Plaintiffs propose is not vindication of their own freedom of association, but court-ordered limits on the ability of other candidates to associate with each other.  Some of those candidates are listed first on the ballot by virtue of the office they seek—statewide offices for U.S. Senate or Governor.  But a wish that candidates for other offices do not associate with other candidates is not a cognizable First Amendment claim.  Candidates have the right to associate with each other and the corresponding right not to associate with any other candidates.  *Eu*, 489 U.S. at 224; ECF No. 33 ¶196 ("The right of association includes the corresponding right not to associate.").

Even if New Jersey's bracketing laws did constitute a burden on Plaintiffs' First Amendment right to associate or right to vote in some way, any burden imposed is not a severe one, meaning that they trigger a less exacting form of review.  As discussed above, "when a state election law provision imposes only 'reasonable,

nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434 (citing *Anderson*, 460 U.S. at 788).  Since the bracketing law applies with equal force to every candidate, since all candidates can choose to petition to bracket with other candidates, since the ballot accurately reflects who each candidate has chosen to associate with (or not associate with), and since voters can vote for any candidate of their choosing regardless of whether the candidate's name is bracketed with others, any burden on associational or voting rights are not severe.  A comparison to the Supreme Court's ruling in *Timmons*, 520 U.S. at 363, is instructive. There, the Court considered a Minnesota rule that forbade candidates from appearing on the ballot as the candidates of more than one party, and held that this restriction was not a severe burden on rights.  There, as here, candidates can "communicate information about [themselves] to the voters," and so long as voters can "vote for their preferred candidate."  *Id.* But unlike in *Timmons*, no candidate is restricted from the ability to communicate their association to voters as a result of New Jersey's bracketing law. Therefore, this case poses an even lesser burden on rights.

Because the bracketing statutes do not impose a severe restriction on constitutional rights, the court examines whether "legitimate interests asserted by the State are sufficient to outweigh the limited burden." *Burdick*, 504 U.S. at 440.

24

When the State advances "important regulatory interests," that is "generally sufficient to justify" restrictions on rights. Id. at 434 (quoting *Anderson*, 460 U.S. at 788).[6] "The State's interest in preserving the integrity of the electoral process is undoubtedly important." *Doe v. Reed*, 561 U.S. 186, 197 (2010); *see also Smith v. Penta*, 405 A.2d 350, 353 (N.J. 1979). Thus, the State has an interest in parties avoiding "primary election outcomes which will confuse or mislead the general electorate to the extent it relies on party labels as representative of certain ideologies; and preventing fraudulent and deceptive conduct which mars the nominating process." *Id.*; *see also Nader v. Schaffer*, 417 F. Supp. 837, 844 (D. Conn.), *aff'd*, 429 U.S. 989 (1976). Here, the Legislature could find that New Jersey's bracketing statutes protect important governmental interests, such as preserving candidates' rights to associate or not to associate, making those associative characteristics of candidates known to voters, providing a manageable and understandable ballot, and ensuring an orderly election process.[7] These interests outweigh any burden on the First Amendment rights, which, as discussed above, are either nonexistent or limited. A Legislature can legitimately conclude that the electoral process is best promoted by allowing candidates to file a joint petition with the county clerk to bracket their

[6] Courts have referred to the weighing evaluation from *Anderson* and *Burdick* as an "intermediate level of scrutiny." *Donatelli v. Mitchell*, 2 F.3d 508, 515 (3d Cir. 1993).

[7] In fact, based on the following analysis, the statutes would also survive strict scrutiny.

25

names together with a common designation of slogan, by allowing bracketed candidates to be randomly drawn for ballot position apart from candidates who are not bracketed, or by initiating the drawing process with candidates for statewide office (that is, U.S. Senate or New Jersey Governor).

