BERRY SAHRADNIK KOTZAS & BENSON
A Professional Corporation
212 Hooper Avenue
PO Box 757
Toms River, NJ 08754
732-349-4800 (FAX: 732-505-9288)
Attorneys for Defendant Scott M. Colabella, in his official
capacity as Ocean County Clerk

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINE CONFORTI, ARATI KREIBICH, MICO LUCIDE, JOSEPH MARCHICA, KEVEN MCMILLAN, ZINOVIA SPEZAKIS, and NEW JERSEY WORKING FAMILIES ALLIANCE, INC.<br><br>               Plaintiff,<br><br>         vs.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, SCOTT M. COLABELLA, in his official capacity as Ocean County Clerk, and PAULA SOLLAMI COVELLO, in her official capacity as Mercer County Clerk, JOHN S. HOGAN, in his official capacity as Bergen County Clerk, EDWARD P. MCGETTIGAN, in his official capacity as Atlantic County Clerk, and E. JUNIOR MALDONADO, in his official capacity as Hudson County Clerk,<br><br>            Defendants | Civil Action No.: 3:20-cv-08267-FLW-TJB<br><br>**Civil Action** |

## BRIEF IN SUPPORT OF DEFENDANT, OCEAN COUNTY CLERK, SCOTT M. COLABELLA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO F.R.C.P. 12 (b)(1) and (b)(6)

Mathew B. Thompson, Esq.
**Bar ID#023121998**
*On the Brief*

TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . II

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . .1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . 2

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . 2

POINT I

    THE AMENDED COMPLAINT MUST BE DISMISSED PURSUANT TO
    FED.R.CIV.P 12(b)(1) BECAUSE THE PLAINTIFFS CANNOT
    ESTABLISH STANDING. . . . . . . . . . . . . . . . . . . 2

POINT II

    PLAINTIFF'S ALLEGED CONSTITUTIONAL VIOLATIONS MUST BE
    DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)6) . . . . . . 8

    A.   PLAINTIFFS AMENDED COMPLAINT FAILS TO STATE
        A CLAIM OF A VIOLATION OF A FIRST AND FOURTH
        AMENDMENT RIGHT UNDER THE FEDERAL CONSTITUTION
        OF THE RIGHT TO VOTE/VOTE DILUTION. . . . . . . . 10

    B.   PLAINTIFFS AMENDED COMPLAINT FAILS TO STATE A
        CLAIM OF A VIOLATION OF THE EQUAL PROTECTION
        CLAUSE AND FREEDOM OF ASSOCIATION UNDER THE
        FIRST AND FOURTEENTH AMENDMENT OF THE FEDERAL
        CONSTITUTION. . . . . . . . . . . . . . . . . . . 13

    C.   PLAINTIFFS AMENDED COMPLAINT FAILS TO STATE
        A CLAIM OF A VIOLATION HER RIGHT OF ASSOCATION
        GUARANTEED UNDER THE FIRST AND FOURTEENTH
        AMENDMENT OF THE FEDERAL CONSTITUTION . . . . . . 24

    D.   PLAINTIFFS AMENDED COMPLAINT FAILS TO STATE
        A CLAIM OF A VIOLATION OF THE ELECTIONS CLAUSE
        OF THE FEDERAL CONSTITUTION . . . . . . . . . . . 26

    E.   PLAINTIFFS AMENDED COMPLAINT FAILS TO STATE
        A CLAIM OF A DEPRIVATION OF ANY CONSTITUTIONAL
        OR FEDERAL STATUTORY RIGHTS . . . . . . . . . . . 29

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . 32

I

## TABLE OF AUTHORITIES

### Cases

American Party of Texas v. White, 415 U.S. 767 (1974). . . . . 16

Anderson v. Celebrezze, 460 U.S. 780 (1983) . . . . . . . . 16

Ashcroft v. Iqbal, 556 U.S. 662 (2009). . . . . . . . . . .8,9

Bado v. Gilfert, 13 N.J. Super. 363 (App. Div. 1951). . . .14,19

Baker v. McCollan, 443 U.S. 137 (1979). . . . . . . . . . 30

Baten v. McMaster, 967 F.3d 345 (4th Cir. 2020),
as amended (July 27, 2020). . . . . . . . . . . . . . 12

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). . . . . 8,9

Blunt v. Lower Merion Sch. Dist., 767 F.3d 247
(3d Cir.2014). . . . . . . . . . . . . . . . . . . . 3

Burdick v. Takushi, 504 U.S. 428 (1992) . . . . . . . . . 16

Chapman v. Houston Welfare Rights Org.,
441 U.S. 600 (1979) . . . . . . . . . . . . . . . . . 30

Clingman v. Beaver, 544 U.S. 581 (2005). . . . . . . . . 15,16

Constitution Party of Pa. v. Aichele,
757 F.3d 347 (3d Cir.2014) . . . . . . . . . . . . . . 3

Cook v. Gralike, 531 U.S. 510 (2001) . . . . . . . . . 28,29

Crawford v. Marion County Election Bd.,
553 U.S. 181 (2008). . . . . . . . . . . . . . . . 15,25

Edmonson v. Lincoln Nat'l Life Ins. Co.,
725 F.3d 406 (3d Cir.2013) . . . . . . . . . . . . . . 4

Eu v. San Francisco County Democratic Cent.
Committee, 489 U.S. 214 (1989) . . . . . . . . . 13,14,16,24

Farrington v. Falcey, 96 N.J. Super. 409 (App. Div. 1967) . . 20

Ferguson v. Skrupa, 372 U.S. 726, (1963). . . . . . . . . . . 15

Friends of the Earth, Inc. v. Laidlaw Envtl.
Servs. (TOC), Inc., 528 U.S. 167 (2000). . . . . . . . . . . . 8

Foster v. Love, 522 U.S. 67 (1997). . . . . . . . . . . . . 27

Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). . . . . 9

Golden State Transit v. City of Los Angeles,
493 U.S. 103 (1989) . . . . . . . . . . . . . . . . . . . . 31

Graham v. Connor, 490 U.S. 386, (1989). . . . . . . . . . . 30

Harrison v. Jones, 44 N.J. Super.,
456 (App. Div. 1957). . . . . . . . . . . . . . . . 14,19,23

