## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINE CONFORTI, ARATI KREIBICH, MICO LUCIDE, JOSEPH MARCHICA, KEVIN MCMILLAN, ZINOVIA SPEZAKIS, and NEW JERSEY WORKING FAMILIES ALLIANCE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, SCOTT M. COLABELLA, in his official capacity as Ocean County Clerk, PAULA SOLLAMI COVELLO, in her official capacity as Mercer County Clerk, JOHN S. HOGAN, in his official capacity as Bergen County Clerk, EDWARD P. MCGETTIGAN, in his official capacity as Atlantic County Clerk, and E. JUNIOR MALDONADO, in his official capacity as Hudson County Clerk, <br><br> Defendants. | Case No.: 3:20-cv-08267 |

---

## DEFENDANT COVELLO'S BRIEF IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

---

**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102
Telephone: 973-533-0777
Fax: 973-533-1112
*Counsel for Paula Sollami Covello*

*Of Counsel and On the Brief:*
Angelo J. Genova, Esq. (005501979)
Jennifer Borek, Esq. (041131997)

*On the Brief:*
Christopher Zamlout, Esq.  (302652019)

# TABLE OF CONTENTS

STATEMENT OF FACTS & PROCEDURAL HISTORY ......................................2

   A.  Parties.......................................................................................2

   B.  Background of New Jersey's Statutory Framework for Ballot Placement .4

   C.  Plaintiffs' Candidacies.................................................................7

   D.  Plaintiffs' Complaint ...............................................................12

LEGAL ARGUMENT .............................................................................14

   I.     LEGAL STANDARD ..............................................................14

   II.    PLAINTIFFS DO NOT HAVE STANDING. ...........................15

   III.   PLAINTIFFS' CLAIMS ARE MOOT....................................18

   IV.   PLAINTIFFS FAIL TO STATE A CLAIM. ...........................20

   A.  Counts I and III Should be Dismissed. ......................................24

   B.  Count II Should be Dismissed. .................................................31

   C.  Count IV Should be Dismissed. ...............................................35

   D.  Count V Should be Dismissed..................................................38

CONCLUSION ...................................................................................... 40

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Celebrezze*,
  460 U.S. 780 S. Ct. 1564, 75 L. Ed. 2d 547 (1983) ................... 14, 15, 34

*Anderson. Council of Alternative Political Parties v. Hooks*,
  179 F.3d 64 (3d Cir.1999) .......................................................... 22

*Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*,
  576 U.S. 787 (2015) ................................................................... 36

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................... 14

*Baker v. McCollan*,
  443 U.S. 137, n.3 (1979) ............................................................ 39

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................... 14

*Bodine v. Elkhart Cty. Election Bd.*,
  788 F.2d 1270 (7th Cir. 1986) ..................................................... 27

*Burdick v. Takushi*,
  504 U.S. 428 (1992) .............................................................. 25, 34

*Cal. Democratic Party v. Jones*,
  530 U.S. 567 (2000) ............................................. 25, 29, 30, 33

*Chapman v. Houston Welfare Rights Org.*,
  441 U.S. 600 (1979) ................................................................... 39

*Cleburne v. Cleburne Living Center, Inc.*,
  473 U.S. 432 (1985) ................................................................... 31

*Clingman v. Beaver*,
  544 U.S. 581 (2005) ................................................................... 32

*Clough v. Guzzi*,
  416 F. Supp. 1057 (D. Mass. 1976) ............................................. 26

*Connelly v. Steel Valley Sch. Dist.*,
   706 F.3d 209 (3d Cir. 2013)...........................................................31

*Cook v. Gralike*,
   *531 U.S. 510 (2001)* .....................................................................35

*Democratic-Republican Org. v. Guadagno*,
   900 F. Supp. 2d 447 (D.N.J. 2012), *aff'd*, 700 F.3d 130 (3d Cir. 2012).passim

*Donovan v. Punxsutawney Area Sch. Bd.*,
   336 F.3d 211 (3d Cir. 2003).............................................. 19, 20, 28

*Eu v. San Francisco County Democratic Central Committee*,
   489 U.S. 214 (1989) ...................................................2, 21, 24, 28

*Foster v. Love*,
   522 U.S. 67 (1997)........................................................ 36, 37, 38

*Friends of Earth, Inc.*,
   528 U.S. 167 (2000) .....................................................................16

*Golden State Transit v. City of Los Angeles*,
   493 U.S. 103 (1989) .....................................................................39

*Graham v. Connor*,
   490 U.S. 386 (1989) .....................................................................39

*Harrison v. Jones*
   44 N.J. Super. 456 (App. Div. 1957)...............................................23

*Hawkes v. Gates*,
   129 N.J.L. 5 (1942).......................................................................32

*Hennings v. Grafton*,
   523 F.2d 861 (7th Cir. 1975)..........................................................26

*Henschke v. Borough of Clayton*,
   251 N.J. Super. 393 (App. Div. 1991) .............................................39

*Hillard v. New Jersey Army Nat'l Guard*,
   527 F.Supp. 405 (D.N.J. 1981)................................................. 39, 40

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ......................................................... 16

*Illinois Bd. of Elections v. Socialist Workers Party*,
    440 U.S. 173 (1979) ......................................................... 25

*James v. City of Wilkes-Barre*,
    700 F.3d 675 (3d Cir. 2012) ............................................... 14

*Jenness v. Fortson*,
    403 U.S. 431 (1971) .................................................. 25, 34

*Kay v. Austin*,
    621 F.2d 809 (6th Cir.1980) ............................................... 20

*Los Angeles County v. Davis*,
    440 U.S. 625 (1979) .................................................. 19, 33

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ......................................................... 16

*Maine v. Thiboutot,*
    448 U.S. 1 (1984) ............................................................ 39

*Maldonado v. Houstoun*,
    157 F.3d 179 (3d Cir. 1998) ............................................... 31

*Mayer v. Belichick*,
    605 F.3d 223 (3d Cir. 2010), *cert denied*, 562 U.S. 1271 (2011) .............. 8

*Minn. Voters Alliance v. Ritchie*,
    720 F.3d 1029 (8th Cir. 2013) ............................................ 27

*Mintz v. Cuomo*,
    45 N.Y. 2d 918 (1978) .................................................... 23

*Moskowitz v. Grogan*,
    101 N.J. Super. 111 (App. Div. 1968) ................................... 29

*Munro v. Socialist Workers Party*,
    479 U.S. 189 (1986) ...................................................... 25

*Nader v. Schaffer*,
   417 F. Supp. 837 (D. Conn. 1976), aff'd, 429 U.S. 989 (1976) ........... 30, 32

*New Alliance Party v. New York State Board of Elections*,
   861 F. Supp. 282 (S.D.N.Y. 1994) ................................................. 26

*New Jersey Conservative Party, Inc. v. Farmer*,
   332 N.J. Super. 278 (1999) .......................................................... 26

*Norman v. Reed*,
   502 U.S. 279 (1992) .................................................................. 34

*Perry v. Judd*,
   471 F. App'x 219 (4th Cir. 2012) ................................................. 20

*Pettengill v. Putnam Cty. R-1 Sch. Dist., Unionville, Mo.*,
   472 F.2d 121 (8th Cir. 1973) ....................................................... 26

*Powell v. McCormack*,
   395 U.S. 486 (1969) ............................................................. 19, 26

*Quaremba v. Allan*,
   67 N.J. 1 (1975) ............................................................. 22, 23, 24

*Ray v. Blair*,
   343 U.S. 214 (1952) .................................................................. 30

*Reid v. Barret*,
   467 F. Supp. 124 (D.N.J. 1979), aff'd 615 F.2d 1354 (3rd Cir. 1990).. 39, 40

*Reilly v. Ceridian Corp.*,
   664 F.3d 38 (3d Cir. 2011) .......................................................... 16

*Republican Party of Pa. v. Cortes*,
   218 F. Supp. 3d 396 (E.D. Pa. 2016)......................................... 26, 28

*Reynolds v. Sims*,
   377 U.S. 533 (1964) ............................................................. 26, 27

*Richardson v. Caputo*,
   46 N.J. 39 (1965)..................................................................... 33

*Rogers v. Corbett*,
    468 F.3d 188 (3d Cir. 2006)..........................................................15

