## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINE CONFORTI, ARATI KREIBICH, MICO LUCIDE, JOSEPH MARCHICA, KEVIN MCMILLAN, ZINOVIA SPEZAKIS, and NEW JERSEY WORKING FAMILIES ALLIANCE, INC., | Civil Action No. 3:20-cv-08267-FLW-TJB |
| Plaintiffs, | |
| vs. | |
| CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, SCOTT M. COLABELLA, in his official Capacity as Ocean County Clerk; and PAULA SOLLAMI COVELLO, in her official capacity as Mercer County Clerk, JOHN S. HOGAN, in his official capacity as Bergen County Clerk, EDWARD P. MCGETTIGAN, in his official capacity as Atlantic County Clerk, and E. JUNIOR MALDONADO, in his official capacity as Hudson County Clerk, | |
| Defendants. | |

---

## DEFENDANT CHRISTINE GIORDANO HANLON'S BRIEF IN SUPPORT OF HER MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT, PURSUANT TO F.R.C.P. 12(b)(6)

Thomas W. Carter, Esq.
Attorney ID# 212422017
On the Brief

Erik Anderson, Esq.
Attorney ID# 033232001
Of Counsel

REARDON ANDERSON, LLC
55 Gilbert Street North, Suite 2204
Tinton Falls, NJ 07701
*Attorneys for Defendant,*
*Christine Giordano Hanlon, in her*
*capacity as Monmouth County Clerk*

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………….…………………………...…..3

PRELIMINARY STATEMENT…………...…………………………….……………………………5-7

PROCEDURAL HISTORY……………….…...…………………………………8-9

STATEMENT OF FACTS…………......……………………………………………10-13

LEGAL ARGUMENT……………………………………………………………...14-32

I.   NEW JERSEY'S ELECTION LAWS CONCERNING BALLOT
     POSITIONING ARE CONSTITUTIONAL…………………………14-24

   (a) Plaintiffs' Arguments Challenging the Constitutionality of Laws
       Governing Ballot Positioning Have Previously Been Rejected………18-23

   (b) New Jersey Law Does Not Violate the Elections Clause of the
       United States Constitution……………………………………………23-24

II.  PLAINTIFFS' FAIL TO STATE A CLAIM UPON WHICH
     RELIEF CAN BE GRANTANTED…………………………25-26

III. PLAINTIFFS HAVE FAILED TO NAME INDISPENSABLE
     PARTIES TO THIS ACTION………………………………27-28

IV.  PLAINTIFFS LACK STANDING TO ASSERT THEIR
     CLAIMS……………………………………………………………29-31

CONCLUSION……………...…………………………..…………………….………32

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

<u>Allen v. Wright</u>, 468 U.S. 737 (1984)…………………………………………………29

<u>American Party of Texas v. White</u>, 415 U.S. 767 (1974)…………………………..23

<u>Anderson v. Celebrezze</u>, 460 U.S. 780 (1983)……………………………………...14

<u>Arizona State Legislature v. Arizona Indep. Redistricting Comm'n</u>, 576 U.S. 787 (2015)……………………………………………………………………………….24

<u>Ashcroft v. Iqbal</u>, 556 US 662, 678 (2009)………………………………………25

<u>Bell Atlantic Corp. v. Twombly</u>, 550 US 544 (2007)……………………………25

<u>Burdick v. Takushi</u>, 504 U.S. 428, 438 (1992)…………………………………..15

<u>Clingman v. Beaver</u>, 544 U.S. 581, 586 (2005)…………………………………15

<u>Conley v. Gibson</u>, 355 US 41 (1957)…..………………………..…………………..25

<u>Eu v. San Francisco County Democratic Cent. Committee</u>, 489 U.S. 214 (1989)…19

<u>Foster v. Love</u>, 522 U.S. 67, 69 (1997)…………………………………………..23

<u>Los Angeles v. Lyons</u>, 461 U.S. 95 (1983)…………………………….....…………..29

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555 (1992)…………………………..29-31

<u>Nader v. Federal Election Com'n</u>, 725 F.3d 226, 229 (D.C. Cir. 2013)………..30-32

<u>Niles-Bement-Pond Co. v. Iron Moulders' Union</u>, 254 U.S. 77 (1920)……………27

<u>Quaremba v. Allan</u>, 76 N.J. 1 (1975)………………………………………..…..20-22

<u>Simon v. Eastern Ky. Welfare Rights Organization</u>, 426 U.S. 26 (1976)…………..30

