## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## TRENTON VICINAGE

|  |  |
|---|---|
| CHRISTINE CONFORTI, ARATI KREIBICH, MICO LUCIDE, JOSEPH MARCHICA, KEVIN MCMILLAN, ZINOVIA SPEZAKIS and NEW JERSEY WORKING FAMILIES ALLIANCE, INC.,<br><br>            Plaintiffs,<br><br>v.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, SCOTT M. COLABELLA, in his official capacity as Ocean County Clerk, PAULA SOLLAMI COVELLO, in her official capacity as Mercer County Clerk, JOHN S. HOGAN, in his official capacity as Bergen County Clerk, EDWARD P. MCGETTIGAN, in his official capacity as Atlantic County Clerk and E. JUNIOR MALDONADO, in his official capacity as Hudson County Clerk,<br><br>            Defendants. | **Case No. 3:20-cv-08267-FLW-TJB** |

---

BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT, PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6), ON BEHALF OF DEFENDANT JOHN S. HOGAN, IN HIS OFFICIAL CAPACITY AS BERGEN COUNTY CLERK

---

**KAUFMAN, SEMERARO & LEIBMAN, LLP**
Two Executive Drive, Suite 530
Fort Lee, New Jersey 07024
(201)947-8855
*Attorneys for Defendant John S. Hogan, in his official capacity as Bergen County Clerk*

*Jaime R. Placek, Esq.*
*Attorney ID No. 041071996*
*On the Brief*

**<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

TABLE OF CONTENTS……………………………………………………..…………i

TABLE OF AUTHORITIES…………………………………………………….…..…ii

PRELIMINARY STATEMENT………………………………………………….…………1

PROCEDURAL HISTORY……………………………………………….…………2

STATEMENT OF FACTS……………………………………………………….………..3

LEGAL ARGUMENT…………………………………………………………….………6

STANDARD OF REVIEW………………………………………………….………..6

I.    PLAINTIFFS' FIRST AMENDED COMPLAINT MUST BE DISMISSED
      BASED UPON ITS FAILURE TO STATE A CLAIM UPON WHICH RELIEF
      MAY BE GRANTED BY THIS COURT…………………………………….………8

II.   PLAINTIFFS' CLAIMS ARE NOT RIPE FOR REVIEW BY THIS
      COURT………………………………………………………………….…………16

CONCLUSION……………………………………………………………...…………....17

i

## **TABLE OF AUTHORITIES**

**Cases**

**Page**

Anderson v. Celebrezze, 460 U.S. 780 (1983)……………………………………………12, 13

Anspach v. City of Philadelphia, 503 F.3d 256 (3d Cir. 2007)…………………………………6

Ashcroft v. Iqbal, 556 U.S. 662 (2009)…………………………………………………………6, 7

Bell Atl. Corp. v. Twombley, 550 U.S. 544……………………………...…………………………7

Burdick v. Takushi, 504 U.S. 428 (1992)……………………………………………………7, 13, 14

Doe v. Reed, 561 U.S. 186 (2010)…………………………………………………………………15

Democratic-Republican Org. v. Guadagno, 900 F.Supp.3d 447 (D.N.J. 2012),
    aff'd 700 F.3d 130 (3d Cir. 2012)……………………………………………………………7

Eu v. San Francisco Democratic Central Committee, 489 U.S. 214 (1989)……………………....11

Gillen v. Sheil, 174 N.J. Super. 386 (Law Div. 1980)……………………………………………12

Hedges v. United States, 404 F.3d 744 (3d Cir. 2005)……………………………………………7

Lesniak v. Budzah, 626 A.2d 1073 (1993)………………………………………………………14

Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997)…………………………6, 7

Nader v. Schaffer, 417 F. Supp. 837 (D. Conn.),
    aff'd, 429 U.S. 989 (1976)…………………………………………………………………....15

Plains All Am. Pipeline L.P. v. Cook, 866 F.3d 534 (3d Cir.2017)……………………………....16

Quaremba v. Allan, 67 N.J. 1 (1974)……………………………………………………………10

Republican Party of PA v. Cortez, 218 F.Supp.3d 396 (E.D. Pa. 2016)………………………....14

