IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINE CONFORTI, ARATI KRIEBICH, MICO LUCIDE, JOSEPH MARCHICA, KEVIN MCMILLAN, ZINOVIA SPEZAKIS, and NEW JERSEY WORKING FAMILIES ALLIANCE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, SCOTT M. COLABELLA, in his official capacity as Ocean County Clerk, PAULA SOLLAMI COVELLO, in her official capacity as Mercer County Clerk, JOHN S. HOGAN, in his official capacity as Bergen County Clerk, EDWARD P. MCGETTIGAN, in his official capacity as Atlantic County Clerk, and E. JUNIOR MALDONADO, in his official capacity as Hudson County Clerk, <br><br> Defendants. | Civil Action No.: 3:20-CV-08267-FLW-TJB <br><br><br> BRIEF IN SUPPORT OF DEFENDANT ATLANTIC COUNTY CLERK EDWARD P. MCGETTIGAN'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6) |

ATLANTIC COUNTY DEPARTMENT OF LAW
1333 Atlantic Avenue, 8th Floor
Atlantic City, NJ 08401
609-343-2222
Daniel J. Solt, Assistant County Counsel
Bar ID# 032022011
*Attorney for Defendant Edward P. McGettigan, in his official capacity as Atlantic County Clerk*

## **TABLE OF CONTENTS**

1. Preliminary Statement .........................3-4

2. Procedural History ............................4-5

3. Legal Argument

   Point I – Legal Standard .....................5-6

   Point II – Plaintiffs Fail to State a Claim ..7-12

   Point III – Plaintiffs' Claims Are Not Ripe

               for Review ........................ 12-13

4. Conclusion   ...................................13

## PRELIMINARY STATEMENT

This matter arises out of Plaintiffs Christine Conforti, Arati Kreibich, Mico Lucide, Joseph Marchica, Kevin McMillin, Zinovia Spezakis, and New Jersey Working Families Alliance, Inc. ("Plaintiffs") Complaint for Declaratory Judgement on federal constitutional grounds against Monmouth County Clerk, Christine Giordano Hanlon ("Hanlon"), Ocean County Clerk Scott M. Colabella ("Colabella"), Mercer County Clerk, Paula Sollami Covello ("Covello"), Bergen County Clerk, John S. Hogan ("Hogan"), Atlantic County Clerk, Edward P. McGettigan ("McGettigan"), and Hudson County Clerk, E. Junior Maldonado ("Maldonado").

With the filing of this action, Plaintiffs seek to have this Court find that the existing practices of the county clerks in preparing for primary and general elections violate the Constitution. More specifically, Plaintiffs allege that current New Jersey law governing the County Clerks' drawings for the ballot position of each candidate treats "bracketed" and "unbracketed" candidates in an unequal manner. Plaintiffs argue that the New Jersey bracketing statute, <u>N.J.S.A.</u> 19:49-2, violates their rights of association, or their right to not associate with a political party, and equal protection rights.

3

New Jersey's law establishing how ballot positions are selected is constitutional. The New Jersey Supreme Court has balanced the State's interests in protecting the associational rights of its political candidates against plaintiff's alleged injury, and has ruled that the State's current ballot drawing process is constitutional.

Plaintiffs' Complaint must be dismissed as a matter of law for failure to state a claim under F.R.C.P. 12 (b)(6).

**PROCEDURAL HISTORY**

On July 6, 2020, plaintiff Christine Conforti filed her Complaint in the United States District Court for the District of New Jersey, seeking a declaration that New Jersey's law governing the method in which ballot position is selected is unconstitutional.

On October 22, 2020, the Court entered an Order to allow the Office of the Bergen County Clerk to intervene as a party of interest.

On December 7, 2020, a Motion to Dismiss was filed by Hanlon, Monmouth County Clerk, Covello, Mercer County Clerk, and Colabella, Ocean County Clerk.

4

On January 5, 2021, the Court entered a Consent Order allowing plaintiff to file an Amended Complaint and terminating the Motions to Dismiss.

On January 25, 2021, plaintiffs filed their Amended Complaint.

On March 17, 2021, the Court entered a Consent Order stating that defendants shall file their Motions to Dismiss the Amended Complaint by March 29, 2021, Plaintiffs' opposition shall be filed by May 5, 2021, and Defendants' reply briefs shall be filed by May 17, 2021.

Defendant McGettigan now moves to dismiss plaintiffs' Amended Complaint.

## LEGAL ARGUMENT

### I. LEGAL STANDARD

With a motion to dismiss under Rule 12 (b)(6), the "defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3rd Cir. 2005). The complaint must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court is free to ignore legal conclusions or bald factual

allegation that merely assert generalized harms.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In reviewing a Rule 12 (b)(6) motion, the Court must first accept as true all of the allegation contained in the complaint. The court must then determine whether the claims asserted state a plausible claim for relief.  To do this, the Court must engage in a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The standard of review for election law challenges that allege constitutional violations is set forth in Anderson v. Celebrezze, 460 U.S. 780, 789 (1983).  Unlike the typical strict scrutiny, intermediate scrutiny, and rational basis categories that are often used by the courts, the standard of review for election law challenges is a weighing process.  Rogers v. Corbett, 468 F.3d 188, 194 (3d Cir. 2006).

