# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINE CONFORTI, et al. | |
| Plaintiffs, | |
| v. | Case No. 3:20-CV-8267 (FLW-TJB) |
| CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et al. | |
| Defendants. | |

---

**BRIEF OF *AMICI CURIAE*
THE LEAGUE OF WOMEN VOTERS OF NEW JERSEY
AND SALVATION AND SOCIAL JUSTICE IN OPPOSITION TO
DEFENDANTS' AND INTERVENOR'S MOTIONS TO DISMISS**

**NEW JERSEY INSTITUTE FOR SOCIAL JUSTICE**
Ryan P. Haygood
Andrea McChristian*
Henal Patel
60 Park Place, Suite 511
Newark, New Jersey 07102
Telephone: (973) 624-9400

**CAMPAIGN LEGAL CENTER**
Robert N. Weiner*
Aseem Mulji*
Jade Ford*†
1101 14th Street NW, Suite 400
Washington, DC 20005
Telephone: (202) 736-2200

*Counsel for League of Women Voters of New Jersey and NAACP New Jersey State Conference*
*Pro Hac Vice
† Licensed to practice in New York only; Supervised by Robert Weiner, a member of the D.C. Bar

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................ ii

**INTEREST OF** *AMICI CURIAE* ......................................................................1

**SUMMARY OF ARGUMENT** ..........................................................................2

**ARGUMENT** .........................................................................................................3

   I.   New Jersey's Primary Ballot Design Rules Subvert the Democratic Process. ........................................................................................................3

     A.  New Jersey's Primary Ballot Design Misleads and Confuses Voters. ........3

     B.  New Jersey's Primary Ballot Design Rules Disproportionately Harm Voters and Candidates of Color. .......................................................................8

   II.  New Jersey's Primary Ballot Design Rules Improperly Burden the Right to Vote............................................................................................................13

   III.  The State Has No Legitimate Interest in Forcing Voters to Navigate a Misleading and Confusing Ballot. ......................................................................16

**CONCLUSION**..................................................................................................17

i

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ........................................................13

*Burdick v. Takushi*, 504 U.S. 428 (1992) ........................................................... 13, 16

*Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008) ........................... 13, 15

*Gould v. Grubb*, 14 Cal. 3d 661 (1975) ............................................................ 14, 17

*Graves v. McElderry*, 946 F. Supp. 1569 (W.D. Okla. 1996) ................................15

*Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979).............13

*McLain v. Meier*, 637 F.2d 1159 (8th Cir. 1980)....................................... 14, 15, 16

*Nelson v. Warner*, 477 F. Supp. 3d 486 (S.D. W.Va. 2020)....................... 13, 14, 16

*Norman v. Reed*, 502 U.S. 279 (1992)............................................................. 14, 15

*Reynolds v. Sims*, 377 U.S. 533 (1964)..................................................................13

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886) .............................................................13

## Other Authorities

Brett Johnson et al., *N.J. Legislature Politicians Are Mostly White, Male and Over 50. Is Anybody Surprised? Check the Data.*, NJ.com (May 15, 2019), https://www.nj.com/politics/2019/05/do-your-politicians-in-nj-legislature-look-like-the-people-of-new-jersey-not-really.html .....................................................11

Camden Wards 1-4, Official Election Sample Ballot Tuesday, June 8, 2021, Camden County, https://www.camdencounty.com/service/voting-and-elections/sample-ballots ..........................................................................................................6

Daniel Israel, *Chiaravalloti Ends Re-Election Bid*, Hudson Reporter (Apr. 19, 2021), https://hudsonreporter.com/2021/04/19/chiaravalloti-ends-re-election-bid....................................................................................................................10

*Designing Polling Place Materials*, U.S. Election Assistance Comm'n, https://www.eac.gov/election-officials/designing-polling-place-materials (last visited May 18, 2021)...........................................................................................7

*Districts by Number*, N.J. Legislature, https://www.njleg.state.nj.us/districts/districtnumbers.asp (last visited May 21, 2021)....................................10

Julia Sass Rubin, *Does the County Line Matter? An Analysis of New Jersey's 2020 Primary Election Results*, N.J. Policy Perspective (Aug. 13, 2020), https://www.njpp.org/publications/report/does-the-county-line-matter-an-analysis-of-new-jerseys-2020-primary-election-results.........................................5

