UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF TRENTON

| | | |
|---|---|---|
| CHRISTINE CONFORTI, ARATI KREIBICH, MICO LUCIDE, JOSEPH MARCHICA, KEVIN MCMILLAN, ZINOVIA SPEZAKIS, and NEW JERSEY WORKING FAMILIES ALLIANCE, INC., | ) ) ) ) ) | HON. ZAHID N. QURAISHI, U.S.D.J. Civil Action No. 20-8267 (ZNQ-TJB) |
| Plaintiffs, | ) | |
| v. | ) | <u>Civil Action</u> |
| CHRISTINE GIORDANO HANLON, in her Official capacity as Monmouth County Clerk, SCOTT M. COLABELLA, in his official capacity as Ocean County Clerk, PAULA SOLLAMI COVELLO, in her official capacity as Mercer County Clerk, JOHN S. HOGAN, in his Official capacity as Bergen County Clerk, EDWARD P. MCGETTIGAN, in his official capacity as Atlantic County Clerk, and E. JUNIOR MALDONADO, in his official capacity as Hudson County Clerk, | ) ) ) ) ) ) ) ) | (Electronically Filed) |
| Defendants. | ) | |

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT, PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6), AND IN RESPONSE TO AMICI CURIAE, ON BEHALF INTERVENOR, GURBIR S. GREWAL, ATTORNEY GENERAL OF NEW JERSEY

GURBIR S. GREWAL
Attorney General of New Jersey
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625
(609) 376-2955
George.Cohen@law.njog.gov

George N. Cohen
Deputy Attorney General
On the Brief

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................. 1

ARGUMENT ....................................................................................... 2

I.   PLAINTIFFS' FIRST AMENDED COMPLAINT SHOULD BE DISMISED FOR LACK OF STANDING......................................... 2

   A. INDIVIDUAL PLAINTIFFS OFFER ONLY SPECULATION THAT THEY WILL HAVE STANDING IN FUTURE ELECTIONS ......... 2

   B. NJWF LACKS STANDING TO SUE ............................................... 9

II.   PLAINTIFFS' FIRST AMENDED COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM .................... 11

   A. NEW JERSEY'S LONGSTANDING BRACKETING STATUTES DO NOT VIOLATE THE FIRST AND FOURTEENTH AMENDMENTS................................................................... 12

   B. PLAINTIFFS' ELECTIONS CLAUSE CLAIMS FAIL AS A MATTER OF LAW .......................................................... 21

III.   *AMICI CURIAE*'S POLICY ARGUMENTS DO NOT SHOW THE BRACKETING STATUTES ARE CONSTITUTIONALLY INFIRM ........................................................................... 24

CONCLUSION ................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Celebrezze*,
460 U.S. 780 (1983)...................................................................................12, 22

*Belitskus v. Pizzingrilli*,
343 F.3d 632 (3d Cir. 2003) ...........................................................................4, 8

*Blunt v. Lower Merion Sch. Dist.*,
767 F.3d 247 (3d Cir. 2014) ........................................................................10, 11

*Bruni v. City of Pittsburgh*,
824 F.3d 353 (3d Cir. 2016) ..............................................................................11

*Burdick v. Takushi*,
504 U.S. 428 (1992)...........................................................................................12

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)..........................................................................................5, 7

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
836 F.2d 173 (3d Cir. 1988) ..............................................................................10

*Cook v. Gralike*,
531 U.S. 510 (2001).....................................................................................22, 23

*Cty. of Ocean v. Grewal*,
475 F. Supp. 3d 355 (D.N.J. 2020).....................................................................24

*Davis v. Fed. Election Comm'n*,
554 U.S. 724 (2008)..............................................................................................8

*De La Fuente v. Cortes*,
261 F. Supp. 3d 543 (M.D. Pa. 2017)...................................................................4

*Eu v. San Francisco Cty. Democratic Cent. Comm.*,
489 U.S. 214 (1989)............................................................................................12

*Federal Election Commission v. Wisconsin Right To Life, Inc.*,
551 U.S. 449 (2007)..............................................................................................8

*Food & Water Watch, Inc. v. Vilsack*,
　　808 F.3d 905 (D.C. Cir. 2015) ............................................................................. 10

*Gillen v. Schiel*,
　　416 A.2d 935 (N.J. Super. Ct., Law Div. 1980) ................................................. 17

*Graves v. McElderry*,
　　946 F. Supp. 1569 (W.D. Okla. 1996) ................................................................ 14

*McLain v. Meier*,
　　637 F.2d 1159 (8th Cir. 1980) ............................................................................ 14

*McNair v. Synapse Grp. Inc.*,
　　672 F.3d 213 (3d Cir. 2012) .................................................................................. 8

*Merle v. United States*,
　　351 F.3d 92 (3d Cir. 2003) ........................................................................... 4, 7, 8

*N.A.A.C.P. v. City of Kyle, Tex.*,
　　626 F.3d 233 (5th Cir. 2010) ................................................................................ 9

