## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINE CONFORTI, ARATI KREIBICH, MICO LUCIDE, JOSEPH MARCHICA, KEVIN MCMILLAN, ZINOVIA SPEZAKIS, and NEW JERSEY WORKING FAMILIES ALLIANCE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, SCOTT M. COLABELLA, in his official capacity as Ocean County Clerk, PAULA SOLLAMI COVELLO, in her official capacity as Mercer County Clerk, JOHN S. HOGAN, in his official capacity as Bergen County Clerk, EDWARD P. MCGETTIGAN, in his official capacity as Atlantic County Clerk, and E. JUNIOR MALDONADO, in his official capacity as Hudson County Clerk, <br><br> Defendants. | Case No.: 3:20-cv-08267 |

---

## DEFENDANT COVELLO'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

---

**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102
Telephone: 973-533-0777
Fax: 973-533-1112
*Counsel for Paula Sollami Covello*

*Of Counsel and On the Brief:*
Angelo J. Genova, Esq. (005501979)
Jennifer Borek, Esq. (041131997)

*On the Brief:*
Matthew I. W. Baker, Esq.  (053092013)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

PRELIMINARY STATEMENT ............................................................... 1

LEGAL ARGUMENT .............................................................................. 3

   I.  PLAINTIFFS' AMENDED COMPLAINT FAILS TO ASSERT RIGHTS COGNIZABLE UNDER THE CONSTITUTION AND, THEREFORE, FAILS TO STATE A CLAIM. ........................................... 3

   II.  EVEN UNDER THE ANDERSON/BURDICK BALANCING TEST, PLAINTIFFS CLAIMS MUST STILL BE DISMISSED. ......................... 11

   III.  PLAINTIFFS LACK INDIVIDUAL AND ASSOCIATIONAL STANDING. ............................................................................................. 14

   IV.  PLAINTIFFS' CLAIMS ARE MOOT AND FAIL TO MEET THE THRESHOLD FOR CASES THAT ARE CAPABLE OF REPETITION YET EVADING REVIEW ......................................................................... 16

   V.  THE UNIQUE CONCERNS RAISED BY AMICI CURIAE REGARDING THE RIGHT TO VOTE ARE NOT AT ISSUE HERE. ..... 18

CONCLUSION ....................................................................................... 19

## TABLE OF AUTHORITIES

### CASES

Anderson v. Celebrezze,
   460 U.S. 780 (1983) .............................................................. 3, 6, 11, 12

Burdick v. Takushi,
   504 U.S. 428 (1992) .............................................................. 3, 6, 11, 12

Cook v. Gralike,
   531 U.S. 510 (2001) ...........................................................................10

Democratic-Republican Organization of New Jersey v. Guadagno,
   900 F. Supp. 2d 447 (D.N.J.)......................................................... passim

Eu v. San Francisco County Democratic Central Committee,
   489 U.S. 214 (1989) ...................................................................... 6-7

Hunt v. Wash. State Apple Advert. Comm'n,
   432 U.S. 333 (1977) ...........................................................................15

Illinois Bd. of Elections v. Socialist Workers Party,
   440 U.S. 173 (1979) ...........................................................................18

Lujan v. Defs. of Wildlife,
   504 U.S. 555 (1992) ...........................................................................14

Marcellus v. Virginia State Board of Elections,
   849 F.3d 169 (4th Cir. 2017) ..............................................................14

Marion Cty. Democratic Party v. Marion Cty. Election Bd.,
   No. 01-1963, 2002 WL 1354717, (S.D. Ind. May 9, 2002)...................3

Mecinas v. Hobbs,
   468 F. Supp. 3d 1186 (D. Ariz. 2020)..................................................15

Munro v. Socialist Workers Party,
   479 U.S. 189 (1986) ...........................................................................18

Murphy v. Hunt,
   455 U.S. 478 (1982) ...........................................................................16

Norman v. Reed,
  502 U.S. 279 (1992) ...........................................................................................12

