IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

CHRISTINE CONFORTI, et al.      :
                                  :
    Plaintiffs,           :    Case No, 3:20-cv-08267
V.                         :
                                  :
CHRISTINE GIORDANO HANLON,    :
In her official capacity as    :
Monmouth County Clerk, et al.    :
                                  :
    Defendants.          :
                                  :

_____

**AMICUS THE HONORABLE JAMES HOGAN, GLOUCESTER COUNTY CLERK'S BRIEF IN SUPPORT OF THE MOTIONS TO DISMISS THE COMPLAINT**

_____

                                      CARBONE AND FAASSE
                                      ATTORNEYS AT LAW
                                      401 GOFFLE ROAD
                                      RIDGEWOOD, NEW JERSEY 07450
                                      Office (201) 445 – 7100
                                      FAX    (201) 445 - 7520

*Of Counsel and on the Brief:*
John M. Carbone, Esq.

*On the Brief:*
Eric M. Campo, Esq.
Gloucester County Counsel

1

**STATEMENT**

This brief is filed on behalf of the amicus Gloucester County Clerk, the Honorable James Hogan in support of the pending motions to dismiss filed by of the New Jersey Attorney General and other County Clerks. We join in legal arguments presented to the court by these parties and supplement them below.

**POINT I:   THE MATTER MUST BE DISMISSED SINCE NECESSARY AND INDISPENSABLE PARTIES HAVE NOT BEEN JOINED: THE REPUBLICAN AND DEMOCRAT PARTIES.**

As a threshold and in limine issue we advise the Court that necessary and indispensable parties have neither been joined nor notified of the pendency of these proceedings.

Where the two major political parties of the State, the Republican and Democrat parties, are not before this Court and whose statutory rights, process, and procedures for candidate placement, endorsement, and configuration of their primary ballot are under review and adjudication, clearly they become interested and indispensable parties to the litigation.

The Federal Rules of Civil Procedure protect interested and indispensable parties. Fed.R.Civ.P Rule 19(a), which through this Court guarantees that all parties interested in a particular lawsuit have both a chance to affect the outcome, and the benefit of finality as to the judgment rendered." Abel v. American Art Analog, Inc., 838 F.2d 691, 694 (3rd Cir. 1988).

2

Federal Rule of Civil Procedure 19 specifies the circumstances in which the joinder of a particular party is compulsory." Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007). As the Third Circuit has held:

> Rule 19 mandates a two-step process: (1) the court first must determine whether the absent party is 'necessary' under Rule 19(a); and (2) if the party is 'necessary' and joinder is not feasible, then the court must decide whether the party is 'indispensable' under Rule 19(b)." Tullett Prebon PLC v. BGC Partners, Inc., 427 F. App'x 236, 239 (3d Cir. 2011)

Lacking joinder, the Court should consider dismissal for failure to join an indispensable party. See Del. Riverkeeper Network v. Del. River Basin Comm'n, No. 10-5639, 2011 WL 3882503, at *3 (D.N.J. Sept. 2, 2011) If the Court finds that a party is necessary and is indispensable, then the Court must dismiss the case. Tullett Prebon, 427 F. App'x. at 239.

On the other hand, If the matter is not dismissed under these grounds above, then the Court must consider that the essential and non-joined party is factually and procedurally declared to be "dispensable", which is:

> [O]nly if the Court can accord complete relief among existing parties without it, or where the party would not be subject to inconsistent obligations or otherwise practically impeded from protecting its claimed interests by a judgment in its absence. Dirauf v. Berger Eyeglasses United States District Court, D. New Jersey. December 11, 2020 --- F.Supp. 3d ---- 2020 WL 7310621109, 109 Fed. R. Serv. 3d 509 p. 12

Curiously, the jeremiad complaint of the Plaintiffs and supported by their litany of counsel have neither addressed the glaring omission nor sought to properly bring all interested and dispensable parties before this Court. Thus the matter should be dismissed.

**POINT II:        POLITICAL PARTIES, PRIMARY ELECTIONS, THE DESIGN OF THE BALLOT, AND THE VOTER AS THE POLE STAR.**

    A. What is the function of a political primary for a political party?

Under New Jersey law, our courts have defined and conceptualized a "political party."

