**BROWN & CONNERY, LLP**
William M. Tambussi, Esquire
Alyssa I. Lott, Esquire
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
(856) 854-8900
*Attorneys for Intervenor, Camden County Democrat Committee*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINE CONFORTI, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et al.,<br><br>    Defendants. | Case No.: 3:20-cv-08267-ZNQ-TJB |

**BRIEF ON BEHALF OF INTERVENOR, CAMDEN COUNTY DEMOCRAT COMMITTEE, IN SUPPORT OF MOTION TO INTERVENE PURSUANT TO FED. R. CIV. P. 24.**

**BROWN & CONNERY, LLP**
William M. Tambussi, Esquire
Alyssa I. Lott, Esquire
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
(856) 854-8900
*Attorneys for Intervenor, Camden County Democrat Committee*

7HM9081

## INTRODUCTION

This case involves alleged constitutional violations concerning New Jersey's primary election system and bracketing structure. Plaintiffs Christine Conforti, Arati Kreibuch, Mico Lucide, Joseph Marchica, Kevin McMillian, Zinovia Spezakis, and New Jersey Working Families Alliance, Inc., (collectively "Plaintiffs"), instituted this action seeking a declaration that New Jersey's primary election bracketing and ballot placement system is unconstitutional. Specifically, Plaintiffs seek injunctive relief to ensure that the purported primacy effect and positional bias do not advantage bracketed candidates over other candidates running for the same office.

The central dispute concerns the organization, configuration, and design of ballots utilized in New Jersey's primary elections. Plaintiffs are former candidates that participated in the 2020 Primary and 2021 Primary. They contend that New Jersey's bracketing and ballot placement system violates their First and Fourteenth Amendment rights as well as their equal protection rights because the structure fails to treat similarly situated persons—that is, candidates pursuing the same office in the same political party—the same with respect to ballot order and placement. In Plaintiffs' view, bracketed candidates are awarded preferential ballot position while unbracketed candidates, running for the same office, are not granted similar treatment and, thus, will not obtain a favorable ballot position.

Defendants and Intervenor State of New Jersey filed motions to dismiss Plaintiffs' Complaint asserting, in relevant part, that Plaintiffs lacked subject matter jurisdiction and that their claims failed to state a claim upon which relief can be granted. On May 31, 2022, the Court granted in part and denied in part Defendants' motions to dismiss, finding that Plaintiffs had standing to bring certain claims and that those claims stated a claim for relief. As a result of the Court's ruling, the interests of the Camden County Democrat Committee ("CCDC") are now directly implicated

in the present action, specifically, the interests of CCDC in endorsing and supporting Democratic candidates for elections in Camden County, as protected by the First Amendment.  CCDC now seeks to intervene in this case as a matter of right pursuant to Federal Rule of Civil Procedure Rule 24 to protect its legal interests which are not currently represented by any of the existing parties to this litigation and will be directly impacted by any disposition in this matter.  Because the Court's resolution of this case may hinder CCDC's ability to protect its interests, and this Motion is timely made, CCDC respectfully submits that its Motion to Intervene should be granted.

## STATEMENT OF FACTS

On January 25, 2021, Plaintiffs filed the First Amended Complaint against Defendants Christine Giordano Hanlon, in her official capacity as Monmouth County Clerk, Scott M. Colabella, in his official capacity as Ocean County Clerk, Paula Sollami Covello, in her official capacity as Mercer County Clerk, John S. Hogan, in his official capacity as Bergen County Clerk, Edward P. McGettigan, in his official capacity as Atlantic County Clerk, and E. Junior Maldonado, in his official capacity as Hudson County Clerk.  (See ECF No. 33).  Plaintiffs assert various claims and alleged constitutional violations concerning New Jersey's primary election system.

Specifically, Plaintiffs claim that "New Jersey primary election ballots are configured to stack the deck for certain candidates at the expense of others, thereby undermining the integrity of elections and hindering our democracy."  (See ECF No. 33, ¶ 1).  Plaintiffs seek a declaration that New Jersey's primary election bracketing and ballot placement system is unconstitutional, and seek injunctive relief "to ensure that the primacy effect/positional bias and weight of the line do not continue to advantage bracketed candidates over other candidates running for the same office . . . ."  (See ECF No. 33, ¶¶ 12, 13).

