IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINE CONFORTI, ARATI KREIBICH, MICO LUCIDE, KEVIN MCMILLAN, JOSEPH MARCHICA, ZINOVIA SPEZAKIS, and NEW JERSEY WORKING FAMILIES,<br><br>Plaintiffs,<br><br>v.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, SCOTT M. COLABELLA, in his official capacity as Ocean County Clerk, PAULA SOLLAMI COVELLO, in her official capacity as Mercer County Clerk, JOHN S. HOGAN, in his official capacity as Bergen County Clerk, and EDWARD P. MCGETTIGAN, in his official capacity as Atlantic County Clerk, and E. JUNIOR MADONADO, in his official capacity as Hudson County Clerk,<br><br>Defendants. | Civ. A. No. 3:20-CV-08267-ZNQ-TJB<br><br><br><br>**ORAL ARGUMENT REQUESTED** |

---

### BRIEF IN OPPOSITION TO MOTIONS TO INTERVENE FILED BY CAMDEN COUNTY DEMOCRAT COMMITTEE, REGULAR DEMOCRATIC ORGANIZATION OF UNION COUNTY, INC., MIDDLESEX COUNTY DEMOCRATIC ORGANIZATION, AND BURLINGTON COUNTY CLERK

---

Yael Bromberg, Esq.  (036412011)
Brett M. Pugach, Esq. (032572011)
BROMBERG LAW LLC
43 West 43rd Street, Suite 32
New York, NY 10036-5083
Telephone: (212) 859-5083
Facsimile: (201) 586-0427
ybromberg@bromberglawllc.com
bpugach@bromberglawllc.com

Flavio Komuves, Esq. (018891997)
WEISSMAN & MINTZ
220 Davidson Avenue, Suite 410
Somerset, NJ 08873
Phone: (732) 563-4565
Facsimile: (732) 560-9779
fkomuves@weissmanmintz.com

*Attorneys for Plaintiffs Christine Conforti, Arati Kreibich, Mico Lucide, Kevin McMillan, Joseph Marchica, Zinovia Spezakis, and New Jersey Working Families*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................. 1

PROCEDURAL HISTORY AND STATEMENT OF FACTS ................................ 2

LEGAL ARGUMENT ........................................................................................... 6

POINT I – THE COURT SHOULD DENY THE CCDC, RDO-UC, AND MCDO'S MOTIONS TO INTERVENE ................................................................ 6

    A.  The Motions to Intervene Should be Denied for Failure to Include a Required Pleading ....................................................................................... 6

    B.  The Putative Intervenors are Not Entitled to Intervention as of Right ......... 7

        1.  The Motions to Intervene Fail the Timeliness Inquiry ..................... 7

        2.  The Putative Intervenors Fail to Identify a Sufficient Interest which may be Affected or Impaired by Disposition of the Case ................... 10

            a.  CCDC and MCDO Purported Interests ............................... 11

            b.  RDO-UC Purported Interests ............................................... 13

        3.  The Putative Intervenors Fail to Explain Why their Interests are Not Already Adequately Represented by Existing Parties ............................. 16

    C.  The Court Should Deny the Requests for Permissive Intervention ............ 20

POINT II – IN THE ALTERNATIVE, IF THE CCDC, RDO-UC, AND MCDO'S REQUESTS FOR INTERVENTION WERE GRANTED, THE COURT SHOULD APPOINT A LEAD COUNSEL TO SPEAK AND ACT ON BEHALF OF ALL SUCH INTERVENORS PURSUANT TO ITS POWERS UNDER RULE 16 .......................... 22

POINT III – THE COURT SHOULD DENY THE BURLINGTON COUNTY CLERK'S MOTION TO INTERVENE ................................................................ 24

    A.  The Motion to Dismiss Should be Denied for Failure to Include a Required Pleading ....................................................................................... 24

    B.  The Burlington County Clerk is Not Entitled to Intervention as of Right ................................................................................................................ 25

1.  The Motion to Intervene Fails the Timeliness Inquiry ...................................25

2.  The Burlington County Clerk Fails to Explain Why Her Interests
    are Not Already Adequately Represented by Existing Parties .......................26

C.  The Court Should Deny the Request for Permissive Intervention.............................27

CONCLUSION...............................................................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Burdick v. Takushi*, 504 U.S. 428 (1992) ................................................................12

*Cook v. Gralike*, 531 U.S. 510 (2001) ....................................................................13

*Eu v. S.F. Cty Democratic Cent. Comm.*, 489 U.S. 214 (1989)............................ passim

*In re Fine Paper Antitrust Litig.*, 695 F.2d 494 (3d Cir. 1982) ................................7

*Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
     72 F.3d 361 (3d Cir. 1995)......................................................... passim

*Neonatology Assocs., P.A. v. C.I.R.*, 293 F.3d 128 (3d Cir. 2002) ............................22

*Ohio Council 8 Am. Fed'n of State v. Husted*, 814 F.3d 329 (6th Cir. 2016)..............13

*Quaremba v. Allen*, 67 N.J. 1 (1975) ...........................................................5, 18, 19

*Schundler v. Donovan*, 377 N.J. Super. 339 (App. Div),
     *aff'd o.b.*, 183 N.J. 383 (2005)................................................5, 18, 19

*State of N.J. Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Servs., Inc.*,
     138 F.R.D. 421 (D.N.J. 1991)...................................................23

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997) ....................................13

*United States v. Bayer Corp.*, No. 2:07-cv-0001, ECF No. 47 (D.N.J. Jan. 3, 2007)...................22

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008)................................12

**Rules**

FED. R. APP. P. 29(b)................................................................................22

FED. R. CIV. P. 7(a) ................................................................................6

FED. R. CIV. P. 16(c)(2)(L)......................................................................23

FED. R. CIV. P. 16(c)(2)(P)......................................................................23

FED. R. CIV. P. 24(a) ..........................................................................7, 15

FED. R. CIV. P. 24(b)(1)(B).................................................................20, 27

FED. R. CIV. P. 24(b)(3) ................................................................................................20

FED. R. CIV. P. 24(c) ................................................................................................6, 24

FED. R. CIV. P. 24.1(b) ................................................................................................4

**Statutes**

*N.J.S.A.* 19:23-17 ................................................................................................14

## PRELIMINARY STATEMENT

Two years after Plaintiffs filed the Initial Complaint and a year-and-a-half after Plaintiffs filed the Amended Complaint, four separate parties have filed motions to intervene.  These parties are the Camden County Democrat Committee ("CCDC"), the Regular Democratic Organization of Union County, Inc. ("RDO-UC"), the Middlesex County Democratic Organization ("MCDO"), and the Burlington County Clerk.  None of these entities can meet their burden for entitlement to intervention as of right, nor should the Court grant their requests for permissive intervention.

None of these parties filed a mandatory pleading as required by the intervention rules of the Federal Rules of Civil Procedure.  Under the totality of circumstances, their requests are untimely.  They were filed years and months after (a) other parties sought and were granted intervention in this matter, (b) after seven dispositive motions on the merits were already fully briefed and decided, and (c) they were not even returnable until after six Defendants and one Intervenor, the State of New Jersey (hereinafter, the "State") filed their own answers.  The putative intervenors do not offer valid justifications for their unreasonable delay in trying to enter this high-profile matter, and some even admit to having been kept apprised of every step of the litigation while choosing to do nothing.