First, New Jersey courts have long upheld the rights of candidates to bracket and appear together on the ballot based on the governmental interests that are served. In *Lesniak v. Budzash*, 626 A.2d 1073, 1080 (1993), the New Jersey Supreme Court stated that "[o]ne way political parties advance shared beliefs is by selecting candidates representing those shared beliefs to run in the general election." This principle applies with equal force to the right of candidates to bracket and associate with one another on a primary election ballot "in pursuit of shared political ideals." *Id.* The bracketing statutes on their face provide that designations and ballot bracketing may be used to evidence a particular issue and that "the common designation to be named by them shall be printed opposite their names." N.J. Stat. Ann. §19:23-18; *see also* N.J. Stat. Ann. §19:49-2. Because bracketing allows candidates to communicate associational qualities such as similarity of political and ideological beliefs to voters that may aid them in making decisions, some courts have even found that it promotes "an intelligible ballot," *Gillen v. Sheil*, 416 A.2d 935, 936-38 (N.J. Super. Ct. Law Div., 1980), reasoning that "[v]oters have an

26

important interest in finding candidates of similar persuasion grouped together rather than being spread upon the ballot in random fashion.." *Id*. at 939.

Second, New Jersey courts have also evaluated the ballot positioning rules to conclude that "there can be no rights violation where a county clerk makes a fair effort to follow the dictate that all candidates for the highest office, i.e., U.S. Senator or Governor, be treated equally to the extent physical constraints allow, as long as, at the same time, a good faith effort is made to effect the expressive rights of all candidates." *Schundler v. Donovan*, 872 A.2d 1092, 1099 (2005). The state has "the power . . . to regulate elections to 'ensure orderly, rather than chaotic, operation of the democratic process.'" *New Jersey Conservative Party, Inc. v. Farmer*, 753 A.2d 192, 197 (N.J. Super. Ct. Ch. Div. 1999) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). That includes "the State's interest in organizing a comprehensible and manageable ballot. A manageable ballot is one where the parties, offices and candidates are presented in a logical and orderly arrangement." *New Alliance Party v. New York State Bd. of Elections*, 861 F. Supp. 282, 296 (S.D.N.Y. 1994); *see also New Jersey Conservative Party*, 753 A.2d at 198 (quoting *New Alliance Party*). Here, the Legislature has determined that an orderly way to ensure a comprehensible ballot is to allow the county clerk to do an initial draw—at random—of candidates for statewide positions and their brackets. The "clerk has the responsibility to deal with petitions for the elections and to set up the ballot arrangements and array," and

"[u]nless specifically directed by statute as to a procedure, the clerk has discretion in carrying out this responsibility." *Schundler*, 872 A.2d at 1099.

While Plaintiffs prefer a different ballot design, those are merely Plaintiffs' own policy preferences. The role of the court is not to second guess the decisions of the Legislature.  This is especially important because Plaintiffs' theories about what led to a candidate's success or lack thereof often depend on numerous, sometimes unquantifiable, factors.  In *Clough v. Guzzi*, 416 F. Supp. 1057 (D. Mass. 1976), for example, the court rejected a challenge to the Massachusetts practice of according incumbent candidates the first position on the ballot for primaries. *Id.* at 1062.  The court held that because the ballot allows "non-incumbents and their supporters [to] have access" to voters, "even assuming some positional advantage here, the voters' right to choose their representatives is not sufficiently infringed as to warrant strict scrutiny of the Massachusetts statute and underlying legislative purpose." *Id.*  The court held that the Massachusetts statutes to be constitutionally permissible under the equal protection clause of the Fourteenth Amendment. *Id.* at 1068. *See also New Jersey Conservative Party*, 753 A.2d at 198. The court should similarly reject any invitation to wade into doing the Legislature's work here.

In conclusion, the bracketing statutes set forth at N.J. Stat. Ann. §19:23-18 and §19:49-2 serve the State's interests in ensuring that voters understand candidates' associational preferences, providing a manageable and understandable

ballot, and ensuring an orderly election process.  These interests outweigh any asserted infringement on Plaintiffs' rights, which is nonexistent or limited.  Eligible voters are no less able to vote for their preferred candidates and candidates have the ability to express their preference to associate, or not associate, with other candidates.   Plaintiffs' First Amended Complaint should be dismissed with prejudice.