Hawkes v. Gates, 129 N.J.L. 5 (1942). . . . . . 14,18,19,20,23

Henschke v. Borough of Clayton,
251 N.J. Super. 393 (App. Div. 1991) . . . . . . . . . . 30,31

Hillard v. New Jersey Army Nat'l Guard,
527 F. Supp. 405 (D.N.J. 1981). . . . . . . . . . . . . . . 30

Illinois Bd. of Elections v. Socialist Workers Party,
440 U.S. 173, 184, (1979) . . . . . . . . . . . . . . . . . 13

In re Hoffman, 134 N.J.L. 155 (1946) . . . . . . . . . . 14,19

Jacobson v. Florida Secretary of State,
974 F.3d 1236 (2020). . . . . . . . . . . . . . . . . . . . 29

Kokkonen v. Guardian Life Ins. Co. of Am.,
511 U.S. 375 (1994). . . . . . . . . . . . . . . . . . . . . 2

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). . . . . . 3

Maine v. Thiboutot, 448 U.S. 1 (1984) . . . . . . . . . . . 30

Middlesex County Sewage v. National Sea Clammers Assn.,
453 U.S. 1, 19, (1981). . . . . . . . . . . . . . . . . . . 31

III

Moskowitz v. Grogan, 101 N.J. Super. 111
(App. Div. 1968) . . . . . . . . . . . . . . . 14,19,20,21

Nader v. Federal Election Com'n,
725 F.3d 226 (D.C. Cir. 2013) . . . . . . . . . . . . . . . 4

Neale v. Volvo Cars of N. Am., LLC,
794 F.3d 353 (3d Cir.2015) . . . . . . . . . . . . . 3

N.J. Physicians, Inc. v. President of the United States,
653 F.3d 234 (3d Cir.2011) . . . . . . . . . . . . . . . 3

Phillips v. County of Allegheny,
515 F.3d 224 (3d Cir. 2008) . . . . . . . . . . . . 9

Quaremba v. Allan, 67 N.J. 1 (1975) . . . . . 14,15,17,21,22,23

Quern v. Jordan, 440 U.S. 332 (1979) . . . . . . . . . .30

Richardson v. Caputo, 46 N.J. 3 (1965) . . . . . . . . . .14,19

Reid v. Barret, 467 F. Supp. 124 (D.N.J. 1979), aff'd.,
615 F.2d 1354 (3rd Cir. 1990) . . . . . . . . . . . . . 31

Rucho v. Common Cause, 139 S. Ct. 2484 (2019) . . . . . 10,12,29

Schundler v. Donovan, 377 N.J. Super. 339
(App. Div. 2005) . . . . . . . . . . . . . . . 23

Summers Earth Island Institute,
555 U.S. 488 (2009) . . . . . . . . . . . . . . . 8

Storer v. Brown, 415 U.S. 724 (1974) . . . . . . . . . 27

Tashjian v. Republican Party of Connecticut,
479 U.S. 208 (1986) . . . . . . . . . . . . . . . 13,15,16

Toll Bros., Inc. v. Twp. of Readington,
555 F.3d 131 (3d Cir.2009) . . . . . . . . . . . 3,4

U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779 (1995) . . . .27

Washington v. Glucksberg, 521 U.S. 702 (1997)) . . . . . . 15,25

IV

West v. Atkins, 487 U.S. 32 (1988). . . . . . . . . . . . . . 30

Willdoner v. Borough of Ramsey, 162 N.J. 375 (2000) . . . . . 30

Williamson v. Lee Optical Co., 348 U.S. 483, 489 (1955). . 16,17

Worthington v. Fauver, 88 N.J. 183 (1982) . . . . . . . . . 28

Wright v. Roanoke Redevelopment and Housing Authority,
479 U.S. 418 (1987) . . . . . . . . . . . . . . . . . . . . 31

Youngstown Sheet & Tube Co. v. Sawyer,
343 U.S. 579 (1952) . . . . . . . . . . . . . . . . . . . . 28

**Statutes**

N.J.S.A. 19:49-2 . . . . . . . .  1,5,14,15,17,18,19,20,21,23,24,25

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . 29,30,31

**Constitutional Provisions**

U.S. Const. Art I., §4, clause 1 . . . . . . . . . . . . 15,26

U.S. Const., Art. III, sec.2 . . . . . . . . . . . . . . . 2,3,4

**Rules**

Fed. R. Civ. P. 12(b)(1). . . . . . . . . . . . . . . . . 1,2

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . 1,8,9

v

**PRELIMINARY STATEMENT**

This matter arises out of Plaintiffs Christine Conforti's ("Plaintiff Conforti") and New Jersey Working Families Alliance, Inc. ("Plaintiff NJWFA") Amended Complaint based upon federal constitutional grounds against the Ocean County Clerk, Scott M. Colabella, ("Ocean County Clerk"), Monmouth County Clerk, Christine Giordano Hanlon, ("Monmouth County Clerk"), and Mercer County Clerk, Paula Sollami Covello, ("Mercer County Clerk"), Atlantic County Clerk, ("Atlantic County Clerk") Edward P. McGettigan, and Hudson County Clerk, Junior Maldonaldo, ("Hudson County Clerk").

The gravamen of Plaintiffs' Amended Complaint is that the New Jersey bracketing statute, N.J.S.A. 19:49-2, violates their federally-protected constitutional rights of association (or right not to associate with a political party), equal protection of the laws as bracketed candidates obtain preferential ballot placement because of segregated ballot drawings between bracketed and unbracketed candidates, and causes Plaintiff Conforti's loss of votes due to her disadvantaged ballot position as an unbracketed candidate.

Plaintiffs' Complaint must be dismissed as a matter of law for a lack of subject matter jurisdiction under F.R.Civ.P 12(b)(1) or in the alternative for failure to state a claim under F.R.Civ.P. 12(b)(6).