*Rose v. Parker,*
    91 N.J.L. 84 (Sup. Ct. 1917)......................................................22

*Roudebush v. Hartke*,
    405 U.S. 15 (1972)....................................................................37

*Rutgers University Student Assembly v. Middlesex County Bd. of Elections*,
    446 N.J. Super. 221 (App. Div. 2016) ..........................................33

*Sarvis v. Alcorn*,
    826 F.3d 708 (4th Cir. 2016)......................................................23

*Serpentfoot v. Rome City Comm'n*,
    426 F. App'x 884 (11th Cir. 2011)...............................................26

*Short v. Brown*,
    893 F.3d 671 (9th Cir. 2018)......................................................27

*Sojourner A. v. N.J. Dep't of Human Servs.*,
    177 N.J. 318 (2003)...................................................................32

*Sonneman v. State*,
    969 P.2d 632 (Alaska 1998) .......................................................25

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ..............................................................16

*Storer v. Brown*,
    415 U.S. 724 (1974) .............................................................36, 37

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .............................................................16, 18

*Tashjian v. Republican Party of Connecticut*,
    479 U.S. 208 (1986) ..................................................................28

*U.S. Term Limits, Inc. v. Thornton*,
    514 U.S. 779 (1995) .............................................................36, 37

*United Hunters Ass'n v. Adams*,
   36 N.J. 288 (1962) ..........................................................................33

*United States v. Classic*,
   313 U.S. 299 (1941) ........................................................................37

*Voting Integrity Project, Inc. v. Bomer*,
   199 F.3d 773 (5th Cir. 2000)......................................................37, 38

*Walsh v. Boyle*,
   179 A.D. 582 (First Dept. 1917) .......................................................23

*Wright v. Roanoke Redevelopment and Housing Authority*,
   479 U.S. 418 (1987) ........................................................................39

## STATUTES

Civil Rights Act, 42 U.S.C. § 1983 ..............................................passim

*N.J.S.A.* § 10:6-2 ......................................................................8, 30

*N.J.S.A* 19:23-6 .......................................................................3, 7, 8

*N.J.S.A.* 19:23-18.....................................................................3, 7, 8

*N.J.S.A.* 19:23-24......................................................................4, 5, 8

*N.J.S.A.* 19:49-2 ..................................................................passim

## OTHER AUTHORITIES

New Jersey Policy Perspective, Does the County Line Matter? An Analysis
   of New Jersey's 2020 Primary Election Results (Aug. 13, 2020) ......6, 7-8, 12

## RULES

Fed. R. Civ. Proc. 12(b)(6) ....................................................2, 6, 9, 21

### Constitutional Provisions

Article I, Sec. 4 of the U.S. Constitution ............................................25

U.S. Const., Art. I, Sec. 4, Cl. 1 ......................................................35

## PRELIMINARY STATEMENT

With this untimely action, plaintiffs, Christine Conforti ("Conforti"), Arati Kreibich ("Kreibich"), Mico Lucide ("Lucide"), Joseph Marchica ("Marchica"), Kevin McMillan ("McMillan"), Zinovia Spezakis ("Spezakis"), and New Jersey Working Families Alliance, Inc. ("NJWF" and, collectively, "Plaintiffs") seek to have this Court declare unconstitutional several longstanding practices of counties and their duly elected county clerks in preparing for primary and general elections. These age old practices – specifically, the ballot design, candidate ballot placement drawing, and the placement of candidates and bracketing procedures – have withstood similar and unsuccessful challenges. This Court should similarly reject Plaintiffs' claims here, on both procedural and substantive grounds.

Courts have held that equitable doctrines preclude late-filed constitutional challenges to elections rules, Yet, despite Plaintiffs having had ample time to challenge the ballot design prior to their respective elections, Plaintiffs rested on their rights.  As such, Plaintiffs are not at risk of any concrete and particularized injury, and thus cannot properly invoke this Court's jurisdiction under Article III of the U.S. Constitution. That begins and ends the Court's inquiry, rendering further proceedings unnecessary. Even if jurisdiction was not an absolute bar, Plaintiffs' claims are stale and have become moot as a result of the certification of the primary election results and the completion of the general election. Because all but one of

the Plaintiffs have not been a candidate in any race in the State of New Jersey since their unsuccessful previous races, their claims are moot.

Finally, even if the Court were to reach the merits of Plaintiffs' claims, the United States Supreme Court in its *Eu v. San Francisco County Democratic Central Committee* decision, laid the foundation for subsequent decisions, including in the District Court for New Jersey, that the States may not impinge on a candidate's freedom of association to bracket with other candidates - even if it effects ballot placement - absent a compelling state interest.  Such State laws may treat candidates affiliated with political parties differently than unaffiliated candidates, so long as they do not prevent a qualified elector from exercising his constitutional right to vote for any person he chooses.

For all these reasons, the Complaint should be dismissed.

## STATEMENT OF FACTS & PROCEDURAL HISTORY[1]

### A.    Parties

Conforti was a federal candidate who ran for the U.S. House of Representatives in New Jersey's Fourth Congressional District (comprised of Monmouth, Mercer, and Ocean Counties) in connection with New Jersey's July 7, 2020 Democratic Primary Election. (Plaintiffs' Amended Complaint ("Pl. Comp."),

---

[1] The Statement of Facts and Procedural History are combined for judicial efficiency.

Dkt. No. 28, ¶ 19). Conforti lost the 2020 primary election. (*Id.*, at ¶ 20). [2]

Kreibich was an unsuccessful federal candidate who ran for the U.S. House of Representatives in New Jersey's Fifth Congressional District (comprised of Bergen, Passaic, Sussex, and Warren Counties) in connection with New Jersey's July 7, 2020 Democratic Primary Election. (*Id.*, at ¶ 24-25).

Spezakis was an unsuccessful federal candidate for the U.S. House of Representatives in New Jersey's Ninth Congressional District (comprised of Bergen, Passaic, and Hudson Counties) in connection with New Jersey's July 7, 2020 Democratic Primary Election. (*Id.*, at ¶ 44-45).

Marchica was an unsuccessful candidate for party office on the County Committee in Mercer County from Hamilton Township's 27th Election District in connection with New Jersey's July 7, 2020 Democratic Primary Election. (*Id.*, at ¶ 33-34).

McMillan was an unsuccessful incumbent candidate for Township Committeeperson in Neptune Township, Monmouth County seeking reelection to the Neptune Township Committee in connection with New Jersey's July 7, 2020 Democratic Primary Election. (*Id.*, at ¶ 37, 42).

Lucide is a current candidate running for County Clerk in Atlantic County in

---

[2] Plaintiffs' allegations in the Complaint are assumed to be true for the purpose of Covello's motion to dismiss only, pursuant to the standard of review for such a motion under Fed. R. Civ. Proc. 12(b)(6).

connection with New Jersey's June 8, 2021 Democratic Primary Election. (Pl. Comp., at ¶ 28).

NJWF is a non-profit, 501(c)(4) grassroots independent organization involved in elections, and endorses candidates. (*Id.*, at ¶48).

Hon. Paula Sollami-Covello ("Covello") is the Mercer County Clerk (*Id.*, ¶ 59). Hon. Christine Giordano Hanlon ("Hanlon") is the Monmouth County Clerk (*Id.*, ¶ 57). Hon. Scott M. Colabella ("Colabella") is the Ocean County Clerk (*Id.*, ¶ 58). Hon. John S. Hogan ("Hogan") is the Bergen County Clerk. (*Id.*, at ¶ 60). Hon. Edward P. McGettigan ("McGettigan") is the Atlantic County Clerk. (Pl. Comp., at ¶ 61). Hon. E. Junior Maldonado ("Maldonado") is the Hudson County Clerk (Maldonado, along with Covello, Hanlon, Colabella, Hogan, and McGettigan are referred to collectively as "Defendants"). (*Id.*, at ¶ 62).

## B. Background of New Jersey's Statutory Framework for Ballot Placement

New Jersey organizes its primary election ballots through a grid of rows and columns, with the specific placement of the offices sought and the candidates for those offices varying by County. *See N.J.S.A.* 19:49-2. A candidate's placement on the ballot depends on various factors including, but not limited to, endorsements from county political party committees, affiliation with other candidates for the same office or others, and a ballot drawing conducted by the County Clerk. *See N.J.S.A.* 19:23-6, 19:23-18, and 19:23-24.