<u>Schundler v. Donovan</u>, 377 N.J. Super. 339 (App. Div. 2005)…………………..22

<u>Shields v. Barrow</u>, 58 U.S. 129 (1854)…………………………………..…..27

<u>Sierra Club v. Morton</u>, 405 U.S. 727  (1972)……………………………………29

Singh v. Murphy, 2020 WL 6154223 (App. Div. 2020)……………………………24

Storer v. Brown, 415 U.S. 724 (1974)…………………………………………………14

Tashjian v. Republican Party of Connecticut, 479 U.S. 208 (1986)……………...19

U.S. Term Limits, Inc. v. Thorton, 514 U.S. 779 (1995)………………………………24

Warth v. Seldin, 422 U.S. 490 (1975)…………………………………………………29

Whitmore v. Arkansas, 495 U.S. 149 (1990)………………………………………..29

Williamson v. Lee Optical Co., 348 U.S. 483 (1955)…………………………………23

## STATUTES

U.S. CONST. ART. III, § 1………………………………………………………………...29
N.J.S.A. § 19:23-24………………………………………………………………………5
N.J.S.A. § 19:23-26.1………………………………………………………5, 14, 16,17
N.J.S.A. § 19:49-2……………………………………………………, 11,14, 15, 16, 19

## RULES

F.R.C.P. 4(d) …………………………………………………………………………….7
F.R.C.P. 8(a)(2)…………………………………………………………………………25
F.R.C.P. 12(b)(6)………………………………………………………………………..25

## PRELIMINARY STATEMENT

Defendant, Christine Giordano Hanlon, is the County Clerk for the County of Monmouth.  Plaintiffs consist of individuals who were/are candidates in Democratic Primary elections and a political advocacy group.  Ms. Hanlon is responsible for overseeing the design, preparation, and printing of all ballots, the issuance of mail-in ballots, and conducting the drawing for ballot position for various elections held in Monmouth County pursuant to New Jersey law.  Plaintiffs have brought this action for declaratory and injunctive relief seeking that the Court declare New Jersey law governing ballot position selection in a Primary Election unconstitutional.

Plaintiffs claim that the method in which ballot position was/is chosen in connection with Democratic Primary Elections is improper.  Specifically, plaintiffs allege that current New Jersey law governing the County Clerks' drawings for candidate ballot position treats "bracketed" and "unbracketed" candidates in an unequal manner.  Plaintiffs argue that this unequal treatment stems from statutory language and New Jersey Courts' interpretations of N.J.S.A. § 19:23-24.  This statute sets forth the manner in which ballot position is selected in Primary Elections. Additionally, N.J.S.A. § 19:23-26.1 provides that during a year where there is an election for the United States Senate, ballot position is determined by the County Clerk first drawing the name of United States Senate candidates (regardless of whether they are bracketed with other candidates).  Once United States Senate

candidate names are drawn and ballot positions set, names for candidates for other offices are drawn and their ballot positions are set. Plaintiffs allege that the statutory method for selecting ballot position place them at a disadvantage.

Plaintiffs' First Amended Complaint fails to state a claim upon which relief can be granted as New Jersey law establishing how ballot positioning is selected is constitutional. Specifically, the United States Supreme Court and the New Jersey Supreme Court have consistently held that there is a state interest in establishing laws which allow for the administration and regulation of elections. If no such rules and regulations existed, the ability to conduct orderly and fair elections could would not be possible. The State Legislature has deemed it necessary to implement the statutes in question to establish a framework under which this defendant (and all defendants) can fairly administer and regulate the Primary Election process.

As the statutes at issue further a state interest (orderly elections) they do not impermissibly infringe on plaintiffs' rights. Accordingly, plaintiffs have failed to state a claim upon which relief can be granted.

Further, Plaintiffs' do not have standing to bring the present action. Specifically, with regard to those candidates who have lost their elections, this action should have been brought before July 7, 2020 Democratic Primary Election. At this time, there is no injury which can be redressed for that class of plaintiffs.

With regard to that candidate who is currently running for office, the election has not been held (let alone the Primary Election ballot drawn) as such that party has suffered no injury.

Finally, plaintiffs complaint should be dismissed for failing to name indispensable parties to this action.  Specifically, plaintiffs seek relief which will impact the constitutional rights of candidates who wish to bracket and associate. Plaintiffs have elected not to name these parties.  As a ruling by this Court could impact the constitutional rights of other candidates, they are indispensable parties. As plaintiffs failed to name these parties it is not proper for this matter to go forward and must be dismissed.

.