Richardson v. Caputo, 49 N.J. 3 (1965)…………………………………………………………10

Rogers v. State Committee of Republican Party, 236 N.J. Super. 303 (App. Div. 1989)…………8

Smith v. Penta, 81 N.J. 65 (1979)…………………...……………………………………………15

## <u>TABLE OF AUTHORITIES</u>
**(Cont.)**

**Cases**

**Page**

<u>Timmons v. Twin Cities Area New Party</u>, 520 U.S. 351 (1997)…………………………………….7

<u>United States v. Macavage</u>, 609 F.3d 264 (3d Cir. 2010)……………………………...……………………15

**Statutes**

<u>N.J.S.A.</u> 19:5-1…………………………………………………………………...…………………8

<u>N.J.S.A.</u> 19:23-5……………………………………………………………………...……………8

<u>N.J.S.A.</u> 19:23-24…………………………………………………………………...……………8

<u>N.J.S.A.</u> 19:23-26.1……………………………………………………………/…………………5

<u>N.J.S.A.</u> 19:49-2…………………………………………………………//…4, 5, 9, 10, 11, 12, 13

**Rules**

<u>Fed. R. Civ. P.</u> 12(b)(6)………………………………………………………………………….7

## PRELIMINARY STATEMENT

Plaintiffs, various candidates who ran as a candidate for office in prior primary elections or who represent they intend to run as a candidate for office in future primary elections, have now filed a First Amended Complaint (hereinafter, the "Amended Complaint") seeking a ruling by this Court declaring as unconstitutional the New Jersey statutes governing candidate ballot position selection in primary elections. Specifically, Plaintiffs contend that New Jersey law governing the method in which drawings are conducted to determine candidate ballot position results in unequal treatment between those candidates who are "bracketed" with other candidates on the ballot for other offices and those candidates who are not "bracketed" with other candidates on the ballot for other offices.

The Amended Complaint added as Plaintiffs Arati Kreibich ("Kreibich"), a Democratic candidate on the ballot in the July 7, 2020 Primary Election for the office of United States House of Representatives in New Jersey's Fifth Congressional District, and Zinovia Spezakis ("Spezakis"), a Democratic candidate on the ballot in the July 7, 2020 Primary Election for the office of United States House of Representatives in New Jersey's Ninth Congressional District. As candidates for those respective offices, both Kreibich and Spezakis appeared as candidates on ballots in elections held in the County of Bergen. In conjunction with adding Krieibich and Spezakis as Plaintiffs, the Honorable John S. Hogan has now been named as a defendant by Plaintiffs in the Amended Complaint in his official capacity as the Bergen County Clerk as the Bergen County Clerk is charged with overseeing the design, preparation and printing of all election ballots, the issuance of all mail-in ballots and conducting the drawing for candidate ballot position for elections held in the County of Bergen.

As is presented herein, and within the briefs of co-defendants submitted in support of their respective Motions to Dismiss being filed in this action, despite the various policy arguments presented in the Amended Complaint, the New Jersey statutes now being challenged by Plaintiffs survive constitutional scrutiny on the merits. Consistent with the ruling of the New Jersey Supreme Court, the interests of New Jersey in protecting the rights of candidates for office to associate, as is presented by the presently enacted statutory ballot drawing procedures, carry significantly greater weight when balanced against the alleged injury as is being claimed by Plaintiffs and, accordingly, Plaintiffs' Amended Complaint should be dismissed it its entirety, with prejudice.

## **PROCEDURAL HISTORY**

Plaintiff Christine Conforti (hereinafter, "Conforti") filed her initial Complaint with this Court on July 6, 2020 (Docket No. 1), one day prior to the holding of New Jersey's Primary Election on July 7, 2020 (the date of which was rescheduled from the originally scheduled Primary Election date of June 2, 2020 by Executive Order No. 120 issued April 8, 2020 by the Honorable Philip D. Murphy, Governor of the State of New Jersey https://nj.gov/infobank/eo/056murphy/pdf/EO-120.pdf), seeking a ruling by this Court that New Jersey's law governing the method in which ballot position is selected is unconstitutional.