In reviewing plaintiffs' complaint, the Court must consider "what burden is placed on the rights which plaintiffs seek to assert and then balance that burden against the precise interests identified by the state and the extent to which these interests require that plaintiffs' rights be burdened.  Only after weighing these factors can [the Court] decide whether the challenged statute is unconstitutional." Democratic-Republican

6

Org. v. Guadagno, 900 F. Supp. 2d 447, 453 (D.N.J. 2012), aff'd, 700 F.3d 130 (3d Cir. 2012).

## II. **PLAINTIFFS FAIL TO STATE A CLAIM**

N.J.S.A. 19:49-2 provides in relevant part:

> For the primary election for the general election in all counties where voting machines are or shall be used, all candidates who shall file a joint petition with the county clerk of their respective county and who shall choose the same designation or slogan shall be drawn for position on the ballot as a unit and shall have their names placed on the same line of the voting machine; and provided further, that all candidates for municipal or party office in municipalities in counties where voting machines are or shall be used who shall file a petition with the clerk of their municipality bearing the same designation or slogan as that of the candidates filing a joint petition with the county clerk as aforesaid, may request that his or her name be placed on the same line of the voting machine with the candidates who have filed a joint petition with the county clerk as aforesaid by so notifying the county clerk of said county in writing within two days after the last day for filing nominating petitions and thereupon the county clerk shall forthwith notify the campaign manager of such candidates filing a joint petition as aforesaid of said request, and if the said campaign manager shall file his consent in writing with the said county clerk within two days after the receipt of said notification from said county clerk, the

7

clerk of said county shall place the name of such candidate on the same line of the voting machine on which appears the names of the candidates who have filed the joint petition as aforesaid; provided, also, that any candidate filing a petition with the Attorney General may request that his or her name be placed on the same line of the voting machine with the candidates who have filed a joint petition with the county clerk as aforesaid by so notifying the county clerk of said county in writing within two days after the last day for filing nominating petitions, and thereupon the county clerk shall forthwith notify the campaign manager of such candidates filing a joint petition as aforesaid of said request, and if the said campaign manager shall file his consent in writing with the said county clerk within two days after the receipt of said notification from said county clerk, the clerk of said county shall place the name of such candidate on the same line of the voting machine on which appears the names of the candidates who have filed the joint petition as aforesaid.

Going back as far as 1942, in reviewing N.J.S.A. 19:49-2, the New Jersey Supreme Court held that the decision on how to structure the drawing as between bracketed and independent candidates rested with the county clerk. Hawkes v. Gates, 129 N.J.L. 5 (1942). The New Jersey Supreme Court has stated, "it is not for a court to choose one of several reasonable courses, for that choice is precisely what the Legislature left to another." It went on to state that it would only act "if it clearly appears the course

taken is not rooted in reason." Richardson v. Caputo, 46 N.J. 3, 9 (1965).

"There can be no doubt about the authority of the Legislature to adopt reasonable regulations for the conduct of primary and general elections. Such regulations, of course, may control the manner of preparation of the ballot, so long as they do not prevent a qualified elector from exercising his constitutional right to vote for any person he chooses." Quaremba v. Allan, 67 N.J. 1, 11 (1975). Similar to this matter, Plaintiff in Quaremba argued for a single column structured ballot, with all candidates running for the same office grouped together whether they were affiliated or non-affiliated. The court reviewed that proposal and held that there was "no merit to plaintiffs' contention that the ballots should be structured as they suggest. Indeed, such a separation of the names of those affiliated candidates – unless they consent thereto- would be contrary to the legislative purpose evident in N.J.S.A. 19:49-2. Quaremba v. Allan, 67, N.J. 1, 6 (1975). The court continued, "nothing in the challenged section inhibits any voter from voting for any person he chooses or limits the rights of any candidate to run for office." Quaremba 67 N.J. at 11.

Plaintiffs' Associational and Equal Protection arguments fail under the balancing test set forth in Eu v. San Francisco County Democratic Cent. Committee, 489 U.S. 214 (1989). In Eu, the United States Supreme Court held that political parties and political

9

organizations enjoy freedom of association protected by the First and Fourteenth Amendments. "It is well settled that partisan political organizations enjoy freedom of association protected by the First and Fourteenth Amendments. Freedom of association means not only that an individual voter has the right to associate with the political party of her choice, but also that a political party has a right to identify the people who constitute the association." Eu, 489 U.S. at 224 (quoting Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 214 (1986)). The most important place for a political party to identify the people who constitute the association and for a candidate to identify which political party he or she associates with is on the ballot.