Lawrence Norden & Sundeep Iyer, *Design Deficiencies and Lost Votes*, Brennan Ctr. (2011), https://www.brennancenter.org/sites/default/files/2019-08/Report_Design_Deficiencies_Lost_Votes.pdf ............................................................9, 10

Lawrence Norden et al., *Better Ballots*, Brennan Ctr. (2008), https://www.eac.gov/sites/default/files/eac_assets/1/28/Better-Ballots-Brennan-Center.pdf ..............................................................................................7, 8

Lawrence Norden et al., *Better Design, Better Elections*, Brennan Ctr. (2012), https://www.brennancenter.org/sites/default/files/2019-08/Report_Better_Design_Better_Elections.pdf ................................................................9

Matt Friedman, *Five N.J. Legislators Step out of Line*, Politico (May 24, 2021), https://www.politico.com/newsletters/new-jersey-playbook/2021/05/24/five-nj-legislators-step-out-of-line-492971 ....................................................12

Robert Darcy & Anne Schneider, *Confusing Ballots, Roll-Off, and the Black Vote*, 42 W. Pol. Q. 347 (1989)............................................................9

*The New Jersey State Legislature*, Ctr. for Youth Pol. Participation, Rutgers U., https://cypp.rutgers.edu/the-new-jersey-state-legislature (last visited May 21, 2021) ...........................................................................................11

U.S. Census Bureau, Quick Facts: Camden City, New Jersey, https://www.census.gov/quickfacts/fact/table/camdencitynewjersey/IPE120219#IPE120219 (last visited May 25, 2021)...........................................9

U.S. Census Bureau, QuickFacts: Bayonne City, New Jersey, https://www.census.gov/quickfacts/fact/table/bayonnecitynewjersey,NJ/PST045219 (last visited May 21, 2021)............................................10

U.S. Census Bureau, QuickFacts: Jersey City, New Jersey, https://www.census.gov/quickfacts/fact/table/jerseycitycitynewjersey,NJ/PST045219 (last visited May 21, 2021) .........10

U.S. Census Bureau, QuickFacts: New Jersey, https://www.census.gov/quickfacts/NJ (last visited May 21, 2021)...................11

*Women in New Jersey*, Ctr. for Am. Women & Pol. (Apr. 28, 2021), https://cawp.rutgers.edu/sites/default/files/resources/nj.pdf ...............................11

# INTEREST OF *AMICI CURIAE*[1]

*Amicus curiae* League of Women Voters of New Jersey ("LWVNJ") is the New Jersey chapter of the League of Women Voters, a nonpartisan, nonprofit national voting rights organization. LWVNJ is committed to promoting civic engagement and protecting democracy in New Jersey through advocacy, voter education, and voter assistance. LWVNJ advocates for policies that make it easier for New Jersey residents to vote, particularly residents who have traditionally confronted obstacles to exercising that right. LWVNJ also works with state and local election officials to educate voters on how to effectively cast a ballot. LWVNJ has approximately 1,600 members, the vast majority of whom are New Jersey voters. This case will directly affect their right to vote.

*Amicus curiae* Salvation and Social Justice ("SandSJ") is a nonpartisan, statewide racial justice organization in New Jersey. In line with its mission to lift up poor, underserved, and traditionally oppressed communities, SandSJ educates voters to use their voices to effect change. SandSJ has advocated for major voting rights efforts in the state, including restoring the right to vote to all people with criminal

---

[1] *Amici* affirm that no counsel for a party authored this brief in whole or in part, no party or counsel for a party contributed money that was intended to fund the preparation and submission of this brief, and no person other than *amici* or their counsel contributed money that was intended to fund the preparation and submission of this brief.

convictions and limiting police presence at voting locations, so that there are no barriers to the ballot.

Plaintiffs in this case have challenged New Jersey's primary ballot rules principally because of the burdens they impose on candidates and the electoral process. But those rules also burden the rights of voters. As an organization of and for voters, LWVNJ is well-positioned to address those burdens. Likewise, as a racial justice organization working to empower marginalized communities, SandSJ is well-situated to address the disproportionate burden those communities face. *Amici* can thus provide the perspective of voters affected by New Jersey's primary ballot design. No party in this case focuses on that perspective, and it is important that it be heard.