*Nader v. Schaffer*,
　　417 F. Supp. 837 (D. Conn.), *aff'd*, 429 U.S. 989 (1976) ................................. 18

*Nat'l Taxpayers Union, Inc. v. United States*,
　　68 F.3d 1428 (D.C. Cir. 1995) .............................................................................. 9

*Nelson v. Warner*,
　　477 F. Supp. 3d 486 (S.D.W. Va. 2020) ...................................................... 10, 14

*New Alliance Party v. New York State Bd. of Elections*,
　　861 F. Supp. 282 (S.D.N.Y. 1994) ..................................................................... 18

*New Jersey Conservative Party, Inc. v. Farmer*,
　　753 A.2d 192 (N.J. Super. Ct. Ch. Div. 1999) .................................................. 18

*New Jersey Turnpike Auth. v. Jersey Cent. Power & Light*,
　　772 F.2d 25 (3d Cir. 1985) ................................................................................... 3

*Ohio Council 8 Am. Fed'n of State v. Husted*,
　　814 F.3d 329 (6th Cir. 2016) ........................................................................ 14, 15

*Plains All Am. Pipeline L.P. v. Cook*,
   866 F.3d 534 (3d Cir. 2017) ........................................................................3, 4, 5

*Rendell v. Rumsfeld*,
   484 F.3d 236 (3d Cir. 2007) ........................................................................2, 3, 7

*Rosen v. Brown*,
   970 F.2d 169 (6th Cir. 1992) ..............................................................................14

*Schundler v. Donovan*,
   872 A.2d 1092 (N.J. Super. Ct., App. Div. 2005) ..............................................17

*Tashjian v. Republican Party of Connecticut*,
   479 U.S. 208 (1986).............................................................................................22

*Timmons v. Twin Cities Area New Party*,
   520 U.S. 351 (1997).......................................................................................14, 22

*Warth v. Seldin*,
   422 U.S. 490 (1975)...............................................................................................5

## Statutes

N.J. Stat. Ann. §19:23-18..............................................................................................2

N.J. Stat. Ann. §19:23-24........................................................................................7, 20

N.J. Stat. Ann. §19:23-26.1..........................................................................................7

N.J. Stat. Ann. §19:49-2...............................................................................................2

## **PRELIMINARY STATEMENT**

In this case, Plaintiffs and their *amici* offer nothing more than an alternative policy viewpoint about the bracketing statutes at issue.  But the role of this court is not to second-guess the Legislature's decisions in favor of litigants' preferred policy alternative.  Indeed, consistent with the Constitution, the New Jersey Legislature was free to find there are important State interests that these statutes advance:  allowing candidates to express their own associational preferences, ensuring the electorate is informed of candidates' association, having an intelligible ballot, and preventing voter confusion.  While Plaintiffs prefer to elevate other interests, the proper forum for their policy preferences is the state Legislature, not the federal courts.  And while Plaintiffs dedicate most of their brief to attacking how particular county clerk offices have drawn particular ballots, they are free to challenge such distinct choices in as-applied challenges to those decisions; that does not demonstrate the invalidity of the bracketing statutes themselves, which are what the Plaintiffs challenge and what the State has intervened to defend.  Because Plaintiffs fail to assert a viable federal constitutional claim relating to New Jersey's longstanding bracketing statutes, their claims should be dismissed.

But the Court need not reach those constitutional questions, because Plaintiffs fail to demonstrate that their claims fall under the narrow "capable of repetition, yet evading review" exception to mootness and ripeness doctrine.  While some Plaintiffs

allege they will run again in the 2022 Democratic Primary or other future primary elections, a number of contingent events that may or may not occur will ultimately determine whether they will be in a position to make the same claims that they make as to the 2020 or 2021 Democratic primaries.  These contingencies render their claims unripe.  In addition, Plaintiff New Jersey Working Families ("NJWF") has continued to fail to meet the minimum standards set forth by the courts in order to have standing to appear as a party in this matter.

Because Plaintiffs cannot meet the threshold jurisdictional requirements, the Court should grant Intervenor Attorney General Gurbir S. Grewal's ("Attorney General") motion to dismiss Plaintiffs' First Amended Complaint challenging the constitutionality of N.J. Stat. Ann. §19:23-18 and §19:49-2.

## ARGUMENT

## I. PLAINTIFFS' FIRST AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING.

### A. Individual Plaintiffs Offer Only Speculation That They Will Have Standing In Future Elections.

Plaintiffs' individual claims are moot and the Court can offer no meaningful relief as to their allegations regarding the 2020 and 2021 Primary Elections.  Their sole argument is that the issues they raise are capable of repetition, yet evading review.  But this exception to mootness is "narrow and available 'only in exceptional situations,'" *Rendell v. Rumsfeld*, 484 F.3d 236, 241 (3d Cir. 2007) (quoting *City of*

*Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)), and this case is not one of them.  To invoke this narrow exception, a plaintiff must show both that "(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."  *Id*. (quoting *Spencer v. Kemna*, 523 U.S. 1, 17, (1998)).  Further, "ripeness works 'to determine whether a party has brought an action prematurely ... and counsels abstention until such a time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'"  *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017).