Pavek v. Simon,
  467 F. Supp. 3d 718 (D. Minn. 2020) .................................................................4

Quaremba v. Allan,
  67 N.J. 1 (1975) ........................................................................................ 5, 6, 15

Reynolds v. Sims,
  377 U.S. 533 (1964) ......................................................................................2, 18

Rogers v. Corbett,
  468 F.3d 188 (3d Cir. 2006) ................................................................................7

Schundler v. Donovan,
  377 N.J. Super. 339 (App. Div. 2005)..................................................................7

Smiley v. Holm,
  285 U.S. 355 (1932) ...........................................................................................10

Starzell v. City of Philadelphia,
  533 F.3d 183 (3d Cir. 2008) ..............................................................................13

Summers v. Earth Island Inst.,
  555 U.S. 488 (2009) ...........................................................................................14

Timmons v. Twin Cities Area New Party,
  520 U.S. 351 (1997) .........................................................................................8, 9

United States v. Carolene Products Co.,
  304 U.S. 144 n.4 (1938) ......................................................................................1

Voting Integrity Project, Inc. v. Bomer,
  199 F.3d 773 (5th Cir. 2000) .............................................................................10

Wesberry v. Sanders,
  376 U.S. 1, (1964) ..............................................................................................18

Williams-Yulee v. Fla. Bar,
  575 U.S. 433 (2015) ...........................................................................................14

Yick Wo v. Hopkins,
   118 U.S. 356 (1886) ............................................................................1, 2

## **STATUTES**

N.J.S.A. 19:23-24.................................................................................11

N.J.S.A. 19:49-2...................................................................................11

## **CONSTITUTIONAL PROVISIONS**

42 U.S.C. § 1983..................................................................................11

## <u>PRELIMINARY STATEMENT</u>

In their lengthy opposition brief ("Opp. Br."), and in an amicus brief, Plaintiffs[1] and Amici[2], respectively, attempt to set forth why this Court should declare several longstanding, well-recognized, and rationally grounded ballot design practices of several counties and their duly elected county clerks unconstitutional. More specifically, Plaintiffs and Amici want this court to endorse a new, never-before-recognized constitutional right of political candidates to disassociate themselves from any other candidates or political parties on the ballot – i.e., to eschew any indication that the candidate shares common policy goals, aims, or principles with any other candidate running for any other office – *without having to bear the natural and procedural consequences of such disassociation*. There is simply no constitutional basis for Plaintiffs' claims here.

The futility of Plaintiffs' claims is only further highlighted by certain citations to, and attempts to rely on, seminal Supreme Court cases that form part of the core of American constitutional jurisprudence:

> Long ago, the Supreme Court recognized the fundamental nature of voting rights because it is "preservative of all rights." <u>Yick Wo v. Hopkins</u>, 118 U.S. 356, 370 (1886); *see also* <u>United States v. Carolene Products Co.</u>, 304 U.S. 144, 152 n.4 (1938) (identifying without deciding categories of laws which

---

[1] Capitalized terms shall retain the same meaning as in Covello's moving brief.

[2] "Amici" refers collectively to the League of Women Voters of New Jersey ("LWVNJ") and Salvation and Social Justice ("SSJ").

1

> implicated the Fourteenth Amendment that might "be subjected to more exacting judicial scrutiny" including state laws which "restrict[] those political processes which can ordinarily be expected to bring about repeal of undesirable legislation."); Reynolds v. Sims, 377 U.S. 533, 562 (1964) (because voting rights are "preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized.").

(Opp. Br. at 86.)

However, in Yick Wo, 118 U.S. 356, 370 (1886), the United States Supreme Court created the now fundamental principle that a facially race-neutral law could violate the U.S. Constitution if administered in a prejudicial manner. In Reynolds, the Supreme Court established as a constitutional rule the now bedrock principle of "one person, one vote", inserting into jurisprudential lore the now legendary sentences: "Legislators represent people, not trees or acres. Legislators are elected by voters, not farms or cities or economic interests." Id., 377 U.S. at 562.