> A political party is an association of persons sponsoring ideas of government, or maintaining certain political principles, or beliefs in the public policies of the government, and its purpose is to urge the adoption and execution of such principles in governmental affairs through officers of like beliefs." <u>Rogers, et al v. State Com. of Republican Party, et al</u>, 96 N.J. Super. 265, 271 (Law Div. 1967);

The key take away is that the enabling legislation for the party primary hallmarks their candidates as "… officers of like beliefs."

Former New Jersey Supreme Court Justice Marie Garibaldi in examining the importance of the primary election process, the need for minimal legislative control of the process, and deferring to the political parties, held:

> Our election laws today embrace the accepted traditions of the party convention tempered by the recognition that a party's candidate-selection process is of public

4

> concern. "The selection of nominees by political parties plays a crucial role in the electoral system. Indeed, the nomination of candidates by the major parties has been called the 'most critical stage' of the electoral process." Note, "Developments—Election Law", 88 Harv.L.Rev. 1111, 1151 (1975)… As such, we have long recognized that the "Legislature may invoke measures reasonably appropriate to secure the integrity of the nominating process in the service of the community welfare." Wene, supra, 13 N.J. at 192, 98 A.2d 573. Lesniak v. Budzash, 133 N.J. 1, 8–9, 626 A.2d 1073, 1076–77 (1993)

Professor Edward B. Foley, of Moritz College of Law, is perhaps the leading legal scholar and commentator on election law and politics. Foley has succinctly identified the function of a party's political primary election in a sharp and distinct legal, political, and social description:

> [T]he task of each party's nomination process is fundamentally to select a single candidate to duel against the other party's single candidate. Nomination, in other words, is all about winnowing the field in this way, casting aside all the other potential competitors but one for each of the two teams." [1]

Professor Foley views the primary as both an endorsement process on the ballot of the party "officers of like beliefs" and the resultant choice to the voters as the process to "winnow candidates."

Thus he concludes legally and practically it is the party's right to control the nomination and endorsement process:

---

[1] Foley, Edward B., Winnowing and Endorsing: Separating the Two Distinct Functions of Party Primaries (February 1, 2020), p. 7; Available at SSRN: https://ssrn.com/abstract=3529904 accessed June 26, 2021

If the party nomination process serves an endorsement function, without the additional need to winnow the field, then the First Amendment interest of the party having the right to control the nomination process is especially strong. The party should be able to decide for itself how it wants to go about endorsing whichever candidate it thinks is the best or strongest, according to whatever criteria the party considers most important. Presumably, the party will want to win and thus will try to endorse a candidate with a reasonable chance of prevailing in the general election. But in making this judgment, the party needs to weigh a complex set of factors in evaluating what might make a candidate most electable in the context of this particular election— and also how much to trade off the goal of winning against the party's policy and ideological commitment insofar as there may be a conflict between electoral competitiveness and philosophical purity.[2]

B. What is the touchstone for the design on the ballot: ease of voter affiliation with their candidates.

As enunciated by Chief Justice Weintraub and cited repeatedly with approbation and adherence even to this day:

The purpose of a ballot is to permit voters to record their will, and one must assume the Legislature intended a ballot so arranged that all voters may find their candidates with the least difficulty the total content of the ballot will permit." Richardson v. Caputo, 46 N.J. 3, 9 (N.J. 1965) (emphasis added)

Rrecently in Nelson v. Warner, 477 F. Supp. 3d 486, 509-10 (S.D.W. Va. 2020) the Court in reviewing the propriety as here a statutory ballot order legislation and the benefits provide to the voter, reviewed the current West Virginia law and wrote with

---

[2] Id. at Pp. 11-12

approval and approbation as follows:

> The Fourth Circuit affirmed the importance of these interests in Libertarian Party of <u>Virginia v. Alcorn</u>. 826 F.3d at 719-21. The court explained that ordering candidates by party "makes the ballot more easily decipherable" <u>and allows voters to "quickly find their preferred choice for a given office, especially when party loyalties influence many voters' decisions." Id. Random ordering, on the other hand, can create confusion and "risks requiring voters to decipher lengthy multi-office, multi-candidate ballots in order to find their preferred candidates." Id. at 719. And "[f]or each extra minute that a voter spends deciphering his ballot in the voting booth, dozens or more voters may spend another minute in line." Id. at 720. Slowing the voting process thus creates a risk of discouraging citizens from exercising their right to vote.</u> Id. (Emphasis added)

Thus it is the interests of the voter and not the candidates, parties, or the states interest which are paramount.