Plaintiffs bring claims against Defendants in their official capacities as county clerks, contending that Defendants are "vested with certain statutory duties and obligations including but not limited to the designing, preparation, and printing of all ballots, the issuance of mail-in ballots, and conducting a drawing for ballot position for various elections held in [various counties]. . . ." (See ECF No. 33, ¶¶ 57, 58-62). Additionally, Plaintiffs have specifically identified the Camden County Clerk as a party in interest in this matter, stating:

> The **County Clerks** for the remaining 15 counties in New Jersey are not parties to the Complaint but are being or will be furnished with a copy of the First Amended Complaint because they also enforce and administer ballot design and ballot placement laws which are called into question in this action in their respective counties: Burlington, **Camden**, Cape May, Cumberland, Essex, Gloucester, Hunterdon, Middlesex, Morris, Passaic, Salem, Somerset, Sussex, Union, and Warren.

See ECF No. 33, ¶ 64.

Camden County Democrat Committee is the statutory non-profit regular Democratic Party Organization for Camden County. (See Certification of Michael Porch, at ¶ 8 [hereinafter, "Porch Cert."], Exhibit A). The CCDC promotes and endorses Democrat candidates nominated in New Jersey primary elections, and is "committed to serving the community by supporting and electing candidates at every level that will fight to level the playing field for Camden County's working families." (See Porch Cert. at ¶ 9).

On May 31, 2022, the Court granted in part and denied in part motions to dismiss by all named Defendants and Intervenor State of New Jersey. In doing so, the Court found, among other things, that Plaintiffs have standing to bring their claims and that such claims state a claim upon which relief can be granted. The remaining claims in this action are currently pending before the Court. CCDC now moves to intervene to safeguard its rights afforded by the First Amendment.

# LEGAL ARGUMENT

## I. THE STANDARD FOR INTERVENTION

Federal Rule of Civil Procedure Rule 24(a) governs intervention as of right and provides, in relevant part:

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Rule 24 also provides for permissive intervention, which is available upon timely application when a non-party "has a claim or defense that shares with the main action a common question of law or fact." Fed.R.Civ.P. 24(b)(1)(B). "Whether to grant permissive intervention under Rule 24(b), as the doctrine's name suggests, is within the discretion of the district court." Brody v. Spang, 957 F.2d 1108, 1124 (3d Cir. 1992). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed.R.Civ.P. 24(b)(3).

## II. CCDC SHOULD BE PERMITTED TO INTERVENE AS A MATTER OF RIGHT PURSUANT TO FED.R.CIV.P. 24(a)(2).

Intervenor CCDC respectfully submits that the interests at stake require its intervention in this matter as of right. The Third Circuit has held that a non-party seeking intervention as of right under Rule 24(a)(2) must establish (1) a timely application for leave to intervene; (2) a sufficient interest in the underlying litigation; (3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and (4) that the existing parties to the action do not adequately represent the prospective intervenor's interests. Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 220 (3d Cir. 2005); see also Kleissler v. U.S. Forest Serv., 157 F.3d 964, 969 (3d Cir. 1998). "Each of these requirements must be met to intervene as of right." Id. (citing Mountain Top Condo.

4

Ass'n. v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 366 (3d Cir. 1995)). Here, CCDC satisfies all of these requirements in this case.

**First**, CCDC's application to intervene as of right is timely. "The timeliness of a motion to intervene is 'determined from all the circumstances' and, in the first instance, 'by the [trial] court in the exercise of its sound discretion.'" In re Fine Paper Antitrust Litig., 695 F.2d 494, 500 (3d Cir. 1982) (citing NAACP v. New York, 413 U.S. 345, 366 (1973)). In determining whether the motion to intervene is timely, courts may consider "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." Mountain Top, 72 F.3d at 369; see also In re Fine Paper Antitrust Litig., 695 F.2d at 500.