The CCDC, RDO-UC, and MCDO fail to articulate a sufficient interest in this litigation that will be threatened by a disposition of this case, and instead assert interests that are not at stake in this case and/or which will not be impacted by a decision favorable to Plaintiffs.  Additionally, they fail to explain, if Plaintiffs prevail, what would change so as to impact their specific interests, or how a favorable decision to Plaintiffs would cause them to be treated any differently than any other parties and corporations that are similarly situated to them.  Moreover, their articulation of their purported interests in this case relies on the exact same arguments and exact same legal

1

authorities that were already cited to by all the other Defendants and the State in their respective motions to dismiss.  As such, the CCDC, RDO-UC, and MCDO fail to set forth any interests that are not already adequately represented by the existing parties.  Nor do they assert any interests that differ from one another such that inclusion of all three entities would not be both repetitive of the arguments set forth by the existing parties and duplicative of one another.

Similarly, the Burlington County Clerk fails to articulate any cognizable interest in this case whatsoever.  Even if she had done so, she does not name or explain any interest that would not be adequately represented by the existing Defendants, which include six other county clerks.

Inclusion of the four putative intervenors into this case would result in unnecessary and repetitive briefings, motions, and other superfluous participation in a manner that will unduly delay and prejudice the Plaintiffs while causing unwarranted inefficiency and waste of judicial resources. These parties do not advance new arguments or assert different interests, and their untimely requests for intervention signals to others that the door remains open.  Granting the motions to intervene would further open the floodgates to untimely and duplicative additional motions to intervene by various parties, corporations, county clerks, and other others, at subsequent and later stages of this case, further compounding the delay, prejudice, inefficiency, waste of resources, and needless expense that will already result if their intervention requests are granted.

The putative intervenors have not met their burden entitling them to intervention as of right, nor should the Court grant their requests for permissive intervention.  As such, their motions to intervene should be denied.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

On July 6, 2020, plaintiff Christine Conforti ("Conforti") filed an Initial Complaint against Christine Giordano Hanlon, Scott M. Colabella, and Paula Sollami Covello, in their respective

official capacities as the Monmouth, Ocean, and Mercer County Clerks.  ECF 1.[1]  The Initial

Complaint challenged the constitutionality of various laws and practices pertaining to ballot

position and placement on New Jersey's primary election ballots ("New Jersey's bracketing and

ballot placement laws").  *Id.*  On October 1, 2020, the Bergen County Clerk moved for leave to

intervene, ECF 7, which was granted by the Court, ECF 22.[2]

Pursuant to a Consent Order signed January 5, 2021, ECF 31, a First Amended Complaint

("Amended Complaint") was filed on January 25, 2021.[3]  The Amended Complaint, ECF 33, *inter*

*alia*, added plaintiffs Arati Kreibich ("Kreibich"), Mico Lucide ("Lucide"), Joseph Marchica

("Marchica"), Kevin McMillan ("McMillan"), Zina Spezakis ("Spezakis"), and New Jersey

---

[1] The filing of the Initial Complaint received press attention from various political and other news outlets.  *See, e.g.*, Nikita Biryukov, *Progressives File Suit Seeking to Eliminate Party Line*, New Jersey Globe (Jul. 6, 2020), *available at:* https://newjerseyglobe.com/congress/progressives-file-suit-seeking-to-eliminate-party-line/ (last accessed Aug. 23, 2022); Mark Moore, *New Jersey Primary Candidate Sues to Remove Party Lines on Ballots*, New York Post (Jul. 7, 2020), *available at:* https://nypost.com/2020/07/07/nj-primary-candidate-sues-to-remove-party-lines-on-ballots/ (last accessed Aug. 23, 2022).

[2] While the Bergen County Clerk was granted intervenor status with respect to the Initial Complaint, Plaintiffs subsequently added the Bergen County as a party defendant in their Amended Complaint.  ECF 33.

[3] The filing of the Amended Complaint received significant media coverage in various political and other news outlets.  *See, e.g.*, *Progressives File Suit to Eliminate the Party 'Line' on Ballots*, Insider NJ (Jan. 25, 2021), *available at:* https://www.insidernj.com/progressives-file-suit-eliminate-party-line-ballots/ (last accessed Aug. 23, 2022); Nancy Solomon, *Lawsuit Challenges Party Machine Control of NJ Ballots*, WNYC News (Jan. 25, 2021), *available at:* https://www.wnyc.org/story/lawsuit-challenges-party-machine-control-nj-ballots/ (last accessed Aug. 23, 2022); Nikita Biryukov, *Progressive Groups Expand Suit Against Party Lines*, New Jersey Globe (Jan. 25, 2021), *available at:* https://newjerseyglobe.com/fr/progressive-groups-expand-suit-against-party-lines/ (last accessed Aug. 23, 2022); Fred Snowflack, *Grassroots Activists on the Left and Right Embrace Beyond the Line*, Insider NJ (Jan. 26, 2021), *available at:* https://www.insidernj.com/grassroots-activists-left-right-embrace-line/?utm_campaign=shareaholic&utm_medium=twitter&utm_source=socialnetwork (last accessed Aug. 23, 2022); Colleen O'Dea, *Lawsuit Challenges 'Party Line' Ballots that 'Stack the Deck' in Some NJ Counties*, NJ Spotlight News (Jan. 27, 2021), *available at:* https://www.njspotlightnews.org/2021/01/new-nj-lawsuit-over-party-line-ballots-alleges-preferential-treatment-party-endorsed-candidates/ (last accessed Aug 23, 2022).

Working Families Alliance ("NJWF") (together with Conforti, "Plaintiffs"). *Id.* The Amended Complaint also named additional defendants, John S. Hogan, Edward P. McGettigan, and E. Junior Maldonado in their official capacities as the Bergen, Atlantic, and Hudson County Clerks (together with the Monmouth, Ocean, and Mercer County Clerks, "Defendants"). *Id.* While the Amended Complaint added parties, the federal constitutional challenges in the Initial Complaint remained largely identical.

After a Rule 24.1(b) Letter and an ensuing Order to notify the Attorney General's Office of the case, ECF 36, 39, on March 29, 2021, the Attorney General's Office filed a Motion to Intervene. ECF 52. The same day, the Court granted the Attorney General's motion to intervene on behalf of the State. ECF 54. Plaintiffs also twice (after the Initial and Amended Complaints) notified all non-Defendant county clerks in the state of the existence of this lawsuit to enable them to take any action they deemed appropriate. ECF 1, ¶ 21; ECF 33, ¶ 64. On March 30, 2021, James Hogan, in his official capacity as the Gloucester County Clerk, filed a Motion to Intervene which was granted the same day. ECF 61, 62.[4]

On March 29, 2021 and/or March 30, 2021, the State and Defendants each filed separate Motions to Dismiss the Amended Complaint, ECF 53, 55, 57-60, 63. Accompanying their respective motions, the State and the six Defendants filed briefs in support of same, totaling approximately 180 pages, wherein they each asserted, *inter alia*, various arguments, state interests,