### B. New Jersey's Bracketing Statutes Do Not Violate the Equal Protection Clause.

In this case, the bracketing laws are constitutionally nondiscriminatory:  they are neutral on their face and apply equally to all candidates.  The statutes allow all candidates seeking a political party's nomination for a specific office to be placed on the same line or column.   In other words, candidates are able to run and eligible voters can vote for them.  The bracketing law simply affects how those candidates who choose to associate with each other in a bracket will be presented on a ballot— a choice that is presented under the law to every candidate.  Therefore, Plaintiffs do not make out any colorable equal protection claim.

And in any event, any claim for equal protection can only be subject to rational basis review, given that Plaintiffs allege no suspect classification or abridgement of fundamental rights.  "Rational basis review . . . is met if there is any reasonably conceivable state of facts that could provide a rational basis for the differing

treatment." *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 156 (3d Cir. 2018).[8]

Plaintiffs cannot overcome that standard for the reasons stated above, as the State not only has a rational basis for its bracketing statutes—it has a compelling one. Because "rational-basis review under the Equal Protection Clause is not a license for courts to judge the wisdom, fairness, or logic of legislative choices," but rather "accord[s] a strong presumption of validity" to the statute, *Donatelli v. Mitchell*, 2 F.3d 508, 515 (3d Cir. 1993), Plaintiffs' equal protection claim must be rejected.

### C. The Bracketing Statutes Do Not Alter the Times, Places or Manner of Congressional Elections.

Plaintiffs' allegations that the bracketing statutes violate the Constitution's Elections Clause should also be dismissed. The Elections Clause is limited in scope: "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing [sic] Senators." *U.S. Const.*, art. 1, sec. 4, cl. 1. Nothing in the State's bracketing statutes impermissibly alters or adds to the times, places and manner of holding elections for U.S. Senate or House of Representatives.

---

[8] To the extent that Plaintiffs' theory is that they are treated differently in ballot positioning *because* of their decision to not exercise their right to associate with other candidates via bracketing, or because of other candidates' decision to exercise their right to associate, that claim is subsumed in the First Amendment discussion above.

"[T]he Constitution grants to the States a broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices." *Tashjian v. Republican Party of Connecticut* U.S. 208, 217 (1986).  As such, States can "enact[] comprehensive and sometimes complex election codes" to ensure free and fair elections.  *Anderson*, 460 U.S. at 788; *see also Timmons*, 520 U.S. at 358 ("States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder.").

Plaintiffs acknowledge that the bracketing statute in no way regulates the time or place of elections. ECF No. 33 ¶¶ 213, 214. They only claim that New Jersey's bracketing laws "exceed State authority to regulate the manner of congressional elections under the Elections Clause." *Id.* ¶ 220.  But as discussed above, the bracketing statutes fall well within the State's Constitutionally-delegated authority because they advance the Legislature's chosen method for administering free and fair elections.  Contrary to Plaintiffs' assertion, however, they do not "dictate[]" any electoral outcome.  *See* ECF No. 33 ¶ 216. Instead, they leave it solely to the discretion of each candidate whether they wish to associate with any other candidates on the primary election ballot, or not.  The bracketing statutes create no prohibition from any candidate appearing on the primary election ballot on the same line or column as all other candidates running for the House of Representatives.  And they

31

certainly do not impact the ability of any voter to cast their ballot for any candidate on the primary ballot.  Moreover, the New Jersey Legislature has left it entirely up to each individual candidate as to the slogan, if any, they wish to use on the primary ballot, subject to the restrictions set forth at N.J. Stat. Ann. §19:23-17 and-25.1.

Therefore, the allegations that the bracket statutes violate the Elections Clause, as set forth in Count Four of the First Amended Complaint, should be dismissed.

## CONCLUSION

For all of the foregoing reasons, the Attorney General's motion should be granted, and Plaintiffs' First Amended Complaint should be dismissed.

Respectfully submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By:   s/ George N. Cohen
      George N. Cohen
      Deputy Attorney General
      George.Cohen@law.njoag.gov
      Attorney ID No. 002941985

Date: March 29, 2021