1

## STATEMENT OF FACTS

Plaintiff Conforti is a former candidate for the 2020 Democratic Party nomination for the U.S. House of Representatives in New Jersey's Fourth Congressional District. (ECF 33 Paragraph 19)  Plaintiff Conforti was defeated in the Democratic Primary on July 7th, 2020. (ECF 33 Paragraph 20) Plaintiff Conforti, on her petition of nomination for the New Jersey democratic primary election in Ocean County, "**chose** to exercise her First Amendment Right not to associate with a U.S. Senate Candidate" and she was placed in the fourth column.  (EDC 33 Paragraph 110 & 112)

## LEGAL ARGUMENT

## POINT I

## THE AMENDED COMPLAINT MUST BE DISMISSED PURSUANT F.R.Civ.P 12(b)(1) BECAUSE THE PLAINTIFFS CANNOT ESTABLISH STANDING

A motion to dismiss brought pursuant to F.R.Civ.P 12(b)(1) addresses the court's subject matter jurisdiction.  The party asserting jurisdiction bears the burden of proving that the court has subject matter jurisdiction over their claims. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, (1994).

To establish Article III standing, Plaintiffs must demonstrate "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and

(3) a likelihood that the injury will be redressed by a favorable decision." Neale v. Volvo Cars of N. Am., LLC, 794 F.3d 353, 358-59 (3d Cir.2015) To allege the first element, injury-in-fact, a plaintiff must claim "the invasion of a concrete and particularized legally protected interest" resulting in harm "that is actual or imminent, not conjectural or hypothetical." Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 278 (3d Cir.2014) To be "concrete," an injury must be "real, or distinct and palpable, as opposed to merely abstract." N.J. Physicians, Inc. v. President of the United States, 653 F.3d 234, 238 (3d Cir.2011) To be sufficiently "particularized," an injury must "affect the plaintiff in a personal and individual way." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 n 1, (1992)) Plaintiffs do not allege an injury-in-fact when they rely on a "chain of contingencies" or "mere speculation." Constitution Party of Pa. v. Aichele, 757 F.3d 347, 364 (3d Cir.2014) The second element of Article III standing is causation. This element requires the alleged injury to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137-38 (3d Cir.2009) This requirement is "akin to 'but for' causation" in tort and may be satisfied "even where the conduct in question might not have been a proximate cause of

the harm." <u>Edmonson v. Lincoln Nat'l Life Ins. Co</u>., 725 F.3d 406, 418 (3d Cir.2013) An "indirect causal relationship will suffice," provided that "there is a 'fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant.' " <u>Toll Bros.</u>, 555 F.3d at 142  Finally, the plaintiffs must establish redressability. This requires the plaintiffs to show that it is "likely, as opposed to merely speculative," that the alleged injury will be redressed by a favorable decision. <u>Defenders of Wildlife</u>, 504 <u>U.S.</u> at 561.

As a threshold matter, Plaintiff Conforti and Plaintiff NJWFA lack the requisite standing to file suit in accordance with Article III standing on multiple grounds.  First, Plaintiffs do not provide any specific evidence of an injury-in-fact or imminent harm.   The Democratic primary election forming the subject matter of this Complaint has already passed. Article III standing requires more than "'some day' intentions" to support a finding of the "'actual or imminent' injury that our cases require." <u>Nader v. Federal Election Com'n</u>, 725 <u>F.3d</u> 226, 229 (D.C. Cir. 2013) <u>quoting</u> <u>Defenders of Wildlife</u>, 504 <u>U.S.</u> at 564.  Plaintiff Conforti merely pleads that she "intends to run" but provides no specificity as to when or for what office.  (ECF 33 Paragraph 23)

Moreover, Plaintiffs lack Article III standing due to the absence of proof that her injury is traceable to the Ocean

County Clerk's lawful exercise of discretionary authority under N.J.S.A. 19:49-2.    Plaintiffs only offer a summary of academic literature on positional bias effect instead of specific proof that she lost votes because of her placement on the ballot. Plaintiffs' Amended Complaint does not allege the Ocean County Clerk failed to treat all unbracketed, unaffiliated candidates in the democratic primary the same in terms of ballot drawing and placement in accordance with N.J.S.A. 19:49-2. Moreover, the Plaintiffs fail to allege that the defendant Ocean County Clerk acted with malice or an intent to discriminatory purpose. Rather, the Plaintiffs' Amended Complaint provides in part as follows:

76. The County Clerk is required to hold a ballot draw to determine the order of placement of various candidates running for the same office on the ballot. N.J.S.A. 19:23-24.

77. While N.J.S.A. 19:23-24 sets forth various procedures intended to ensure fairness as between the candidates being drawn, only some candidates get to enjoy those fair procedures on equal footing. **This is because New Jersey case law interpreting the relevant enabling statutes has determined that an initial drawing for ballot position should take place only as among candidates who are bracketed together with joint petition county candidates, except in years when candidates for U.S. Senate or Governor are on the ballot pursuant to N.J.S.A. 19:23-26.1 (in which case the latter offices are considered the pivot point, as further described in the next section).** (Emphasis Added)

78. Once the pivot point candidate(s) are drawn, all candidates running for other offices who are bracketed with them are automatically placed on that

5

same column. These bracketed candidates running for other offices are therefore eligible to obtain the first ballot position, and will be placed further to the left (or further to the top) of the ballot than other unbracketed candidates running for the same office.

79. Once the initial ballot draw has taken place, then a series of non-preferential ballot draws take place between remaining unbracketed candidates for the other offices. These candidates are not eligible to receive the first ballot position and will be placed further to the right (or further to the bottom) of the ballot than the bracketed candidates running for the same office.

\*\*\*

110. The Ocean County Clerk's Office drew for ballot position based upon U.S. Senate candidates first. **Because Conforti chose to exercise her First Amendment right not to associate with a U.S. Senate candidate, she was not included in the preferential ballot draw.** Therefore she was prohibited from having any chance to receive the first ballot position. (emphasis added)

111. Only one congressional candidate running against Conforti, Schmid, was automatically placed (in the first column) as a result of the initial ballot draw, due to the fact Schmid was bracketed with a Senate candidate.

112. Eventually, Conforti was placed in the fourth column, all by herself.

\*\*\*\*

(ECF 33)

The facts and law as alleged in the Plaintiffs' Amended Complaint clearly establishes that the Ocean County Clerk abided by all applicable statutes. The alleged injury, failure to achieve first ballot position, was a result of the Plaintiff

Conforti's conscious decision not to associate with either of the two Senate candidates for the Democratic Primary.   It was Plaintiff Conforti's decision not be associated with Senator Corey Booker who was aligned with the Official Regular Democratic Organization or with Lawrence Hamm, a candidate for U.S. Senate aligned with Bernie Sanders of the "Not Me. Us." of Democratic Party, that prevented her from obtaining either the first or second column.   Thus, Plaintiff cannot establish proof of causation her alleged injury is fairly traceable to the defendant Ocean County Clerk's conduct.