4

New Jersey law requires candidates who want to bracket with candidates running for other offices to file a joint petition with the County Clerk. (Pl. Comp., at ¶ 30; *N.J.S.A.* 19:23-18; *N.J.S.A.* 19:49-2.)  *N.J.S.A.* 19:49-2 sets forth the specific procedure for bracketing. Candidates who file petitions with the Municipal Clerk or with the Secretary of State must, within 48 hours of the petition filing deadline, request permission from the campaign manager of joint petition county candidates to be bracketed with those joint petition county candidates.[3] (Pl. Comp., at ¶ 74). Upon notification of the request, the campaign manager has 48 hours to grant permission to bracket with the joint petition county candidates. Candidates for other offices that submit petitions with the County Clerk are also able to bracket with the joint petition county candidates. *Ibid.*  Successfully bracketed candidates will be featured on the same column of the ballot with the same slogan. (*Id.*, at ¶ 75).

The clerk will then conduct a drawing to determine the order of the ballot, the procedures of which are dictated by *N.J.S.A.* 19:23-24. The County Clerk has discretion as to which office to draw first for ballot positioning (i.e., Governor, United States Senate, etc.).  The office which the County Clerk chooses to draw first, is referred to by Plaintiff as the "pivot point." (Pl. Comp., ¶83).  "All candidates who shall file a joint petition with the county clerk of their respective county and who

---

[3] *N.J.S.A* 19:23-6 sets forth which candidates running for which office must file their nominating petitions with the Municipal Clerk, County Clerk, or Secretary of State.

shall choose the same designation or slogan shall be drawn for position on the ballot as a unit and shall have their names placed on the same line of the voting machine." *N.J.S.A.* 19:23-24.  Thus, once one of the bracketed candidates – the pivot point - is placed on the ballot, all other candidates in that bracketed slate will be automatically placed in the same column, including those running for other offices. (Pl. Comp., at ¶ 89).  The County Clerk then draws for the second position and so on. *N.J.S.A.* 19:23-24.

Once the initial ballot draw for the pivot point office has taken place, then a series of ballot draws take place between remaining candidates for the other offices who were not bracketed with a pivot point candidate.  These candidates are not eligible to receive the first ballot position and will be placed further to the right (or further to the bottom) of the ballot than the bracketed candidates running for the same office. (Pl. Comp., ¶ 79-80.)

Plaintiffs specifically challenge the procedures delineated by *N.J.S.A.* 19:23-24 – although expressly stated in the Complaint as a challenge to the processes used by the County Clerks – and claims that the statute creates an unfair framework whereby certain candidates are automatically guaranteed more favorable ballot placement, on the "pivot point," due to their bracketing. (*See* Pl. Comp., at ¶ 185). Plaintiffs summarize their allegations to the unconstitutionality of *N.J.S.A.* 19:23-24 in the following manner:

> unbracketed candidates have often been relegated to a ballot placement where they are (a) placed multiple columns away from the bracketed candidates, (b) stacked in the same column as another candidate for the exact same office, and/or (c) placed in the same column as candidates with whom they did not request to bracket and who requested a different ballot slogan. These candidates are harder to find in such obscure portions of the ballot commonly known as "Ballot Siberia" … and otherwise appear less important, further confusing voters and depriving candidates and their supporters of a fair chance to compete for the same office.

(Pl. Comp., ¶ 80).  Plaintiff alleges that bracketing and the procedure for the ballot draw leads to unequal, and preferential ballot placement. (*Id.,* at ¶ 186).

### C.   Plaintiffs' Candidacies

#### i.   Conforti

Each County Clerk's Office conducted a ballot draw for the Democratic Primary Election on April 9, 2020. (Id., ¶ 102).On or about March 30, 2020, Conforti filed a petition with the Secretary of State's Office so that her name would appear on the 2020 Democratic Primary Election ballot in New Jersey's Fourth Congressional District, which includes portions of Mercer, Monmouth, and Ocean Counties, to run against incumbent Republican Congressman Christopher Smith. (Pl. Comp., at ¶ 101.)

Plaintiff ran against two other candidates for the Democratic slot: Stephanie Schmid and David Applefield. *See,* New Jersey Policy Perspective, <u>Does the County Line Matter? An Analysis of New Jersey's 2020 Primary Election Results</u> (Aug. 13, 2020) <u>https://www.njpp.org/publications/report/does-the-county-line-matter-an-</u>

analysis-of-new-jerseys-2020-primary-election-results/ ("Does the County Line Matter?").[4] Plaintiff won the Democratic party endorsement in Mercer County, defeating Schmid and Applefield. (Pl. Comp., ¶ 116). Plaintiff was therefore listed in the first column in Mercer County. (Pl. Comp., ¶ 115). Plaintiff alleges that she "was required to bracket with other candidates whom she did not wish to associate with in order to protect her ballot position" and that she "was placed in the same column as Schmid, even though she is running against her."[5] *Ibid.*

The Monmouth and Ocean County Clerks' offices drew for ballot position based on U. S. Senate candidates first. (Pl. Comp. ¶¶ 104, 110.) Schmid won the Monmouth County Democratic endorsement and Ocean County Democratic endorsement, and therefore received the first line on the ballot in both counties. (Pl. Comp., ¶¶ 105, 111; Does the County Line Matter, *supra*.) Conforti was listed on the fourth line in both Monmouth and Ocean counties. (*Id.*, ¶¶ 107, 112.)

Plaintiff was ultimately unsuccessful in her bid to be the Democratic candidate to challenge incumbent Christopher Smith, losing to Schmid. Although Plaintiff

---

[4] In deciding a Rule 12(b)(6) motion, a court may go outside the complaint to consider matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010), *cert denied*, 562 U.S. 1271 (2011).

[5] Mercer County Democratic Party bylaws allow all candidates that receive at least 40% of the vote at the party's endorsement convention to appear on the county line. Schmid was also able to hit the 40% threshold, but Plaintiff received a larger percentage of the convention votes and the endorsement, so was listed first. *Id.*

won Mercer county, receiving 57% of the vote, Schmid won Monmouth and Ocean counties, receiving 70% and 77% of the vote, respectively.[6]

### ii.   Marchica

On or about March 21, 2020, Marchica filed a petition with the Hamilton Township Municipal Clerk so that his name would appear on the 2020 Democratic Primary Election ballot for County Committee in Hamilton Township's 27th Election District in Mercer County. (Pl. Comp., ¶ 132). Marchica had two opponents for County Committee, Timothy L. Bauersachs and Wendy Sturgeon. (*Id.*, ¶ 136). There were two open seats on County Committee between the three candidates. (*Id.*, at ¶ 134).

The Mercer County Clerks' offices drew for ballot position based on U. S. Senate candidates first. (*Id.*, at ¶ 135). Both Bauersachs and Sturgeon won the Mercer County Democratic endorsement and were bracketed with a Senate candidate, thus, entitling them to the first column. (*Id.*, at ¶ 136). Marchica voluntarily chose not to associate with any Senate candidate. (Pl. Comp., at ¶ 135). Marchica was listed on the second line in Mercer County. (*Id.*, at ¶ 137). Marchica was ultimately unsuccessful in his bid, losing to Bauersachs and Sturgeon, who

---

[6] *See* New Jersey Policy Perspective, <u>Does the County Line Matter? An Analysis of New Jersey's 2020 Primary Election Results</u> (Aug. 13, 2020) <u>https://www.njpp.org/publications/report/does-the-county-line-matter-an-analysis-of-new-jerseys-2020-primary-election-results/</u>

received approximately 31.1% and 47.7% of the vote, respectively, while Marchica only received approximately 21.2%. (*Id.*, at ¶ 141).

### iii. *Kreibich*

On or about March 29, 2020, Kreibich filed a petition with the Secretary of State's Office to so that her name would appear on the 2020 Democratic Primary Election ballot for New Jersey's Fifth Congressional District, which includes Bergen County. (Pl. Comp., at ¶ 118). Kreibich ran against Josh Gottheimer. (*Id.*, ¶ 122).