## PROCEDURAL HISTORY

On July 6, 2021, plaintiff filed her Complaint in the U.S. District Court for the District of New Jersey, one day prior to New Jersey's Primary Election, seeking a declaration that New Jersey's law governing the method in which ballot position is selected in connection with a primary election is unconstitutional. (See, plaintiff Conforti's original Complaint).

On August 17, 2020, Ms. Hanlon waived service pursuant to F.R.C.P. 4(d). Her initial time to respond to plaintiff's Complaint was set to October 19, 2020.

On or about October 30, 2020, the Honorable Tonianne J. Bongiovanni entered an Order extending all defendants' time to respond to plaintiff's Complaint to November 16, 2020. The time to respond was again extended, to December 7, 2020. Defendants filed their initial Motions to Dismiss Plaintiff's Complaint on December 7, 2020. Those motions were returnable on January 19, 2021.

On or about January 4, 2021, plaintiffs requested the opportunity to file a First Amended Complaint. Id. On or about January 5, 2021, the Honorable Freida Wolfson entered an Order (1) setting the deadline for the filing of plaintiffs' Amended Complaint for January 25, 2021, and (2) setting the deadline for defendants' filing of their respective Motions to Dismiss Plaintiffs' Amended Complaint for February 16, 2021. Id. Plaintiffs filed their First Amended Complaint on or about January 25, 2021, naming additional plaintiffs. Id. The

deadline for filing of defendants' Motions to Dismiss Plaintiffs' Amended Complaint was again extended to March 29, 2021, by way of Judge Wolfson's Order dated March 17, 2021.

Defendant Hanlon now moves to dismiss plaintiffs' First Amended Complaint, in its entirety, for failing to state a claim upon which relief can be granted, lack of standing and failure to name indispensable parties to the action.

## STATEMENT OF FACTS

1.    Plaintiff Conforti ran in the 2020 Democratic Primary Election as a candidate for U.S. House of Representatives in New Jersey's Fourth Congressional District.  She lost. (See Plaintiffs' First Amended Complaint, filed January 25, 2021).

2.    Plaintiff Kreibach ran in the 2020 Democratic Primary Election as a candidate for the United States House of Representatives in New Jersey's 5th Congressional District.  She lost.  Id.

3.    Plaintiff Lucide is running in the 2021 Democratic Primary Election as a candidate for Atlantic County Clerk.  That election has not occurred.  Id.

4.    Plaintiff Marchica ran in the 2020 Democratic Primary Election as a candidate for Mercer County Democratic Committee.  He lost.  Id.

5.    Plaintiff McMillan ran in the 2020 Democratic Primary Election as candidate for Neptune Township Committee.  He lost.  Id.

6.    Plaintiff Spezakis ran in the 2020 Democratic Primary Election as a candidate for the United States House of Representatives in New Jersey's 9th Congressional District.  She lost.  Id.

7.    Defendant Christine Giordano Hanlon (hereinafter "Hanlon"), is the County Clerk for the County of Monmouth.

8.   As County Clerk, Ms. Hanlon is responsible for: (1) the designing, preparing, and printing of all ballots, (2) the issuance of mail-in ballots, and (3) conducting a drawing for ballot position for various elections held in Monmouth County.

9.   In a Primary Election, the Republican and Democratic ballots are prepared separately.  The design and layout of the ballot in a political party primary election is guided by Title 19 of the New Jersey statutes, which dictates the filing of candidate petitions, bracketing of candidates, slogans, and the process for the ballot draw to determine the order of candidates.

10.   In order to appear on the primary election ballots, Republican and Democratic party candidates submit petitions signed by voters to the appropriate government entities by a date certain set by N.J.S.A. 19:23-14.  For the 2020 primary election, that date was March 30.

11.   Municipal candidates submit petitions to the municipal clerks in their jurisdictions; county candidates submit petitions to the County Clerk; state and federal candidates submit petitions to the Secretary of State.  In Monmouth County, the 2020 primary election included the election for the President, United States Senate, United States Congress, County Clerk, County Freeholders, and municipal officials.  The election also included municipal political party or "county committee"

representatives for each election district in the County of Monmouth, pursuant to the bylaws of the Monmouth County Democratic and Republican parties.

12.  The Secretary of State and the municipal clerks are required to submit the names of all of the candidates for the Primary Election to the County Clerk by a date certain for the preparation of ballots.

13.  Candidates, pursuant to New Jersey law, are permitted to bracket with other candidates to form a "ticket" and appear together on the ballot either in the same column or row.  Oftentimes, these bracketed candidates also utilize the same "slogan".