Subsequent to the filing of a motion to intervene by the Bergen County Clerk (Docket No. 7) which was granted by this Court by Order filed October 22, 2020 (Docket No. 22), Conforti, joined with newly named Plaintiffs Kreibich, Mico Lucide, Joseph Marchica, Kevin McMillan, Spezakis and New Jersey Working Families Alliance, Inc. (hereinafter, collectively ("Plaintiffs"), filed the Amended Complaint on January 25, 2021 which also now names the Honorable John S. Hogan, in his official capacity as the Bergen County Clerk

(Docket No. 33). This Motion to Dismiss is now filed pursuant to the Consent Order filed by this Court on March 17, 2021 (Docket No. 51), seeking dismissal of Plaintiffs' Amended Complaint in its entirety, with prejudice.

## STATEMENT OF FACTS

1.      Plaintiffs are various political candidates who ran as a candidate for office in the July 7, 2020 Primary Election or who represent they intend to run as a candidate for office in future Primary Elections. (Docket No. 33).

2.      Kreibich was a Democratic candidate on the ballot in the July 7, 2020 Primary Election for the office of United States House of Representatives in New Jersey's Fifth Congressional District (Docket No. 33, ¶24), and Spezakis was a Democratic candidate on the ballot in the July 7, 2020 Primary Election for the office of United States House of Representatives in New Jersey's Ninth Congressional District (Docket No. 33, ¶44) and represents that she intends to again run as a candidate for this office in the June 7, 2022 Primary Election (Docket No. 33, ¶160).

3.      As candidates for those respective offices, both Kreibich and Spezakis appeared as candidates on ballots in elections held in the County of Bergen. (Docket No. 33, ¶¶120 and 154).

4.      Kreibich exercised her First Amendment right of association with two (2) candidates for county freeholder on the ballot in the July 7, 2020 Primary Election. (Docket No. 33, ¶123).

5.      While Spezakis chose to exercise her First Amendment right to associate with candidates for other offices on the ballot in the July 7, 2020 Primary Election, Spezakis represents that she intends to exercise her constitutional right to not associate with any candidates in the

June 7, 2022 Primary Election. (Docket No. 33, ¶¶152-160).

6.      Kreibich and Spezakis each appeared as a candidate for the office of United States House of Representatives on the same row as every other candidate for said office on every ballot upon which their name so appeared. (Docket No. 33, ¶¶120 and 154).

7.      The Honorable John S. Hogan is named as a Defendant in the Amended Complaint in his official capacity as Bergen County Clerk (hereinafter, the "Bergen County Clerk"). (Docket No. 33, ¶60).

8.      The Bergen County Clerk is responsible for:  (a) the designing, preparing and printing of all ballots, (b) the issuance of all vote by mail ballots and (3) conducting drawings for candidate ballot position for elections held in the County of Bergen.  (Docket No. 33, ¶60).

9.      Pursuant to N.J.S.A. 19:23-24, all county clerks maintain sole jurisdiction over the primary election ballot design and candidate placement for primary election ballots.

10.      The Bergen County Clerk conducted the candidate ballot position draw on April 9, 2020 as guided by New Jersey law. (Docket No. 33, ¶119).

11.      Pursuant to New Jersey law, candidates for elected office are permitted to bracket with other candidates (to form what is commonly referred to as a "ticket") so that those "bracketed" candidates may then appear together on the ballot either in the same column (as is the case in the County of Bergen) or the same row and, in many instances, utilizing the same "slogan." (Docket No. 33).

12.      Pursuant to N.J.S.A. 19:49-2, any political candidates desirous of bracketing with other political candidates and utilize the same "slogan" as other political candidates must submit such requests to the Bergen County Clerk within forty-eight (48) hours of the governing nominating petition filing deadline.

13.      Pursuant to N.J.S.A. § 19:49-2, the only candidates that can file joint petitions

4

underNew Jersey law are county candidates (formerly Freeholders, now Commissioners) who are running for the same office for the same term.  If a candidate seeks to be included "on the line" or bracketed with county candidates, they must make a written request for such inclusion to the Bergen County Clerk within two (2) days of the filing of the petition. The Bergen County Clerk must then forward any such request received to the county candidates' campaign manager for approval.

14.     Pursuant to <u>N.J.S.A.</u> 19:23-26.1, in a year in which there is an election for the United StatesSenate (as was the case in the July 7, 2020 Primary Election), ballot position is selected by first drawing the names of those United States Senate candidates who are bracketed with county candidates, with the first name drawn being placed in the first column with their slate of candidates, followed by the second name, and so on. (Docket No. 33, ¶82).