The United States Supreme Court addressed a related voting rights matter in Anderson v. Celebrezze, 460 U.S. 780 (1983). In Anderson, the court recognized that the most basic state law related to an election process has at least some effect on "the individual's right to vote and his right to associate with others for political ends." Anderson 460 U.S. at 788. The court went on to state that "the state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." Id. There must be "some sort of order, rather than chaos." Id.

The United States Supreme Court has "repeatedly upheld reasonable, politically neutral regulations that have the effect

10

of channeling expressive activity at the polls." Burdick v. Takushi, 504 U.S. 428 (1992). That is exactly what N.J.S.A. 19:49-2 does. The New Jersey law governing the County Clerks' drawings for the ballot position of each candidate is reasonable. Even if this Court finds that N.J.S.A. 19:49-2 treats "bracketed" and "unbracketed" candidates in an unequal manner, it would still be acceptable as it is reasonable and politically neutral. The New Jersey Supreme Court has held that "…the public interest is better served by permitting a grouping of candidates having common aims or principles and authorizing those candidates to have this fact brought to the attention of the voter in a primary election with the additional effectiveness produced by alignment of their names on the machine ballot." Quaremba v. Allan, 67 N.J. 1, 13 (1975).

Specifically addressing the Right to Vote/Vote Dilution claim, Plaintiffs argue that the Plaintiffs and their supporters are harmed by New Jersey's bracketing and ballot placement system. It is clear that neither plaintiffs, nor their supporters' right to cast their vote is being infringed in any way. N.J.S.A. 19:49-2 does not restrict access to the ballot or deny any voters the right to vote for candidates of their choice. Similarly, vote dilution claims can only be successful when a law devalues one community's votes as compared to otherwise similarly situated voters. The vote dilution claim being made by plaintiffs is based on the potential for bracketed candidates gaining an advantage,

11

and therefore the unbracketed candidates supporters' votes must be getting diluted. A vote dilution theory based on speculation is not a cognizable claim. Republican Party of PA. v. Cortez, 218 F. Supp. 3d 396, 406-07 (E.D. Pa. 2016).

### III. PLAINTIFFS' CLAIMS ARE NOT RIPE FOR REVIEW

Plaintiffs allege that the law will impact the 2021 Atlantic County Clerk Primary Election and the 2022 Democratic Primary Election. "Ripeness works to determine whether a party has brought an action prematurely … and counsels abstention until such a time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." Plains All Am. Pipeline L.P. v. Cook, 866 F.3d 534, 539 (3d Cir. 2017). Plains used a three-part test to determine ripeness: 1) the adversity of the parties' interests, 2) the conclusiveness of the judgment, and 3) the utility of the judgment. Plains All Am. Pipeline, 866 F.3d at 540.

For the first factor, Plaintiffs' allegations of some future harm depend on too many unknowns. Plaintiffs state they "intend" to run in the future. There are countless scenarios where, even if Plaintiffs do decide to run, they may not be impacted by this law. As Plaintiffs' Complaint is based on events that are hypothetical and may never occur, their claims are unripe.

12

For the second factor, the Court should consider if a "real and substantive controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be on a hypothetical set of facts. Plains All Am. Pipeline, 866 F.3d at 542-43. As argued above, there are numerous scenarios where Plaintiffs may not be impacted by this law.

As to the third factor, the Court should consider "whether the parties' plans of actions are likely to be affected by a declaratory judgment." Plains All Am. Pipeline, 866 F.3d at 543. Similar to factors one and two above, it is unknown whether Plaintiffs' plans of actions will be affected because it is unknown whether this law will even affect the Plaintiffs in some future scenario. Under a very specific set of circumstances, as argued by Plaintiff, they will be impacted by this bracketing law and therefore impacted by a declaratory judgement. It is just as likely that Plaintiffs' hypothetical set of facts will not all come to fruition, thereby making this matter unripe for review.

### IV. CONCLUSION

Plaintiffs have failed to plead sufficient facts to justify this Court to scrutinize the actions taken by the county clerks. A state might reasonably classify voters or candidates according

13

to political affiliations. Clingman v. Beaver, 544 U.S. 581 (2005). It is undisputed that New Jersey has an important, legitimate interest in ensuring an accessible ballot that allows voters to easily identify the political parties with which the candidates are affiliated with. When balancing the State's interests in protecting the associational rights of its political candidates against plaintiff's alleged injury, the State must prevail.

In addition, Plaintiffs' claims are not ripe for review as Plaintiffs have brought this action prematurely.

For the foregoing reasons, it is respectfully submitted that Defendant's Motion to Dismiss should be granted, with prejudice, in its entirety.

ATLANTIC COUNTY LAW DEPARTMENT

BY: _____
Daniel J. Solt, Assistant County Counsel
Attorney for Defendant Edward P. McGettigan,
Atlantic County Clerk

Dated: March 29, 2021