## SUMMARY OF ARGUMENT

From the standpoint of voters, fair and clear ballot designs are vital to a healthy democracy. Yet New Jersey maintains an outmoded primary ballot design that misleads and confuses voters. These ballot design flaws disproportionately burden voters of color and make it more difficult for candidates of color to win office.

Voters have a right not to be misled and confused by their county's primary ballot designs. They also have a right to participate in a democratic system that does not systematically disadvantage candidates of color. The State has no legitimate, much less substantial, interest in maintaining a misleading and unfair ballot design

that subverts the democratic process. There is no justification for this burden on Plaintiffs' rights—and the rights of New Jersey voters. LWVNJ and SandSJ therefore urge this Court to deny the Motions to Dismiss.

## ARGUMENT

## I.   New Jersey's Primary Ballot Design Rules Subvert the Democratic Process.

New Jersey's primary ballot design subverts the democratic process by misleading voters. The resulting harm is not evenly distributed; New Jersey's aberrant ballot design rules disproportionately burden voters and candidates of color. Defendants' and Intervenor's motions do not address these infirmities.

### A. *New Jersey's Primary Ballot Design Misleads and Confuses Voters.*

As the Complaint alleges, New Jersey is the only state in the nation that "organizes its primary election ballots by bracketing groupings of candidates in a column (or row), rather than listing the office sought followed by the names of all candidates running for that office." First Am. Compl. ¶ 3. Candidates running for different offices that are in the same bracket are featured together, usually in the same column. *Id.* ¶¶ 5, 75. Unbracketed candidates find themselves exiled to a separate column on their own or with other unbracketed candidates running for different offices. *Id.* ¶¶ 6, 78-81. As Plaintiffs allege, this bracketing system, coupled

with New Jersey's ballot positioning rules and other visual features, results in ballots that invariably misdirect and bewilder voters. *Id.* ¶¶ 10, 80, 96, 99-100, 178.

First, New Jersey's bracketing and ballot order rules grant bracketed candidates more favorable positions on the ballot (e.g., further to the left or closer to the top) than unbracketed candidates. *Id.* ¶¶ 95, 97. Candidates listed first on a ballot receive an advantage due to "position bias" or the "primacy effect." *Id.* ¶¶ 2, 90-91. According to scholarly research, New Jersey's ballot design rules exacerbate these effects and thereby systematically bias voters toward some candidates and against others. *Id.* ¶ 96. It is a fair inference that voters do not intend to favor candidates based on their ballot position. Therefore, the disparately high level of support that empirical studies show for candidates in favorable ballot positions most likely reflect a systemic phenomenon—an unconscious bias by voters. Manipulation of ballot position to capitalize on such bias undermines voter choice and the integrity of the democratic process.

In addition, candidates endorsed by the county parties almost always appear in a single full bracket (e.g., a column) known as the "county line." *Id.* ¶ 7. Unbracketed and "off-line" candidates, on the other hand, are often featured in a column by themselves or with one or two other unbracketed candidates. *Id.* They thus do not receive the "visual cue advantages enjoyed by county line candidates." *Id.*; *see also id.* ¶¶ 99-100, 178, 191 (describing effect of the "weight of the line").

Further, unbracketed candidates often appear in "columns far away from other candidates running for the same office with multiple blank spaces in between," a region of the ballot called "Ballot Siberia." *Id.* ¶¶ 80, 99, 178.  The county line and Ballot Siberia, along with New Jersey's ballot order rules, push voters unwittingly toward certain preselected candidates and make it harder for voters to find the candidates they prefer on the ballot and elect them. *Id.* ¶¶ 7, 10, 97, 80, 100.[2]

Moreover, New Jersey's primary ballot rules fail to meet a fundamental objective of good ballot design: making clear which candidates are running for which office. When unbracketed or off-line candidates are relegated to "Ballot Siberia"—visually remote from other candidates running for the same office with gaps between the candidate's name and the office sought—it can require exceptional acuity for a voter to match them correctly. *Id.* ¶ 99.

These bracketing rules also sometimes lead counties to split contests into multiple rows or columns. *Id.* ¶ 4. One example is the Camden County primary ballot from 2018. *See id.* ¶ 4 (displaying the Camden County 2018 Democratic primary election ballot). As demonstrated by the sample ballot below, the Camden County

---

[2] Studies have found differences of up to 50 percentage points in vote share for specific candidates in counties where the candidate appeared on the county line versus counties where the candidate appeared off the line. *See* First Am. Comp. ¶ 8 (citing Julia Sass Rubin, *Does the County Line Matter? An Analysis of New Jersey's 2020 Primary Election Results*, New Jersey Policy Perspective (Aug. 13, 2020), https://www.njpp.org/publications/report/does-the-county-line-matter-an-analysis-of-new-jerseys-2020-primary-election-results).