First, Plaintiffs fail to explain why the 53-day period between the county clerks' ballot draw and the day of the primary election "is far too short of a period" to litigate their claims.  ECF No. 69, ("Opp."), at 41.  Courts are no strangers to applications for emergent relief in election matters.  But here, Plaintiffs deliberately chose not to seek relief via a temporary restraining order or preliminary injunction, instead choosing to file their Complaint just *one day* before the July 7, 2020 Primary Election.  Plaintiffs thus have no grounds to assert that this matter should not be dismissed as moot due to an alleged insufficient amount of time in which to bring a cause of action and for that action to be heard.

Second, Plaintiffs' assertion that their claims will recur is "mere speculation" and insufficient to overcome the jurisdictional defect.  *New Jersey Turnpike Auth. v.*

*Jersey Cent. Power & Light*, 772 F.2d 25, 33 (3d Cir. 1985).  Plaintiffs have not demonstrated that "(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment" will counsel in favor of standing. *Plains All Am. Pipeline*, 866 F.3d at 540 (quotations omitted).

As a threshold matter, two plaintiffs—McMillan and Kreibich—do not even *allege* that they plan to ever run for office again.[1]  *Compare De La Fuente v. Cortes*, 261 F. Supp. 3d 543, 549 (M.D. Pa. 2017) (case cited by Plaintiffs, noting "Plaintiff has expressed his intent to run in the 2020 election").  But even as to the remainder of the individual Plaintiffs, their assertions that they will run in the 2022 primaries or another unspecified race are insufficient to confer standing.  As the Attorney General points out in his opening brief, these pleaded facts do not form a sufficient basis for Plaintiffs' legal challenge to the state's bracketing statutes, because the "mere act of running for office is not the triggering event for the application of the bracketing statutes. . . ."  ECF No. 53-1 ("AG Br.") at 11.

---

[1] While in *Merle v. United States*, there was sufficient contextual information that made the court "think it reasonable to expect that [plaintiff] Merle will wish to run for election to the House of Representatives either in 2004 or at some future date," 351 F.3d 92, 95 (3d Cir. 2003), here, the fact that Plaintiffs alleged future intention to run for some candidates, but not for McMillan and Kreibich, indicates that the opposite inference is reasonable.  *See Belitskus v. Pizzingrilli*, 343 F.3d 632, 649 (3d Cir. 2003) (allowing inference that some plaintiffs will run again "[g]iven the lack of evidence to the contrary," but dismissing claims against plaintiff who left the state and for whom there is "no evidence" to suggest he will have standing in the future).  And unlike in *Merle*, even Plaintiffs' briefing does not suggest these candidates actually plan to run again.

In this case, each individual Plaintiff's "personal stake in the outcome of the controversy" depends on contingencies that have yet to occur, and may never occur. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). But "when 'the plaintiff's action is based on a contingency, it is unlikely that the parties' interests will be sufficiently adverse to give rise to a case or controversy within the meaning of Article III.'" *Plains All Am. Pipeline*, 866 F.3d at 540. Instead, all Plaintiffs have done is make "allegations of possible future injury," which are not sufficient to confer standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (alteration omitted).

The possibility of future injury for any given plaintiff depends on numerous events, some turning on the decisions of third parties. For example, Plaintiffs would have to meet the qualifications to appear on the 2022 Democratic Primary Ballot, or other future primary election ballots, including gathering valid signatures and meeting the requisite deadlines. Second, the candidates must run in a contested race. Third, other candidates in those election contests—whose identities and political leanings are currently unknown—must successfully file a joint petition and seek to bracket with other candidates. Fourth, Plaintiffs must choose not to bracket, and their resulting ballot position in the 2022 Democratic Primary ballot or other future primary election must be unfavorable to them and raise the same injuries as they allege here. Before these events have occurred—and indeed, they may never occur, Plaintiffs lack concrete injury.

Plaintiffs fail to offer any response, and instead make arguments that support dismissal. For example, as to that last step, Plaintiffs' own arguments as to candidate Lucide are illustrative of why future standing is speculative. Plaintiffs insist that their injury stems from the fact that they will lack "any chance to obtain the first ballot position, and thus from obtaining any of the advantages of the primacy effect." Opp. 22. But Plaintiffs demonstrate in their brief that in the June 8, 2021 Primary Election, Lucide appeared first (both row and column) on the Atlantic County ballot without bracketing with any other candidate. Opp. 18. And Plaintiffs' own pleadings show that their ballot positions might be favorable in future races, potentially removing any "sufficiently adverse interest" to maintain suit. For example, Plaintiff Spezakis chose to bracket with a U.S. Senate candidate in the 2020 Primary Election, and appeared in the first column in the Hudson County ballot. ECF No. 33 ("Am. Compl.") ¶ 161. That fact patently disproves Plaintiffs' argument that Spezakis or other candidates "will have no ability to receive the first ballot position" in a future election. Opp. 44.