In contrast to the establishment of clearly fundamental rights in those cases, Plaintiffs' attempt here to create a new constitutional right of unaffiliated and unassociated candidates to preferred ballot placement is merely a policy argument on bracketing that is better left to be addressed by the legislature. Plaintiffs' alleged lack of preferred ballot placement - solely a result of Plaintiffs' apparently steadfast and unwavering refusal to associate with other candidates running for other offices - is not a constitutional violation such as those recognized in Yick Wo and Reynolds.

Accordingly, this court need not entertain Plaintiffs' theories any longer than is necessary to grant Covello's motion and dismiss Plaintiffs' Amended Complaint.

## LEGAL ARGUMENT

### I.   PLAINTIFFS' AMENDED COMPLAINT FAILS TO ASSERT RIGHTS COGNIZABLE UNDER THE CONSTITUTION AND, THEREFORE, FAILS TO STATE A CLAIM.

Plaintiffs devote a substantial part of their opposition brief to weighing the factors described in the balancing test recognized in Anderson v. Celebrezze, 460 U.S. 780 (1983) and Burdick v. Takushi, 504 U.S. 428 (1992).  (See Opp. Br. at 59-103.)  However, this puts the cart before the horse.  The threshold issue presented in this motion is whether Plaintiffs have plausibly alleged the deprivation of any rights recognized by the Constitution.  This court need not reach the question of whether any alleged *burden* on Plaintiffs rights is unconstitutional unless and until it determines that the Amended Complaint asserts a right cognizable under the Constitution.[3]   Plaintiff's opposition brief further confirms that the Amended Complaint does not assert any such right.

Count I of the Amended Complaint alleges that New Jersey's ballot design system violates Plaintiffs' First Amendment rights to vote through vote dilution, allegedly injuring Plaintiffs "by a diminution in their chance to succeed in their

---

[3] See, e.g., Marion Cty. Democratic Party v. Marion Cty. Election Bd., No. 01-1963, 2002 WL 1354717, at *10 (S.D. Ind. May 9, 2002).

respective elections[.]"  (Am. Compl. ¶¶ 168-182.)  However, Plaintiff does not allege that the ballot design system at issue has denied any voter's access to the ballot or the right to vote for any candidate of their choice.  Nor do Plaintiffs' allegations, even assuming their truth for the purpose of this motion, constitute a cognizable vote dilution claim, which is reserved for circumstances when one community's votes are systematically or invidiously devalued as compared to otherwise similarly situated voters.  Accordingly, and regardless of what burdens Plaintiffs allege, Plaintiffs have failed to state a claim for violation of Plaintiffs' First Amendment right to vote.

Count II of the Amended Complaint alleges that the ballot design system violates Plaintiff's Fourteenth Amendment equal protection rights by allegedly injuring Plaintiffs in the same way.  (Id. ¶¶ 183-194.)  However, Plaintiffs do not allege discrimination by any protected category or classification or, for example, discrimination by party affiliation, or in favor of incumbents, or in favor of candidates from the party that prevailed in the most recent election.  Many courts have considered such discrimination to be a prerequisite to an equal protection challenge to ballot placement schemes.  See Pavek v. Simon, 467 F. Supp. 3d 718, 750 (D. Minn. 2020) (citing cases).  In contrast, Plaintiffs here allege discrimination on the basis of their refusal to associate with other candidates, while citing no case from any jurisdiction that has recognized such a class under the Equal Protection Clause.