In <u>Pavek v. Simon</u>, 467 F. Supp. 3d 718, 758-59 (D. Minn. 2020), the Court in reviewing a challenge to the application of a ballot order statute adopted and cited with approval the holding in <u>Democratic-Republican Org. of N.J. v. Guadagno</u>, 900 F. Supp. 2d 447, 455-56 (D. N.J. 2012). The Court reviewed the current law on the discriminatory nature on a right to association on the ballot, finding that it was minimal and the application should be reviewed under a mere "rational basis" test. The Court held:

> While the character of the Ballot Order statute places a discriminatory burden on the right to vote and freedom to political association, the magnitude of that burden is another question. In McLain , the Eighth Circuit addressed a similar—albeit incumbent-favoring—ballot

order statute. 637 F.2d at 1167. In doing so, the court noted that while the statute certainly had an effect on the right to vote, the effect was, at best, "somewhat attenuated." Id. (noting that most courts apply rational basis review to such "ballot format" statutes). Other courts have similarly noted the lesser burden that ballot format statutes, like the one at issue, may impose on constitutional rights. See, e.g., Democratic-Republican Org. of N.J. v. Guadagno, 900 F. Supp. 2d 447, 455–56 (D. N.J. 2012) ("[A] candidate's ballot placement can also be regulated [by the state], as placement is surely a less important aspect of voting rights than access [to the ballot]." (citations omitted)), aff'd, 700 F.3d 130, 130 (3d Cir. 2012) (noting the district court "correctly applied the [Anderson / Burdick] balancing test"). The Court acknowledges that the Ballot Order statute at issue here does not bar access to the ballot, nor does it prevent voting for, campaigning for, or otherwise showing support for a particular political party's candidates. As one court noted, where "a restriction does not 'affect a political party's ability to perform its primary functions,' such as organizing, recruiting members, and choosing and promoting a candidate, the burden [on First Amendment rights] typically is not considered severe." Green Party of Tennessee v. Hargett, 767 F.3d 533, 547 (6th Cir. 2014)

The arguments and submissions on the constitutionality of the provision of the two major parties having ballots placement preferences as constitutionally permissible, was addressed and upheld in N.J. Conservative Party v. Farmer, 324 N.J. Super. 451, (App. Div. 1999), on remand 332 N.J. Super. 278, 290-91, (Ch. Div. 1999). In New Jersey Conservative Party v. Farmer, the court held in said matter that despite "plaintiffs' urging to the contrary, the meaningful votes of the electorate are not impacted by the Legislature's regulations concerning the creation of ballots." Id

at 285.There, the Court reasoned that "the meaningful votes of the electorate are not impacted by the Legislature's regulations concerning the creation of ballots." Id. 285. Similarly applicable in the matter before this Court. The court in N.J. Conservative Party went on to hold that there was no evidence of an "appreciable correlation between ballot placement and the extent to which placement will impact upon the ability to acquire irrational votes." Id. 88.

## CONCLUSION

Plaintiffs' constitutional and legal challenge to the statutory manner and method of ballot layout and design process is neither infirm, nor violative of any constitutional rights. The legislation is a reasonable and necessary regulation to accommodate the rights of all voters, candidates and parties with the limited geography and mechanics of the machine ballots face for the layout of the ballot.

For all the foregoing reasons, the collective Motions to Dismiss by the Defendant should be granted.

Dated: June 28, 2021               Respectfully submitted,

                                   /s/ John M. Carbone
                                   John M. Carbone
                                   CARBONE AND FAASSE
                                   ATTORNEYS AT LAW
                                   401 GOFFLE ROAD
                                   RIDGEWOOD, NEW JERSEY 07450
                                   Office (201) 445 – 7100
                                   FAX    (201) 445 – 7520
                                   E-mail USSRECOUNT@AOL.COM