In this matter, the Court has recently determined the threshold issues concerning whether Plaintiffs have subject matter jurisdiction—namely, whether Plaintiffs have Article III standing to bring their claims, whether their claims related to the 2020 Primary are moot, and further, whether their claims related to the 2021 Primary and future primaries are unripe. (See ECF No. 111). In addition, the Court also addressed whether Plaintiffs' Complaint should be dismissed for failure to join certain parties, for failure to state a claim, or whether the Eleventh Amendment provides immunity for county clerks. (See ECF No. 111). In finding that Plaintiffs have subject matter jurisdiction to bring their claims, and that such claims state a claim upon which relief can be granted, this matter now implicates—for the first time—the rights of CCDC, including constitutional rights specifically enumerated in the First Amendment. Moreover, Defendants have not yet filed Answers to Plaintiffs' First Amended Complaint. Thus, permitting CCDC to intervene, at this juncture, will neither unduly delay the adjudication of this litigation nor prejudice the rights of the existing parties.

While CCDC acknowledges that two years have passed since the Complaint was initially

filed, and approximately six months have elapsed since the filing of the operative Complaint, "[t]he mere passage of time, however, does not render an application untimely." Mountain Top, 72 F.3d at 369.  Further, "to the extent the length of time an applicant waits before applying for intervention is a factor in determining timeliness, it should be measured from the point at which the applicant knew, or should have known, of the risk to its rights." U.S. v. Alcan Aluminum, Inc., 25 F.3d 1174, 1183 (3d Cir. 1994).  Here, the threat to CCDC's rights only became readily apparent on May 31, 2022, when this Court granted in part and denied in part all motions to dismiss and found, among other things, that Plaintiffs have standing to bring their claims.  As such, to the extent that the Court is inclined to consider the passage of time in its determination of the instant motion to intervene, CCDC respectfully submits that such passage of time should only be measured from the date of the Court's Order granting in part and denying in part Defendants' Motions to Dismiss on May 31, 2022.

**Second**, CCDC has a sufficient interest in the underlying litigation.  "While the precise nature of the interest required to intervene as of right has eluded precise and authoritative definition some general guidelines have emerged."  Mountain Top, 72 F.3d at 366 (internal citations omitted).  The United States Supreme Court has recognized that "an intervenor's interest must be one that is 'significantly protectable.'" Id.  (citing Donaldson v. U.S., 400 U.S. 517, 531 (1971)).  In defining "significantly protectable" interest within the meaning of Rule 24(a)(2), the Third Circuit has held that "'the interest must be a legal interest as distinguished from interests of a general and indefinite character.'" Mountain Top, 72 F.3d at 366 (citing Harris v. Pernsley, 820 F.2d 592, 601 (3d Cir. 1987)).  In other words, "[t]he applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene." Id.

Here, CCDC has an identifiable, significantly protectable legal interest in its freedom to

associate with Democratic candidates for office, as afforded by the First Amendment. In Kusper v. Pontikes, the United States Supreme Court acknowledged that "[t]here can no longer be any doubt that freedom to associate with others for the common advancement of political beliefs and ideas is a form of orderly group activity protected by the First and Fourteenth Amendments." 414 U.S. 51, 56-57 (1973). Thus, "[t]he right to associate with the political party of one's choice is an integral part of this basic constitutional freedom." Id. at 57. Here, any disposition by the Court regarding the constitutionality of New Jersey's primary election system will impact, and potentially impair, CCDC's First Amendment rights—namely, its freedom to associate with Democratic candidates for office.

Furthermore, a declaration that New Jersey's primary election bracketing and ballot placement system is unconstitutional would abrogate Eu v. S.F. Cty. Democratic Cent. Comm., 489 U.S. 214 (1989). In Eu, the Supreme Court reviewed the California Elections Code which prohibited, among other things, "official governing bodies of political parties from endorsing candidates in party primaries." 489 U.S. 214, 216 (1989). The California Elections Code specifically provided that official governing bodies "shall not endorse, support, or oppose, any candidate for nomination by that party for partisan office in the direct primary election." Id. at 217 (citing Cal.Elec.Code Ann. § 11702 (West 1977)). In evaluating the constitutionality of the California Elections Code, the Court stated:

> Barring political parties from endorsing and opposing candidates not only burdens their freedom of speech but also infringes upon their freedom of association. It is well settled that partisan political organizations enjoy freedom of association protected by the First and Fourteenth Amendments. Freedom of association means not only that an individual voter has the right to associate with the political party of her choice, but also that a political party has a right to identify the people who constitute the association, and to select a standard bearer who best represents the party's ideologies and preferences.

7

Id. at 224 (internal citations omitted).