---

[4] While the Court permitted the Gloucester County Clerk to intervene, the Gloucester County Clerk did not avail himself of this opportunity and has seemingly relinquished his intervenor status as he (1) failed to file a motion to dismiss or other responsive pleading following his permission to intervene; (2) failed to apprise the Court of whether he wished to proceed as an Intervenor, as requested by the Court on a telephone status conference call held over a year ago on July 15, 2021; (3) failed to file an Answer to the Amended Complaint following the Court's issuance of an Order and Opinion on the various motions to dismiss; and (4) failed to otherwise participate in this matter in any substantive manner. Plaintiffs expect to address this in connection with the Rule 16 conference.

and rights of parties and candidates pertaining to their associational rights as it relates to the ballot and their ability to endorse candidates.  In support, each amply cited the same constellation of purportedly seminal cases:  *Eu v. S.F. Cty Democratic Cent. Comm.*, 489 U.S. 214 (1989); *Quaremba v. Allen*, 67 N.J. 1 (1975); and *Schundler v. Donovan*, 377 N.J. Super. 339 (App. Div), *aff'd o.b.*, 183 N.J. 383 (2005).  *See generally* ECF 53-1, 55-1, 58-1, 59-2, 60-1, 63.[5]  In opposition, Plaintiffs filed a 108-page omnibus brief on May 24, 2021.  ECF 69.  On June 28, 2021, the State and the six Defendants filed separate reply briefs, totaling approximately 70 pages.  ECF 87, 89, 91-94, 96.  On June 1, 2021, the League of Women Voters of New Jersey and Salvation and Social Justice filed a motion for leave to file an amicus brief in opposition to the motions to dismiss and an accompanying brief, ECF 70-1, 72, which was granted by the Court on October 22, 2021, ECF 108.  Following briefing of the seven separate motions to dismiss, on May 31, 2022, the Court issued an Order, ECF 112, and Opinion, ECF 111 (together referred to hereinafter as the "Order and Opinion"), granting in part, and denying in part, the Defendants' and the State's motions to dismiss.

Subsequently, with Answers to the Amended Complaint due on June 14, 2022, the State and the six Defendants applied for Clerk's Orders to extend the time within which to answer.  ECF 114-117, 119-121. On consent, that deadline was later extended to July 28, 2022.  ECF 124, 125. That day, the State and the six Defendants filed their separate Answers to the Amended Complaint. ECF 129-135.

On July 21, 2022, the CCDC filed a motion to intervene.  ECF 126.  On July 25, 2022, the RDO-UC filed a motion to intervene.  ECF 128.  On August 1, 2022, the Court signed a Consent

---

[5] The Hudson County Clerk joined in the motions to dismiss filed by the other co-defendants.  *See* Hudson County Br., ECF 57-3, at p. 4.

Order granting Plaintiffs' request to adjourn the CCDC's motion to intervene to coincide with the same motion cycle as the RDO-UC's motion to intervene.  ECF 137.  On August 2, 2022, the MCDO filed a motion to intervene.  ECF 138.  On August 12, 2022, the Office of the Burlington County Clerk filed a motion to intervene.  ECF 140.  Plaintiffs now file this opposition to the motions to intervene filed by the CCDC (ECF 126), the RDO-UC (ECF 128), the MCDO (ECF 138), and the Burlington County Clerk (ECF 140).

## LEGAL ARGUMENT

### POINT I

### THE COURT SHOULD DENY THE CCDC, RDO-UC, AND MCDO'S MOTIONS TO INTERVENE.

#### A.  The Motions to Intervene Should be Denied for Failure to Include a Required Pleading.

The CCDC, RDO-UC, and MCDO's motions to intervene must be dismissed because they failed to accompany their motions with "a pleading that sets out the claim or defense for which intervention is sought," as is required by FED. R. CIV. P. 24(c).  Relatedly, Rule 7(a) describes an exhaustive list of pleadings that are allowed, which include various forms of complaints and answers.  No pleadings accompanied any of these putative intervenors' motions to intervene.  In particular, no answer was filed despite the insistence of the CCDC and the RDO-UC that their motions were timely because they were filed prior to the filing of an Answer by any party, and even though the filing was about one week prior to the extended due date for such Answers, two years after the filing of the Initial Complaint, and 1.5 years after the filing of the Amended Complaint.  Having failed to submit a pleading along with their motions to intervene, the CCDC, RDO-UC, and MCDO have not met the requirements for intervention under Rule 24(c).  On that basis alone, their motions to intervene must be denied.

### B. **The Putative Intervenors are Not Entitled to Intervention as of Right.**

The CCDC, RDO-UC, and MCDO fail to meet the standard for intervention as of right. Rule 24(a), in pertinent part, allows for intervention as of right "[o]n timely motion" brought by a party that "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Thus, a non-party cannot intervene as of right unless they satisfy each of the following requirements: (1) timely application for intervention; (2) sufficient interest in the case; (3) where "the interest may be affected or impaired, as a practical matter by the disposition of the action"; and (4) an existing party in the case is not adequately representing that interest. *See Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 365-66 (3d Cir. 1995) (citing *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987)).

### 1. **The Motions to Intervene Fail the Timeliness Inquiry.**

Courts consider the timeliness of a motion to intervene based on the totality of the circumstances. *See In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982) (citing *NAACP v. New York*, 413 U.S. 345, 366 (1973)). Among other considerations, courts can consider (1) the stage of the litigation, (2) any prejudice to the parties from delay, and (3) the reason for delay. *See Mt. Top*, 72 F.3d at 369 (citing *Fine Paper*, 695 F.2d at 500). In considering the stage of litigation and the prejudice to the parties from delay, the Third Circuit has distinguished between situations where no proceedings of substance on the merits had yet occurred, as compared to situations where "depositions [were] taken, *dispositive motions [were] filed*, or decrees [were] entered." *See id.* at 369-70 (internal citations omitted) (emphasis added).

7

Here, Plaintiffs filed their Initial Complaint in July 2020, two years prior to the filing of the instant motions to intervene, and filed their Amended Complaint in January 2021, eighteen months prior to the instant motions to intervene.  Unlike in situations where no proceedings of substance on the merits had occurred, the parties have engaged in lengthy and comprehensive briefings in connection with seven separate dispositive motions to dismiss, which addressed not only procedural issues related to standing, mootness, ripeness, justiciability, and others, but also numerous substantive issues on the merits, including, among others, with respect to the right to vote, equal protection, freedom of association, and the Elections Clause. This briefing culminated in an Order and Opinion that largely allowed Plaintiffs' claims to go forward.