Further, Plaintiff sued the county clerks who are acting in good-faith under the color of state law, but did not name the State, or the Secretary of State as a defendant in this case. Naturally, naming either of these parties would bar this suit in federal court under Eleventh Amendment immunity principles.   In the same vein, however, the Ocean County Clerk exercised his discretionary authority under New Jersey state election law, the subject and enforcement of which emanates from the State, with the Secretary of State as the chief election official in the State.   Therefore, the Ocean County Clerk acting under the aegis of state election law should be conferred the same Eleventh Amendment immunity protections from suit in federal court as any other state official such as the Secretary of State.

Lastly, the Plaintiff NJWFA has failed to sufficiently plead associational standing.  To establish associational standing, an organization must prove that its members "would otherwise have standing to sue in their own right." _Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc._, 528 U.S. 167, 181 (2000). Plaintiff NJWFA contends that they have standing based on injuries because in "2020 alone, NJWF has endorsed numerous candidates in connection with the July 7, 2020 primary election, including many federal, state, and local unbracketed candidates."  (ECF 33 paragraph 11)  However, NJWF has failed to even allege that they have any members or voters within the geographical boundaries of the Fourth Congressional District in Ocean County or that they even endorsed Plaintiff Conforti.   That failure is fatal to their associational standing. See _Summers Earth Island Institute_, 555 U.S. 488 at 498.

## POINT II

### _PLAINTIFF'S ALLEGED CONSTITUTIONAL VIOLATIONS MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6)_

The standard for deciding a _F. R. Civ. P._ 12(b)(6) motion to dismiss was set forth by the U.S. Supreme Court in _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544 (2007) and _Ashcroft v. Iqbal_, 556 U.S. 662 (2009). Under Rule 12(b)(6), courts look at whether a complaint "states a plausible claim for relief" in

order to survive a motion to dismiss. Ashcroft, 556 U.S. at 679
(stating that "only a complaint that states a plausible claim
for relief survives a motion to dismiss" (citing Bell Atlantic
Corp., 550 U.S. at 556). Thus, to "prevent dismissal, all civil
complaints must now set out 'sufficient factual matter' to show
that the claim is facially plausible." Fowler v. UPMC Shadyside,
578 F.3d 203, 210 (3d Cir. 2009).

As the Third Circuit Court of Appeals has noted, "on a Rule
12(b)(6) motion, the facts alleged must be taken as true and a
complaint may not be dismissed merely because it appears
unlikely that the plaintiff can prove those facts or will
ultimately prevail on the merits." Phillips v. County of
Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted).
However, conclusory legal statements contained in a complaint
are not automatically accepted as true.  See Ashcroft, 556 U.S.
at 663 (stating that "the tenet that a court must accept as true
all of the allegations contained in the complaint is
inapplicable to legal conclusions"). Similarly, mere "labels and
conclusions" or a "formulaic recitation of the elements of a
cause of action will not do" either. Bell Atlantic Corp., 550
U.S. at 555. Instead, "[f]actual allegations must be enough to
raise a right to relief above the speculative level…" Id.;
accord Fowler, 578 F.3d at 210 (noting that a plaintiff is now

required "to plead more than the possibility of relief to survive a motion to dismiss").

**A.  PLAINTIFFS AMENDED COMPLAINT FAILS TO STATE A CLAIM OF A VIOLATION OF A FIRST AND FOURTH AMENDMENT RIGHT UNDER THE FEDERAL CONSTITUTION OF THE RIGHT TO VOTE/VOTE DILUTION.**

Plaintiff's theory of diminution of votes appears to be that, because of New Jersey's statutory primary ballot order requiring those primary candidates who have filed a joint petition with the County Clerk receive an initial drawing for ballot position, it takes a greater number of careful Ocean County Democratic Primary voters than voters that are less careful and will select a candidate that happens to appear first on the ballot, resulting in a diminution of Ocean County Democratic primary voters for themselves or their preferred candidates.

The Plaintiffs' theory presents a nonjusticiable political question.  Complaints of unfair partisan advantage based association of primary candidates on the order in which candidates appear on the primary ballot bear all the hallmarks of a political question under the recent decision of the Supreme Court in Rucho v. Common Cause, 139 S. Ct. 2484 (2019).  No judicially discernable and manageable standards exist to determine what constitutes a "fair" allocation of the top ballot position, and picking among the competing visions of fairness

"poses basic questions that are political, not legal." Id. at 2500.  And even if courts could agree on a standard for fairly ordering ballots, no objective measures exist to identify violations of that standard. See Id. at 2501. The Plaintiffs' lawsuit seeks this Court to require the Defendants County Clerk "to use a ballot organized by office sought, either (1) a rotational ballot order system … or (2) randomized ballot order" (ECF 33 Page 56 Paragraph c)   There are legal standards to adjudicate this kind of complaint because it does not allege any burden on individual voting rights.  Instead, adjudicating this kind of complaint would require this Court to pick among various conceptions of a politically "fair" ballot order that have no basis in the Constitution.  For that reason, the Plaintiffs' Amended Complaint "poses basic questions that are political, not legal." Id. at 2500. And even if a judicially discernable and manageable standard for fairly ordering a primary ballot exists, there are no standards for determining how much of a departure from an ideal primary ballot order amounts to a constitutional violation. See Id. at 2501.

The New Jersey ballot bracketing statutes do not make it more difficult for individuals to vote in a primary, or to choose the primary candidate of their choice.  It does not limit any member of political party from appearing on the primary ballot of that political party, which would interfere with a

11

voters' ability to vote for and support that candidate.   Nor does the statute burden the associational rights of political parties or primary candidates by interfering with their ability to freely associate with candidates of their choosing. (Plaintiff Conforti freely admits that she made the choice not to be associated with the slate of candidates associated with Senator Booker.)   Further, the statute does not create the risk that some votes will go uncounted or be improperly counted.   All the statute does is determine the order in which primary candidates appear in each office block on the ballot.