The Bergen County Clerks' offices drew for ballot position based on U. S. Senate candidates first. (*Id.*, ¶ 121). Gottheimer won the Bergen County Democratic endorsement and was bracketed with a Senate candidate, thus, entitling him to the first column.  (*Id.*, at ¶ 122). Kreibich voluntarily chose not to associate with any Senate candidate. (Pl. Comp., ¶ 121). Kreibich was listed on the third line in Bergen County.  (*Id.*, at ¶ 123).

Kreibich was ultimately unsuccessful in her bid, losing to Gottheimer, who received approximately 67.1% of the vote, while Kreibich only received approximately 32.9%. (*Id.*, at ¶ 125).

### iv. *Spezakis*

On or about March 27, 2020, Spezakis filed a petition with the Secretary of State's Office to so that her name would appear on the 2020 Democratic Primary Election ballot for New Jersey's Ninth Congressional District, which includes

Bergen and Hudson Counties. (Pl. Comp., ¶ 152). The Bergen and Hudson County Clerks' offices drew for ballot position based on U. S. Senate candidates first. (*Id.*, at ¶¶ 155, 162). Spezakis was placed in the first column in Hudson County (*Id.*, at ¶ 161) and the second column in Bergen County (*Id.*, at ¶ 154). Spezakis voluntarily chose not to associate with any other candidates. (Pl. Comp., ¶¶ 155, 162).

v. *McMillan*

On or about March 30, 2020, McMillan filed a petition with the Neptune Township Municipal Clerk to so that his name would appear on the 2020 Democratic Primary Election ballot for Township Committee in Neptune Township, Monmouth County. (Pl. Comp., at ¶ 142). McMillan ran against one opponent, Keith Cafferty. (*Id.*, ¶ 146). The Monmouth County Clerks' offices drew for ballot position based on U.S. Senate candidates first. (*Id.*, at ¶ 145). Cafferty won the Monmouth County Democratic endorsement and was bracketed with a Senate candidate, thus, entitling him to the first column. (*Id.*, at ¶ 146). McMillan voluntarily chose not to associate with any Senate candidate (Pl. Comp., ¶ 145), and was listed on the sixth line in Monmouth County. (*Id.*, at ¶ 149). McMillan was ultimately unsuccessful in his bid, losing to Cafferty, who received approximately 52.3% of the vote to McMillan's 47.5%. (*Id.*, at ¶ 125).

vi. *Lucide*

Lucide is running for County Clerk in Atlantic County in connection with

New Jersey's June 8, 2021 Democratic Primary Election. (Pl. Comp., at ¶ 28). Atlantic County conducted its ballot draw on April 9, 2020 in conjunction with June 7, 2020 Primary Election. (*Id.*, at ¶¶ 126-27). Lucide has not yet decided whether he will backet with other candidates but is considering same and vying for the county committee endorsement. (*Id.* at ¶ 131).

### D.  Plaintiffs' Complaint

On July 6, 2020, the eve of the primary election, Conforti brought a federal action against Defendants Hanlon, Colabella and Covello, challenging various provisions of *N.J.S.A. §§* 19:23-6; 19:23-18; 19:23-24; and 19:49-2 (the "Election Laws") (Plaintiffs' Complaint, Dkt. No. 1).  Specifically in the context of primary elections Conforti asserted that the following processes resulting from the Election Laws are unconstitutional: (1) ballots designed by columns or rows, rather than by office sought; (2) ballot draws that do not include a separate drawing for every office and where every candidate running for the same office does not have an equal chance at the first ballot position; (3) positioning candidates on the ballot automatically based upon a ballot draw among candidates for a different office; (4) placement of candidates such that there is an incongruous separation from other candidates running for the same office; (5) placement of  candidates underneath another candidate running for the same office, where the rest of the candidates are listed horizontally; or to the side of another candidate running for the same office, where

the rest of the candidates are listed vertically; and (6) bracketing candidates together on the ballot such that candidates for different offices are featured on the same column (or row) of the ballot. (Pl. Comp. at ¶ 123; *N.J.S.A. §§* 19:23-6; 19:23-18; 19:23-24; and 19:49-2.)

Conforti claimed that the Election Laws and the above procedures that flow from them violate her right to vote, right to free speech, and her freedom of association under both the United States and New Jersey Constitutions, with a claim of vote dilution (*Id.*, at Counts I, III, IV, and VI).  Further, Conforti claimed violations to her right to equal protection under both Constitutions (*Id.*, at Counts II and V).  Finally, Conforti claimed a violation of the New Jersey Civil Rights Act, pursuant to *N.J.S.A. §* 10:6-2(c). (*Id.*, at Count VII).

Each Defendant filed a Motion to Dismiss Conforti's Complaint on December 7, 2020.  Thereafter, on January 26, 2021, Plaintiffs filed a First Amended Complaint ("Amended Complaint") with the consent of all parties (Docket Entry 33).

The Amended Complaint added certain parties and claims. Plaintiffs Kreibich, Lucide, Marchica, McMillan, Spezakis, and NJWF joined the lawsuit and Hogan, McGettigan, and Maldanado were added as defendants. The Amended Complaint removed all claims under the New Jersey Constitution and state law.

Plaintiffs continue to claim that the Election Laws violate Plaintiffs' right to vote/constitute vote dilution (Count I), equal protection (Count II), and freedom of

association (Count III); and newly added that they violate the Elections Clause (Count IV) and violate the federal Civil Rights Act (Count V).

## LEGAL ARGUMENT

### I.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must "take all of the factual allegations in the complaint as true," *id*. (citing *Twombly*, 550 U.S. at 555), "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, in reviewing a Rule 12(b)(6) motion to dismiss, courts should "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679, 681 (3d Cir. 2012).

The standard of review for election law challenges that allege constitutional violations is set forth in *Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S. Ct. 1564, 75 L. Ed. 2d 547 (1983).  "[T]he strict scrutiny, intermediate scrutiny, and rational basis categories represent a convenient and familiar linguistic device by which courts . . . have characterized their review. *Anderson* [however] promulgated a less categorical system of classification . . . Put another way, ballot access cases should not be pegged into the three aforementioned categories. Rather, following *Anderson*, [the Court's] scrutiny is a weighing process." *Rogers v. Corbett*, 468 F.3d 188, 194

(3d Cir. 2006) (citation omitted); *Anderson*, 460 U.S. at 789. Although this case concerns ballot order and not ballot access, the same analysis applies. *Democratic-Republican Org. of N.J. v. Guadagno*, 900 F. Supp. 2d 447, 455–56 (D.N.J. 2012) (noting the alleged benefit of positional bias places a lesser burden on the right to vote than ballot access, thus the analysis for a ballot placement claim is similar to that of a challenge to ballot access) aff'd, 700 F.3d 130 (3d Cir. 2012) (noting district court correctly applied *Anderson* balancing test in ballot placement challenge).

Accordingly, in reviewing Plaintiffs' Amended Complaint, the Court must consider "what burden is placed on the rights which plaintiffs seek to assert and then balance that burden against the precise interests identified by the [S]tate and the extent to which these interests require that plaintiffs' rights be burdened. Only after weighing these factors can [the Court] decide whether the challenged statute is unconstitutional." *Democratic-Republican Org. v. Guadagno*, 900 F. Supp. 2d 447, 452 (D.N.J. 2012), *aff'd*, 700 F.3d 130 (3d Cir. 2012).

## II.   **<u>PLAINTIFFS DO NOT HAVE STANDING.</u>**

This Court should reject Plaintiffs' claims without reaching the merits because they did not challenge the Election Laws until after their respective elections and thus lack standing.[7]

_____

[7] NJWF, as a 501(c)(4) organization, is also unable to establish associational standing . To establish associational standing, a plaintiff must show (1) "its members

Article III standing is necessary for each form of relief sought by plaintiffs. *Friends of Earth, Inc.*, 528 U.S. 167, 185 (2000). To properly invoke federal jurisdiction, a plaintiff must demonstrate that (1) they are under an actual threat of suffering an injury in fact to a legally protected interest that is "concrete and particularized;" (2) the injury is fairly traceable to the defendant's conduct; and (3) it is likely that a favorable judicial decision will prevent or redress the injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Unsubstantiated allegations of "possible future injury" are not sufficient to satisfy Article III. *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011). Nor are injuries that are "conjectural or hypothetical." *Robins,* 136 S. Ct. 1540 at 1548.