14.  Pursuant to N.J.S.A. § 19:49-2, the only candidates that can file joint petitions under New Jersey law are county candidates (Commissioners) who are running for the same office for the same term.  Candidates wishing to bracket with other candidates and utilize slogans, must submit those requests to the County Clerk within 48 hours of the petition filing deadline.  For the 2020 primary election, that date was April 1, according to N.J.S.A 19:49-2.  The County Clerk in turn forwards that request to the County candidates' campaign manager for approval.  The candidates through their Campaign manager than may approve or disapprove of said request.

15.  Under New Jersey law, in the year in which there is an election for the United States Senate, ballot position is selected by first drawing the names of those

United States Senate candidates regardless if they are or are not bracketed with other candidates (if applicable).  The first name drawn goes in the first column with their slate of candidates, followed by the second name, and so on.

16.  On April 9, 2020, the Monmouth County Clerk's Office conducted a ballot draw.

17.  On or about July 6, 2020, plaintiff Conforti filed her Complaint in the United States District Court for the District of New Jersey, one day prior to New Jersey's Primary Election.  The case was assigned docket number 3:20-cv-08267-FLW-TJB.

**LEGAL ARGUMENT**

**POINT I**

**NEW JERSEY'S ELECTION LAWS CONCERNING
BALLOT POSITIONING ARE CONSTITUTIONAL.**

The United States Supreme Court has set forth a framework for the review of the constitutionality of state laws governing elections.  In <u>Anderson v. Celebrezze</u>, 460 U.S. 780, 788 (1983), the Court established the standard by which states could enact laws to administer elections, while balancing the threat of infringement on voter and candidates' rights.  In <u>Anderson</u>, the Court provided that "not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally-suspect burdens on voters' rights to associate or to choose among candidates."  <u>Id</u>.  Further, there must be "a substantial regulation of elections if they are to be fair and honest…some sort of order, rather than chaos." <u>Id</u>., *citing* <u>Storer v. Brown</u>, 415 U.S. 724, 730 (1974).  The Court acknowledged that any state law governing the election process has at least some effect on "the individual's right to vote and his right to associate with others for political ends," <u>Anderson</u> 460 U.S. at 788.  However, "the state's important regulatory interests are generally sufficient to justify <u>reasonable, nondiscriminatory restrictions</u>."  <u>Id</u>.

The Court in <u>Anderson</u> noted that, where a state law is alleged to burden the right of a candidate, the reviewing court must analyze "the character and magnitude of the asserted injury," as well as the "precise interests put forward by

14

the State as justifications for the burden imposed by its rule." <u>Anderson</u> 460 U.S. at 789.  Courts must then weigh the burdens against the state interests and take into consideration "the extent to which those interests make it necessary to burden [a candidate's] rights." <u>Id</u>.

Election regulations imposing a severe burden on associational rights are subject to scrutiny by the courts and may be upheld only if they are narrowly tailored to serve a compelling state interest. <u>Clingman v. Beaver</u>, 544 U.S. 581, 586 (2005).

Election regulations that impose only modest burdens on associational rights requires a lower form of scrutiny in which the state shows important regulatory interests justify reasonable, non-discriminatory restrictions. <u>Anderson</u> 460 U.S. at 788.  The U.S. Supreme Court has "repeatedly upheld reasonable, politically neutral regulations that have the effect of channeling expressive activity at the polls." <u>Burdick v. Takushi</u>, 504 U.S. 428, 438 (1992).

As the Primary Election which forms the basis of this matter involved a U.S. Senate election, <u>N.J.S.A.</u> § 19:23-26.1 and <u>N.J.S.A.</u> § 19:49-2 were applicable. <u>N.J.S.A.</u> § 19:23-26.1 provides that "in the case of a primary election for the nomination of a candidate for the office of United States Senator...the names of all candidates for the office of United States Senator…shall be printed on the official primary ballot in the first column or horizontal row designated for the part of those

candidates." N.J.S.A. § 19:49-2 provides in relevant part, "in those counties where voting machines are used, the county clerk shall have the authority to determine the specifications for, and the final arrangement of, the official ballots."  Further, it is provided that:

> For the primary election for the general election in all counties where voting machines are or shall be used, all candidates who shall file a joint petition with the county clerk of their respective county and who shall choose the same designation or slogan shall be drawn for position on the ballot as a unit and shall have their names placed on the same line of the voting machine; and provided further, that all candidates for municipal or party office in municipalities in counties where voting machines are or shall be used who shall file a petition with the clerk of their municipality bearing the same designation or slogan as that of the candidates filing a joint petition with the county clerk as aforesaid, may request that his or her name be placed on the same line of the voting machine with the candidates who have filed a joint petition with the county clerk as aforesaid by so notifying the county clerk of said county in writing within two days after the last day for filing nominating petitions and thereupon the county clerk shall forthwith notify the campaign manager of such candidates filing a joint petition as aforesaid of said request, and if the said campaign manager shall file his consent in writing with the said county clerk within two days after the receipt of said notification from said county clerk, the clerk of said county shall place the name of such candidate on the same line of the voting machine on which appears the names of the candidates who have filed the joint petition as aforesaid. Id.