15.     For the July 7, 2020 Democratic Primary Election, Kriebich was facing one (1) other candidate to appear as the Democratic Party nominee for the subject office on the November 3, General Election ballot and Spezakis was facing two (2) other candidates to appear as the Democratic Party nominee for the subject office on the November 3, 2020 General Election ballot. (Docket No. 33, ¶¶120 and 154).

16.     Kriebich appeared in the third column on the July 7, 2020 Democratic Primary Election ballot for the office of United States House of Representatives in New Jersey's Fifth Congressional District as she did not bracket with a candidate for United States Senate. (Docket No. 33).

17.     There were two (2) candidates appearing on the July 7, 2020 Democratic Primary Election ballot for the office of United States Senator and Cory Booker's name was drawn to appear first on the ballot. As a result, Josh Gottheimer, who bracketed with Cory Booker,

appeared in the first column on the July 7, 2020 Democratic Primary Election ballot for the office of United States House of Representatives in New Jersey's Fifth Congressional District. (Docket No. 33, ¶120).

18.     Spezakis appeared in the second column on the July 7, 2020 Democratic Primary Election ballot for the office of United States House of Representatives in New Jersey's Ninth Congressional District as he bracketed with Lawrence Hamm, who was the challenger to Cory Booker, had his name drawn to appear in the second column on the July 7, 2020 Democratic Primary Election ballot for the Office of United States Senator. (Docket No. 33, ¶154).

19.     Following the tabulation of the results of the July 7, 2020 Democratic Primary Election, both Kreibich and Spezakis were each defeated by incumbent candidates.

20.     Based upon the facts as presented in this matter, when applying the relevant governing laws thereto, it is appropriate and proper for this Court to grant this motion and dismiss Plaintiffs' Amended Complaint in its entirety, with prejudice.

## LEGAL ARGUMENT

### STANDARD OF REVIEW

In reviewing Plaintiffs' Amended Complaint on this motion brough under Fed. R. Civ. P. 12(b)(6), this court must accept the factual allegations set forth by Plaintiffs as true. The factual allegations set forth by Plaintiffs here relevant to the Bergen County Clerk are agreed upon by the Bergen County Clerk as noted hereinabove. However, Plaintiffs' conclusory allegations, general propositions and legal conclusions are not entitled to the same assumption of truth being made by this Court.   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Anspach v. City of Philadelphia, 503 F.3d 256, 260 (3d Cir. 2007) (quoting Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (conclusory allegations or legal conclusions presented by a plaintiff

as factual allegations will not be found by a reviewing court to be sufficient to avoid dismissal of a complaint).

Further, a defendant bringing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of showing that no claim has been presented within the complaint. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In order to survive the motion a complaint must "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

As Plaintiffs' Amended Complaint presents a constitutional challenge New Jersey election laws, the standard of review for election is a weighing process. The United States Supreme Court has set forth a test to be applied when election laws are subjected to challenge on First Amendment grounds. Here, in reviewing Plaintiffs' Amended Complaint under this standard and prior to making a determination as to whether the New Jersey statutes challenged by Plaintiffs are unconstitutional, this Court must consider the burden being placed on rights asserted by Plaintiffs and his Court must then balance that burden against the State's interests and make a determination as to what extent do the State's interests require the burdening of Plaintiffs' rights. Timmons v. Twin Cities Area New Party, 520 U.S. 351, 357-58 (1997); Burdick v. Takushi, 504 U.S. 428, 434 (1992); see also Democratic-Republican Org. v. Guadagno, 900 F. Supp. 2d 447, 453 (D.N.J. 2012), aff'd, 700 F.3d 130 (3d Cir. 2012).

Here, the election law statutes challenged by Plaintiffs are neutral on their face, applying equally to all candidates for elected office. The bracketing statutes are narrowly tailored to meet the State's interest of candidates having legitimate associations with other candidates appearing on the ballot and ensure the integrity of the electoral process, protecting against voters being misled or confused at the polls. The subject statute allows all candidates seeking a political party's

nomination for a specific office to be placed in the same column (or row as the case may be). Further, and importantly here, the ballot position of any candidate or bracketed group of candidates is randomly drawn which does not present a severe burden on Plaintiffs' rights. N.J.S.A. 19:23-24.