2018 primary ballot had six empty columns between the candidates running for the U.S. House of Representatives. *Id.* The ballot also split candidates running for the same office into different rows, making it even more difficult for voters to determine which candidates were running in the race. *Id.*

<u>Camden County 2018 Primary Ballot[3]</u>
(U.S. House of Representatives Race Outlined)



The 2018 primary ballot was not a one-off or one-year issue, either. In the upcoming June 2021 primary election, Camden County's ballot for Camden City has similarly large gaps between candidates for the same office, as well as split-row races.[4] These gaps and split contests make it difficult for voters to discern which candidates are running in which races. These defects also tilt the scales against

---

[3] First Am. Compl. ¶ 4.
[4] *See* Camden Wards 1-4, Official Election Sample Ballot Tuesday, June 8, 2021, Camden County, https://www.camdencounty.com/service/voting-and-elections/sample-ballots/.

certain candidates by placing them in "Ballot Siberia." Indeed, candidates seeking the Democratic nomination for Mayor and Council-At-Large are separated by multiple columns and split into multiple rows.[5]

Not surprisingly, New Jersey's flawed primary ballot design contravenes federally-recognized best practices. The U.S. Election Assistance Commission has identified a number of reports that lay out best practices for ballot design.[6] These reports make clear that splitting contests (i.e., "[s]plitting candidates for the same office onto different pages or columns") often causes substantial voter confusion, which can result in many wasted or miscast votes.[7] The most infamous example of this design flaw is the "butterfly ballot" used in Palm Beach County, Florida during the 2000 presidential election.[8] As a result of this design defect, 29,000 ballots in Palm Beach County were not counted in a presidential election decided by fewer than 600 votes.[9] Since then, this contest-splitting problem has affected other elections. In 2002, for instance, a flawed split-column ballot design in Kewaunee

---

[5] *See id.*

[6] *Designing Polling Place Materials*, U.S. Election Assistance Comm'n (last visited May 18, 2021), https://www.eac.gov/election-officials/designing-polling-place-materials.

[7] *See* Lawrence Norden et al., *Better Ballots*, Brennan Ctr. 20 (2008) (listing this ballot design issue as "Problem 1"), https://www.eac.gov/sites/default/files/eac_assets/1/28/Better-Ballots-Brennan-Center.pdf.

[8] *See id.* at 21.

[9] *See id.*

County, Wisconsin led to "an astounding 11.8% of voters recording no vote for th[e] race (in contrast to 1.1% . . . statewide for [that] race)."[10] The contest-splitting that New Jersey's ballot design rules permit—and the associated gaps in ballots, isolating some candidates in "Ballot Siberia"—likely causes the same voter confusion. *See* First Am. Compl. ¶¶ 99-100.

The allegations of the Complaint—which must be taken as true—establish that these and other confounding design features "contribute to . . . systemic biases and voter confusion leading to over and under votes, proximity mistake votes, and ballot-flaw-induced votes which can disenfranchise substantial numbers of voters." *Id.* ¶ 10, 99. These flaws also force New Jersey voters to "vote on a ballot in a system that provides an arbitrary advantage to certain candidates over others." *Id.* ¶ 100.

### B. *New Jersey's Primary Ballot Design Rules Disproportionately Harm Voters and Candidates of Color.*

The burdens imposed by New Jersey's flawed ballot design rules fall disproportionately on voters and candidates of color, who have historically faced obstacles to exercising their right to vote and run for office. Many ballot design studies demonstrate "that when basic usability principles are ignored in the design of ballots, a significant percentage of voters will be disenfranchised, and the affected

---

[10] *Id.* at 22.

voters will disproportionately be . . . minority [voters]."[11] *See* First Am. Compl., Ex. B at 11. Indeed, "poor and racial and ethnic minorities [across] the country have been most impacted when these problems are not adequately addressed."[12] By flouting fundamental principles of clear ballot design, New Jersey counties disproportionately harm voters of color.