Indeed, for Plaintiffs like Spezakis who allege they will run in the 2022 Primary Election, their ballot positions with respect to other candidates is currently unknown, and may not be subject to the same rules as in the 2020 Primary Election. In 2022, there will be no race for United States Senate or Governor and therefore, the statutory requirement that the office of Governor or U.S. Senate be placed in the

first row or column of the primary election ballot will be inapplicable.  *See* N.J. Stat. Ann. §19:23-26.1.  Instead, the first row or column on the 2022 Primary Election ballot may be randomly selected for U.S. House of Representative candidates, or other county or municipal office, as determined by the county clerks.  N.J. Stat. Ann. §19:23-24.  Therefore, it is quite possible that all candidates for the office of U.S. House of Representatives, as the only federal office on the 2022 Primary Election ballot, will be placed in the first row or column on the 2022 Primary Election ballot, notwithstanding any associational decision to bracket with other candidates (or to decline to do so).  Plaintiffs' assertion that their 2022 Primary Election ballot position will be similar to their 2020 Primary Election ballot position is thus belied by these contingencies that have yet to take place.

Plaintiffs protest that the capable of repetition, yet evading review standard has been met in other election cases.  But unlike those cases—where the challenged rule will *necessarily* impose the same alleged injury to the plaintiff, here, a number of contingent events based on Plaintiffs' and other individuals' choices may or may not take place.  These contingencies confirm there is not a "reasonable expectation" that Plaintiffs will be subject to the same action and injury in the future.  *Rendell*, 484 F.3d at 242.  Instead, courts "decline to abandon [their] usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors."  *Clapper*, 568 U.S. at 414.  For example, *Merle v. United States*, 351 F.3d

92, 95 (3d Cir. 2003), which Plaintiffs cite, is not helpful to them, because unlike this case, the *Merle* plaintiff's challenge to the Hatch Act did not depend on any contingencies yet to come.  Instead, by virtue of being a public employee subject to the Hatch Act and running for office, and no other contingencies, that plaintiff was subject to the "continuing stricture" of the challenged law.  *Id.* at 95.  And in *Federal Election Commission v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 457 (2007), the plaintiff was airing several political advertisements that would automatically become illegal—and indeed, criminally sanctionable—under the statute at issue, without any contingencies that rendered the injury dependent on hypothetical events, as here.  The same applies to other cases cited by Plaintiffs, where the challenged laws do not require a series of contingent events to cause constitutional injury to plaintiffs.  *See Davis v. Fed. Election Comm'n*, 554 U.S. 724 (2008) (facial challenge to campaign finance disclosure requirements); *Belitskus*, 343 F.3d 632 (facial challenge to filing fee requirements).  What Plaintiffs allege here is the kind of "pure speculation" that fails to meet the capable of repetition, yet evading review standard. *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 225 (3d Cir. 2012) (rejecting plaintiffs' arguments that they meet the standard because they could again become customers of a magazine marketer whose practices they challenge).

### B.     NJWF Lacks Standing To Sue

Plaintiffs also fail to satisfy the standing requirements for NJWF to bring claims on its own behalf and/or on behalf of its members.  Contrary to Plaintiffs' bare assertion, having the general goal of "achiev[ing] the election of candidates it supports," Opp. 31, does not confer organizational standing when the organization has pled neither concrete injury to itself nor representational standing on behalf of any identified member.

As to standing on behalf of the organization itself, Plaintiffs only allege that NJWF expends resources on voter education regarding ballot design.  Am. Compl. ¶ 55.[2]  But they do not allege that NJWF would cease to devote the same resources to these voter education efforts if the ballot design were to look different, and even acknowledge that "NJWF has previously, and will continue to" educate voters about ballot design.  Opp. 31.  Because NJWF "cannot convert its ordinary program costs into an injury in fact," *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995), it has no organizational standing.  *See also N.A.A.C.P. v. City*

---

[2] Plaintiffs' citation to recent programming by NJWF in their briefing cannot overcome pleading deficiencies.  But moreover, the very source presented by Plaintiffs—programming that feature "same day voter registration"—demonstrates they have no evidence NJWF's expenditures would appreciably decrease just because the ballot looks different.  *See* Opp. 29; *id.* at 6, n.5 (citing event discussing same-day voter registration and census results, at https://twitter.com/NJWFA/status/1395517097661419520).

*of Kyle, Tex.*, 626 F.3d 233, 239 (5th Cir. 2010); *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919–20 (D.C. Cir. 2015).