Indeed, the uniqueness of New Jersey's ballot design process – conceded by Plaintiffs to be so (Am. Compl. ¶¶ 3-4), and which, unlike several other ballot design systems challenged in the courts, does *not* slot candidates based on party, presence of party affiliation, incumbency, or the winner of a previous election – undermines Plaintiffs' attempt to superimpose substantive rulings from other jurisdictions on the ballot design process here. More to the point: Plaintiffs have structured their challenge to the state's ballot design process wholly upon the concept that unbracketed candidates, who are unaffiliated and unassociated with any other candidates, have cognizable constitutional rights regarding ballot placement *based solely on their lack of affiliation or association*.

Yet, despite the survey of election case law that Plaintiffs provide, Plaintiffs cannot identify a single case – *not one* – where a state or federal court has recognized such rights. Nor can Plaintiffs deny that the cases that come the closest to evaluating the exact rights Plaintiffs attempt to assert here under the exact theories that Plaintiffs attempt to advance here have uniformly rejected Plaintiffs' position. See Democratic-Republican Organization of New Jersey v. Guadagno, 900 F. Supp. 2d 447, 460 (D.N.J.) ("Plaintiffs do not have a constitutional right to dictate their placement, or the placement of anyone else, on the ballot."), aff'd, 700 F.3d 130 (3d Cir. 2012); Quaremba v. Allan, 67 N.J. 1, 13 (1975). As the New Jersey Supreme Court held in Quaremba:

Plaintiffs further argue that an unaffiliated candidate would draw more votes if his opponent's name were not grouped with those of candidates for other offices.  Even if that be true, it affords no basis for invalidating, as unreasonable, the legislative determination that whatever the effect on an unaffiliated candidate, the public interest is better served by permitting a grouping of candidates having common aims or principles and authorizing those candidates 'to have this fact brought to the attention of the voter in a primary election with the additional effectiveness produced by alignment of their names on the machine ballot.

Id. at 13. Though Plaintiffs assail Quaremba as decided prior to adoption of the Anderson/Burdick balancing test, the Court here is effectively ruling that Plaintiffs' argument regarding the "primacy effect" and "weight of the line," even if true, *fail to state a constitutional claim* for the invalidation of the state's ballot design system.

Plaintiffs similarly allege in Count III of the Amended Complaint that the ballot design system violates their associational rights – specifically, their right *not to associate* with other candidates – under the First Amendment.  (Am. Compl. ¶¶ 195-208.)  However, any such right asserted by Plaintiffs must fit within the broader framework of associational rights already recognized by the Supreme Court and various other courts.  The Supreme Court has recognized that parties and political organizations have associational rights, including "the right to identify the people who constitute the association."  Eu v. San Francisco County Democratic Central

Committee, 489 U.S. 214, 224 (1989).[4]  Accordingly, "[s]tates may treat candidates affiliated with political parties differently than unaffiliated candidates.  Democratic-Republican Organization of New Jersey v. Guadagno, 900 F. Supp. 2d 447, 456 (D.N.J.) (citing Rogers v. Corbett, 468 F.3d 188, 196 (3d Cir. 2006) ("Alternate ballot access rules for major and minor political parties "are not per se unconstitutional.")), aff'd, 700 F.3d 130 (3d Cir. 2012).

Here, we note the contradictory nature of Plaintiffs' associative claims. Plaintiffs strenuously argue for the protection of their right to remain independent from, and to not associate with, other candidates or political parties on the ballot. (See, e.g., Am. Compl. ¶ 16 (explaining that Plaintiffs seek "to ensure that the primacy effect/positional bias and the weight of the line do not continue to advantage bracketed candidates over other candidates running for the same office, and thereby

---

[4] We note that Plaintiffs go to great lengths to attempt to confine Eu within limits that fit Plaintiffs' arguments.  For example, Plaintiffs argue that the idea that the "principles in Eu apply to the ballot itself" is a "faulty premise," and that "nowhere in the Eu decision is bracketing ever discussed, nor is there any indication anywhere in that opinion that the associational principles set forth in that case apply to the ballot itself." (Opp. Br. at 102) (emphases in original).  However, Plaintiffs fail to describe why a political party's associative rights under the First Amendment would not apply to the ballot itself – as was recognized in Schundler v. Donovan, 377 N.J. Super. 339, 348 (App. Div. 2005) – or what, if anything, could or should prevent a party's core associative rights from being recognized on the ballot.  Plaintiffs' inability or unwillingness to recognize that Eu's protection of associative rights does indeed extend to the ballot is particularly confusing here, since Plaintiffs' claims in large part are based on the very premise that Plaintiffs' associative rights on the ballot have been violated.