The Court further recognized that "[d]epriving a political party of the power to endorse suffocates this right." Id.  The endorsement ban, according to the Court, "prevents parties from promoting candidates 'at the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community.'" Id. (citing Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 216 (1986).  Accordingly, the Court found that California's ban on endorsements by the political party "is clearly a restraint on the right of association." Eu, 489 U.S. at 225 (citing Citizens Against Rent Control/Coalition for Fair Housing v. Berkeley, 454 U.S. 290, 296 (1981)).  Therefore, the Court held that because the ban burdened the rights to free speech and free association, it can only survive constitutional scrutiny if it serves a compelling governmental interest.  Eu, 489 U.S. at 225.

Here, CCDC has a readily identifiable, significantly protectable legal interest in its First and Fourteenth Amendment rights of free association.  If the Court were to find that New Jersey's primary election bracketing and ballot placement system is unconstitutional, this would effectively abrogate Eu v. S.F. Cty. Democratic Cent. Comm., 489 U.S. 214 (1989), and CCDC's right to "identify the people who constitute the association and to select a standard bearer who best represents the party's ideologies and preferences." Eu, 489 U.S. at 224.  A finding in favor of Plaintiffs, in turn, would conflict with the well-established precedent set forth in Eu, and eviscerate CCDC's right to endorse, and freedom to associate, with Democratic candidates for office that best represent CCDC's ideologies and preferences.

Furthermore, contrary to Plaintiffs' assertions, the legislative framework governing New Jersey's primary elections does not infringe upon any constitutional right asserted by Plaintiffs. Indeed, as recognized by the Court, New Jersey courts have reviewed similar challenges to New

Jersey's bracketing system and have upheld the constitutionality of the bracketing structure.

For example, in Quaremba v. Allan, plaintiffs—unsuccessful candidates at a primary election—challenged New Jersey's bracketing structure. Plaintiffs advanced three arguments. First, they challenged as unconstitutional N.J.S.A. 19:49-2, which regulates the positioning on the lines of a voting machine of the names of candidates for nomination at a primary election. Quaremba, 67 N.J. 1, 7 (1975). Second, they alleged that even though N.J.S.A. 19:23-24 expressly excepts from its provisions counties where section N.J.S.A. 19:49-1 of the Revised Statute applies, the county clerk of such county should and must comply with the provisions of N.J.S.A. 19:23-24 and list all candidates for nomination to any given office, in the order determined by lot, in a single column or row. Id. Lastly, they contended that although the Bergen County Clerk alleges to follow the provisions of N.J.S.A. 19:49-2, he has abused his discretion and discriminated against candidates, such as plaintiffs, who are not affiliated with the Bergen County Republican organization. Id. Plaintiffs argued that the bracketing statute "creates preferred classes of primary candidates . . . and imposes an unequal burden on unaffiliated candidates and thus denies them their constitutional rights." Id. at 10.

The New Jersey Supreme Court found that there was no merit to any of plaintiffs' constitutional arguments. Id. First, the New Jersey Supreme Court acknowledged that "there can be no doubt about the authority of the Legislature to adopt reasonable regulations for the conduct of primary and general elections [and] [s]uch regulations, of course, may control the manner of preparation of the ballot, so long as they do not prevent a qualified elector from exercising his constitutional right to vote or any person he chooses." Id. at 11. In the Court's view, "[n]othing in the challenged section inhibits any voter from voting for any person he chooses or limits the right of any candidate to run for office." Id. Ultimately, the Court found that it is clear that the

9

statute was not invidiously discriminatory. Id.

Additionally, in Schundler v. Donovan, the Appellate Division reviewed a summary disposition before the trial court approving the court clerks redrawing for ballot positions. 377 N.J. Super. 339, 341 (App. Div. 2005). Plaintiffs were candidates seeking the Republican Party's nomination in the June election for their respective offices. Id. at 343. They alleged that the clerks "have made erroneous decisions respecting the positioning of various candidates on the ballot" and sought an order compelling the clerks to redraw for the ballot positions. Id.