While the CCDC and RDO-UC attempt to tie their purported timeliness to the fact that Answers had not yet been filed by the Defendants, *see* CCDC Brief, at p. 5 ("Defendants have not yet filed Answers to Plaintiffs' First Amended Complaint."); RDO-UC Brief, at p. 4 (claiming their application was timely because it was "filed post-disposition of the motions to dismiss"), they provide no support for why that stage of the litigation should be used as the benchmark, especially in light of the fact that a proceeding on the merits, and in particular, seven dispositive motions, had already been filed, fully briefed, and decided.  Additionally, while the CCDC and RDO-UC *filed* motions to intervene right before the Defendants' extended deadline to file an Answer,[6] they were not *returnable* until after the Answers were filed on July 28, 2022.  The MCDO's motion was filed even later, after the Answers were filed.  But ultimately, the putative intervenors' efforts to define timeliness by reference to when the Defendants filed answers – after litigating a motion

---

[6] The original deadline to file an Answer was June 14, 2022, which represented 14 days from the issuance of the Court's Order and Opinion on the seven motions to dismiss.  However, after the parties had already received respective Clerk's extensions of the time within which to answer, Plaintiffs consented to Defendants' joint request for an extension of time to file an Answer.  Thus, the new deadline for filing an Answer was extended until July 28, 2022.

to dismiss – completely misses the point.  Undeniably, Intervenors waited 2 years from the Initial Complaint and 1.5 years from the Amended Complaint to act, and they have not identified a sufficient reason for their delay.[7]

Equally misplaced is Intervenors' effort to define timeliness by reference to when the Court decided the motions to dismiss.  Intervenors say that they had no obligation to act until the Court decided the motions to dismiss because their rights were allegedly not implicated until such time.  *See* CCDC Brief, at pp. 5-6; RDO-UC Brief, at p. 4 (claiming without explanation that its application was timely simply because it was "filed post-disposition of the motions to dismiss"); MCDO Brief, at p. 5 (claiming that "the meaningful risk to the rights of the MCDO ripened on May 31, 2022, when this Court denied Defendants' respective Motions to Dismiss.").

This is simply not so.  A deafening silence exists in the motions to intervene filed by the CCDC, RDO-UC, and MCDO as to when they knew or should have known of the filing of this lawsuit and that their rights were at stake.  These rights were at stake when Plaintiffs filed the Initial Complaint and again when Plaintiffs filed the Amended Complaint.  The putative intervenors learned of it through the extensive media coverage of these filings.  Intervenors cannot, with a straight face, ignore the fact that if they do have a sufficient interest in this litigation – a contention addressed separately below – then that interest as to their rights would have been implicated when they learned of the filing of the Initial and Amended Complaints.  Their asserted interests in this case were in no more jeopardy when the Court issued its Order and Opinion on the motions to dismiss than they were the date these Initial and Amended Complaints were filed.  Both

---

[7] The CCDC's assertion that only "approximately sixth months have elapsed since the filing of the operative Complaint," *see* CCDC Brief, at pp. 5-6, is simply inaccurate.  The Amended Complaint was filed on January 25, 2021, approximately *one year and* six months prior to the instant motions to intervene were filed.

the Initial and Amended Complaints make clear that Plaintiffs are challenging the constitutionality of New Jersey's bracketing and ballot placement system.  In the abstract, the filing of the litigation is not always coterminous with when a putative intervenor knows that it would affect its rights. Here, however, the CCDC, RDO-UC, and MCDO all say they have an interest related to rights under New Jersey's bracketing and ballot placement system.  The Initial Complaint and Amended Complaint, in no uncertain terms, challenged the constitutionality of that system.  Therefore, the CCDC, RDO-UC, and MCDO cannot claim that they did not know or should not have known of the risks to their rights and interests until after the motions to dismiss were decided.  Based on their submissions, it appears that an underlying reason behind their delay was simply that they strategically waited until the motions to dismiss were decided, wishing for a different outcome. That their hopes did not come to fruition is not a sufficient reason to allow for intervention after such a substantial delay.

Even the CCDC is forced to acknowledge, *see* CCDC Brief, at p. 6, that in considering the reason for delay and determining the reasonableness of its length of time, courts must measure the start of the delay "'from the point at which the applicant knew, or should have known, of the risk to its rights.'"  *See Mt. Top*, 72 F.3d at 370 (quoting *Alcan Aluminum*, 25 F.3d 1174, 1183 (3d Cir. 1994)).  Indeed, courts will allow intervention where applicants "'promptly' [seek] intervention upon learning that their interests were in jeopardy."  *Id.*  Under the specific circumstances here, knowledge of a Complaint that implicates their interests suffices to start the Intervenors' clock to file their motions. The clock is not stopped while substantive motion practice is underway.

### 2. The Putative Intervenors Fail to Identify a Sufficient Interest which may be Affected or Impaired by Disposition of the Case.

To have a sufficient interest for purposes of intervention, a party's "interest must be one that is 'significantly protectable.'"  *See Mt. Top*, 72 F.3d at 366 (citing *Donaldson v. United States*,

400 U.S. 517, 531 (1971)).  Courts have distinguished between a legal interest as compared to one

that is more general and indefinite.  *See id.* (citing *Harris*, 820 F.2d at 601).  Thus, the putative

intervenor "must demonstrate that there is a tangible threat to a legally cognizable interest to have

the right to intervene."  *Id.*

### a.   CCDC and MCDO Purported Interests

The CCDC and the MCDO are the official county political parties authorized by statute to

represent the Democratic county committees of their respective counties.  They claim to have a

protectable legal interest in their freedom to associate with Democratic candidates that are running

for various offices in, and that otherwise touch, their respective counties.  *See* CCDC Brief, at pp.

6-7; MCDO Brief, at pp. 5-7.  They cite to Supreme Court precedent that restricts the government

from prohibiting political parties from endorsing candidates prior to a primary election, as that

would infringe on the ability of the party "to identify the people who constitute the association,

and to select a standard bearer who best represents the party's ideologies and preferences," and

further note that "[d]epriving a political party of the power to endorse suffocates this right."  *See*

CCDC Brief, at pp. 7-8 and MCDO Brief, at p. 6 (quoting *Eu v. S.F. Cty Democratic Cent. Comm.*,

489 U.S. 214 (1989)).  The MCDO further assets an interest in the "ability to advance the core

beliefs shared by its members."  *See* MCDO Brief, at p. 7.  Of course, in making these statements,

the putative intervenors concede, as they must, that the final selection of a standard bearer is not

vested in them, but rather, in the primary election voters who choose to identify with their party

and cast ballots in the manner determined by State law.  Generally speaking, the CCDC and the

MCDO have a legally protectable interest in endorsing candidates prior to a primary election.  The

law gives these groups the freedom to advocate who primary voters should select as a standard

bearer that represents their ideology, as set forth in *Eu*, and to identify who primary voters ought

to select to advance the core beliefs shared by its members.  The problem for the CCDC and the MCDO is that such interests are simply not at stake in this litigation and/or will not be affected or impaired by a decision favorable to Plaintiffs.