Further, vote dilution is concerned with votes being weighed differently.  See Rucho, at 2501 ("'[V]ote dilution' in the one person, one-vote cases refers to the idea that each vote must carry equal weight." (emphasis added)); cf. Baten v. McMaster, 967 F.3d 345, 355 (4th Cir. 2020), as amended (July 27, 2020) ("[N]o vote in the South Carolina system is diluted. Every qualified person gets one vote and each vote is counted equally in determining the final tally.").   The Plaintiffs have not alleged that any of the votes in the Democratic Primary were weighted or counted differently.

B.    **PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE A CLAIM OF A VIOLATION OF THE EQUAL PROTECTION CLAUSE AND FREEDOM OF ASSOCIATION UNDER THE FIRST AND FOURTEENTH AMENDMENT OF THE FEDERAL CONSTITUTION**

Plaintiff's associational rights not to associate with a political party cannot interfere or trump the associational rights of political parties to express their cohesive ideology and shared political beliefs through bracketing of candidates on a primary ballot.  In the instant matter, Plaintiffs have not named any political party as a defendant.  The rights of the respective political parties and whether their rights to associate with the Plaintiffs cannot be disputed.

Plaintiffs' Associational and Equal Protection rights fail under the balancing test set forth in Eu v. San Francisco County Democratic Cent. Committee, 489 U.S. 214 (1989) and Tashjian v. Republican Party of Connecticut, 479 U.S. 208 (1986).  Courts examine the constitutionality of a state election law first to determine whether it burdens rights protected by the First and Fourteenth Amendments, and secondly, whether the state can provide a compelling state interest justification for burdening such rights.  Tashjian v. Republican Party of Connecticut, supra, 479 U.S. at 217; Illinois Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 184, (1979).

13

It is well-settled that the associational rights of political parties are an essential right protected by the First Amendment. Eu, 489 U.S. 214 (1989); Richardson v. Caputo, 46 N.J. 3, 9 (1965).  For ballot drawing purposes, the county clerk's treatment of bracketed candidates as a single unit to be drawn for ballot placement is a statutory requirement under N.J.S.A. 19:49-2.

It is further settled precedent under New Jersey law that the county clerk's exercise of discretion to conduct ballot drawing separately between bracketed and unbracketed candidates does not in itself constitute an Equal Protection Clause violation.  Quaremba v. Allan, 67 N.J. 1, 10—18 (1975), relying on strong precedent in Hawkes v. Gates, 129 N.J.L. 5 (1942); In re Hoffman, 134 N.J.L. 155 (1946); Bado v. Gilfert, 13 N.J. Super. 363, 365 (App. Div. 1951); Harrison v. Jones, 44 N.J. Super. 456, 461 (App. Div. 1957); Moskowitz v. Grogan, 101 N.J. Super. 111, 116 (App. Div. 1968).

The county clerk's failure to draw ballot placement separately between bracketed and unbracketed candidates would defeat the legislative and constitutional purpose of bracketing. Plaintiff is challenging the system of bracketing itself without which political parties are restrained from the expressive free speech activity safeguarded in Eu, Quaremba, Richardson, and other cases.  Ballot drawings that included both bracketed and

unbracketed candidates for the same office would *a fortiori* the ability of candidates for different offices to bracket with each other under the same slogan.

A viable Equal Protection claim requires proof of "'invidious discrimination' which offends the Constitution." Quaremba v. Allan, 67 N.J. 1 (1975)(quoting Ferguson v. Skrupa, 372 U.S. 726, 732, (1963)).  Plaintiff has not provided any proof of intentional discrimination.  Instead, Plaintiff offers a professor's summary of the academic literature on positional ballot bias effect without any specific proof in this case that such bias occurred and resulted in loss of votes for Plaintiff that would have impacted the outcome of her primary election loss.

Plaintiff's facial challenge to N.J.S.A. 19:49-2 must also fail "where a statute has a "'plainly legitimate sweep.'" Crawford v. Marion County Election Bd., 553 U.S. 181, 202 (2008)(quoting Washington v. Glucksberg, 521 U.S. 702, 739–40, and n. 7, (1997)).

The State of New Jersey possess "'a broad power to prescribe the 'Times, Places, and Manner of holding Elections for Senators and Representatives,'[U.S. Const. Art I., §4, cl. 1, which power is matched by state control over the election process for state offices.'"  Clingman v. Beaver, 544 U.S. 581, 586, (2005)(quoting Tashjian, 479 U.S. at 217).  That state

authority over the election process is subject to limits established by the First Amendment rights of citizens, which includes the freedom of political association, or non-association. Eu, 489 U.S. at 222 (1989)(quoting Tashjiant, 479 U.S. at 217.

Election regulations imposing a severe burden on associational rights are subject to scrutiny by the courts and may be upheld only if they are narrowly tailored to serve a compelling state interest. Clingman, 544 U.S. at 586.

Election regulations that impose only modest burdens on associational rights requires a lower form of scrutiny in which the state shows important regulatory interests justify reasonable, non-discriminatory restrictions. Anderson v. Celebrezze, 460 U.S. 780, 788, (1983). The U.S. Supreme Court has "repeatedly upheld reasonable, politically neutral regulations that have the effect of channeling expressive activity at the polls." Burdick v. Takushi, 504 U.S. 428, 438, (1992).

Plaintiffs claiming an equal protection violation bear the burden of providing some substantive proof of discrimination. American Party of Texas v. White, 415 U.S. 767, (1974). The Equal Protection clause requires proof of invidious or intentional discrimination. Williamson v. Lee Optical Co., 348 U.S. 483, 489, (1955).

As the New Jersey Appellate Division explained in <u>Quaremba</u>, 128 <u>N.J. Super.</u> at 574 (App. Div. 1974), quoting from the U.S. Supreme Court's reasoning in <u>Williamson</u>:

> Legislatures are presumed to have acted constitutionally and their statutory classifications will be set aside only if no grounds can be concerned to justify them. The measure of equal protection has been described variously as whether 'the distinctions drawn have some basis in practical experience,…or whether the legislature's action falls short of 'the invidious discrimination,…or whether 'any state of facts reasonably may be conceived to justify' the statutory discrimination,…or whether the classification is 'on the basis of criteria wholly unrelated to the objective of (the) statute.'

Plaintiff's precise constitutional challenge to <u>N.J.S.A.</u> 19:49-2 has already been litigated before the New Jersey Appellate Division and the Supreme Court of New Jersey.