Here, Plaintiffs are under no actual threat of suffering a concrete and particularized injury in fact to any legally protected interest. Indeed, because the July 7, 2020 primary election was conducted and the results certified, Plaintiffs suffer no

---

would otherwise have standing to sue in their own right;" (2) "the interests it seeks to protect are germane to the organization's purpose;" and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Here, NJWF is unable to establish that its members would have standing to sue in their own right, as there is no allegation that any such members are candidates for any elections and, thus, governed by the Election Laws. Moreover, the interests that NJWF allegedly seeks to protect are not germane to its purpose, as it remains able to advocate for causes and endorse candidates regardless of the ballot and bracketing positions.

threat of any injury. Plaintiffs were all unsuccessful in their race for the Democratic primary. The certified results reflect that they each lost the Democratic nomination. This "injury" cannot be fairly traceable to Defendants' conduct – Plaintiffs could have lost their respective elections for any number of reasons not associated with the ballot drawing or their ultimate placement on the ballot. It may very well be such that Plaintiffs lost the primary election due to a lack of public support. Plaintiffs' allegations that obtaining the first ballot position is directly related to favorable election results is purely conjecture and would require this Court to prophesize that Plaintiffs all would have been successful *but for* their ballot position – a conclusion that is not alleged in the Amended Complaint.

The Amended Complaint includes shallow commitments that certain Plaintiffs intend to run in some future elections (Conforti, Marchica, Spezakis), however that is insufficient to satisfy standing as there is no actual threat that they will suffer any injury in some uncertain future election. Lucide, although a current candidate, also cannot demonstrate that he is under an actual threat of suffering any injury, as he may very well be successful in his bid for Atlantic County Clerk.

Finally, NJWF similarly cannot satisfy the first element for Article III standing. NJWF merely advocates for certain causes and endorses candidates in elections. (Pl. Comp., ¶ 50-53). NJWF claims that it, its members, their endorsed candidates, and the voters "have suffered and will continue to suffer an injury" (Id.,

¶ 56), however, it has failed to demonstrate how it, or its members is under any actual threat of injury nor how advocating for certain causes and endorsing candidates is a legally protected interest, or how ballot placement will injure that interest in a "concrete and particularized" way. *See Summers*, 555 U.S. at 493.

Finally, a favorable decision for Plaintiffs would not prevent or redress any alleged injury. Should the Court agree with Plaintiffs, and grant the declaratory judgment and permanent injunction sought, these measures provide no recourse for Plaintiffs as the elections the Plaintiffs were unsuccessful candidates in have been completed. The results of those elections have long been certified.  In fact, the general election results are now even certified.

Plaintiffs fail to plead facts sufficient to satisfy the standing requirement; instead, Plaintiffs merely provide speculative theories on their losses.  With respect to Lucide, as he is a current candidate, there is no injury, nor would a judicial decision prevent any injury as he may be successful or unsuccessful in his election due to a multitude of factors.

Thus, collectively, the Plaintiffs are unable to establish Article III standing and the Court need not go any further in its inquiry, as the Amended Complaint against Covello must be denied.

### III.    PLAINTIFFS' CLAIMS ARE MOOT.

Plaintiffs seek an injunction to permanently enjoin the current ballot draw

processes and ballot design for primary elections, but as of the date of this filing, both the primary and general election have occurred, and almost all the Plaintiffs are no longer candidates. Thus, the issues presented by those Plaintiffs (Conforti, Kreibich, Spezakis, Marchica, and McMillan) are no longer "live." Moreover, any claims by Lucide against Covello or Mercer County are inapplicable, as no aspect of his candidacy or election can or will be impacted by Covello.

A case becomes moot when the issues presented are no longer live, or there is no longer an actual or ongoing "case or controversy" between the parties, and neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law. *See Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979); *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir. 2003). Because the availability of relief "lies at the very heart of the mootness doctrine," and because the case must remain "live" throughout all stages of litigation, when events occur that deprive a court of its ability to grant the requested relief, the case must be dismissed as moot. *Donovan*, 335 F.3d at 211.

Here, Plaintiffs sat on their rights until the eve of losing the primary, or in the case of the new Plaintiffs, after losing their primary election.[8] Because they are no

---

[8] Courts have also denied late filed election claims as barred by laches and/or estoppel if a suit was filed after the close of a nomination period, or an election day

longer candidates, Plaintiffs' claims are no longer live and there is no actual or ongoing case or controversy. Moreover, Lucide, although a current candidate, has no "case or controversy" with Covello or Mercer County, as he is not involved in any election encompassing Mercer County or under the authority of Covello. Finally, as neither NJWF, nor its members, is eligible or running for election to any offices governed by the Election Laws, it can have no case or controversy with the Defendants and certainly not with Covello, specifically.

Thus, the procedures and statutes which Plaintiffs seek to have declared violative of the United States no longer apply to them (or never did) and must be dismissed as moot.

## IV.  **PLAINTIFFS FAIL TO STATE A CLAIM.**

Should this Court find that Plaintiffs do, in fact, have standing to bring these claims and that they are not moot, the Amended Complaint must still be dismissed on the merits because Plaintiffs have failed to set forth facts to support any cognizable claim under federal constitutional or election law.[9]

---

for example. *See, e.g.*, *Perry v. Judd*, 471 F. App'x 219 (4th Cir. 2012) (claim barred where candidates challenged law governing circulation of candidate petitions after deadline for petitions); *Kay v. Austin*, 621 F.2d 809, 813 (6th Cir.1980) (claim barred where candidate waited to file suit until two weeks after not being listed on ballot). The *Perry* Court reasoned that a candidate cannot choose to sit on his rights to challenge a provision until after receiving an unfavorable result. *Perry* at 224.

[9] As a preliminary matter, it is well settled that there is no fundamental, unfettered

In *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214 (1989), the United States Supreme Court held that parties and political organizations enjoy freedom of association protected by the First and Fourteenth Amendments, and these rights mean not only that an individual voter has the right to associate with the political party of his choice, but also that "a political party has the right to identify the people who constitute the association," and to select a "standard bearer who best represents the party's ideologies and preferences." *Eu*, at 224 (internal citations omitted). The *Eu* Court's precedence laid the groundwork for subsequent decisions that established not only that the State *could* take party affiliation into consideration when designing the ballot, but that it was constitutionally *impermissible to ban this type of affiliation* absent a compelling state interest. In *Eu*, the Court found no compelling state interest, as the state made no showing that voters were unduly influenced by party endorsements or that such a ban was necessary to ensure an election that was orderly and fair. *Eu*, 233-34.

This precedence has been followed in New Jersey as well. Courts have plainly stated that "States may treat candidates affiliated with political parties differently

---

right to pursue public office in or to be a party's candidate in an election. *Lewis v. Guadagno,* 837 F. Supp. 2d 404, 411 (D.N.J.), aff'd, 445 F. App'x 599 (3rd Circ. 2011); *see Bullock v. Carter*, 405 U.S. 134, 142-43 (1972); *See, e.g., McCann v. Clerk of City of Jersey City,* 167 N.J. 311, 325, 771 A.2d 1123 (2001). As such, Plaintiffs have no "rights" stemming from their candidacies which have all since ended (with the exception of Lucide).

than unaffiliated candidates." *Guadagno*, 900 F. Supp. 2d at 456.   In fact, in *Guadagno*, the District Court for the District of New Jersey, reviewed a challenge very similar to that of Plaintiff, in the general election context, and held:

> placing political party candidates on the left side of the ballot and all other candidates on the right side does not violate Plaintiffs' constitutional rights. These statutes impose, at most, a minimal burden on Plaintiffs' ballot access. Because the Plaintiffs' burden, if any, is negligible, any reasonable regulatory interest provided by the State will ensure the statutes' constitutionality under *Anderson Council of Alternative Political Parties v. Hooks*, 179 F.3d 64, 78 (3d Cir.1999) … Here, the State has explained that the statute is grounded in the integrity of the election process by ensuring that voters can clearly identify which candidates are affiliated with political parties.

*Id*. at 458, *aff'd*, 700 F.3d 130 (3d Cir. 2012).