Pursuant to New Jersey Law, the ballot position selection for the Primary Election was "driven" by the fact that there was a United States Senate race.

Accordingly, N.J.S.A. § 19:23-26.1 mandates that the first columns of the ballot be allocated to United States Senate candidates (regardless of whether they are or are not bracketed with other candidates). Further, N.J.S.A. § 19:49-2 sets forth the manner in which candidates may affiliate with other candidates. Specifically, the only candidates that can file joint petitions under New Jersey law are county candidates who are running for the same office for the same term. If a candidate seeks to be included "on the line" or bracketed with county candidates, they must make a written request for such inclusion to the County Clerk within two (2) days of the filing of the petition. The County Clerk in turn forwards that request to the County candidates' campaign manager for approval. The candidates, through their Campaign manager than may approve or disapprove of said request.

For example, in connection with the Monmouth County Democratic Primary, Michael Penna and Moira Nelson filed a joint petition in connection with their candidacy for the office of the Board of Chosen Freeholders. They sought to run together on the same line (e.g. be bracketed together). Joseph Biden, who was seeking the office of the President, sought and was approved to appear on the line with Penna and Nelson. Cory Booker, who was seeking the office of United States Senate, sought and was approved to appear on the line with Penna and Nelson. Stephanie Schmid, who was seeking the office of the United States House of

Representatives, sought and was approved to appear on the line with Penna and Nelson.  The candidates were bracketed together.

Additionally, in connection with the Democratic Primary, Angelica Ashford and Lucille Benafanti, filed a joint petition in connection with their candidacy for the office of the Board of Chosen Freeholders.  They sought to run together on the same line (e.g. be bracketed together).  Lawrence Hamm, who was seeking the office of the United States, sought and was approved to appear on the line with Ashford and Benafanti.

Pursuant to <u>N.J.S.A.</u> § 19:23-26.1, a drawing for ballot position between Booker and Hamm was conducted.  Booker's name was selected first and his slate was assigned column one.  Hamm and his slate were assigned column two.

Next, the remaining candidate for President was Bernie Sanders and he was assigned column three.

The remaining candidates for the Democratic primary (excluding municipal offices) were plaintiff Conforti and David Applefield.  A blind draw was then conducted for ballot position assignment.  Plaintiff Conforti's name was drawn, and she was assigned column four and Mr. Applefield was assigned column five.

### a.  <u>Plaintiffs' arguments challenging the Constitutionality of laws governing ballot positioning have previously been rejected.</u>

Plaintiffs' federal Constitutional claims under the First and Fourteenth Amendments fail as a matter of law.  Namely, plaintiffs' associational rights are no

more important that the rights of candidates who wish to bracket on a primary ballot.

The United States Supreme Court has established in Eu v. San Francisco County Democratic Cent. Committee, 489 U.S. 214 (1989), the manner in which plaintiffs' associational and Equal Protection claims are to be examined.  See also Tashjian v. Republican Party of Connecticut, 479 U.S. 208 (1986).  Under this balancing test, Courts are to initially examine the constitutionality of a state election law to determine whether it burdens rights protected by the First and Fourteenth Amendments of the Constitution.  The Court must next determine whether the state can provide a justification for such burden.  Tashjian 479 U.S. at 217.  The severity of the burden determines the level of scrutiny to be employed by the Court.  In the event of a severe burden on a candidate's rights, the regulations imposing said burden must be narrowly tailored and advance of compelling state interest.  Id.  When there is a lesser burden, there is lesser standard of review and the State's regulatory interest will usually be enough to justify reasonable, nondiscriminatory restrictions.  Id.  In Eu, the United States Supreme Court recognized that the associational rights of political parties are protected under the First Amendment.

The issues presented in plaintiffs' First Amended Complaint have also previously been decided by the New Jersey Supreme Court.  Specifically, the

Court ruled that the manner in which New Jersey assigns ballot positions <u>is</u>

<u>constitutional</u>, and that the County Clerk's exercise of discretion to conduct ballot

drawing separately between bracketed and unbracketed candidates does not in

itself constitute an Equal Protection Clause violation.  <u>Quaremba v. Allan</u>, 67 N.J.