      As set forth herein, and in the moving papers submitted by other Co-Defendants in support of their respective motions to dismiss Plaintiffs' Amended Complaint, Plaintiffs have failed to state in their Amended Complaint a claim upon which relief can be granted as the governing New Jersey bracketing statutes survive constitutionalscrutiny. As a result, this Court should grant the Bergen County Clerk's Motion to Dismiss.

## I.    PLAINTIFFS' FIRST AMENDED COMPLAINT MUST BE DISMISSED BASED UPON ITS FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED BY THIS COURT

      "A 'political party' may be generally defined as an unincorporated association ofpersons which sponsors certain ideas of government or maintains certain political principles or beliefs in the public policies of the government. It is formed for the purpose urging the adoption and execution of such principles in governmental affairs through officers of like beliefs." Rogers v. State Committee of Republican Party, 236 N.J. Super. 303, 319-320 (App. Div. 1989). A political party is entitled to hold a primary election in the State of New Jersey. N.J.S.A. 19:5-1. "Candidates to be voted for at the primary election for the general election shall be nominatedexclusively by members of the same political party by petition." N.J.S.A. 19:23-5. There are two political parties that hold nominating primary elections in the State of New Jersey: the Republican and Democratic Parties.

      The constitutional challenge presented within Plaintiffs' Amended Complaint to the New Jersey statutes governing bracketing and candidate ballot placement fails and such a challenge

cannot survive the review to be applied by this Court. As a result, the challenged New Jersey statutes should be upheld by this Court and, accordingly, this Court must dismiss Plaintiffs' Amended Complaint in its entirety, with prejudice.

N.J.S.A. 19:49-2 provides, in pertinent part:

> For the primary election for the general election in all counties where voting machines are or shall be used, all candidates who shall file a joint petition with the county clerk of their respective county and who shall choose the same designation or slogan shall be drawn for position on the ballot as a unit and shall have their names placed on the same line of the voting machine; and provided further, that all candidates for municipal or party office in municipalities in counties where voting machines are or shall be used who shall file a petition with the clerk of their municipality bearing the same designation or slogan as that of the candidates filing a joint petition with the county clerk as aforesaid, may request that his or her name be placed on the same line of the voting machine with the candidates who have filed a joint petition with the county clerk as aforesaid by so notifying the county clerk of said county in writing within two days after the last day for filing nominating petitions and thereupon the county clerk shall forthwith notify the campaign manager of such candidates filing a joint petition as aforesaid of said request, and if the said campaign manager shall file his consent in writing with the said county clerk within two days after the receipt of said notification from said county clerk, the clerk of said county shall place the name of such candidate on the same line of the voting machine on which appears the names of the candidates who have filed the joint petition as aforesaid; provided, also, that any candidate filing a petition with the Attorney General may request that his or her name be placed on the same line of the voting machine with the candidates who have filed a joint petition with the county clerk as aforesaid by so notifying the county clerk of said county in writing within two days after the last day for filing nominating petitions, and thereupon the county clerk shall forthwith notify the campaign manager of such candidates filing a joint petition as aforesaid of said request, and if the said campaign manager shall file his consent in writing with the said county clerk within two days after the receipt of said notification from said county clerk, the clerk of said county shall place the name of such candidate on the same line of the voting machine on which appears the names of the candidates who have filed the joint petition as aforesaid.

In reviewing this statute governing Primary Election ballot design, the New Jersey Supreme Court has held, nearly 80 years ago, that it is in fact up to the discretion of the county clerks to determine how to structure the candidate ballot placement drawing as between bracketed candidates and independent candidates. Hawkes v. Gates, 129 N.J.L. 5 (1942). The New Jersey

Supreme Court, over 20 years following its decision in <u>Hawkes</u>, opined that "it is not for a court to choose one of several reasonable courses, for that choice is precisely what the Legislature left to another" – that being the county clerks – and the New Jersey Supreme Court went on to declare that it would only act "if it clearly appears the course taken [by the county clerk] is not rooted in reason."  <u>Richardson v. Caputo</u>, 46 N.J. 3, 9 (1965).