In certain New Jersey communities, the effects of structural racism can also exacerbate the burden placed on voters of color by New Jersey's flawed primary ballot designs. For instance, in Camden, people of color make up over 90% of the city's population: Black people comprise over 41% and the Latino/Latina community make up 51% of the population.[13] Of this population, 36.4% live in

---

[11] *Id.* at 13; *see also id.* at 19 & n.21 ("[S]everal studies indicate that residual vote rates are higher in low-income and minority communities and among the elderly . . . . As a result, the failure of a voting system to protect against residual votes is likely to harm low-income and minority voters, as well as the elderly, more severely than other communities." (citing eight academic studies, including Robert Darcy & Anne Schneider, *Confusing Ballots, Roll-Off, and the Black Vote*, 42 W. Pol. Q. 347 (1989))); Lawrence Norden et al., *Better Design, Better Elections*, Brennan Ctr. (2012) ("Poor design increases the risk for lost or misrecorded votes among all voters, but the risk is even greater for particular groups. Several studies have shown higher rates of lost or misrecorded votes in low-income and minority communities as well as for the elderly and the disabled[.]" (footnote omitted)), https://www.brennancenter.org/sites/default/files/2019-08/Report_Better_Design_Better_Elections.pdf.

[12] Lawrence Norden & Sundeep Iyer, *Design Deficiencies and Lost Votes*, Brennan Ctr. 4 (2011), https://www.brennancenter.org/sites/default/files/2019-08/Report_Design_Deficiencies_Lost_Votes.pdf.

[13] *Id.*

poverty.[14] Voters struggling with poverty are disproportionately impacted by New Jersey's misleading and unfair primary ballot designs.[15] *See* First Am. Compl., Ex. B at 11.

New Jersey's flawed ballot design rules have undermined voter choice in other majority-minority parts of the state by causing candidates to drop out of the race. Recently, the incumbent Assemblyman for Legislative District 31[16] lost the support of the county party and was dropped from the county line as a result of a practice in Hudson County's Democratic Party that allows town mayors to choose who will be placed on the line.[17] The Assemblyman has stated publicly that he chose not to run because of the challenges of running outside of the line and his

---

[14] U.S. Census Bureau, Quick Facts: Camden City, New Jersey, https://www.census.gov/quickfacts/fact/table/camdencitynewjersey/ IPE120219#IPE120219 (last visited May 25, 2021).

[15] *See supra* notes 11-12 and accompanying text.

[16] Legislative District 31 is comprised of Bayonne and sections of Jersey City. *Districts by Number*, N.J. Legislature, https://www.njleg.state.nj.us/districts/ districtnumbers.asp (last visited May 21, 2021). Jersey City, the second largest city in New Jersey, is majority people of color: 22.9% Black, 25.1% Asian, and 28.5% Latino/Latina. U.S. Census Bureau, QuickFacts: Jersey City, New Jersey, https://www.census.gov/quickfacts/fact/table/jerseycitycitynewjersey,NJ/PST0452 19 (last visited May 21, 2021). The population of Bayonne is also majority people of color: 10.6% Black, 9.9% Asian, and 33.5% Latino/Latina. U.S. Census Bureau, QuickFacts: Bayonne City, New Jersey, https://www.census.gov/quickfacts/fact/ table/bayonnecitynewjersey,NJ/PST045219 (last visited May 21, 2021).

[17] Daniel Israel, *Chiaravalloti Ends Re-Election Bid*, Hudson Reporter (Apr. 19, 2021), https://hudsonreporter.com/2021/04/19/chiaravalloti-ends-re-election-bid.

unwillingness to run on a line that would be against the Governor he supports.[18] The Mayor/Party endorsed candidate will run on the line unopposed.[19] Thus, instead of getting to choose between multiple candidates for the State Assembly, the voters of this district had the choice made for them by one man—the mayor—because of New Jersey's ballot design system.

New Jersey's bracketing laws also create additional barriers for candidates of color to succeed. New Jersey has a long history of under-representation of people of color in elected office. While people of color make up more than 45% of New Jersey's population,[20] the State Assembly is 70% white,[21] and the State Senate is more than 75% white.[22] New Jersey's state representation is also overwhelmingly

---

[18] *Id.* ("'In reviewing my options, I considered running off the line,' Chiaravalloti said. 'The task of winning off the line is daunting in a normal year; however, running against the [Hudson County Democratic Organization] this year would mean running against Governor Phil Murphy. I believe the power of the line and the popularity of Governor Murphy would make it impossible to compete successfully. As a strong supporter of the Governor, I do not see any benefit to running against a ticket he leads.'").