Moreover, NJWF does not have standing to sue on behalf of its members because it has failed to meet the pleading criteria for representational standing. NJWF has failed to plead "specific allegations establishing that at least one identified member had suffered or would suffer harm." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 279 (3d Cir. 2014) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)). Unlike the case they cite, *Nelson v. Warner*, 477 F. Supp. 3d 486, 500 (S.D.W. Va. 2020), Plaintiffs did not plead in their Amended Complaint that any individual members of NJWF would suffer concrete injury and have standing to sue individually. Implicitly acknowledging that this is fatal to their claim, Plaintiffs attempt to cure this deficiency by asserting new facts in its brief in opposition to the motion to dismiss—namely, that Lucide is an NJWF member. Opp. 32. But "[i]t is one thing to set forth theories in a brief; it is quite another to make proper allegations in a complaint." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Because "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," *id.* (alterations omitted), NJWF has not pled sufficient facts to assert representational standing. And in any event, since

10

Lucide lacks standing to press his individual claims as discussed *supra*, at 20-21, any organizational standing on his behalf would also fail for the same reasons.[3]

For these reasons, Plaintiffs' claims must be dismissed in their entirety.

## II.   PLAINTIFFS' FIRST AMENDED COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Even if Plaintiffs had standing, their constitutional challenges to the bracketing statutes fail to state a claim on which relief may be granted. Because Plaintiffs press a facial challenge, Plaintiffs must establish "that no set of circumstances exists under which [the laws] would be valid, or that the [laws] lack any plainly legislative sweep." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 362 (3d Cir. 2016) (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010)). The Court should grant the motion to dismiss, because Plaintiffs cannot clear the high bar to show that these longstanding state bracketing statutes are unconstitutional.

---

[3] NJWF also has not pled any facts to meet its burden to support the other two prongs of representative standing: that "the interests the organization seeks to protect are germane to its purpose, and . . . [that] neither the claim asserted nor the relief requested requires individual participation by its members." *Blunt*, 767 F.3d at 279. For example, NJWF asserts that its members who *do* bracket with the county line may also be harmed only "to the extent that they are forced to engage in the gamesmanship," Am. Compl. ¶ 167, but does not explain whether it has members whose interests are adverse to those of the individual Plaintiffs.

A.    **New Jersey's Longstanding Bracketing Statutes Do Not Violate The First and Fourteenth Amendments**

Because New Jersey's law "imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (citing *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)).

Plaintiffs' claims rest on the threshold premise that other candidates should not be allowed to express their associational preferences with each other on the ballot.  But this desire to limit others' association—and the expression of that same association—is not a cognizable First Amendment right.   While it is clear that Plaintiffs prefer a policy under which ballot position contains no indication of candidates' decision to associate with each other, that policy preference is not a constitutional right.  And as the Supreme Court has already cautioned, "a highly paternalistic approach limiting what people may hear is generally suspect."  *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989).  But that is what Plaintiffs seek here—to override the Legislature's determination that voters may learn via the ballot which candidates are associating with one another.

Moreover, Plaintiffs' arguments that they are in the same position as a candidate who is compelled to "switch party affiliations to run in the other party's primary," Opp. 84, only goes to show there is no constitutional violation here.

12

Taking Plaintiffs' own example, in general elections where multiple offices are sought by multiple parties, there can be a party who only has one candidate running for one of several offices on the ballot, leaving the rest of the fields blank for that party's line, while another party has each position slated with a candidate, resulting in a "weight of the line" effect. Plaintiffs decry the weight of this line—created by virtue of other candidates' decisions to associate with each other—as unfair. But Plaintiffs' position appears to be that the party with a full slate of candidates should be constitutionally barred from listing their full slate of candidates under the same line that associates them with their own party, because such a "visual cue" would disadvantage other parties whose candidates stand alone. But this is not workable practically or constitutionally. While a candidate may receive fewer votes because of their decision to not associate with others—within or outside of a particular party, that is no basis for a federal constitutional challenge to prevent other candidates from associating with each other.

And, to the extent any constitutional rights are burdened, Plaintiffs incorrectly argue that strict scrutiny should apply. Opp. 75. None of the federal cases Plaintiffs cite hold that ballot order is a challenge that imposes a severe burden triggering strict scrutiny. *See* Opp. 63. In fact, none of the cited federal cases are binding precedent, and most pre-date both *Anderson* and *Burdick*. Indeed, cases cited by Plaintiffs hold the very opposite of what they argue, stating that the effect of ballot order on the

right to vote "is somewhat attenuated" and that strict scrutiny is therefore improper. *See Rosen v. Brown*, 970 F.2d 169, 175 (6th Cir. 1992) ("[T]he district court erred in applying the strict scrutiny test to this case."); *McLain v. Meier*, 637 F.2d 1159, 1167 (8th Cir. 1980) ("In these circumstances, most courts have applied the rational basis test."); *Graves v. McElderry*, 946 F. Supp. 1569, 1581 (W.D. Okla. 1996) (applying rational basis test to ballot order rules); *Nelson v. Warner*, 477 F. Supp. 3d 486, 511 (S.D.W. Va. 2020) (holding that intermediate scrutiny, not strict scrutiny, applies to a law basing ballot order purely based on "the party whose presidential candidate received the most votes in the last election"). Plaintiffs' reliance on the *outcome* of those cases—involving different statutes, different factual pleadings, and different state rationales for the laws at issue—misses the point: these federal courts have concluded that ballot order rules are not subject to strict scrutiny.