arbitrarily undermine the integrity of New Jersey's elections and irreparably damage Plaintiffs' rights.")).  However, as part of the very same set of claims, Plaintiffs lament and characterize as injurious *their very independence from, and lack of association with, other candidates or political parties on the ballot*.  (See, e.g., id. ¶ 178 (claiming to have been injured by ballot design features such as "placing a candidate far away from other candidates running for the same office with multiple blank spaces in between, i.e., Ballot Siberia").  In effect, Plaintiffs' argument is not an attempt to protect their own existing associative rights but is instead a back-door attempt to weaken or eliminate the associative rights of bracketed candidates.

Additionally, Plaintiffs attribute the failure of the Guadagno plaintiffs in their attempt to advance substantially the same claims advanced here to only "lack of a sufficiently developed record." 900 F. Supp. 2d at 458-59; (Opp. Br. at 42).  Putting aside the fact that Plaintiffs here may only develop the record if they allege a cognizable violation of their associative rights, which they have not, the Guadagno court nevertheless anticipated Plaintiffs' characterization here and went further, finding that:

> even assuming for the sake of this motion that ballot placement might burden some candidates – for example making it marginally more difficult for a voter to quickly identify all of the candidates on the ballot – I nevertheless consider this to be less onerous than the burdens imposed by the statutes the Supreme Court upheld in *Jenness* and, more recently, in Timmons v. Twin Cities Area New Party, 520 U.S. 351, 367 (1997) (upholding

constitutionality of "anti-fusion" law prohibiting candidates from associating with more than one party on a ballot).

Id.[5]   Ultimately, Guadagno unequivocally confirmed that "placing political party candidates on the left side of the ballot and all other candidates on the right side does not violate Plaintiffs' constitutional rights." Id. at 458.  Given that the discrimination alleged by Plaintiffs here is on the basis of bracketed candidates and not on the basis of party affiliation at all, and therefore is *less* cognizable than the discrimination alleged (and rejected) in Guadagno, Plaintiffs have failed to state a claim for relief under the First Amendment.

Plaintiffs similarly fail to state a claim as to Count IV of their Amended Complaint, which alleges that the ballot design system violates the Elections Clause of the Constitution.  The Elections Clause grants the states "comprehensive ... authority to provide a complete code for the congressional elections, not only as to times and places, but in relation to ... supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of elections returns," unless Congress

---

[5] The Guadagno court went on to note that in Timmons, the Supreme Court explained that a state's interest in establishing orderly elections permits it to enact "reasonable election regulations that may, in practice, favor the traditional two-party system," and that "while an interest in securing the perceived benefits of a stable two-party system will not justify unreasonably exclusionary restrictions," a state "need not remove all of the many hurdles third parties face in the American political arena today." Id. (quoting Timmons, 520 U.S. at 367).

should "supplement these state regulations or ... substitute its own." Smiley v. Holm, 285 U.S. 355, 366–67 (1932).  The only limitation on states' discretion under the Elections Clause is that "the state system cannot directly conflict with federal election laws on the subject." Voting Integrity Project, Inc. v. Bomer, 199 F.3d 773, 775 (5th Cir. 2000).