In interpreting the constitutionality of the statute in light of the Supreme Court's holding in Eu, the Appellate Division found that "there is nothing inherent in the first sentence of the statute that conflicts with the overriding principle of Eu; and there can be no rights violation where a county clerk makes a fair effort to follow the dictate that all candidates for the highest office, *i.e.*, U.S. Senator or Governor, be treated equally to the extent physical constraints allow, as long as, at the same time, a good faith effort is made to effect the expressive rights of all candidates." Id. at 348. In sum, based on circumstances of the case, the Appellate Division mandated "an approach which requires all the candidates to begin from the same position, subject to the customary drawing as to relative placement, without so extraneous a consideration as bracketing or non-bracketing as the beginning point, notwithstanding that the right to bracketing is, as a general matter, fundamental as an expressive exercise." Id.

Based on the foregoing, it is clear that New Jersey courts have upheld the constitutionality of the bracketing system, and the legislative framework governing primary elections does not impede upon any constitutional rights asserted by Plaintiffs.

**Third**, CCDC's interest will be significantly impaired or affected by the disposition of the underlying action. "In order to meet the requirements of Rule 24(a)(2), proposed intervenors must

also demonstrate that their interest might become affected or impaired, as a practical matter, by the disposition of the action in their absence." Mountain Top, 72 F.3d at 368 (citing Alcan Aluminum, 25 F.3d at 1185 n.15)). In this action, Plaintiffs bring claims specifically challenging the organization, configuration, and design of ballots used in New Jersey's primary elections. According to Plaintiffs, bracketed candidates—those who associate with other candidates—receive preferences over unbracketed candidates. Thus, Plaintiffs, in turn, seek a declaration that New Jersey's primary election bracketing and ballot placement system is unconstitutional, and further request injunctive relief to ensure that the primacy effect/positional bias do not continue to advantage bracketed candidates over other candidates running for the same office. Accordingly, the disposition of this matter will directly impact, and potentially impair, CCDC's freedom to associate with other Democratic candidates that align with CCDC's ideologies and preferences, as afforded by the First Amendment and reaffirmed in Eu.

**Fourth**, none of the currently existing parties adequately represent CCDC's interests. "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." Mountain Top, 72 F.3d at 323 (citing Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972)). Indeed, it has been noted that,

> The most important factor in determining adequacy of representation is how the interest of the absentee compares with the interest of the present parties. If the interest of the absentee is not represented at all, or if all existing parties are adverse to him, then he is not adequately represented. If his interest is identical to that of one of the present parties, or if there is a party charged by law with representing his interest, then a compelling showing should be required to demonstrate why this representation is not adequate.

Mountain Top, 72 F.3d at 323 (citing 7C Wright, Miller & Kane, Federal Practice & Procedure § 1909, at 318-19 (1986)); see generally Alcan Aluminum, 25 F.3d at 1185-86.

11

Here, none of the current parties represent the interests of CCDC. Plaintiffs are seeking a declaration that New Jersey's primary election bracketing structure and ballot placement system is unconstitutional in order to increase their chances of succeeding in their respective positions. The Attorney General is seeking a finding that the constitutionality the challenged statute be upheld. County Clerk Defendants have an interest in the administration and application of New Jersey's election laws, and any adverse ruling may impair County Clerk Defendants' practices and procedures in facilitating primary elections. None of the parties take the position that a finding in favor of Plaintiffs would suffocate a political organization's freedom to associate and endorse political candidates that align with their ideologies and preferences, as provided by the First Amendment.

Based on the foregoing, Intervenor CCDC respectfully submits that it should be permitted to intervene as a matter of right in this litigation.

## III. ALTERNATIVELY, CCDC SHOULD BE PERMITTED TO INTERVENE PERMISSIVELY PURUSANT TO FED.R.CIV.P. 24(b)(1)(B).

To the extent that the Court is inclined to deny CCDC's motion to intervene as of right, CCDC respectfully requests that it be permitted to intervene in this matter permissively. Under Rule 24, permissive intervention is available upon timely application when a non-party "has a claim or defense that shares with the main action a common question of law or fact." Fed.R.Civ.P. 24(b)(1)(B). "Whether to grant permissive intervention under Rule 24(b) . . . is within the discretion of the district court." Brody, 957 F.2d at 1124. "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed.R.Civ.P. 24(b)(3).