The CCDC claims that "[a] finding in favor of Plaintiffs, in turn, would conflict with the well-established precedent set forth in *Eu*, and eviscerate CCDC's right to endorse, and freedom to associate, with Democratic candidates for office that best represent CCDC's ideologies and preferences."  *See* CCDC Brief, at p. 8; *see also* MCDO Brief, at p. 6.  Nothing could be further from the truth.  The CCDC and MCDO fail to understand or appreciate what is at stake in this case.  This case has *nothing* to do with the ability to endorse a candidate and Plaintiffs are not seeking relief in that regard.  Indeed, if Plaintiffs prevail, while the structure of the ballot might change, the CCDC and MCDO would remain free to endorse candidates, to fundraise and publicly campaign on their behalf, etc.  Thus, the principles in *Eu* would not be abrogated in any way.  Moreover, even going way beyond the dictates of *Eu*, the CCDC and MCDO would also remain free to associate with such candidates on the ballot itself because state law affords candidates running together, including the CCDC and MCDO candidates, the right to appear before the voters with a common slogan/designation on the ballot.  In this manner, if Plaintiffs prevail, the CCDC and MCDO, as the official county committees of the Democratic political party in New Jersey, would maintain even greater associational rights than their counterparts are afforded in other states, which do not allow for a slogan or designation on a primary election ballot.[8]

---

[8] Nowhere in *Eu* did the Supreme Court ever extend the associational rights discussed therein to the ballot itself.  By contrast, various federal case law from the Supreme Court and other Federal Circuit Courts of Appeal specifically held that there is no right to use the ballot for expressive purposes.  *See, e.g.*, *Burdick v. Takushi*, 504 U.S. 428 (1992) (purpose of primary election ballot was to select a candidate and the ballot's constitutional function was not meant to provide "a more generalized expressive function"); *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 453 n.7 (2008) ("The First Amendment does not give political parties a right

Clearly, the CCDC and MCDO have not identified a sufficient interest that will be affected or impaired by disposition of this case. If Plaintiffs are granted the relief they seek, the CCDC and MCDO remain free to endorse candidates and to associate with them, including on the ballot. Similarly, the MCDO has failed to explain how it currently advances the core beliefs shared by its members, let alone how that would be affected or impaired if Plaintiffs were to prevail in this case. In light of these considerations, the CCDC and MCDO simply have not articulated a "legally cognizable interest," *see Mt. Top*, 72 F.3d at 366, that will be affected or impaired, or how, specifically, such an interest of these entities will be affected or impaired. They fail to articulate what is actually at stake for them by a decision in this case. Simply put, the CCDC and the MCDO fail to answer this fundamental question: *if Plaintiffs prevail, in what way will the putative intervenors specifically be unable to endorse, unable to associate with Democratic candidates for office, or in the MCDO's case, unable to advance the core beliefs shared by its members? Moreover, if Plaintiffs prevail, in what way will the putative intervenors be treated any differently than any other party, group, or candidate?* By not proffering, much less proving, that they will be disadvantaged, they fail to meet the requisite interest for intervention.

   b.   RDO-UC Purported Interests

---

to have their nominees designated as such on the ballot."); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 362-63 (1997) (holding that political parties did not have a right to use the ballot to convey a particularized message as "[b]allots serve primarily to elect candidates, not as forums for political expression."); *Ohio Council 8 Am. Fed'n of State v. Husted*, 814 F.3d 329, 336 (6th Cir. 2016) (upholding law that prevented judicial candidates from appearing on the general election ballot with their party affiliations because "a political party has no First Amendment right to use the general-election ballot for expressive activities" and "has no right to use the ballot itself to educate voters"); *cf. Cook v. Gralike*, 531 U.S. 510, 525 (2001) (state cannot use ballot to bring one piece of information to attention of voters and thereby highlight that information or issue as paramount). Nevertheless, as set forth above, even if Plaintiffs prevailed, due to the continued existence and effect of New Jersey statutes which are not being challenged in this case, the CCDC and MCDO would still be permitted to associate with Democratic candidates on the ballot through use of a common slogan.

As an initial matter, it should be noted that, unlike the CCDC, which described itself as "the statutory non-profit regular Democratic Party Organization for Camden County," *see* CCDC Brief, at p. 3, and unlike the MCDO, which described itself as "a not-for-profit and the official Democratic Party organization for Middlesex County," *see* MCDO Brief, at p. 1, by contrast the RDO-UC is <u>not</u> the official statutory Democratic County Committee party organization in Union County. *See* RDO-UC Brief, at p. 1 (describing itself as simply a not-for-profit corporation). In fact, it is common knowledge that the official statutory Democratic party entity in Union County is the Union County Democratic Committee ("UCDC"), not the RDO-UC. The RDO-UC, as with any incorporated entity in the State of New Jersey, essentially owns the rights to give permission to primary election candidates to use its name as their slogan, in accordance with *N.J.S.A.* 19:23-17. Candidates that have been endorsed by the UCDC have historically requested such permission from the RDO-UC to use its name as the slogan that appears on the primary election ballot. Thus, despite the RDO-UC's assertions to the contrary, it is unclear how the RDO-UC can claim any interest with respect to the ballot outside of use of its slogan. Because candidates' rights to use a slogan, and entities' rights to allow or disallow the use of a slogan are *not* at issue, the matters that *are* at issue – ballot position and ballot placement – are not specific to the RDO-UC's interests.

Beyond that preliminary distinction, for largely the same reasons as set forth above with respect to the CCDC and the MCDO, the RDO-UC's asserted interests must fail. In fact, the RDO-UC asserts the same interests in "endorsing candidates" and in "having that endorsement appear on the ballot." *See* RDO-UC Brief, at p. 4. As with the CCDC and MCDO, the ability to endorse is not at stake in this litigation, and a favorable disposition of this case to Plaintiffs would not interfere with the ability of candidates who are "endorsed" by the RDO-UC to appear on the ballot demonstrating such association via a common slogan.

14

The RDO-UC also asserts an interest in "grouping endorsed candidates on the ballot so as to demonstrate their association," and claims that its interest in this regard is "set forth in the Certification accompanying this motion."  *See* RDO-UC Brief, at p. 4.  In turn, Paragraphs 7 and 8 of the Certification of Robert F. Renaud, Esq., seek to clarify the RDO-UC's interests.  Paragraph 7 provides as follows:

> The RDO claims an interest, protected by the First Amendment, to associate itself with primary election candidates who share its principles and ideals, and to associate those candidates with each other, and to inform the primary election voters of the Democratic Party.  The RDO further claims an interest, protected by the First Amendment, to speak freely as to those candidates that it has endorsed so as to inform the electorate that the RDO has chosen to associate itself with certain candidates, and that those candidates have chosen to associate themselves with each other.

Paragraph 8 provides as follows:

> Given the nature of the organization and the legal principles at issue in this litigation, RDO claims an interest pursuant to <u>Fed.R.Civ.P.</u> 24 (a) because the disposition of the subject of this action, pertaining as to[sic] does to ballot placement and bracketing, may impair or impede the RDO's ability to carry out its core function, that is the ability to endorse candidates <u>on the ballot</u>, and to have those endorsed candidates be associated with each other <u>on the ballot.</u>

> (Emphases in original.)

For the reasons set forth above with respect to the CCDC and the MCDO, the RDO-UC similarly fails to articulate, specifically, how a decision in favor of Plaintiffs, which does not implicate the ability to endorse and which would leave intact the ability of candidates to associate through a common slogan or designation, would prevent the RDO-UC from (1) associating itself with Democratic primary election candidates that share its ideals; (2) associating those candidates with each other; (3) informing primary election voters of such associations; or (4) speaking freely about the candidates that it endorses through awarding them the ability to use their slogan so as to

inform primary election voters that the RDO associates itself with those candidates and that the candidates associate with other candidates permitted to use the same slogan.