<u>N.J.S.A.</u> 19:49-2 provides in relevant part:

> For the primary election for the general election in all counties where voting machines are or shall be used, all candidates who shall file a joint petition with the county clerk of their respective county and who shall choose the same designation or slogan shall be drawn for position on the ballot as a unit and shall have their names placed on the same line of the voting machine; and provided further, that all candidates for municipal or party office in municipalities in counties where voting machines are or shall be used who shall file a petition with the clerk of their municipality bearing the same designation or slogan as that of the candidates filing a joint petition with the county clerk as aforesaid, may request that his or her name be placed on the same line of the voting machine with the candidates who have filed a joint petition with the county clerk as aforesaid by so notifying the county clerk of

said county in writing within two days after the
last day for filing nominating petitions and
thereupon the county clerk shall forthwith notify
the campaign manager of such candidates filing a
joint petition as aforesaid of said request, and
if the said campaign manager shall file his
consent in writing with the said county clerk
within two days after the receipt of said
notification from said county clerk, the clerk of
said county shall place the name of such candidate
on the same line of the voting machine on which
appears the names of the candidates who have filed
the joint petition as aforesaid; provided, also,
that any candidate filing a petition with the
Attorney General may request that his or her name
be placed on the same line of the voting machine
with the candidates who have filed a joint
petition with the county clerk as aforesaid by so
notifying the county clerk of said county in
writing within two days after the last day for
filing nominating petitions, and thereupon the
county clerk shall forthwith notify the campaign
manager of such candidates filing a joint petition
as aforesaid of said request, and if the said
campaign manager shall file his consent in writing
with the said county clerk within two days after
the receipt of said notification from said county
clerk, the clerk of said county shall place the
name of such candidate on the same line of the
voting machine on which appears the names of the
candidates who have filed the joint petition as
aforesaid.

As early as 1942, the former Supreme Court of New Jersey

examined N.J.S.A. 19:49-2 and concluded that the statutory

language revealed no express legislative direction "as to the

drawing for positions upon the ballot where there are present in

the field both independent unaffiliated candidates and

candidates affiliated under a slogan." Hawkes v. Gates, 129

N.J.L. 5, 11 (1942). Therefore, the Hawkes court reasoned that

the legislature's silence on ballot drawing between bracketed and unbracketed candidates indicated that discretion rests with the county clerk, and it was not for the court to read into the statute legislative meaning where no specific instructions have been expressed in the statute. Id. at 11.

The Hawkes line of cases reinforced the court's position that N.J.S.A. 19:49-2's silence meant that the legislature afforded the county clerks discretionary authority to conduct ballot drawing as it pertains to bracketed and unbracketed candidates. See, In re Hoffman, 134 N.J.L. 155 (1946); Bado v. Gilfert, 13 N.J. Super. 363, 365 (App. Div. 1951); Harrison v. Jones, 44 N.J. Super. 456, 461 (App. Div. 1957); Moskowitz v. Grogan, 101 N.J. Super. 111, 116 (App. Div. 1968).

The Supreme Court of New Jersey established the court's responsibility to check the seemingly amorphous discretionary authority of the county clerks in this realm.  In Richardson v. Caputo, 46 N.J. 3 (1965), the court addressed whether the Essex County Clerk properly exercised his discretionary authority by reassigning ballot positions for remaining candidates for different offices after candidates for one particular political party withdrew from the race.  Crucially for our purposes, the court held that although the court generally defers to the legislative scheme and delegated authority, "if it clearly appears the course taken is not rooted in reason, the bounds of

19

the delegated authority have been exceeded and it is the duty of the court to say so." Id. at 9. Put simply, the county clerk's discretionary authority is subject to judicial review when his exercise of discretion is not "rooted in reason."

With that judicial responsibility in mind, the court underscored the county clerk's authority to place bracketed candidates on separate columns from unbracketed unaffiliated candidates. Farrington v. Falcey, 96 N.J. Super. 409, 412–14 (App. Div. 1967).

The Appellate Division's opinion in Moskowitz is the court's clearest undergirding of the county clerk's authority to draw ballots separately between bracketed candidates as a single unit and unbracketed, unaffiliated candidates. Supra. at, 116. Moskowitz was a consolidated case involving two separate county clerks but the same candidates in the same Democratic primary. In both primary ballots, an unbracketed, unaffiliated candidate-plaintiff requested that the county clerks draw for positions on the ballot among all four slates of candidates, including as between bracketed and unbracketed candidates. Moskowitz at 113–116.

Relying on Hawkes and its progeny as well as the statutory language of N.J.S.A. 19:49-2, the court held that "where there are two or more groups of candidates whose joint petitions were filed with the County Clerk (hereafter called, for brevity,

20

county candidates), there must be a drawing for position as between those groups, drawn as a unit," regardless of whether candidates for municipal or state-wide office affiliated with the county candidates. Moskowitz, at 116.

Similarly, the court reasoned, two or more groups of state candidates who are bracketed but not affiliated with county candidates are entitled, as units, to a drawing position on the ballot as among themselves, but not as against those affiliated with the county candidates because that would displace state candidates bracketed with county candidates from being on the same line. Id. at 116.

The Quaremba set of cases yielded judicial opinions from the Appellate Division and the Supreme Court of New Jersey that essentially confronted the same constitutional challenge to N.J.S.A. 19:49-2 presented in Plaintiffs' Complaint. These separate opinions stem from the same lawsuit. In Quaremba, plaintiffs were candidates who lost in the Republican primary election. Two of the plaintiffs were candidates for state senator and one plaintiff was a candidate for county freeholder. Analogous to the instant complaint, these plaintiffs filed a declaratory judgment action that N.J.S.A. 19:49-2 was unconstitutional on equal protection grounds because it arbitrarily favors bracketed primary candidates with advantageous ballot placement. Quaremba, Supra at 572.

21

The Appellate Division underscored the Legislature's authority to adopt reasonable regulations for the conduct of primary and general elections, and found "nothing inherently wrong or invidious in permitting candidates with like views to be grouped together on the ballot." Id. at 575.  Importantly, the Appellate Division rejected the argument that simply pointing to the statutory scheme's separate ballot drawing of bracketed and unbracketed candidates constituted evidence of an equal protection violation.  The state's interest in permitting political parties and candidates to affiliate with political parties on the ballot is the quintessence of free speech and associational rights.