New Jersey has followed a similar line of reasoning when reviewing election statutes under the state constitution, holding that "there can be no doubt about the authority of the Legislature to adopt reasonable regulations for the conduct of primary and general elections. Such regulations, of course, may control the manner of preparation of the ballot, so long as they do not prevent a qualified elector from exercising his constitutional right to vote for any person he chooses." *Quaremba v. Allan,* 67 N.J. 1, 11 (1975) (*citing Rose v. Parker,* 91 N.J.L. 84, 86 (Sup. Ct. 1917)).

In *Quaremba*, plaintiffs' principal criticism was of the county clerk's refusal to structure the ballot in the form of a single column with the names of the candidates for each office, affiliated and non-affiliated, following each other in the sequence determined by a drawing, and these in turn followed by a similar listing of candidates

for the next office and so on.  *Quaremba v. Allan,* 67 N.J. 1, 10 (1975).  Under that

proposal, the names of those who had filed a joint petition for different offices and

those who had affiliated with them, although appearing in a single column, would

be separated from each other by the names of unaffiliated candidates seeking the

same offices.  *Id.* The Court reviewed that proposal and held that there was "no merit

to plaintiffs' contention that the ballots should be structured as they suggest. Indeed,

such a separation of the names of those affiliated candidates – unless they consent

thereto – would be contrary to the legislative purpose evident in *N.J.S.A.* 19:49-2.

67 N.J. at 6; *see, Harrison v. Jones* 44 N.J. Super. 456, 461 (App. Div. 1957).[10]

Here, Plaintiffs criticize New Jersey's ballot system and claim that it

"systematically prevent[s] unbracketed candidates from having any opportunity to

ever be listed in the first column on the primary election ballot, resulting in a serious

electoral disadvantage." (Pl. Comp., at ¶ 97). While not expressly advocating for a

similar ballot design to that of the plaintiff in *Quaremba*, to achieve Plaintiffs'

desired design the ballot would need to be constituted in a similar way.   And

---

[10] Even in other jurisdictions, similar challenges to a State's ballot design and
bracketing procedures have been unsuccessful. *See Sarvis v. Alcorn*, 826 F.3d 708
(4th Cir. 2016) (court found that Virginia's tiered ballot law imposed modest burdens
on Constitutional rights but, because all parties were subject to the same state law,
the proportional nondiscrimination of the application of the law was upheld); *Walsh
v. Boyle*, 179 A.D. 582 (First Dept. 1917) (holding that it is improper for the judiciary
to force a ballot ordering); *Mintz v. Cuomo*, 45 N.Y. 2d 918 (1978) (appellate court
restored an original ballot design after the lower court improperly reordered the
ballot).

although the *Quaremba* Court held that "the county clerk must act in good faith and may not intentionally discriminate against any candidate or group of candidates." *Quaremba,* 67 N.J. at 16, Plaintiffs do not allege here that any Defendants acted in bad faith or intentionally discriminated against anyone.

Specifically, and as set forth in more detail below, Plaintiffs cannot establish a claim that that the ballot drawing and design processes violated their right to vote, freedom of association or equal protection rights, nor that they constituted vote dilution, or violations of the Elections Clause or Civil Rights Act.  Thus, the Court should dismiss Plaintiffs' Amended Complaint and defer to the actions of the county clerks in accordance with Title 19, as it is clear the regulations complained of are necessary to the integrity of the electoral process. *See Eu*, at 232.

### A.    Counts I and III Should be Dismissed.

Plaintiffs' claim that that the ballot drawing and design processes violate Plaintiffs' rights to vote and/or constitute vote dilution and freedom of association should be dismissed because Plaintiffs fail to plead facts sufficient to support any alleged right and they assert constitutional violations that are not cognizable.

### i.  Count I - Right to Vote/Vote Dilution

Plaintiffs' constitutional right to cast their vote is not being infringed in any way. In fact, Plaintiffs conflate the right to vote with some alleged entitlement to a more favorable ballot placement. Although "voting is of the most fundamental

significance under our constitutional structure", *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (*quoting Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)), "[i]t does not follow ... that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Id*. (*citing Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986)). "States have a major role to play in structuring and monitoring the election process, including primaries." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 572 (2000); *see also* Article I, Sec. 4 of the U.S. Constitution. It necessarily follows that if a candidate's ballot access can be regulated by the state, *see Jenness v. Fortson*, 403 U.S. 431,441–42 (1971), a candidate's ballot placement can also be regulated, as placement is surely a less important aspect of voting rights than access. *See*, *Guadagno*, at 456 (*citing Sonneman v. State*, 969 P.2d 632, 638 (Alaska 1998) ("[T]he statute in question, however, does not restrict access to the ballot or deny any voters the right to vote for candidates of their choice… Instead, it merely allocates the benefit of positional bias, which places a lesser burden on the right to vote.")).

Here, Plaintiffs' right to vote was not obstructed in any way. Plaintiffs do not claim that their position on the ballot restricted their – or any voter's – access to the ballot or denied any voter the right to vote for any candidate of their choice. As such, Plaintiffs' claim under their right to vote is unfounded.

Similarly, vote dilution based on the potential for bracketed candidates to gain

an advantage is not a cognizable claim.[11] *Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396, 406–07 (E.D. Pa. 2016) (finding plaintiffs' "vote-dilution theory is based on speculation"); *see also Serpentfoot v. Rome City Comm'n*, 426 F. App'x 884, 887 (11th Cir. 2011); *Pettengill v. Putnam Cty. R-1 Sch. Dist., Unionville, Mo.*, 472 F.2d 121, 122 (8th Cir. 1973); *Powell v. Power*, 436 F.2d 84, 88 (2d Cir. 1970).

To be sure, vote dilution can, in certain circumstances, unconstitutionally impinge the right to vote, but only when the law systematically or invidiously devalues one community's votes as compared to otherwise similarly situated voters. Plaintiffs' allegations only claim vote dilution as they relate to ballot position drawing and placement, which does not rise to the level of recognized dilution.[12]

---

[11] Plaintiffs really allege that their opportunity to capture the "windfall vote" (a claim that voters simply pick, without thought or reason, the candidates whose names appear to the far left of the ballot) has been impeded by their ineligibility for the pivot point. "While access to ballot may, at times, be afforded constitutional protection, access to a preferred position on the ballot so that one has an equal chance of attracting the windfall vote is not a constitutional concern. Indeed, it should not be. The Constitution does not protect a plaintiff from the inadequacies or the irrationality of the voting public; it only affords protection from state deprivation of a constitutional right." *New Jersey Conservative Party, Inc. v. Farmer*, 332 N.J. Super. 278, 287 (1999) (*citing New Alliance Party v. New York State Board of Elections*, 861 F. Supp. 282, 295 (S.D.N.Y. 1994) (quoting *Clough v. Guzzi*, 416 F. Supp. 1057, 1067 (D. Mass. 1976)).

[12] *See Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975) (infringements of voting rights found to have risen to a constitutional level include dilution of votes by reason of malapportioned voting districts or weighted voting systems); *Reynolds v. Sims*, 377 U.S. 533, 567 (1964) (involving a challenge to unequally apportioned voting districts).

That is because "[t]he Constitution is not an election fraud statute," *Minn. Voters Alliance v. Ritchie*, 720 F.3d 1029, 1031 (8th Cir. 2013) (*quoting Bodine v. Elkhart Cty. Election Bd.*, 788 F.2d 1270, 1271 (7th Cir. 1986)), and does not support claims "premised on potential harm in the form of vote dilution caused by" election processes that Plaintiffs dislike, *id.* at 1033.

Here, Plaintiffs' vote dilution claim is not sufficiently supported by the facts set forth in the Amended Complaint, which states nothing more than concerns that they may have been disadvantaged due to conscious choices not to bracket with other candidates. Moreover, New Jersey's drawing and bracketing processes do not favor one community's votes over another. *See Short v. Brown*, 893 F.3d 671, 678 (9th Cir. 2018) (rejecting vote dilution claim based on an improper reading of *Reynolds*, which "stand[s] for something narrower: that a state may not allocate representation differently based on a voter's county of residence"). Each registered New Jersey voter, regardless of a candidate's location on the ballot, can choose to vote for whomever they please.