1, 10-18 (1975).

      In <u>Quaremba v. Allan</u>, 67 N.J. 1 (1975) affirming and modifying 128 N.J.

Super 570 (App. Div. 1974), the New Jersey Supreme Court was called upon to

rule on the constitutionality of <u>N.J.S.A</u> 19:49-2.  In <u>Quaremba</u>, the plaintiffs argued

the bracketing requirements set forth in <u>N.J.S.A.</u> 19:49-2 were unconstitutional and

denied Equal Protection under the law.  The plaintiffs in <u>Quaremba</u> were

candidates for State Senate and Freeholder and sought an order requiring "the

listing of all candidates for election of a political party in a single column or row

determined by drawing." <u>Quaremba</u> 128 N.J. Super at 572.  Those candidates

contended "that their names should have been placed in the same column or line

with other candidates for the same office, their respective positions to be

determined by lot, but were assigned, instead, a separate column or line alongside

the others." <u>Id</u>. at 573.  Further, they claimed that joint petition and bracketing

structure established under <u>N.J.S.A.</u> § 19:49-2 violated their right to equal

protection.  The Court rejected these arguments.

The New Jersey Supreme Court initially recognized "there can be no doubt about the authority of the Legislature to adopt reasonable regulations for the conduct of primary and general elections.  Such regulations, of course, may control the manner of preparation of the ballot, so long as they do not prevent a qualified elector from exercising his constitutional right to vote for any person he chooses." Quaremba, 67 N.J. at 11.  The Court continued "nothing in the challenged section inhibits any voter from voting for any person he chooses or limits the right of any candidate to run for office." Id.

In addressing the claim that affiliated candidates receive more votes than unaffiliated candidates, the Court noted that even if that was true "it affords no basis for invalidating, as unreasonable, the legislative determination that whatever the effect on an unaffiliated candidate, the public interest is better served by permitting a grouping of candidates having common aims or principles and authorizing those candidates 'to have this fact brought to the attention of the voter in a primary election with the additional effectiveness produced by alignment of their names on the machine ballot." Id. at 13.

The Appellate Division in Quaremba noted "[w]hile candidates not affiliated with the county candidate may be entitled to a drawing for position as among themselves, they are not entitled under the statute to have their names appear in the

same column with jointly listed county candidates and those affiliated with them."
Id. at 574.

In Schundler v. Donovan, 377 N.J. Super. 339 (App. Div. 2005), the
Appellate Division was faced with the same constitutional claim that separate
ballot draws for ballot placement between bracketed and unbracketed candidates
violated the Equal Protection Clause.  Id. at 343.  The Appellate Division affirmed
the County Clerk's discretion in designing the ballot and held that it would not
substitute the Clerk's judgment unless that judgment is not "rooted in reason."  Id.
at 343-344.

The New Jersey Supreme Court has found that laws governing ballot
position selection do not infringe on a candidate's constitutional rights.

In the case at bar, plaintiffs have not provided any proof of intentional
discrimination.  Instead, plaintiffs offer a professor's summary of the academic
literature on positional ballot alleged bias effect without any specific proof in this
case that such bias occurred and resulted in loss of votes for the plaintiffs.  Under
the decision announced in Quaremba this does not rise to the level of constitutional
harm to the plaintiffs.

A viable Equal Protection claim requires proof of "'invidious
discrimination' which offends the Constitution."  Quaremba 67 N.J. 1 (1975).  The
United States Supreme Court has held similarly that plaintiffs claiming an Equal

Protection violation bear the burden of providing some substantive proof of discrimination.  American Party of Texas v. White, 415 U.S. 767 (1974); see also Williamson v. Lee Optical Co., 348 U.S. 483, 489 (1955).

The statutes at issue are non-discriminatory and place a minimal burden on the plaintiffs.  They advance the regulatory interest of New Jersey in conducting a fair election, which most importantly gives the voters the opportunity and right to vote for whomever they wish to vote for.  For example, with regard to Plaintiff Conforti's candidacy she was clearly listed on the Monmouth County ballot and could easily be found by voters if they chose to vote for her.