Plaintiffs cannot argue that "[t]here can be no doubt about the authority of the Legislature to adopt reasonable regulations for the conduct of primary and general elections. Such regulations, of course, may control the manner of preparation of the ballot, so long as they do not prevent a qualified elector from exercising his constitutional right to vote for any person he chooses."  <u>Quaremba v. Allan</u>, 67 N.J. 1, 11 (1975).   The plaintiff in <u>Quaremba</u>, not unlike Plaintiffs here in their Amended Complaint, sought the change from the procedures to be followed pursuant to <u>N.J.S.A.</u> 19:49-2 to the creation of a single column structured ballot, under which all candidates running for a specific office would be grouped together, regardless of any affiliation with other candidates for other offices. The New Jersey Supreme Court, following its review of the proposal of plaintiff in <u>Quaremba</u>, held there was "no merit" to the contention of plaintiff that ballot structure should be changed to that as presented by Plaintiff. Furthermore, a separation on the ballot of names of those candidates who were affiliated would in fact be contrary to the legislative purpose of <u>N.J.S.A.</u> 19:49-2.  <u>Quaremba v. Allan</u>, 67 N.J. at 6.   The New Jersey Supreme Court ultimately concluded that "nothing in the challenged section inhibits any voter from voting for any candidate of the voter's choosing or in any way limits the rights of any individual to run as a candidate for public office.  <u>Quaremba</u> 67 N.J. at 11.

The assertion of Kreibich and Spezakis that ballot position resulting from the procedures followed by the Bergen County Clerk pursuant to <u>N.J.S.A.</u> 19:49-2 somehow unfairly affects them

ignores the fact that all candidates for any office appearing on a County of Bergen Primary Election ballot are placed in the same ballot row (or column pursuant to the design utilized by other New Jersey county clerks). Both Kreibich and Spezakis did in fact exercise their First Amendment rights to associate with other candidates for office in the July 7, 2020 Primary Election. Indeed, Spezakis did exactly what Kreibich complains of in the Amended Complaint – she exercised her First Amendment right to associate with a candidate for United States Senator in the July 7, 2020 Primary Election which caused her to be placed in the second column on the ballot. Now, in order to attempt to present consistency in positions, Spezakis represents that she intends to exercise her First Amendment right to not associate with any other candidates for office in the June 7, 2022 Primary Election. However, regardless of any such association with other candidates for office, both Kreibich and Specakis appeared on the same line of the ballot as other candidates running against them for the same public office.

Bracketed candidates, and their respective political parties, exercise their right to "'identify the people who constitute the association,' and to select 'a standard bearer who best represents the party's ideologies and preferences.'" Eu v. San Francisco Democratic Central Committee, 489 U.S. 214, 224 (1989). If New Jersey laws were to allow candidates to claim association with other candidates or political parties without the consent ofthe other candidate or political party, this would without question be the death knell of the constitutional freedom to associate. Id.

Long before the guidance offered by the United States Supreme Court in Eu, New Jersey courts have upheld the freedom of candidates to associate – or to not associate, as the case may be - with other candidates based on shared political orideological views and positions. There is a "well-established pattern of having candidates fordifferent offices but similar view appear together on the ballot." Gillen v. Sheil, 174 N.J. Super. 386 (Law Div., 1980). As opined by the court in

11

<u>Gillen</u>, "[t]his pattern is not simply one which benefits the candidates, but one which is essential to an intelligible ballot. Voters have an important interest in finding candidates of similar persuasion grouped together rather than being spread upon the ballot in random fashion. Voters are disadvantaged if philosophically affiliated candidates are scattered around the ballot." <u>Id</u>. at 939.

Indeed, the ballot structure utilized by the Bergen County Clerk in following the guidelines of <u>N.J.S.A.</u> 19:49-2 benefits Plaintiffs by making it clear to the voter where a candidate for office has decided to exercise their First Amendment right to not affiliate with any other candidate seeking public office on the Primary Election ballot. In other words, while any voter can easily determine the candidates running for any public office, including each of the Plaintiffs herein, by reviewing each line on their ballot in the County of Bergen, the same voter may also easily determine which candidates are exercising their First Amendment rights to associate – or to not associate – with other candidates for other public offices appearing on the ballot. To abandon the procedures and ballot structure followed by the Bergen County Clerk would, at best, create voter confusion and, at worst, violate the constitutional rights of candidates by making it impossible to determine which candidates chose to exercise their right to associate – and which candidates chose to exercise their right to not associate – and with those candidates who did exercise their right to associate, making it further impossible for a voter to determine who a candidate chose to associate with.