[19] *Id.*

[20] U.S. Census Bureau, QuickFacts: New Jersey, https://www.census.gov/quickfacts/NJ (last visited May 21, 2021).

[21] *The New Jersey State Legislature*, Ctr. for Youth Pol. Participation, Rutgers U., https://cypp.rutgers.edu/the-new-jersey-state-legislature (last visited May 21, 2021).

[22] *Id.*

male.[23] While women account for 51% of New Jersey's population,[24] they are only 30.8% of New Jersey's Legislature.[25]

New Jersey's ballot design—and specifically the county line—contributes to these disparities in representation. By misleading and confusing voters as well as narrowing the candidate field, the county line restricts voters' choices, which can exacerbate the lack of diversity in elected officials at the local, state, and county levels. *See* First Am. Compl. ¶ 99, 178. Additionally, because the county line often favors incumbents, and because incumbents have historically been disproportionately white and male,[26] the voter bias caused by the line also contributes to under-representation of people of color in state government in a self-perpetuating cycle. Indeed, Chair of the New Jersey Legislative Black Caucus, Assemblywoman Shavonda Sumter, recently said that she supports eliminating "the

---

[23] Brett Johnson et al., *N.J. Legislature Politicians Are Mostly White, Male and Over 50. Is Anybody Surprised? Check the Data.,* NJ.com (May 15, 2019), https://www.nj.com/politics/2019/05/do-your-politicians-in-nj-legislature-look-like-the-people-of-new-jersey-not-really.html.

[24] U.S. Census Bureau, QuickFacts: New Jersey, https://www.census.gov/quickfacts/NJ (last visited May 21, 2021).

[25] *Women in New Jersey*, Ctr. for Am. Women & Pol. 1 (Apr. 28, 2021), https://cawp.rutgers.edu/sites/default/files/resources/nj.pdf.

[26] *Id.*

line" specifically because "[e]nsuring that there is greater access for minority and women candidates is critical for balanced statewide representatives."[27]

New Jersey's ballot design rules thus mislead, confuse, and constrain the choices of New Jersey voters.  The effect is most significant for voters of color.

## II.   New Jersey's Primary Ballot Design Rules Improperly Burden the Right to Vote.

The Supreme Court has long recognized that "voting is of the most fundamental significance under our constitutional structure" and the right to an effective vote is protected by the Equal Protection Clause of the Fourteenth Amendment. *Burdick v. Takushi*, 504 U.S. 428, 433-44 (1992) (quoting *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)). Indeed, the right to vote is the "fundamental political right . . . preservative of all rights." *Reynolds v. Sims*, 377 U.S. 533, 562 (1964) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886)).

When analyzing the constitutionality of a restriction on the right to vote, courts "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the Plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for

---

[27] Matt Friedman, *Five N.J. Legislators Step out of Line*, Politico (May 24, 2021), https://www.politico.com/newsletters/new-jersey-playbook/2021/05/24/five-nj-legislators-step-out-of-line-492971.

the burdens imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiffs' rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)); *see also Nelson v. Warner*, 477 F. Supp. 3d 486, 502 (S.D. W.Va. 2020) (applying *Anderson-Burdick* standard to review right to vote challenge against ballot ordering statute); Dkt. 69 at 59-60. This analysis is "flexible," and the "rigorousness of [the court's] inquiry" increases with the severity of the burden. *Id.* Importantly, there is no threshold level of burden required. *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.). To the contrary, "[h]owever slight [the] burden may appear, . . . it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 288-89 (1992)).

New Jersey's ballot design laws burden the right to vote by misleading voters and impeding their ability to cast votes that accurately reflect their preferences. Despite Defendants' and Intervenor's contentions, the right to vote does not protect only against laws that expressly "restrict voters' ability to vote for their candidate of choice." Dkt. 53 at 21; *see also* Dkt. 58 at 25; Dkt. 60 at 13. To the contrary, federal and state courts have consistently recognized that misleading or unfair ballot designs also improperly burden the right to vote. *See, e.g.*, *McLain v. Meier*, 637 F.2d 1159, 1167 (8th Cir. 1980) (holding "incumbent first" ballot statute unconstitutional

because the ballot design "burden[ed] the fundamental right to vote possessed by supporters"); *Nelson*, 477 F. Supp. 3d at 509 (concluding ballot ordering statute "burden[ed] the individual plaintiffs' right to vote" by "systemically awarding the highly beneficial first ballot position to candidates based solely on their political party"); *Gould v. Grubb*, 14 Cal. 3d 661, 672 (1975) (concluding incumbent first ballot provision burdened the right to vote of "those supporting nonincumbent candidates" and subjecting the provision to "strict judicial scrutiny").