Instead, to the extent the bracketing statutes impinge on the constitutional rights of candidates who choose not to bracket at all, that burden cannot be said to be severe. As *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997) demonstrates, a rule that *forbade* candidates from appearing on a ballot as the candidates of more than one party was not a severe burden on rights. Under that framework, a rule that does not restrict any candidate's ability to "communicate information about [themselves] to the voters" therefore could not impose such a burden. *Id.* at 363. Other cases Plaintiffs cite, such as *Ohio Council 8 Am. Fed'n of*

*State v. Husted*, 814 F.3d 329, 335 (6th Cir. 2016), illustrate the same principle. There, the challenged law precludes judicial candidates from listing their political party affiliations on general election ballots.  Noting that "political parties and judicial candidates remain free to provide, and voters remain free to receive, a plethora of information regarding whether a given candidate affiliates with or is endorsed by a particular political party," the court determined the law's burden on constitutional rights was "minimal."  *Id.*  These cases make clear that statutes such as the one at bar cannot be subject to strict scrutiny.

Finally, Plaintiffs' potpourri of assertions for why the bracketing law is somehow a "severe" burden boils down to their allegation that unbracketed candidates like them have not experienced electoral success.  But even accepting that allegation as true, Plaintiffs disregard the countless known and unknown factors that impact elections, and they cannot claim that they would have been successful if only the ballot had looked different.  Among the confounding factors that may impact outcomes are political party endorsements, electioneering with the support of other candidates, campaign contributions and expenditures, the ability to raise campaign contributions with or without any association with political party organizations or other candidates, affiliated voters' tendency (or lack thereof) to support candidates endorsed by the political party, and the candidate's own appeal to voters, to name but a few.  Whatever impact the bracketing statutes have on a

candidate's ballot position, it is one factor among others, and it is a factor that places all candidates for similar office on the same ballot row or column. Underlying Plaintiffs' challenge to the bracketing statutes is Plaintiffs' belief that if unbracketed candidates are not winning elections, the bracketing statutes must be unconstitutional. There is no basis for this approach to federal constitutional law.

Tellingly, most of Plaintiffs' briefing is actually dedicated to the severity of the burdens associated with individual decisions by individual county clerk offices as to pivot offices and individual ballot placement. If a plaintiff has a claim that a particular draw was done to disfavor a particular candidate or candidates, they may seek to bring an as-applied claim on that basis. The problem with this case is that Plaintiffs rely on those individualized assertions to suggest that the entire framework of bracketing is thus facially invalid. That is incorrect as a matter of law, as it (by the nature of these very allegations) relies on intervening acts by third party officials—not by the mere act of allowing candidates to bracket, and then empowering county clerks to properly set ballots for their own counties, as New Jersey has done for years. The fact that Plaintiffs focus so heavily on allegations as to intervening, individualized ballot draws thus confirms the statutes themselves impose no severe burden.

Therefore, given the lack of severe burden imposed by the challenged statutes themselves,[4] the longstanding statutes will meet constitutional requirements if the State advances "important regulatory interests," which are "generally sufficient to justify" restrictions on rights. *Burdick*, 504 U.S. at 440.   The Attorney General discusses a number of these governmental interests in his opening brief, including allowing candidates to express associational preferences; ensuring the electorate is informed of their association; having an intelligible ballot; and preventing voter confusion.   *See* AG Br. 25-29.   These interests are well-established and well-recognized, but Plaintiffs largely ignore them.   *See Gillen v. Schiel*, 416 A.2d 935, 936-39 (N.J. Super. Ct., Law Div. 1980) (identifying interests advanced by "having candidates for different offices but similar view[s] appear together on the ballot" as including "an intelligible ballot" and that "voter[s] have an important interest in finding candidates of similar persuasion grouped together rather than . . . scattered around the ballot"); *Schundler v. Donovan*, 872 A.2d 1092, 1099 (N.J. Super. Ct., App. Div. 2005) ("[T]here can be no rights violation where a county clerk makes a fair effort to follow the dictate that all candidates for the highest office, *i.e.*, U.S. Senator or Governor, be treated equally to the extent physical constraints allow, as

---

[4] Plaintiffs also argue that the doctrines of content and viewpoint discrimination—applicable only to expressive speech—should somehow be imported to the right-to-associate and voting rights context.   *See* Opp. 88.   Putting aside the fact that Plaintiffs have not identified any *restriction* on the right to associate, there is simply no precedent for—and no logic in—importing such precedent here.

long as, at the same time, a good faith effort is made to effect the expressive rights of all candidates."); *Nader v. Schaffer*, 417 F. Supp. 837, 844 (D. Conn.), *aff'd*, 429 U.S. 989 (1976) ("[State interests] include[] preserving parties as viable and identifiable interest groups; insuring that the results of primary elections, in a broad sense, accurately reflect the voting of party members."). *See also New Jersey Conservative Party, Inc. v. Farmer*, 753 A.2d 192, 197 (N.J. Super. Ct. Ch. Div. 1999) (noting state has "the power . . . to regulate elections to 'ensure orderly, rather than chaotic, operation of the democratic process'" (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)); *New Alliance Party v. New York State Bd. of Elections*, 861 F. Supp. 282, 296 (S.D.N.Y. 1994) (noting "interest in organizing a comprehensible and manageable ballot. A manageable ballot is one where the parties, offices and candidates are presented in a logical and orderly arrangement").