Here, Plaintiffs fail to allege a conflict between the ballot design system at issue here and any federal election law.  Instead, Plaintiffs seek to analogize the ballot design system to the labeling system at issue in Cook v. Gralike, 531 U.S. 510, 522-26 (2001), wherein Missouri amended its state constitution to require the printing of negative labels on primary and general election ballots next to congressional and senatorial candidates who did not support term limits on congressional representatives.  However, Plaintiffs here have not alleged that any harmful notations or labels are being printed on their ballots, or that the ballot design system at issue here is "plainly designed to favor candidates who are willing to support the particular form" of any particular real or proposed law, amendment, or regulation.  See Cook, 531 U.S. at 524.

Most importantly, however, Plaintiffs concede that the grant of authority to states under the Elections Clause "is limited to procedural regulations," (see, e.g., Opp. Br. at 104), and *proceed to characterize the very ballot design system at issue here as "procedural" several times throughout their Amended Complaint*.  (See,

e.g., Am. Compl. ¶ 74 ("N.J.S.A. 19:49-2 sets forth the specific *procedure* for bracketing."); id. ¶ 77 ("While N.J.S.A. 19:23-24 sets forth various *procedures* intended to ensure fairness as between the candidates being drawn, only some candidates get to enjoy those fair *procedures* on equal footing.") (emphases added). Setting aside the fact that certain election procedures – e.g., setting deadlines – are unquestionably within a state's power under the Elections Clause and apply neutrally yet necessarily bestow an advantage upon those candidates who comply over those who do not, Plaintiffs' concession that the ballot design system here is, indeed, procedural confirms that Plaintiff has not, in fact, stated a claim for a violation of the Elections Clause.  As such, Plaintiffs' Count IV under the Elections Clause fails and must be dismissed.[6]

## II.   EVEN UNDER THE ANDERSON/BURDICK BALANCING TEST, PLAINTIFFS CLAIMS MUST STILL BE DISMISSED.

Even in the event this Court finds it appropriate to employ the Anderson/Burdick balancing test, Plaintiffs' claims should still be dismissed.  Where a state law is alleged to burden the right of a candidate, the reviewing court must analyze "the character and magnitude of the asserted injury," as well as the "precise

---

[6] Plaintiffs do not contest Covello's argument that Count V of the Amended Complaint, which asserts a bare violation of 42 U.S.C. § 1983, fails to state a claim because section 1983 provides a method for vindicating federal rights conferred elsewhere, and is not itself a source of substantive rights.

interests put forward by the State as justifications for the burden imposed by its rule." Anderson, 460 U.S. at 789. Courts must then weigh the burdens against the state interests and take into consideration "the extent to which those interests make it necessary to burden [a candidate's] rights." Id.  When those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." Norman v. Reed, 502 U.S. 279, 289 (1992). But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions. Anderson, 460 U.S., at 788; see also Burdick, 504 U.S., at 434.

Plaintiffs claim that the burdens imposed by the ballot design system at issue here are severe and affect Plaintiffs in three specific ways: (i) the ordering of candidate names; (ii) visual cues and the "weight of the line"; and (iii) associational rights.  (Opp. Br. at 61-75.)  Plaintiffs further argue that any alleged state interests are illegitimate or otherwise not sufficiently weighty to justify the burdens on Plaintiffs' rights.  (Id. at 89-98.)

As a threshold matter, it must be considered that the burdens Plaintiffs claim are imposed by an alleged bias in the state's ballot design system against unbracketed candidates, in fact, do not arise from any ballot design choice and instead arise from a lack of public support for candidates that are unwilling or unable to associate with

candidates for other offices.  (See Def's Mot. Br. at 17.)  In other words, while Plaintiffs allege, for example, that the "weight of the line" benefits their "similarly-situated" opponents who associate with a broad slate of other candidates, Plaintiffs have failed to establish that these opponents are, in fact, similarly-situated.   In relation to Plaintiffs' claims here, persons are "similarly situated" when they are alike "in all relevant aspects." Starzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir. 2008).   However, the Candidate Plaintiffs' refusal to bracket with other candidates on the ballot is a "relevant aspect" of their candidacies in which they and their opponents are decidedly not alike.