Here, CCDC has defenses that share with the main action a common question of law or fact regarding the constitutionality of New Jersey's primary election system and the administration

12

and application of New Jersey's election laws in facilitating primary elections. These issues of fact and law are identical to those currently before this Court. Permitting CCDC to intervene in this matter and protect its interest in ensuring that its freedom to associate with political candidates is safeguarded will advance the interests of efficiency and judicial economy. Further, intervention by CCDC will not unduly delay or prejudice the adjudication of the original parties' rights, as Defendants have not yet filed an Answer to Plaintiffs' First Amended Complaint. Therefore, it is appropriate for the Court to exercise its broad discretion to permit CCDC to intervene in this matter.

## CONCLUSION

For these reasons, Intervenor CCDC respectfully requests that its instant Motion to Intervene be granted.

Respectfully submitted,

**BROWN & CONNERY, LLP**
Attorneys for Intervenor, Camden County Democrat Committee

Dated: July 21, 2022

*/s/ William M. Tambussi*

William M. Tambussi
Alyssa I. Lott

# EXHIBIT A

**BROWN & CONNERY, LLP**
William M. Tambussi, Esquire
Alyssa I. Lott, Esquire
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
(856) 854-8900
*Attorneys for Intervenor, Camden County Democrat Committee*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINE CONFORTI, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et al.,<br><br>Defendants. | Case No.: 3:20-cv-08267-ZNQ-TJB<br><br>**CERTIFICATION OF MICHAEL PORCH IN SUPPORT OF MOTION TO INTERVENE PURSUANT TO FED.R.CIV.P. 24** |

I, Michael Porch, of full age, hereby certify as follows:

1. I am the Executive Director of Camden County Democrat Committee ("CCDC"). I have personal knowledge of the facts contained herein.

2. On January 25, 2021, Plaintiffs filed the First Amended Complaint against Defendants Christine Giordano Hanlon, in her official capacity as Monmouth County Clerk, Scott M. Colabella, in his official capacity as Ocean County Clerk, Paula Sollami Covello, in her official capacity as Mercer County Clerk, John S. Hogan, in his official capacity as Bergen County Clerk, Edward P. McGettigan, in his official capacity as Atlantic County Clerk, and E. Junior Maldonado, in his official capacity as Hudson County Clerk. (See ECF No. 33).

3. Plaintiffs assert various claims and alleged constitutional violations concerning New Jersey's primary election system.

7HM2124

4. Specifically, Plaintiffs claim that "New Jersey primary election ballots are configured to stack the deck for certain candidates at the expense of others, thereby undermining the integrity of elections and hindering our democracy." (See ECF No. 33, ¶ 1).

5. Plaintiffs seek a declaration that New Jersey's primary election bracketing and ballot placement system is unconstitutional, and seek injunctive relief "to ensure that the primacy effect/positional bias and the weight of the line do not continue to advantage bracketed candidates over other candidates running for the same office . . . ." (See ECF No. 33, ¶¶ 12, 13).

6. Plaintiffs bring claims against Defendants in their official capacities as county clerks, contending that Defendants are "vested with certain statutory duties and obligations including but not limited to the designing, preparation, and printing of all ballots, the issuance of mail-in ballots, and conducting a drawing for ballot position for various elections held in Monmouth County." (See ECF No. 33, ¶¶ 57, 58-62).

7. Additionally, Plaintiffs have specifically identified the Camden County Clerk as a party in interest in this matter, stating:

> The **County Clerks** for the remaining 15 counties in New Jersey are not parties to the Complaint but are being or will be furnished with a copy of the First Amended Complaint because they also enforce and administer ballot design and ballot placement laws which are called into question in this action in their respective counties: Burlington, **Camden**, Cape May, Cumberland, Essex, Gloucester, Hunterdon, Middlesex, Morris, Passaic, Salem, Somerset, Sussex, Union, and Warren.

See ECF No. 33, ¶ 64.

8. Camden County Democrat Committee is the statutory non-profit regular Democratic Party Organization for Camden County.

7HM2124

9. The CCDC promotes and endorses Democrat candidates nominated in New Jersey primary elections, and is "committed to serving the community by supporting and electing candidates at every level that will fight to level the playing field for Camden County's working families."

10. No existing party to this litigation adequately represents these interests of the CCDC.

11. I certify that the foregoing statements are true. If any of the above statements are willfully false, I am subject to punishment.

Dated: 7/21/22

                                    Michael Porch
                                    Executive Director of Camden County
                                    Democrat Committee