Indeed, the RDO-UC has not articulated how it would in any way be prevented from carrying out its core function of endorsing candidates on the ballot and having those endorsed candidates be associated with one another on the ballot, especially in light of the fact that the ability to endorse candidates and the ability of candidates to appear under a common slogan would remain intact even if Plaintiffs prevailed. *In what way, then, will they be unable to accomplish these functions? Similarly, if Plaintiffs prevail, in what way will they be treated any differently than any other corporation, group, or candidate?* They enjoy these rights today, and as long as state law continues to allow it, no outcome of the litigation will affect their ability (or the ability of any other group of candidates running together) to freely associate by endorsement or communicating with the primary voters who decide who the chosen candidate will be.

### 3. The Putative Intervenors Fail to Explain Why their Interests are Not Already Adequately Represented by Existing Parties.

Any alleged interest of the Intervenors is already adequately represented by the existing parties – and, indeed, by not intervening earlier in this matter, the CCDC, RDO-UC, and MCDO have *already* relied on the existing parties to litigate the critical motion to dismiss phase of this litigation. Courts determine whether there is already adequate representation by comparing the interest of the putative intervenor with that of the existing parties, and "[i]f the interest of the absentee is not represented at all, or if all existing parties are adverse to him, then he is not adequately represented," and "[i]f his interest is identical to that of one of the present parties . . . then a compelling showing should be required to demonstrate why this representation is not adequate." *See Mt. Top.*, 72 F.3d at 323 (citing 7C Wright, Miller & Kane, *Federal Practice & Procedure* § 1909, at 318-19 (1986)).

16

Intervenors try to separate their interests from the Attorney General acting on behalf of the State and from the County Clerk Defendants by claiming that none of these existing parties (Defendants and Intervenor, State of New Jersey) are claiming that if Plaintiffs prevail in the case it would impair a political party's First Amendment rights with respect to endorsement and freedom to associate with like-minded candidates. *See, e.g.*, CCDC Brief, at p. 12 ("None of the parties take the position that a finding in favor of Plaintiffs would suffocate a political organization's freedom to associate and endorse political candidates that align with their ideologies and preferences, as provided by the First Amendment."); MCDO Brief, at pp. 7-8 ("MCDO's interest lie not only within the right to associate, but the core set of values shared between the political party and its members, and the ability to present that shared message to Democratic voters of Middlesex County and be easily found by voters looking at a ballot."); *see also* MCDO Brief, at p. 8 (claiming that "[t]he MCDO's interests have not been and will not be briefed or heard by this Court by existing parties."). Once again, nothing could be further from the truth.

In their various briefs, all of the existing Defendants and the Attorney General already asserted the same exact interests as the CCDC, RDO-UC, and MCDO in describing the rights at stake and the governmental interests in support of the law in connection with Defendants' and the State's motions to dismiss. *See, e.g.*, AG Brief, ECF 53-1, at p. 25 (describing an interest in preserving the right to associate and "making those associative characteristics of candidates known to voters,"); *id.* at p. 26 (describing an interest in "allowing candidates to communicate associational qualities such as similarity of political and ideological beliefs to voters that may aid them in making decisions"); Atlantic County Br., ECF 63, at pp. 9-11 (asserting freedom of association protections afforded to a political party including the right to identify who constitutes the association and arguing for the ability of candidates to demonstrate to voters their common

17

ideology by bringing this fact to the attention of voters on the ballot); Bergen County Br., ECF 60-1, at p. 11 (asserting the right of candidates and political parties to identify who constitutes the association and to select a standard bearer reflecting the party's ideology); Mercer County Br., ECF 58-1, at p. 21 (same); *id.* at pp. 28-30 (asserting rights of political parties with respect to freedom of association, the ability to identify who constitutes the association, and the ability to organize in advance of elections and claiming a "legitimate interest[] in protecting the associational rights of political associations"); Monmouth County Br., ECF 59-2, at pp. 19, 21 (asserting First Amendment associational rights of political parties and the right of candidates with common ideology to have that fact brought to the attention of voters on the ballot); Ocean County Br., ECF 55-1, at p. 22 (describing an interest in "permit[ting] candidates of similar political views to associate though the expressive activity of bracketing on the ballot").[9]

Similarly, all of the existing Defendants and the Attorney General already cited to exactly the same cases relied on by the CCDC, RDO-UC, and MCDO, and for the same propositions, in connection with Defendants' and the State's Motions to Dismiss. *See, e.g.*, AG Brief, ECF 53-1, at pp. 23, 27-28 (citing *Eu* and *Schundler* cases); Atlantic County Br., ECF 63, at pp. 9-11 (citing *Quaremba* and *Eu* cases); Bergen County Br., ECF 60-1, at pp. 10-11 (citing *Quaremba* and *Eu* cases); Mercer County Br., ECF 58-1, at pp. 21-24, 28-29 (citing *Eu* and *Quaremba* cases); Monmouth County Br., ECF 59-2 (citing *Eu*, *Quaremba*, and *Schundler* cases); Ocean County Br., ECF 55-1, at pp. 13-16, 21-23 (citing *Eu*, *Quaremba*, and *Schundler* cases).[10]   In fact, in response to such arguments, Plaintiffs devoted numerous pages in their opposition brief to address the very

---

[9] The Hudson County Clerk joined in the motions to dismiss filed by the other co-defendants.  *See* Hudson County Br., ECF 57-3, at p. 4.

[10] The Hudson County Clerk joined in the motions to dismiss filed by the other co-defendants.  *See* Hudson Count Br., ECF 57-3, at p. 4.

same issues that the CCDC, RDO-UC, and MCDO now seek to raise again, *see* Plaintiffs' Opposition Brief, ECF 69, at pp. 93-103, and addressed the very same cases cited by them, *see id.* (discussing *Eu*, *Quaremba*, and *Schundler* cases).

Thus, there is no reason to believe – and certainly the CCDC, RDO-UC, and MCDO have not provided one – that the alleged interests raised by them are not already adequately represented. Stated another away, they fail to identify a single interest that has not already been addressed by numerous other parties in this case and fail to provide an explanation as to why such representation of their interests by the various other Defendants and the State of New Jersey are insufficient to adequately represent their interests, particularly in light of the fact that their asserted interests, arguments, and cases relied on are identical to that which has already been advanced *ad nauseam* by other existing parties in the case.

Moreover, the CCDC, RDO-UC, and MCDO fail to address the fact that, in addition to these three parties, Plaintiffs are already facing a separate motion for intervention from another county clerk, *plus* the six existing Defendants and the Attorney General appearing on behalf of the State. Thus, to the extent that the Court was inclined to allow for intervention by a political party, the CCDC, RDO-UC, and MCDO fail to state how their specific interests differ from one another. Rather, by asserting essentially the same exact interests, it is clear that if the Court were to allow all three parties to intervene, their participation would be not only repetitive of the existing parties, but also duplicative of one another. Plaintiffs will be forced to respond to multiple additional sets of briefings from parties that are similarly situated and asserting the same interests.

In light of the circumstances and the number of existing parties and the nature of the arguments they have already advanced, there is no reason to allow for participation by multiple intervenors. Moreover, allowing any party to intervene a full two years after Plaintiffs commenced

the case, and without asserting adequate interests or interests that are not already adequately represented, would set a precedent and allow for participation by numerous additional parties at varying stages of this litigation in a way that is highly prejudicial to Plaintiffs and without regard for the efficient use of judicial resources as well as that of the parties.