Likewise, the Supreme Court of New Jersey in Quaremba reaffirmed the Appellate Division's reasoning on this equal protection point. Supra.  The court also amplified the point that even if plaintiffs' allegation that unaffiliated candidates would draw more votes if other candidates were not permitted to bracket together, "it affords no basis for invalidating, as unreasonable, the legislative determination that whatever the effect on an unaffiliated candidate, the public interest is better served by permitting a group of candidates having common aims or principles and authorizing those candidates 'to have this fact brought to the attention of the voter in a primary election with the additional effectiveness produced by alignment

22

of their names on the machine ballot.'" Quaremba, at 13 (quoting Harrison, at 461.

More recently, in Schundler v. Donovan, 377 N.J. Super. 339 (App. Div. 2005), the Appellate Division confronted the same constitutional claim that separate ballot draws for ballot placement between bracketed and unbracketed candidates constituted discrimination violative of the equal protection clause. Id. at 343. The court followed the Hawkes line of cases in affirming the county clerk's discretion in this statutory scheme and indicated that the court will not substitute the clerk's judgment unless that judgment is not "rooted in reason." Id. at 343–44. Equally significant, the court grounded its decision in the plain meaning and language of N.J.S.A. 19:49-2.

Against the weight of seventy-eight years of precedent, Plaintiff in this case challenges the constitutionality of the bracketing statute on equal protection grounds analogous to prior challenges to the same statute, except in this case Plaintiff offers nascent research of positional bias effect to establish an equal protection clause violation.

C.   PLAINTIFFS AMENDED COMPLAINT FAILS TO STATE A
     CLAIM OF A VIOLATION HER RIGHT OF ASSOCATION
     GUARANTEED UNDER THE FIRST AND FOURTEENTH
     AMENDMENT OF THE FEDERAL CONSTITUTION

Plaintiffs alleges that N.J.S.A. 19:49-2, imposes severe
burdens on her right of association, or not to associate with a
political party and her right to be treated the same as
bracketed candidates in the ballot drawing by drawing for ballot
placement in the same drawing as bracketed candidates.

Under Eu's balancing test, N.J.S.A. 19:49-2 arguably
burdens Plaintiff's right of association, or non-association,
and her right to equal treatment in ballot placement in
Democratic primary elections.   Plaintiff's Complaint myopically
views this balancing test in terms of her rights burdened
instead of examining the burdens imposed on political parties
and bracketed candidates' associational rights if the bracketing
statute was invalidated.

The state's interest in drawing separate ballot placement
for bracketed and unbracketed candidates is rooted in the plain
language of N.J.S.A. 19:49-2.   The statute and precedential case
law interpreting this statute have reached a point that it is a
well-settled legal expectation, if not requirement, that the
county clerk draw ballots for bracketed candidates as a single
unit; therefore, ballot drawings for bracketed candidates cannot

include unbracketed candidates.  The state's interest in upholding N.J.S.A. 19:49-2 is to permit candidates of similar political views to associate through the expressive activity of bracketing on the ballot.  Conversely, bracketing also permits candidates of similar views to draw a contrast or disassociation with candidates of differing views for voters.

Moreover, Plaintiff's facial challenge to N.J.S.A. 19:49-2 runs counter to the U.S. Supreme Court's jurisprudence in this area that requires facial challenges to a statute to fail where the statute has a "plainly legitimate sweep." Crawford., at 202 (2008)(quoting Washington, at 739–40, and n. 7.  N.J.S.A. 19:49-2's plainly legitimate sweep is the fostering and promotion of constitutionally protected expressive activity and political speech through bracketing and ballot placement.

If Plaintiffs' challenge prevails in this case, it will impose severe burdens on the associational rights of political parties, small and large, and candidates who share similar views and want to express those views to the voters by grouping together on the ballot in accordance with N.J.S.A. 19:49-2 and the rest of the statutory scheme created by the Legislature.

The statute does not limit the ability of the Plaintiffs access to the primary ballot or burden their freedom of association.  Plaintiff Conforti voluntarily utilized her right not to associate with other candidates and still was afforded

the opportunity to have her name appear on the primary ballot.
The Plaintiffs right to association was never implicated.
Accordingly, there is no valid federal constitutional basis to
invalidate a statute created and passed by democratically
elected Legislatures in New Jersey since 1941.

### D.   PLAINTIFFS AMENDED COMPLAINT FAILS TO STATE A CLAIM OF A VIOLATION OF THE ELECTIONS CLAUSE OF THE FEDERAL CONSTITUTION

Plaintiffs' main argument is that the bracketing and
ballot placement system in a closed primary election is designed
to disfavor and penalize unbracketed federal candidates that are
not aligned with the endorsed candidate of the political party
conducting the election and the system violates the Elections
Clause set forth in Article I, Section 4, Clause 1 of the United
States Constitution. (ECF 33 page 54 paragraph 218)  That clause
reads:

> The Times, Places, and Manner of holding Elections for
> Senators and Representatives, shall be prescribed in
> each State by the Legislature thereof; but the
> Congress may at any time by Law make or alter such
> Regulations, except as to the Places of [choosing]
> Senators.
>
> [U.S. Const. art. I, § 4, cl. 1.]

Plaintiffs do not contend that the New Jersey bracketing
and ballot system regulates the time, place, or manner of
elections.  (ECF 33 Page 53 Paragraphs 213-217).  Rather, the

Plaintiffs' allege the bracketing and ballot procedure exceeds the state's authority and is constitutionally invalid. However, that argument is not supported by settled law. In fact, precedents of the United States Supreme Court have adopted a more expansive notion of the form of state legislative power that may satisfy the Elections Clause.

The Elections Clause authorizes each state to enact processes to be followed in electing members of the House and Senate from their respective states.  As the Supreme Court recognized in Storer v. Brown,  415 U.S. 724 (1974), states retain the power of establishing the time, place, and manner of primary elections under the Elections Clause. "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." Id. at 730. The Court explained in Foster v. Love,  522 U.S. 67, 69 (1997), that the Elections Clause **is a default provision; it invests the States with responsibility for the mechanics of congressional elections.**" (emphasis added)  The Supreme Court reiterated in U.S. Term Limits, Inc. v. Thornton,  514 U.S. 779, 832 (1995) that the Framers intended the Elections Clause to grant states the authority to create procedural regulations for such federal elections.