There is simply no authority for transmogrifying the vote dilution line of cases into a weapon that may be used by a candidate to seek a supposed favorable placement on the ballot, based entirely on unfounded and speculative allegations. To the contrary, courts have routinely and appropriately rejected such efforts. *See Ritchie*, 720 F.3d at 1031–32 (*affirming Rule* 12(b)(6) dismissal of vote dilution

claim); *see also Cortés*, *supra*, 218 F. Supp. 3d at 406–07. Because Plaintiffs have failed to allege facts that give rise to a plausible claim for relief, or even alleged a cognizable legal theory, Count I should be dismissed.

### ii.  Count III - Freedom of Association

Count III claims violations of Plaintiffs' constitutional rights of freedom of association, however, Plaintiffs fail to plausibly state a claim that their freedoms have been infringed upon in any way. In *Schundler v. Donovan,* the court held that "no rights guaranteed by the First Amendment are absolute, 377 N.J. Super. 339 (2005); s*ee also, Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 217-18 (1986). Even fundamental rights, such as those involving expressive exercises, are subject to limitation if a sufficiently compelling public interest exists in particular circumstances at hand. *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214 (1989). Where a limitation on protected expressive interests emanates from a provision regarding elections, the test for compelling public interest is whether the "regulation . . . is necessary to the integrity of the electoral process." *Id.* at 232.

The Supreme Court in *Eu* also recognized freedom of association enjoyed by political parties. 489 U.S. at 216. The Court held that political parties have a role in selecting their organization, claiming that "partisan political organizations enjoy freedom of association protected by the First and Fourteenth Amendments. Freedom of association means … also that a political party has a right to identify the people

who constitute the association…." *Ibid*. Here, bracketing follows the principle established in *Eu*, which allows the political parties to organize in advance of elections as they see fit.

As the court found in *Balsam v. Guadagno*, 2014 WL 2126579 (D.N.J.), "the freedom of association would "prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being." *See Cal. Democratic Party*, 530 U.S. at 574-75.  Similarly, in *Moskowitz v. Grogan*, the court, relying on *N.J.S.A.* 19:49-2, held that since one slate of delegates to a national party convention was affiliated with a group of county candidates, another unaffiliated slate was not entitled to a drawing for position on the ballot as against the affiliated slate, "for the state candidates who affiliate with county candidates may not be displaced from their position on the same line with their affiliated county candidates." 101 N.J. Super. 111, 116 (App. Div. 1968).

Even if this Court found that the statutes complained of burdened Plaintiffs' associational rights, the burden is minimal.  Plaintiffs were able to choose between associating or not associating with other candidates, political parties, etc. and were able to exercise that right however they pleased. In fact, as explained above, in certain instances, some Plaintiffs did exercise their right to associate and were, in fact, placed in the first column (for example, Conforti in Mercer County). No

Plaintiff was ever placed in the position where he or she was forced to associate with any other candidates. At all relevant times, Plaintiffs were fully apprised of the bracketing process and had ample time to opt to bracket with other candidates to secure the ability to obtain the pivot point.

Accordingly, Plaintiffs' challenges to the statutes under the freedom of association must fail because the State's legitimate interests in protecting the associational rights of political associations, maintaining ballot integrity, avoiding voter confusion, and ensuring electoral fairness outweigh any burden Plaintiffs allege. *See, Balsam v. Guadagno*, 2014 WL 2126579 (D.N.J.); *Ray v. Blair*, 343 U.S. 214, 221, 222 (1952); *Nader v. Schaffer*, 417 F. Supp. 837, 848 (D. Conn. 1976), aff'd, 429 U.S. 989 (1976)

The United States Supreme Court rejected the same arguments raised by Plaintiffs here in *Cal. Democratic Party v. Jones*, when it invalidated Proposition 198, under which the voters of California had adopted to change California's electoral system from a closed primary to a blanket primary. 530 U.S. at 570, 582-86. Previously, California held a closed primary, in which only persons who were members of the political party were permitted to vote on its nominee. Proposition 198 changed the system to a blanket primary, which allowed the voter to choose freely among candidates regardless of party affiliations. *Id.* Several political parties challenged the rule, claiming it violated their First Amendment rights of association.

*Id.* The Court rejected the arguments similar to those of Plaintiffs, here – stating that those alleged interests were not compelling.[13]  *Id.*

As such, Plaintiffs' freedom association claim must be dismissed.

### B.    Count II Should be Dismissed.

Plaintiffs' claims for Equal Protection rights violations in Count II are equally without merit and should be dismissed. The Equal Protection Clause is essentially a directive that all individuals similarly situated should be treated alike. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). However, "[t]he state's creation of a classification is not 'per se unconstitutional or automatically subject to heightened scrutiny.'" *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 213 (3d Cir. 2013) (*quoting Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998)). Courts will, as a result, uphold a classification "so long as it bears a rational relation to some legitimate end" and it neither burdens a fundamental right nor targets a suspect class. *Id.*

In the context of election law, the Courts have held that "in facilitating the effective operation of [a] democratic government, a state might reasonably classify voters or candidates according to political affiliations." *Clingman v. Beaver*, 544

---

[13] Ultimately, the Court did overturn the blanket primary for reasons inapplicable here – finding that it imposed on political parties' freedom to prevent "party raiding," a process in which dedicated members of one party formally switch to another party to alter the outcome of that party's primary. *Id.*

U.S. 581, 594 (2005) (*quoting Nader v. Schaffer*, 417 F. Supp. at 845-46). Indeed, it has been recognized that a state does not deprive an individual of equal protection in drawing a distinction between affiliated and unaffiliated voters. *Nader*, 417 F. Supp. at 848; *see also Balsam v. Guadagno*, 2014 WL 2126579 (D.N.J.)

At all times leading up to the election, Plaintiffs were treated like all other candidates in the election - the ballot draw is done irrespective of the individual candidates themselves but, rather, for the offices for which they are running. Moreover, Plaintiffs have failed to plead sufficient facts warranting this Court to scrutinize the actions taken by any county clerk. A county clerk has wide latitude in crafting the ballot, unless an abuse of discretion is apparent, and such discretion has been upheld consistently in New Jersey. *See Farrington v. Falcey,* 96 N.J. Super. 409 (App. Div. 1967) ("the county clerk is given a wide discretion in these matters, and that the court will not interfere with the exercise of that discretion unless clearly unreasonable, is well established by our decisions.).[14]

In reviewing *N.J.S.A.* 19:49-2, the New Jersey Supreme Court held that the decision on how to structure the drawing as between bracketed and independent candidates rested with the county clerk. *Hawkes v. Gates*, 129 N.J.L. 5 (1942). And,

---

[14] It has been recognized that the concept of equal protection implicit in Art. I, par. I of the New Jersey Constitution is analogous to the federal equal protection clause in terms of analysis. *Sojourner A. v. N.J. Dep't of Human Servs.*, 177 N.J. 318, 332 (2003).

while a clerk's discretionary action is not "beyond judicial approval," the Court has stated that "it is not for a court to choose one of several reasonable courses, for that choice is precisely what the Legislature left to another"; rather, the court would only act "if it clearly appears the course taken is not rooted in reason…." *Richardson v. Caputo*, 46 N.J. 3, 9 (1965) (*citing, United Hunters Ass'n v. Adams*, 36 N.J. 288 (1962)).

Plaintiffs' equal protection challenge fails because no Plaintiff is a member of a suspect class, nor does the Amended Complaint allege any such a membership on behalf of any Plaintiff.  While Plaintiffs assert that there is a fundamental right to vote in primaries, there is, in fact, no constitutional right to participate in primary elections. *Cal. Democratic Party*, 530 U.S. at 573 n.5; *Consumer Party v. Davis*, 633 F. Supp. 877, 888 (E.D. Pa. 1986).  The Election Laws are therefore subject only to rational basis review, which they easily survive because the statutes are rationally related to the State's legitimate interests in protecting the associational rights of party members, maintaining ballot integrity, avoiding voter confusion, and ensuring electoral fairness.