**b.  New Jersey Law does not violate the Elections Clause of the United States Constitution.**

In addition to First and Fourteenth Amendment claims, plaintiffs also allege that the manner in which ballot placement occurs as it applies to House of Representative candidates violates the Elections Clause of the United States Constitution.  Article I, Section 4, Clause 1 of the United States Constitution provides "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may from time to time by Law make or alter such Regulations, except as to the Places of [choosing] Senators."  In Foster v. Love, 522 U.S. 67, 69 (1997), the Supreme Court noted that the Elections Clause "is a default provision; it invests the States with responsibility for the mechanics of Congressional

elections." Further, the Supreme Court noted that the Framers intended the Elections Clause to grant states the authority to create procedural regulations for such federal elections." U.S. Terms Limits, Inc. v. Thorton, 514 U.S. 779, 832 (1995).

The Court has also recognized that the reference to "Legislature" encompasses more than just the lawmaking body. Singh v. Murphy, 2020 WL 6154223 (App. Div. 2020). Instead, it refers to the state's legislative power "performed in accordance with the State's prescriptions for lawmaking." Arizona State Legislature v. Arizona Indep. Redistricting Comm'n, 576 U.S. 787, 805 (2015).

In this matter, the State Legislature has established the laws, essentially the manner in which ballot position is to be drawn, for Primary Elections. They have in turn empowered the County Clerks to implement those laws, which permits reasonable discretion.[1] Accordingly, plaintiff's claim that the state statutes at issue violate the Elections Clause is without merit.

Accordingly, plaintiffs fail to state a claim upon which relief can be granted. As such, it is proper to dismiss plaintiffs' First Amended Complaint, with prejudice, in its entirety.

---

[1] It is important to note that discretion is necessary for Clerks in configuring their ballot. This is due to spatial and technological limitations created depending on the number of candidates running and positions in which elections are being held.

## POINT II

## PLAINTIFFS FAIL TO STATE A CLAIM
## UPON WHICH RELIEF CAN BE GRANTED.

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief and give notice of what the claim is and the ground upon which it rests. Conley v. Gibson, 355 U.S. 41, 47 (1957).  The pleading standard of Rule 8 does not require "detailed factual allegations."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That claim has "facial plausibility when [a party] pleads factual content that allows the court to draw the reasonable inference that [the other party] is liable for the misconduct alleged." Id. at 679.  Further, "factual allegations must be enough to raise a right to relief above speculative level." Twombly 550 U.S. at 555.

In reviewing a Rule 12(b)(6) motion, the Court must first accept as true all of the allegations contained in the complaint.  The Court must then determine whether the claims asserted state a plausible claim for relief.  To do this, the court must engage in a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

25

In this matter, plaintiffs have failed to establish that New Jersey law governing Primary Elections unconstitutionally infringes on their First and Fourteenth Amendment rights.  There is a reasonable basis for the State Legislature to establish laws which regulate the administration of elections.  Specifically, these rules and regulations allow for orderly and fair elections.

Numerous court decisions have found that the statutes at issue constitutional.  As such, plaintiffs' complaint should be dismissed for failing to state a claim upon which relief can be granted.

## POINT III

## PLAINTIFFS HAVE FAILED TO NAME
## INDISPENSABLE PARTIES TO THIS ACTION.

Federal Rule of Civil Procedure 19 provides that:

> A person who is subject to service of process and whose joinder will
> not deprive the court of competent jurisdiction over the subject matter
> of the action shall be joined as a party in the action if (1) in the
> person's absence complete relief cannot be accorded among those
> already parties, or (2) the person claims an interest relating to the
> subject of the action and is so situated that the disposition of the
> action in the person's absence may (i) as a practical matter impair or
> impede the person's ability to protect that interest or (ii) leave any of
> the persons already parties subject to substantial risk of incurring
> double, multiple or otherwise inconsistent obligations by reason of the
> claimed interest.

"There is no prescribed formula for determining in every case whether a person or

corporation is an indispensable part or not." Niles-Bement-Pond Co. v. Iron

Moulders' Union, 254 U.S. 77 (1920). "Each case must depend upon its own facts

and circumstances…person who not only have an interest in the controversy, but

an interest of such nature that a final decree cannot be made without either

affecting that interest, or leaving the controversy in such a condition that is final

termination may be wholly inconsistent with equity and good conscience are

indispensable parties." Shields v. Barrow, 58 U.S. 129 (1854). "All persons who

may be affected by the relief caught or who are interested in the object of the suite

are generally deemed necessary parties." Woulfe v. Atlantic City Steel Pier Co.,

129 N.J. Eq. 510 (Ch. 1941).

In this instant action, Plaintiff has not named political candidates who will potentially be impacted by any decision rendered by the Court in connection with this matter.  Through this action, the constitutional rights of candidates who wish to associate and bracket will be potentially impacted.  Namely, the plaintiffs are seeking a declaration that the statutes at issue are unconstitutional.  If that were to occur, the First and Fourteenth Amendments rights of candidates who wish to associate and bracket would be impacted.  Plaintiff has elected not to name said candidates to this action.