In <u>Anderson v. Celebrezze</u>, 460 U.S. 780 (1983), the United States Supreme Court, in addressing voting rights, found that there must be "order, rather than chaos" and "the state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." <u>Id</u>. Consistent with this finding, the United States Supreme Court has

"repeatedly  upheld reasonable, politically neutral regulations that have the effect of  channeling expressive  activity  at  the  polls." Burdick  v. Takushi, 504 U.S. 428 (1992).  The bringing of such order, and avoidance of chaos, is the very goal – and result – of the adoption and continuing application of N.J.S.A. 19:49-2 by the Bergen County Clerk to Primary Election ballots. As previously held by the New Jersey Supreme Court, "…the public interest is better served by permitting a grouping of candidates having common aimsor principles and authorizing those candidates to have this factbrought to the attention of the voter in a primary election withthe additional effectiveness produced by alignment of their names on the machine ballot." Quaremba, 67 N.J. at 13.

The Bergen County Clerk unequivocally contends that provisions of N.J.S.A. 19:49-2, and each of the various ballot design procedures followed by the Bergen County Clerk (and all other county clerks) pursuant thereto, are reasonable in all respects. However, even if this Court were to ultimately reach the conclusion that N.J.S.A. 19:49-2 unequally treats "bracketed"  and "unbracketed" candidates, the statute must continue to be deemed to be constitutional as applied as it is both  reasonable and politically neutral.

Plaintiffs contend in their Amended Complaint that the Plaintiff-candidates and their voter-supporters are somehow harmed by the bracketing and ballot placement system established by New Jersey statute. Contrary to the contentions of Plaintiffs, in no way does N.J.S.A. 19:49-2 restrict the access of any candidate seeking to be placed on a Primary Election ballot or does it deny any voter their right to vote for any candidate of their choosing for any office appearing on a ballot.

A claim of vote dilution, as presented by Plaintiffs herein, will only be upheld when the challenged law devalues the votes of an identified community when compared to otherwise

13

similarly situated voters. Plaintiffs' vote dilution claim, based upon nothing more than baseless speculation, cannot be allowed by this Court to continue.  Republican Party of PA. v. Cortez, 218 F.Supp. 3d 396, 406-407 (E.D. Pa. 2016).

As such, the bracketing statutes are to be upheld if they arereasonable,   nondiscriminatory, and   serve   an   important   Stateinterest. The bracketing statutes surely survive this less exacting review.   However, even if the court were to find that thebracketing statutes placed a severe burden on Plaintiff, the bracketing statutes survive the higher scrutiny because the statues are narrowly tailored to advance a compelling state interest.

"The rigorousness of our inquiry into the propriety of a stateelection  law  depends  upon  the extent  to  which  a  challenged  regulation  burdens  First  and  Fourteenth  Amendment rights…[W]hen a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions."Burdick v. Takushi, 504 U.S. at 434.

The New Jersey Supreme Court stated in Lesniak v. Budzash that "[o]ne way political parties advance shared beliefs is by selecting candidates representing those shared beliefs to run in the general election." 133 N.J. 1, 15 (1993). "The right to participate in a party's candidate-selection process thus vests only in those who are associated together in pursuit of shared political ideals." Id.   These undeniable interests equally apply to the right of candidates to determine whether to bracket and associate with one another on a Primary Election ballot. As political parties are empowered with the constitutional right to govern their own internal processes, it is reasonable for candidates appearing on the ballot in a political party's Primary Election to have the right to associate with candidates for other offices through bracketing in order to clearly convey to voters

the sharing of political and ideological beliefs by those candidates choosing to bracket together.