Federal courts have also recognized that "positional bias" caused by ballot design laws can unfairly influence voters and thereby burden the right to vote. For instance, in *McLain v. Meier*, the Eighth Circuit affirmed the district court's finding that there is a "ballot advantage in the first position" and concluded that this positional bias burdened the right to vote. 637 F.2d at 1166-67; *see also id.* (noting that the Eighth Circuit was "not the first" to affirm this conclusion and collecting cases; *Nelson*, 477 F. Supp. 3d at 509; *Graves v. McElderry*, 946 F. Supp. 1569, 1579 (W.D. Okla. 1996) (recognizing that the "position bias arising from ballot configuration" infringes on the right to vote and "voters' rights of free speech and association").

Because New Jersey's ballot design rules unfairly allocate the advantages of positional bias on the ballot and mislead voters due to a host of other defects, as

Plaintiffs allege, First Am. Compl. ¶¶ 66-100, these rules improperly burden the right to vote.

### III.    The State Has No Legitimate Interest in Forcing Voters to Navigate a Misleading and Confusing Ballot.

The State and County Clerks lack a "sufficiently weighty" interest to justify the burden imposed by New Jersey's ballot design laws on the right to vote. *Crawford*, 553 U.S. at 191 (quoting *Norman*, 502 U.S. at 288-89). Indeed, the State and County Clerks lack even a legitimate interest in maintaining a primary ballot design that confuses voters and hinders their ability to cast votes that accurately reflect their preferences. Some Defendants and Intervenors have argued that "New Jersey's bracketing statutes protect important governmental interests, such as . . . providing a manageable and understandable ballot, and ensuring an orderly election process." Dkt. 53 at 25; *see also* Dkt. 58 at 30 (pointing to State's interest in "avoiding voter confusion, and ensuring electoral fairness" as justification for any burden on the Plaintiffs' rights). If anything, New Jersey's primary ballot rules do just the opposite. As detailed above, New Jersey's ballot rules produce objectively confusing ballot layouts, which often include large gaps and split-row or -column races that obscure the full set of candidates in a race. *See* First Am. Compl. ¶¶ 4, 7, 99, 178; Dkt. 69 at 90-91. These ballots are the antithesis of "manageable and understandable," and they impede rather than "ensur[e] an orderly election process." Dkt. 53 at 25. Likewise, the bias caused by the county line as well as the

16

manipulation of positional bias compromises "electoral fairness," rather than "ensure[s]" it. Dkt. 58 at 30.

As such, under the *Anderson-Burdick* test—regardless of whether this Court applies strict scrutiny or simply balances the State's purported interests against the burdens imposed on voters—New Jersey's primary ballot design rules are unconstitutional. *See Burdick*, 504 U.S. at 434. Federal and state courts have struck down ballot design laws where the State's purported justifications were similarly "unsound." *McLain*, 637 F.2d at 1167; *see, e.g.*, *id.* (concluding that North Dakota's incumbent first statute would "not withstand even [a] minimal standard of review" because the State did not have a legitimate interest in "favoritism" of incumbent candidates); *Nelson*, 477 F. Supp. 3d at 511 (striking down West Virginia's ballot ordering statute as unconstitutional, because state lacked sufficiently "weighty justification" for allocating positional advantage to candidates based on a system that was "not neutral"); *Gould*, 14 Cal. 3d at 672 (concluding city's justification for its incumbent first ballot provision based on its interest in "facilitat[ing] efficient, unconfused voting" "falls far short of the mark" and holding provision unconstitutional). This Court should strike down these ballot design laws, too.

## CONCLUSION

In considering, and denying, the Motions to Dismiss, the Court should keep in mind the burden that New Jersey's primary ballot rules impose on voters, and

particularly voters of color. The Court should also recognize that State and County Clerks have no legitimate interest in maintaining a misleading and unfair ballot design that subverts the right to vote.