Faced with these "important regulatory interests" advanced by the State, Plaintiffs quip that there is no affirmative right to use the ballot as a means for associational expression. Opp. 97, 101-03. But that is not the point. The State need not prove that the bracketing statutes evince some inviolable constitutional demand for candidates to express their association any way they wish on the ballot; it need only advance legitimate state interests in having the ballot appear in a certain way to allow candidate associations to be expressed and made known to voters. In other words, Plaintiffs' argument that candidates do not have an inherent right to bracket

on the ballot is not a valid argument against *the Legislature's policy choice* to advance legitimate state interests by allowing bracketing.

Next, Plaintiffs acknowledge that avoiding voter confusion and imparting information about candidates' associations are important state interests.  Opp. 90, 93.  But while Plaintiffs spill much ink on their own view of what policies best advance those interests, they ignore that the State's pursuit of those interests through the statutes at bar are not invalid merely because of a litigant's preference for a different outcome.  And Plaintiffs have no answer to the *specific* rationales actually discussed in the caselaw that are advanced by the statutes.  For example, Plaintiffs assert that there can be no legitimate interest in allowing voters to identify associated candidates and interests "in the context of a primary election because all candidates . . . belong to the same political party."  Opp. 93.  But this is clearly incorrect: candidates in primaries do diverge on issues and positions.  And the Legislature has identified and advances a legitimate, important interest by indicating to voters in an understandable way how primary candidates associate with each other.[5]  Moreover, Plaintiffs advance no arguments against the State's interest in identifying the highest

---

[5] Contrary to Plaintiffs' argument, the fact that ballot slogans represent one way of indicating such association is not a reason to restrict all other ways of conveying that information.  Given that voters may not read or notice ballot slogans, or understand what they represent, it is legitimate for the State to decide that bracketing is the best way to make candidate associations known to voters.  The federal Constitution has nothing to say about whether the Legislature may allow for association expression on the ballot in two ways, rather than only in one.

statewide offices (Governor and U.S. Senate) as ones to be listed first, as those offices are likely ones best known to voters.

Nor should the Court put any stock in Plaintiffs' heavy reliance on caselaw where the challenged statute awarded ballot position based on a discriminatory rubric, such as candidate incumbency or the party or candidate receiving most votes in a prior election. *See* Opp. 92-93. Unlike these incumbency or prior-winner rules, here, the State has advanced legitimate rationales for the bracketing statutes, such as ensuring an intelligible ballot and preventing voter confusion. And those other challenged laws, unlike the statutes at bar, favor a specific individual or class of individuals based on pre-ordained characteristics that make it impossible for the plaintiffs in those cases to obtain an equal footing. Here, by contrast, *every* candidate is subject to the bracketing rules, and it is their own choice whether they wish to seek to bracket or not. There is no barrier to access to the primary election ballot for any candidate as a result of the bracketing statutes. Nor is there a barrier to casting a vote for any candidate on the primary election ballot based upon a candidate's ballot position. Further, the ballot position of a candidate or bracketed group of candidates is randomly drawn, N.J. Stat. Ann. §19:23-24, making this case quite different from the ones Plaintiffs cite. As demonstrated by Plaintiffs' own briefing, Plaintiff Lucide, who apparently chose not to bracket in the June 8, 2021 Democratic Primary

Election, nevertheless was positioned in the first column and first row of the Atlantic County ballot.  *See* Opp. 18.

Plaintiffs' arguments do demonstrate, however, the true nature of what they are seeking from this Court—that is, to undermine the Legislature.  The Court should decline that invitation.  The New Jersey Legislature has legitimate interests in allowing candidates who wish to associate to do so, to make that clear to the voters by bracketing together, and protecting against voters being confused at the polls. The resulting policy is tailored to meeting those interests.  This satisfies the intermediate standard of review under *Anderson/Burdick*—and is in fact sufficient to meet even strict scrutiny. While Plaintiffs disagree about the importance of interests and what policy best achieves them, they are free to pursue those policy interests through the democratic process.  But the federal courts are not the place for substituting a litigant's—or a court's—policy preferences for that of the Legislature.