Moreover, Plaintiffs conspicuously omit that the very ballot design system at issue here has been challenged several times previously, and several courts have already endorsed the specific state interests it serves.  See, e.g., Guadagno, 900 F. Supp. 2d at 459 ("I note that the State has offered, in its papers and at the hearing, several interests supporting its method of regulating ballot placement in a way that might appear to favor political parties," and citing the State's interest in "maintaining the integrity of the election process" by allowing "voters to easily identify [party-affiliated] candidates on the ballot[.]").

Further, Plaintiffs' mere disagreement as to whether the ballot design system at issue here serves the unquestionably weighty interests cited by the State is insufficient to establish that any burden imposed on Plaintiffs outweighs the State's

interests.  See Marcellus v. Virginia State Board of Elections, 849 F.3d 169, 179 (4th Cir. 2017) (finding that, while an alternative and more comprehensive legislative approach "could indeed have been followed, the Constitution does not, of course, require States to 'address all aspects of a problem in one fell swoop.'") (quoting Williams-Yulee v. Fla. Bar, 575 U.S. 433, 449 (2015)).  Therefore, Plaintiffs' suggestions as to different ways to preserve ballot integrity and avoid voter confusion – even if accurate – do not rise to the level of a constitutional question.

## III.   PLAINTIFFS   LACK   INDIVIDUAL   AND ASSOCIATIONAL STANDING.

Plaintiffs' opposition brief also fails to dispute that they lack Article III standing to pursue their claims.  To properly invoke federal jurisdiction, a plaintiff must demonstrate that (1) they are under an actual threat of suffering an injury in fact to a legally protected interest that is "concrete and particularized;" (2) the injury is fairly traceable to the defendant's conduct; and (3) it is likely that a favorable judicial decision will prevent or redress the injury. Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009); Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).

As to the Candidate Plaintiffs, even assuming that "harm to electoral chances" on the basis of the Candidate Plaintiffs' refusal to associate with other candidates constitutes a sufficiently "concrete and particularized" injury in fact, Plaintiffs have failed to establish that this injury is "fairly traceable" to the defendants' conduct, as opposed to the Plaintiffs' own conduct in refusing to associate with other candidates

for public office.  In addition, this failure undermines Plaintiffs' ability to assert that a favorable decision will redress their injury, as even a favorable decision by the court in this matter would not remedy the fact that singular, unaffiliated and unassociated candidates may face an electoral disadvantage when competing against candidates associated with a broad slate of other candidates with shared policy goals, or a "grouping of [other] candidates having common aims or principles[.]" Quaremba, 67 N.J. at 13.

Further, NJWF also lacks Article III standing.  In an attempt to establish injury to itself, NJWF argues that it has and will continue to "divert resources it could use for other activities," and that one of its goals is "to achieve the election of candidates it supports."  (Opp. Br. at 31.)  However, courts have found similar arguments unavailing, especially where, as here, an organizational plaintiff admits that it would be devoting resources to other "activities, issues, and campaigns" within the state even in the absence of the challenged ballot design measure (See id.; Am. Compl. ¶ 55); Mecinas v. Hobbs, 468 F. Supp. 3d 1186, 1205 (D. Ariz. 2020).  Further, NJWF has not established the requisite interest to bring this suit on behalf of its members, as its members do not have standing to sue in their own right for the reasons expressed herein.  See Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977) (finding that associational standing for an organization requires, among

other things, that "its members would otherwise have standing to sue in their own right[.]").

## IV.   PLAINTIFFS' CLAIMS ARE MOOT AND FAIL TO MEET THE THRESHOLD FOR CASES THAT ARE CAPABLE OF REPETITION YET EVADING REVIEW.

Plaintiffs argue that, despite the fact that the bulk of Plaintiffs' claims arise from the 2020 election cycle, which has now been concluded for months, Plaintiffs' claims are not moot because they are "capable of repetition yet evading review." (Opp. Br. at 37-42.)  This exception is triggered where two elements are combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again.  See, e.g., Murphy v. Hunt, 455 U.S. 478, 482 (1982) (per curiam).