### C. **The Court Should Deny the Requests for Permissive Intervention.**

Intervenors' request for permissive intervention should similarly be denied. In accordance with Rule 24(b)(1)(B), courts may permit a party to intervene if "[o]n timely motion" the putative intervenor presents "a claim or defense that shares with the main action a common question of law or fact." The decision to permit intervention is within the Court's discretion, and under Rule 24(b)(3), in making such determination "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

For the reasons set forth above, the CCDC, RDO-UC, and MCDO's requests are not timely, having been filed 2 years after the filing of the Initial Complaint, 1.5 years after the filing of the Amended Complaint, subsequent to the Court's issuance of an Order and Opinion on the substantive merits of seven dispositive motions to dismiss, at a time where the motions to intervene were all returnable after the extended deadline on which Answers were due, and in the MCDO's case, after Answers were already filed, and in all cases, without mandatory pleadings being attached.[11] There are already parties who successfully moved for intervention in this case, and did so timely. The task can be – and has been – accomplished. In contrast, the putative intervenors propose that they should be permitted to intervene at any point in time or at various stage of this

---

[11] Indeed, unlike in an analysis of intervention as of right where the Court would have to be satisfied that the putative intervenor might be seriously harmed absent intervention, when it comes to permissive intervention, the mere passage of time alone can be a basis upon which to deny the request. *See Mt. Top*, 72 F.3d at 369 (citing Wright & Miller, *supra*, § 1916 at 424)).

case.  Allowing parties to enter the case at whatever time they please will open the floodgates to

open-ended intervention which will inevitably lead to further delay, prejudice, and inefficient use

of judicial and party resources, all at considerable expense to Plaintiffs.  Indeed, since the CCDC

filed their motion to intervene, three additional parties have done the same, including the RDO-

UC, the MCDO who filed after Defendants filed their respective Answers, and most recently, the

Burlington County Clerk.[12]  If such parties are permitted to intervene, it could also lead to a

situation where additional Democratic county parties or their Republican counterparts might seek

to intervene 6 months or 1 year down the road.  The Republican county parties, for example, might

claim that the Democrats' interests are represented, but theirs are not, setting the stage for further

disruption and unnecessary layers of delay and prejudice.

Additionally, as set forth above, here the CCDC, RDO-UC, and MCDO are asserting

interests, arguments, and even cases that are identical to that which has already been asserted by

other existing parties as well as to one another.  As demonstrated from the motions to dismiss,

Plaintiffs already had to respond to seven separate motions.  The intervention of multiple additional

parties now and in an open-ended fashion in the future will subject the Plaintiffs, as well as the

Court, to burdensome and unnecessary additional briefings and other use of resources in a manner

that is inefficient and costly, but adding little or nothing new in substance.

Indeed, the arguments raised in the putative intervenors' briefs signal that their intent is

grounded more in relitigating issues already raised and decided on the various motions to dismiss,

than in protecting any unique interests of their own.  Forcing Plaintiffs, let alone the Court, to

---

[12] It should be noted that the State of New Jersey, represented by the Attorney General's Office, has already been permitted to intervene, as was the Gloucester County Clerk who filed to intervene on March 29, 2021, prior to effectively relinquishing such rights after it failed to participate in any substantive way throughout the briefing process of the motions to dismiss or otherwise, and failed to file an Answer.

engage in that endeavor again, after Plaintiffs filed a 108-page omnibus opposition brief, and after the Court decided seven separate motions to dismiss substantially in favor of Plaintiffs would place an extraordinary and unnecessary burden on Plaintiffs, fly in the face of principles of judicial economy, and would amount to a colossal waste of time and resources. The Plaintiffs have a right to efficient litigation of their claims. Relitigating matters already briefed will cause undue and unnecessary delay to the relief ultimately sought. This matter has already been pending for the equivalent of one federal election cycle, and allowing the putative intervenors to participate in an untimely and redundant fashion would prejudice Plaintiffs who have litigated this matter in good faith. The Plaintiffs here are grassroots candidates and a grassroots organization who have courageously challenged the status quo; they are not special interests supported by endless resources.

For these and the other reasons set forth above with respect to the analysis of intervention as of right, and the fact that the putative intervenors failed to file a required pleading, the totality of circumstances in this case strongly weighs in favor of denying the respective motions to intervene.[13]

## POINT II

### IN THE ALTERNATIVE, IF THE CCDC, RDO-UC, AND MCDO'S REQUESTS FOR INTERVENTION WERE GRANTED, THE COURT SHOULD APPOINT A LEAD COUNSEL TO SPEAK AND ACT ON BEHALF OF ALL

---

[13] It should be noted that denial of the CCDC, RDO-UC, and MCDO's motions to intervene does not preclude these parties from requesting leave to participate as *amicus curiae* if they meet the standards required for same. Indeed, courts "may permit third parties to appear in court as amicus curiae where they 'can contribute to the court's understanding' of the issue being presented to the court." *United States v. Bayer Corp.*, No. 2:07-cv-0001, ECF No. 47, at 2 (D.N.J. Jan. 3, 2007) (quoting *Harris v. Pernsley*, 820 F.2d 592, 603 (3d Cir. 1987)). The touchstone for the inquiry is whether the proposed amicus has "a sufficient 'interest' in the case" and whether its proposed brief will be helpful and relevant. *Neonatology Assocs., P.A. v. C.I.R.*, 293 F.3d 128, 129 (3d Cir. 2002) (quoting FED. R. APP. P. 29(b), which guides the inquiry).

**SUCH INTERVENORS PURSUANT TO ITS POWERS UNDER RULE 16.**

Plaintiffs maintain that the CCDC, RDO-UC, and MCDO are not entitled to intervention as of right and their request for permissive intervention should be denied.  However, in the alternative, if the Court were inclined to allow them to intervene, the Court should exercise its powers under Rule 16(c)(2)(L) and (P) to appoint a lead counsel to speak and act on behalf of all such intervenors.  Rule 16(c)(2) allows the court to "consider and take appropriate action" on numerous matters.  Among them includes subsection (L), which provides as follows:  "adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." Additionally, it includes subsection (P), which provides as follows:  "facilitating in other ways the just, speedy, and inexpensive disposition of the action."

This case already involves six separate Defendants and an Intervenor, the State of New Jersey.  As was made entirely apparent with respect to the recently-decided motions to dismiss, Plaintiffs and the Court will have to consider the separate submissions, briefs, motions, etc., of all seven of these parties.  In addition, currently before the Court are four separate pending motions to intervene, and if intervention is permitted, there may be countless numbers of additional requests for intervention from additional party organizations, let alone additional county clerks or other actors.  Therefore, it is necessary and appropriate to appoint a lead counsel in the interest of efficiency and resources, in light of the need to manage "multiple parties" as per Rule 16 (c)(2)(L) and in order to "facilitate[e] . . . the just, speedy, and inexpensive disposition of the action," as per Rule 16(c)(2)(P).  *See generally State of N.J. Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Servs., Inc.*, 138 F.R.D. 421, 428 (D.N.J. 1991) (court has "wide discretion in matters of case

management" and can adopt "special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties [or] difficult legal questions").