Moreover, judicial review of the exercise of delegated powers is limited. "In such circumstances the executive action should be 'supported by the strongest of presumptions and the widest latitude of judicial interpretation, and the burden of persuasion would rest heavily upon any who might attack it.'" Ibid. (quoting Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 637 (1952) (Jackson, J., concurring)) (concerning analogous concepts of federal separation of powers). "In such a case [the executive's] actions pursuant to that delegated authority are constitutionally valid as long as he has not exceeded his statutory authority and the government as a whole has the power to act." Worthington v. Fauver, 88 N.J. 183 at 208 (1982).

The Supreme Court has held that "States may regulate the incidents of such elections, including balloting, only within the exclusive delegation of power under the Elections Clause." Cook v. Gralike, 531 U.S. 510, 523 (2001)  In Cook, the Court invalidated a Missouri law that placed a pejorative designation next to candidates who refused to support term limits because the law did not regulate the time, place, or manner of elections but instead sought to disparage or endorse particular candidates. Id. at 523-26. "Thumbs-up" laws could be evaluated under that standard, as could other laws that arguably do not regulate the manner of elections, like laws that provide favorable font choices for certain candidates.  But Cook and the

Elections Clause provide no standard to evaluate laws that govern ballot order.  Unlike the law at issue in Cook or a "thumbs-up" law, laws that govern ballot order plainly regulate the manner of elections and are within the power of states to enact.  See Jacobson v. Florida Secretary of State, 974 F.3d 1236 (2020) In Jacobson, the Eleventh Circuit Court of Appeals recently had that the choice of what order to adopt cannot be evaluated using legal standards because it "poses basic questions that are political, not legal." Id. quoting Rucho, 139 S.Ct. at 2500.

### E.   PLAINTIFFS AMENDED COMPLAINT FAILS TO STATE A CLAIM OF A DEPRIVATION OF ANY CONSTITUTIONAL OR FEDERAL STATUTORY RIGHTS

The Plaintiffs has asserted claims arising under §1983 of the Civil Rights Act.  The relevant provisions of the Civil Rights Act, 42 U.S.C. §1983 state:

> "Every person who, under color of any statute, ordinance . . . of any State. . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The language of the statute is implicitly clear in that it only provides a remedy for deprivations of rights secured by the

Constitution or federal laws.  Maine v. Thiboutot, 448 U.S. 1, 7

(1984)  It is well settled that §1983 is not itself a source of

substantive rights but merely provides a method for vindicating

federal rights conferred elsewhere.  Graham v. Connor, 490 U.S.

386, (1989), citing Baker v. McCollan, 443 U.S. 137, 144, n.3,

(1979).  See also Willdoner v. Borough of Ramsey, 162 N.J. 375

(2000).  Moreover, 42 U.S.C. §1983 is the exclusive remedy for

violations of the United States Constitution by state officials.

Quern v. Jordan, 440 U.S. 332, 351 (1979)  Further, as noted by

the Court in West v. Atkins, 487 U.S. 32, 48, (1988):

> To state a claim under §1983, a plaintiff
> must allege the violation of a right secured
> by the Constitution and laws of the United
> States, and must show that the alleged
> deprivation was committed by a person
> acting under color of State law.  (Emphasis
> added; cites omitted)

Thus, "one cannot go into court and claim a violation of

§1983- for §1983 by itself does not protect anyone from

anything." Chapman v. Houston Welfare Rights Org., 441 U.S.

600, 617 (1979); Baker, supra, at 144, n.3 (1979)  Likewise,

under §1983 a plaintiff is required to set forth specific

conduct by the governmental entity or its officials that

violated the Constitutional rights of plaintiff.  Hillard v. New

Jersey Army Nat'l Guard, 527 F. Supp. 405 (D.N.J. 1981);

Henschke v. Borough of Clayton, 251 N.J. Super. 393, 401 (App.

Div. 1991)  A plaintiff is required to establish with

specificity that the defendant deprived him of a right secured by the Constitution. Reid v. Barret, 467 F. Supp. 124 (D.N.J. 1979), aff'd., 615 F.2d 1354 (3rd Cir. 1990); Henschke, supra. Clearly, a plaintiff must assert the violation of a federal right and such assertion must not be too vague and amorphous to be beyond the competence of the judiciary to enforce. Golden State Transit v. City of Los Angeles, 493 U.S. 103, 106, (1989); Middlesex County Sewage v. National Sea Clammers Assn., 453 U.S. 1, 19, (1981); Wright v. Roanoke Redevelopment and Housing Authority, 479 U.S. 418, 431-432 (1987).

It is evident that Plaintiffs have failed to meet the requirements of §1983. Even a most liberal reading of the complaint in favor of Plaintiffs fails to demonstrate the deprivation of any rights protected by the Constitution or federal statutes vis a vis Defendant Ocean County Clerk. Plaintiff fails to plead adequate facts demonstrating the Defendant, Ocean County Clerk's application of the bracketing statutes deprived Plaintiff Conforti of a particular right. The First and Fourteenth Amendments do not guarantee Plaintiff Conforti the right to a specific location on the primary election ballot.   Plaintiff Conforti's name and the names of the other candidates running in the primary election for the position of U.S. House of Representative for the 4th Congressional District were on a row designated for candidates

running for the "Member of the House of Representatives, 4th Congressional District" on the County of Ocean Primary Election Ballot.

### OCEAN COUNTY CLERK JOINS AND ADOPTS MOTIONS BY OTHER CO-DEFENDANTS AND STATE OF NEW JERSEY

Defendant, Ocean County Clerk hereby joins and adopts any arguments for dismissal made by the co-defendants, State of New Jersey and any other interveners to file briefs in this matter to the extent that said arguments apply to this defendant.

### CONCLUSION

For the reasons set forth herein, it is respectfully submitted that Plaintiffs Amended Complaint should be dismissed as a matter of law.

> BERRY, SAHRADNIK, KOTZAS & BENSON
> Attorneys for Defendant Ocean
> County Clerk, Scott M. Colabella
>
> s/ Mathew B. Thompson

Dated: March 29, 2021