As this Court knows, states are entitled to broad leeway in regulating elections to ensure they are carried out in a fair and efficient manner.  *See Rutgers University Student Assembly v. Middlesex County Bd. of Elections*, 446 N.J. Super. 221 (App. Div. 2016).  A court considering a challenge to a state election law must weigh "the

character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick v. Takushi*, 504 U.S. 428 (1992) *citing Anderson v. Celebrezze*, 460 U.S. 780 (1983). When those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 289 (1992). But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions. *Anderson*, 460 U.S., at 788; *see also Burdick*, 504 U.S., at 434.

Here, it is undisputed that the State has an important, legitimate interest in ensuring an accessible ballot that avoids voter confusion and permits voters to easily identify candidates and the political parties they are affiliated with.[15]  Plaintiffs fail to present any facts or allegations that Defendants imposed any "severe" restrictions upon their rights.  Indeed, even if Plaintiffs had, the statutes being challenged are

---

[15] "There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot—the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election." *Guadagno*, at 456 (*citing Jenness v. Fortson*, 403 U.S. 431, 442 (1971)).

narrowly drawn to advance the State's interest.  However, in following the process set forth in the challenged statutes, Defendants at most imposed a reasonable, nondiscriminatory restriction upon Plaintiffs, which are certainly justified by the underlying compelling interests. As such, the statutes meet rational basis review and Plaintiffs' Equal Protection claim must fail.

### C.   Count IV Should be Dismissed.

Count IV of Plaintiffs' Amended Complaint is based on the "Elections Clause," which states, "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Place of choosing Senators." U.S. Const., Art. I, Sec. 4, Cl. 1. Plaintiffs claim that the Election Laws complained of, described as the "bracketing and ballot placement systems" do not regulate the time, place or manner of federal elections, nor are they merely procedural regulations, but "instead dictate electoral outcomes." (Pl. Comp., at ¶¶ 213-16). Plaintiffs argue that the bracketing and ballot placement systems exceed the state authority under the Elections Clause and, thus, must be struck down as unconstitutional.

In *Cook v. Gralike, 531 U.S. 510, 522 (2001),* the Supreme Court noted that the Elections Clause constituted a limited delegation. The Elections Clause authorizes each state to enact processes to be followed in electing members of the

House and Senate from their respective states. As the Supreme Court recognized in *Storer v. Brown*, 415 U.S. 724 (1974), states retain the power of establishing the time, place, and manner of primary elections under the Elections Clause. "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Id*. at 730. The Court explained in *Foster v. Love*, 522 U.S. 67, 69 (1997), that the Elections Clause "is a default provision; it invests the States with responsibility for the mechanics of congressional elections." The Court reiterated in U.*S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 832 (1995) that the Framers intended the Elections Clause to grant states the authority to create procedural regulations for such federal elections.

Recent Supreme Court precedent has established that the reference to the "Legislature" in the Elections Clause encompasses more than just legislative lawmaking bodies. In *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 806-09 (2015), the Court upheld the validity of an independent congressional redistricting commission created by a voter ballot initiative rather than through a statute enacted by the Arizona Legislature. The Court rejected the challengers' argument that only the Arizona Legislature could specify the district boundaries and electoral processes. Tracing the history of Article I, Section 4, Justice Ginsburg's majority opinion for the Court observed that "[t]he

36

dominant purpose of the Elections Clause, the historical record bears out, was to empower Congress to override state election rules, not to restrict the way States enact legislation." *Id*. at 814-15.

The Elections Clause grants the states "comprehensive ... authority to provide a complete code for the congressional elections, not only as to times and places, but in relation to ... supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of elections returns," unless Congress should "supplement these state regulations or ... substitute its own." *Smiley v. Holm*, 285 U.S. 355, 366–67 (1932); *see also Foster*, 522 U.S. at 71, n.2.[16]  Thus, the Elections Clause grants the states "wide discretion in the formulation of a system for the choice by the people of representatives," *Classic*, 313 U.S. at 311, the only limitation being that "the state

---

[16] "The [Elections] Clause is a default provision; it invests the States with responsibility for the mechanics of congressional elections, but only so far as Congress declines to preempt state legislative choices." *Foster*, 522 U.S. at 69, (internal citation omitted) (*citing Storer v. Brown*, 415 U.S. 724, 730 (1974); *Roudebush v. Hartke*, 405 U.S. 15, 24 (1972)); *see United States v. Classic*, 313 U.S. 299, 311 (1941) (stating that the Elections Clause grants states "wide discretion in the formulation of a system for the choice by the people of representatives in Congress"); *Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 775 (5th Cir. 2000) ("[A] state's discretion and flexibility in establishing the time, place and manner of electing its federal representatives has only one limitation: the state system cannot directly conflict with federal election laws on the subject."). "[I]t is well settled that the Elections Clause grants Congress 'the power to override state regulations' by establishing uniform rules for federal elections, binding on the States." *Foster*, 522 U.S. at 69 (internal quotation marks omitted) (*quoting U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 832–33 (1995)).

system cannot directly conflict with federal election laws on the subject." *Bomer*, 199 F.3d at 775.

Here, there is no conflict between the Elections Laws and any federal statute, including the Elections Clause. Nor do Plaintiffs direct the Court to any federal law regulating methods of determining the bracketing and ballot placement of candidates. New Jersey's bracketing and ballot placement systems run in conjunction to and conformity with Congress' delegation of power in this space. Moreover, as the Court is aware, these same statutes have been challenged regularly – almost every election cycle – with Congress taking no steps to preempt New Jersey's laws.  Where Congress "declines to preempt state legislative choices," the Elections Clause vests the states with responsibility for the "mechanics of congressional elections." *Foster*, 522 U.S. at 69. As such, Plaintiffs' Count IV under the Elections Clause fails and must be dismissed.

### D.    Count V Should be Dismissed.

Finally, Plaintiffs' civil rights claims must fail. The relevant provisions of the Civil Rights Act, 42 U.S.C. § 1983 state:

> Every person who, under color of any statute, ordinance ... of any State... subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Thus, the language of the statute indicates that it provides remedy only for

deprivations of rights secured by the Constitution or federal laws. *Maine v. Thiboutot,* 448 U.S. 1, 7 (1984). It is well settled that § 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386 (1989) (*citing Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)). Thus, "one cannot go into court and claim a violation of §1983 - for §1983 by itself does not protect anyone from anything." *Chapman v. Houston Welfare Rights Org*., 441 U.S. 600, 617 (1979); *Baker*, *supra* at page 144, n.3 (1979).

Under §1983 a plaintiff is required to set forth specific conduct by the governmental entity or its officials which violated the Constitutional rights of plaintiff. *Hillard v. New Jersey Army Nat'l Guard*, 527 F. Supp. 405 (D.N.J. 1981); *Henschke v. Borough of Clayton*, 251 N.J. Super. 393, 401 (App. Div. 1991). *Reid v. Barret*, 467 F. Supp. 124 (D.N.J. 1979), aff'd 615 F.2d. 1354 (3rd Cir. 1990) ( A plaintiff is required to establish with specificity that the defendant deprived him of a right secured by the Constitution.) A plaintiff's assertion of the violation of a federal right must not be too vague and amorphous to be beyond the competence of the judiciary to enforce. *Golden State Transit v. City of Los Angeles*, 493 U.S. 103, 106 (1989); *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 431-432 (1987).

It is evident that Plaintiffs have failed to meet the requirements of § 1983.

Even a most liberal reading of the Amended Complaint in favor of Plaintiffs fails to demonstrate the deprivation of any rights protected by the Constitution or federal statutes.  As set forth above in Points A, B and C, *supra*, there is no constitutional right regarding bracketing and ballot placement positions.

Specificity that Defendants deprived Plaintiffs of their secured rights is an absolute requirement. *Reid v. Barret*, *supra*; *Hillard v. New Jersey Army Nat'l Guard, supra*. Here, Plaintiffs fail to set forth any specific conduct which violated their Constitutional rights.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be granted.

**GENOVA BURNS LLC**

By:     */s/ Angelo J. Genova*
       Angelo J. Genova, Esq.
       Jennifer Borek, Esq.
       Christopher Zamlout, Esq.

       494 Broad Street
       Newark, New Jersey 07102
       Telephone: 973-533-0777
       Fax: 973-533-1112
       *Attorneys for Paula Sollami Covello*

Dated:  March 29, 2021

15902574v1 (1815.180)