Due to Plaintiffs' failure to name indispensable parties, it is proper to dismiss this action.

**POINT IV**

**PLAINTIFFS' LACK STANDING
TO ASSERT THEIR CLAIMS**

Article III of the United States Constitution "limits the jurisdiction of federal courts to 'Cases' and "Controversies'. . . ." Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992).  The doctrine of standing is used "to identify those disputes which are appropriately resolved through the judicial process." Lujan 504 at 560, *citing* Whitmore v. Arkansas, 495 U.S. 149, 155 (1990).  Standing is "an essential and unchanging part" of Article III's requirement that a "case" or "controversy" be before the court.  Lujan 504 U.S. at 550, see, *e.g.*, Allen v. Wright, 468 U.S. 737, 751 (1984).

The Lujan Court articulated a three part test to determine whether a plaintiff has standing.  Id. at 560.  First, the plaintiff must have suffered an "injury in fact." The "injury in fact must be both (a) 'concrete and particularized,' and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical.'" Id. at 560; *citing* Allen 468 U.S. at 756; Warth v. Seldin, 422 U.S. 490, 508 (1975); Sierra Club v. Morton, 405 U.S. 727, 740–741 (1972); Whitmore, *supra,* 495 U.S., at 155 (quoting Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)).  This standard requires more than "'someday' intentions" to support a finding of the "'actual or imminent' injury that our cases require." Nader v. Federal Election Com'n, 725 F.3d 226, 229 (D.C. Cir. 2013).

29

Second, the plaintiff must demonstrate "a causal connection between the injury and the conduct complained of." Lujan 504 U.S. at 560-561; *citing* Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41–42 (1976).  That is, the injury must be "'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" Id.

Third, the plaintiff must demonstrate that the injury complained of is "'likely,' as opposed to merely "speculative,'" and that the plaintiff's injury will be "redressed by a favorable decision." Lujan 504 U.S. at 561.  It is critical to note that "[t]he party invoking federal jurisdiction bears the burden" of establishing each of these three elements.  Lujan 504 U.S. at 561.  Accordingly, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation."  Id.

The Court in Nader concluded that the plaintiff lacked standing as a competitor in the election that already passed despite claiming he would run again.

Here, plaintiffs does not have standing to bring their claim.  Specifically, plaintiffs Conforti, Kreibach, Spezakis, McMillan and Marchica lost their Democratic Primary Elections.  At this time, there simply is no controversy or injury for the Court to address and/or redress.  Plaintiff Conforti elected to file this

action the day before the Democratic Primary (which had been postponed from the original June date due to COVID-19). She had the opportunity to file this action when arguably a controversy existed (e.g., when the ballot draw occurred on April 9, 2020). However, she elected not to do so at that time. Further, Kreibach, Spezakis, McMillan and Marchica did not join the lawsuit until after they lost.

With regard to plaintiffs Lucide, the primary election has not yet occurred. It is possible that she will win and her claims will be moot.

Under the standard set in Lujan, plaintiffs Conforti, Kreibach and Marchica do not have an injury in fact. Simply losing an election does not equate to an injury. Second, there is no causal connection between the alleged injury and plaintiffs' ballot position. Plaintiffs lost because voters did not support their candidacy. Finally, there is currently no injury to redress. The election is over, as is the opportunity to address the alleged "wrong." Their stated "intention" to run again is speculative, and analogous to the Nader case. Like Nader, these plaintiffs have not suffered an injury in fact. Additionally, Plaintiffs Lucide has no injury as the primary election has not occurred.[2]

Accordingly, plaintiffs lack standing, and it is appropriate to dismiss their First Amended Complaint, in its entirety.

---

[2] New Jersey Working Families Alliance should be dismissed as they lack standing as they are neither a candidate, nor a voter who suffered an alleged injury.

## <u>CONCLUSION</u>

For the foregoing reasons, it is proper to grant the Motion to Dismiss of Defendant, Christine Giordano Hanlon (in her capacity as Monmouth County Clerk), with prejudice, in its entirety, for failing to state a claim upon which relief can be granted.

DATED: March 29, 2021

                                   __*/S/ Thomas W. Carter*_____
                                     THOMAS W. CARTER, ESQ.
                                     ERIK ANDERSON, ESQ.
                                     **Reardon Anderson, LLC**
                                     *Attorneys for Defendant,*
                                     *Christine Giordano Hanlon,*
                                     *in her official capacity as*
                                     *Monmouth County Clerk*