Plaintiffs cannot deny the compelling interests of the State of New Jersey in a properly informed electorate, an intelligible ballot for that properly informed electorate and ensuring that political parties, and individual members of those political parties, have a stake in their associations. Nader v. Schaffer, 417 F. Supp. 837, 844 (D. Conn.), aff'd, 429 U.S. 989 (1976). "The State's interest in preserving the integrity of the electoral process is undoubtedly important." Doe v. Reed, 561 U.S. 186, 197 (2010); see also Smith v. Penta, 85 N.J. 65, 71 (1979) (quoting Nader, 417 F. Supp. at 845) ("[A]state has a . . . legitimate interest in protecting the overall integrity of the historic electoral process."). N.J.S.A. 19:49-2, being narrowly tailored to maintain its constitutionality, serves these compelling interests of the State.   Nader, 417 F. Supp. at 847; Smith, 85 N.J. at 71.

When a party brings before the court an as-applied challenge, that party "does not contend that a law is unconstitutional as written", rather, that party contends that the application of the challenged law to a specific person in a specific set of circumstances results in the denial of that person's constitutional right. United States v. Marcavage, 609 F.3d 264, 273 (3d Cir. 2010). Plaintiffs' as-applied challenge to the bracketing statutes as presented in the Amended Complaint must fail as Plaintiffs failed to plead sufficient facts to support a showing that the application of the bracketing statutes to Plaintiffs deprived any individual Plaintiff of a particular right.   Neither the First or Fourteenth Amendments, those being the Amendments under which Plaintiffs now present their claims, guarantee any of the Plaintiffs any right to be placed at any specific location on the Primary Election ballot. Nor do the First or Fourteenth Amendments grant to Plaintiffs the right to negatively impact in any way the associational rights of other candidates appearing on the same Primary Election ballot.

Contrary to the positions taken by Plaintiffs in their Amended Complaint, candidates, and any political party which a candidate may align with, do in fact have the right to exercise their associative rights under the First and Fourteenth Amendments. As a result of the creation of the Primary Election ballot under the bracketing laws, these rights of association are upheld and voters will find that the names of all candidates included on the election ballot for which they may vote for any given office will appear in the same designated row (or column, as the case may be).

Based upon the above, Plaintiffs' Amended Complaint fails to state a claim upon which relief may be granted by this Court and this Court should therefore grant the motion of the Bergen County Clerk and dismiss Plaintiffs' Amended Complaint in its entirety, with prejudice.

## II.    PLAINTIFFS' CLAIMS ARE NOT RIPE FOR REVIEW BY THIS COURT

Plaintiffs allege that the challenged statute will negatively impact the June 7, 2022 Democratic Primary Election conducted in the County of Bergen.  The doctrine of "[r]ipeness works to determine whether a party has brought an action prematurely…and counsels abstention until such a time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." Plains All Am. Pipeline L.P. v. Cook, 866 F.3d 534, 539 (3d Cir. 2017).   Plains presented a three-part test to be applied to determine ripeness: i) the adversity of the parties' interests; ii) the conclusiveness of the judgment, and iii) the utility of the judgment. Plains All Am. Pipeline, 866 F.3d at 540.

Plaintiffs' contention of some future harm is entirely dependent upon an infinite number of unknown variables.   Spezakis represents that she "intends" to run for public office in the future and she further represents that she "intends" to exercise her constitutional right to not associate with other candidates at that time – after she did in fact associate with other candidates in the July 7, 2020 Primary Election. Simply stated, there are countless scenarios where Spezakis' intent on

16

running for public office may in fact be defeated, or contrarily impacted, absent any application of the challenged statute. Therefore, to the extent Plaintiffs' claims are based upon mere hypothetical scenarios – Spezakis may not event obtain the necessary number of signatures to appear on the June 7, 2022 Primary Election ballot – pursuant to the test presented by the court in Plains, such claims are unripe and should not be considered at this time by this Court.

## CONCLUSION

For all of the foregoing reasons, and for those arguments and reasons as presented in the moving papers submitted by other Defendants in support of their now pending Motions to Dismiss Plaintiffs' Amended Complaint, the Motion to Dismiss filed with this Court by the Bergen County Clerk should now be granted in all respects, and Plaintiffs' Amended Complaint should be dismissed in its entirety, with prejudice.

> Respectfully submitted,
> KAUFMAN, SEMERARO & LEIBMAN, LLP
> *Attorneys for Defendant John S. Hogan, in his official capacity as Bergen County Clerk*
>
> /S/ Jaime R. Placek
>
> By: _____
>      Jaime R. Placek, Esq.
>      Attorney ID No. 041071996

Date: March 29, 2021

17