### B.  Plaintiffs' Elections Clause Claims Fail as a Matter of Law

Nowhere do Plaintiffs demonstrate that the bracketing statutes violate the Elections Clause of the Constitution.  Rather than dictating any electoral outcomes, the bracketing statutes advance the above-described governmental interests by permitting candidates to appear together on the ballot through exercise of their right of association and allowing voters to understand those associations.   "[T]he Constitution grants to the States a broad power to prescribe the 'Times, Places and

Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices." *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 217 (1986). As such, States can "enact[] comprehensive and sometimes complex election codes" to ensure fair elections. *Anderson*, 460 U.S. at 788; *see also Timmons*, 520 U.S. at 358 ("States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder.").[6] These are interests on which the Legislature could permissibly rely in adopting bracketing statutes.

Plaintiffs' reliance on *Cook v. Gralike*, 531 U.S. 510 (2001) ignores the fact that *Cook* involved issues not applicable here, namely, negative language placed next to the name of each candidate for federal office, without the consent of the candidates. *Id.* at 514. The language to be placed adjacent to the name of a U.S. Senator or House of Representatives member who is a candidate on the ballot who did not support the proposed amendment would state, "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS," and for non-incumbent congressional candidates who refused to take a term limits pledge, the language next to their name

---

[6] Plaintiffs state "the Attorney General's Office . . . readily admits that such laws and practices do not "alter[] or add[] to the times, places and manner of holding elections for U.S. Senate or House or Representatives . . . . On that basis alone, it is clear that New Jersey's bracketing and ballot placement system violates the Elections Clause." Opp. 107-108. Plaintiffs' conclusion is twisting semantics to elide the essential, relevant point: nothing about the bracketing statute violates the Elections Clause because it does not "dictate electoral outcomes" as Plaintiffs assert.

on the ballot would state, "DECLINED TO PLEDGE TO SUPPORT TERM LIMITS." *Id.* at 514-15.   The Court found this language to be printed next to the name of uncooperating candidates "is plainly designed to favor candidates who are willing to support the particular form of a term limits amendment set forth in its text and to disfavor those who either oppose term limits entirely or would prefer a different proposal," and "place their targets at a political disadvantage to unmarked candidates for congressional office." *Id.* at 523, 525.

Nothing approaching such action results from the bracketing statutes.   No candidate is required to associate or bracket with another candidate.   Further, no language of any kind is placed with a candidate's name other than the slogan chosen by the candidate or candidates in the case of those candidates who desire to associate with one another.   Finally, the language that is chosen by candidates does not favor or disfavor candidates, other than to identify their affiliation with the political party or one another.   Therefore, unlike the case in *Cook*, the bracketing statutes do not impose any limitations that run afoul of the requirements of the Elections Clause. Instead, the bracketing statutes balance the interests of having all candidates seeking the same office appear on the same row or column, with interests in allowing candidates to associate or not to associate, to permit the voting public to be so informed, to have an intelligible ballot, and to prevent voter confusion.

## III.   *AMICI CURIAE*'S POLICY ARGUMENTS DO NOT SHOW THE BRACKETING STATUTES ARE CONSTITUTIONALLY INFIRM.

*Amici curiae* supporting Plaintiffs do not provide any additional legal support for the allegation that the New Jersey bracketing statutes violate the Constitution that has not already been addressed in response to Plaintiffs' brief.  Instead, they offer only their own views as to "good ballot design."  ECF No. 71 ("LWV Br."), at 5.

Those arguments about ballot design, however, should not even be considered by this Court, as they are new issues not raised by Plaintiffs.  "[A] party acting as amicus cannot raise new issues that have not been presented by the parties." *Cty. of Ocean v. Grewal*, 475 F. Supp. 3d 355, 384 (D.N.J. 2020).  Moreover, several of these arguments conflate ballot design issues with the specific statute here, and in so doing, ascribe ills that bear no relation to the challenge at issue.  For example, *amici* compare the bracketing statute to the Palm Beach "butterfly ballot" in the 2000 Presidential election, but offer not a scintilla of evidence to suggest the statutes at issue here have a similar effect on votes.  LWV Br. 7.  *Amici*'s attempt to import the outcomes of the butterfly ballot should therefore be rejected, as they provide no evidence that the "wasted or miscast" votes there is true here.  And *amici* likewise do not present evidence for their argument that the bracketing statutes systematically disadvantage voters and candidates of color.

The remainder of *amici*'s arguments repeat those briefed by Plaintiffs, largely consisting of expressing preferences for an alternative public policy instead of

24

demonstrating any fundamental federal constitutional infirmities.  In the end, *amici* and Plaintiffs do not so much object to the ability of unassociated candidates to appear on the ballot away from other candidates—which they claim is their right— as they do oppose the right of any candidate to appear on the ballot in a position that will allow the voters to see their association with other candidates.  While *amici* and Plaintiffs are free to take these objections to the Legislature, they are no basis for the Court to overturn state law.

## **CONCLUSION**

For all of the foregoing reasons, the Attorney General's motion should be granted, and Plaintiffs' First Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By:   s/ George N. Cohen
George N. Cohen
Deputy Attorney General
George.Cohen@law.njoag.gov
Attorney ID No. 002941985

Date: June 28, 2021