However, the Supreme Court has defined "capable of repetition" as requiring "a '*reasonable expectation*' or a *demonstrated probability* that the *same controversy* will occur involving the *same complaining party*." Id. (citation omitted) (emphasis added).  The plaintiff in Murphy was a criminal defendant denied pretrial bail under a state constitutional provision; his civil rights action challenging the constitutionality of the provision and seeking declaratory and injunctive relief reached the Supreme Court after he had been tried and convicted.  Id. at 480.  The Supreme Court held that the conviction mooted his claim, and that his claim was not

"capable of repetition" since the possibility that his convictions would be overturned and that he would once again be denied pretrial bail thereafter was "purely speculative and thus insufficient to trigger the exception." Id. at 483 n.7; see id. at 482 (noting that the Supreme Court "never held that a mere physical or theoretical possibility was sufficient to satisfy the [capable of repetition] test," and that "[i]f this were true, virtually any matter of short duration would be reviewable.").

Here, Plaintiffs' claims are no longer live and certain Plaintiffs' bare statements of intent with regard to future elections are insufficient to trigger the "capable of repetition" exception, as the design of any future ballot and the associative or bracketing relationship between these Plaintiffs and other candidates is, at this point, no more than a physical or theoretical possibility.   And we again note that Lucide, although a current candidate, has no "case or controversy" with Covello or Mercer County, as he is not involved in any election encompassing Mercer County or under the authority of Covello. Finally, as neither NJWF, nor its members, is eligible or running for election to any offices governed by ballot design system at issue here, it can have no case or controversy with the Defendants and certainly not with Covello, specifically.

Thus, the procedures and statutes which Plaintiffs seek to have declared violative of the United States no longer apply to them (or never did) and must be dismissed as moot.

## V.    THE UNIQUE CONCERNS RAISED BY AMICI CURIAE REGARDING THE RIGHT TO VOTE ARE NOT AT ISSUE HERE.

Amici raise several alleged concerns related to New Jersey's ballot design rules.  However, these interests simply do not bear on the question at issue in this motion, which is whether the specific Plaintiffs here have plausibly alleged the deprivation of any rights recognized by the Constitution.

Individuals have an interest in being able to vote under the First and Fourteenth Amendments to the Constitution. Indeed, "voting is of the most fundamental significance under our constitutional structure." Illinois Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 184 (1979). All voters have a legal interest in their ability to vote, in not being prevented from voting because of state-imposed obstacles, and in their vote being weighed the same as all others. See, e.g., Wesberry v. Sanders, 376 U.S. 1, 17, (1964); Reynolds, 377 U.S. at 544 ("It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote ..." and that right cannot not be "diluted by ballot-box stuffing").  These associational rights, however, are "not absolute and are necessarily subject to qualification if elections are to be run fairly and effectively." Munro v. Socialist Workers Party, 479 U.S. 189, 193 (1986).

Here, Plaintiffs have not alleged that the ballot design procedures at issue discriminate on the basis of any protected class or category recognized by Equal

Protection Clause jurisprudence, nor has Plaintiff alleged that the ballot procedures have denied any voter's access to the ballot or the right to vote for any candidate of their choice or denied any voter's ability to have their vote count for as much as the vote of other similarly-situated voters.  Therefore, the concerns raised by amici are not germane to the dispute at issue here and should not be given credence by the Court.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be granted.

**GENOVA BURNS LLC**

By:     */s/ Angelo J. Genova*
        Angelo J. Genova, Esq.
        Jennifer Borek, Esq.
        Matthew I. W. Baker, Esq.

        494 Broad Street
        Newark, New Jersey 07102
        Telephone: 973-533-0777
        Fax: 973-533-1112
        *Attorneys for Paula Sollami Covello*

Dated:  June 28, 2021

15699352v3 (1815.180)