Indeed, it would be overly burdensome, inefficient, and prohibitively expensive to subject Plaintiffs to the various separate discovery requests, separate motions, separate briefs, separate examinations, etc., that would surely accompany the intervention of multiple additional parties. Moreover, as set forth above, in addition to not identifying any interest that is not already adequately represented by the existing parties, here the CCDC, RDO-UC, and MCDO also do not identify any interest that is separate from one another, and thus will not be prejudiced by filing joint submissions to the Court and otherwise participating through a single lead counsel to represent their interests.  For the foregoing reasons, the Court should appoint a lead counsel for the CCDC, RDO-UC, and MCDO in the event that it were inclined to permit their intervention.

## POINT III

### THE COURT SHOULD DENY THE BURLINGTON COUNTY CLERK'S MOTION TO INTERVENE.

For reasons virtually identical to those set forth above with respect to the CCDC, RDO-UC, and MCDO, as well as additional reasons, the Court should deny the Burlington County Clerk's motion to intervene.  Those reasons are hereby incorporated with respect to the Burlington County Clerk, with a brief summary of same following and additional arguments unique to the Burlington County Clerk set forth as appropriate.

### A. The Motion to Intervene Should be Denied for Failure to Include a Required Pleading.

As with the CCDC, RDO-UC, and MCDO, the Burlington County Clerk failed to include "a pleading that sets out the claim or defense for which intervention is sought," as required by FED. R. CIV. P. 24(c).  Additionally, it should be noted that Answers had already been filed by all of the

party Defendants and the State at the time that the Burlington County Clerk submitted her motion to intervene.  The failure to include a required pleading warrants denial of the motion to intervene.

**B.  <u>The Burlington County Clerk is Not Entitled to Intervention as of Right.</u>**

For many of the same reasons that applied to the CCDC, RDO-UC, and MCDO, the Burlington County Clerk failed to meet her burden of demonstrating that she met the standard for intervention as of right.

**1.   The Motion to Intervene Fails the Timeliness Inquiry.**

As was the case with respect to the CCDC, RDO-UC, and MCDO, here the Burlington County Clerk filed a motion to intervene 2 years after the Initial Complaint and 1.5 years after the Amended Complaint.  Her request for intervention comes at a stage of the case when seven dispositive motions addressing the merits were already fully briefed and decided, and Answers were already filed by all party Defendants as well as by the Attorney General on behalf of Intervenor, the State of New Jersey.  Moreover, the Burlington County Clerk offers substantively little in the way of an explanation as to her reasons for delay, especially in light of the fact that two other non-Defendant county clerks. – i.e., the Bergen County Clerk, in October 2020, after the filing of the Initial Complaint, and the Gloucester County Clerk, in March 2021, after the filing of the Amended Complaint – moved to intervene at much earlier times and stages of this case, and despite the fact that the Burlington County Clerk herself made sure that her "counsel kept [her] apprised of the status of the litigation."  *See* Certification of Joanne Schwartz in Support of Burlington County Clerk's Motion to Intervene, ECF 140-3, at ¶ 4.  The Burlington County Clerk offers no explanation as to why those other sister county clerks intervened months and even years earlier, yet the Burlington County Clerk's interests were allegedly not threatened until now.  *Cf.* Burlington County Clerk's Brief, ECF 140-1, at p. 5 (acknowledging that "other clerks' offices

filed [for] intervention").  As the Burlington County Clerk acknowledges, Plaintiffs put her office

on notice of this case since it was first filed, *see* Burlington County Clerk Brief, ECF 140-1, at p.1,

and yet the Burlington County Clerk chose to sit on her hands and not do anything until now.

*Compare Mt. Top*, 72 F.3d at 370 (courts will allow intervention where applicants "'promptly'

[seek] intervention upon learning that their interests were in jeopardy.").

      **2.**  **The Burlington County Clerk Fails to Explain Why Her Interests are Not Already Adequately Represented by Existing Parties.**

The Burlington County Clerk fails to identify any reason whatsoever as to why her interests

will not be adequately represented by existing parties.  Indeed, the existing parties consist of the

State of New Jersey, and six Defendants who are all county clerks in their respective counties.

These county clerks are all vested with the same obligations and responsibilities.  In fact, the

Burlington County Clerk fails to assert a single interest that she has in this litigation (beyond

claiming merely that Plaintiffs identified her office in their Initial and Amended Complaints).  This

failure to articulate and assert any interest whatsoever makes it impossible for the Burlington

County Clerk to meet her burden of explaining why her interests differ from that of the other six

county clerks who are already Defendants in this action.  *See Mt. Top*, 72 F.3d at 323 (citing

Wright, Miller, *supra*, § 1909, at 318-19) ("If his interest is identical to that of one of the present

parties . . . then a compelling showing should be required to demonstrate why this representation

is not adequate.").  Thus, even if the Burlington County Clerk had an interest in this litigation, she

has failed to set forth any reason why her interests would not be adequately represented by the

existing parties.  Indeed, allowing the Burlington County Clerk to intervene without asserting a

particular interest, let alone explaining how it differs from six other Defendants in the case, would

allow for unnecessary additional briefing, repetitive arguments, and waste of judicial resources

and efficiency, while simultaneously opening the floodgates to participation by additional county clerks at subsequent and later stages of the litigation in a manner that is prejudicial to Plaintiffs.

**C.   <u>The Court Should Deny the Request for Permissive Intervention.</u>**

The Burlington County Clerk's request for permissive intervention under Rule 24(b)(1)(B) should also be denied.  For the reasons set forth above, the Burlington County Clerk sat on her rights for 2 years after the filing of the Initial Complaint and 1.5 years after the filing of the Amended Complaint, after briefing and opinion on seven separate dispositive motions, and after Answers were already filed by six other county clerk Defendants as well as other intervenors.  The Burlington County Clerk also has not asserted any interest that is not already adequately represented by the six other county clerks who are already Defendants in this case.  Allowing the Burlington County Clerk to intervene under these circumstances would unduly delay or prejudice the Plaintiffs and open the floodgates to open-ended intervention at varying subsequent and later stages of this case.

For the reasons set forth above, as well as the reasons set forth herein with respect to the CCDC, RDO-UC, and MCDO, the totality of circumstances in this case strongly weigh in favor of denying the Burlington County Clerk's motion to intervene.

## **CONCLUSION**

For the foregoing reasons, the motions to intervene filed by the CCDC, RDO-UC, and MCDO, as well as the motion to intervene filed by the Burlington County Clerk, should be denied.

Respectfully submitted,

_____*/s/ Brett M. Pugach*_____                            _____*/s/ Flavio Komuves*_____

Yael Bromberg, Esq.  (036412011)             Flavio Komuves, Esq. (018891997)

Brett M. Pugach, Esq. (032572011)           WEISSMAN & MINTZ

BROMBERG LAW LLC                         220 Davidson Avenue, Suite 410

43 West 43rd Street, Suite 32               Somerset, NJ 08873

New York, NY 10036-5083                 Phone: (732) 563-4565

Telephone: (212) 859-5083                Facsimile: (732) 560-9779

Facsimile: (201) 586-0427                 fkomuves@weissmanmintz.com

ybromberg@bromberglawllc.com

bpugach@bromberglawllc.com