NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CHRISTINE CONFORTI, et al.,** | Civil Action No. 20-8267 (ZNQ) |
| **Plaintiffs,** | |
| v. | |
| **CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et al.,** | **MEMORANDUM OPINION** |
| **Defendants.** | |

**BONGIOVANNI, Magistrate Judge**

      This matter comes before the Court upon eight Motions to Intervene filed by Camden County Democrat Committee (Docket Entry No. 126-1), Regular Democratic Organization of Union County, Inc. (Docket Entry No. 128), Middlesex County Democratic Organization (Docket Entry No. 138), Office of the Burlington County Clerk (Docket Entry No. 140), Morris County Republican Committee (Docket Entry No. 150), Warren County Regular Republican Organization, Inc. (Docket Entry No. 151), Republican Committee of Union County (Docket Entry No. 152), and Cumberland Regular Republican Organization, Inc. (Docket Entry No. 153) (referred to collectively as the "Proposed Intervenors"). Plaintiffs Christine Conforti ("Conforti"), Arati Kreibich ("Kreibich"), Mico Lucide ("Lucide"), Kevin McMillan ("McMillan"), Joseph Marchica ("Marchica"), Zinovia Spezakis ("Spezakis"), and New Jersey Working Families Alliance, Inc. ("NJWF") (referred to collectively as "Plaintiffs") oppose the Motions. (Docket Entry Nos. 141 and 160.) The Court has fully reviewed and considered all arguments made in support of and in opposition to said Motions. The Court considers the Motions without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons that follow, the Motions to Intervene are

1

**GRANTED**.

I.      **BACKGROUND**

This case involves alleged constitutional violations concerning New Jersey's primary election system and bracketing structure. Central to the dispute is the alleged organization, configuration, and placement of ballots utilized in New Jersey's primary elections. Plaintiffs are former candidates who ran for public office in the 2020 and 2021 Democratic primary elections. NJWF endorsed numerous candidates participating in these elections. As set forth in the Complaint, the State County clerks have sole jurisdiction over the bracketing structure for the primary election ballots, which are guided, in part, by New Jersey law. (*See* Docket Entry No. 33, Am. Compl. at ¶¶ 69–72.) Plaintiffs seek declaratory and injunctive relief against Defendants Christine G. Hanlon, John S. Hogan, Scott M. Colabella, Paula Sollami Covello, Edward P. McGettigan, and E. Junior Maldonado, in their official capacities as county clerks (referred to collectively as the "County Clerk Defendants"). Plaintiffs allege that the County Clerk Defendants hold certain statutory obligations relevant to their causes of action, including, but not limited to, the design, preparation, and printing of all ballots, including issuance of mail-in ballots, and conducting a draw for ballot position for various positions held in various counties.

Plaintiffs filed their initial Complaint on July 6, 2020, against Christine G. Hanlon, Scott M. Colabella, and Paula Sollami Covello, in their respective official capacities as the Monmouth, Ocean, and Mercer County Clerks. (Docket Entry No. 1.) Upon filing, county clerks for the remaining counties in New Jersey—who were not parties to this matter—were furnished with copies of the initial Complaint. (*See* Am. Compl. at ¶ 64, Docket Entry No. 33.) The distribution of the initial Complaint caused the Bergen County Clerk to file a Motion to Intervene on October

1, 2020, which was granted.[1]  (Docket Entry Nos. 7 and 22.)  An Amended Complaint was subsequently filed on January 25, 2021.  (Docket Entry No. 33.)  The Amended Complaint added several Plaintiffs,[2] while also naming additional Defendants John S. Hogan, Edward P. McGettigan, and E. Junior Maldonado, in their official capacities as the Bergen, Atlantic, and Hudson County Clerks.  While the Amended Complaint added new parties, the federal constitutional challenges, outlined in the Initial Complaint, were largely the same.

Again, "[t]he County Clerks for the remaining 15 counties in New Jersey [who were] not parties to the Complaint [were] furnished with a copy of the First Amended Complaint because they also enforce and administer ballot design and ballot placement laws which [were] called into question in this action in their respective counties:  Burlington, Camden, Cape May, Cumberland, Essex, Gloucester, Hunterdon, Middlesex, Morris, Passaic, Salem, Somerset, Sussex, Union, and Warren.  (*See* Am. Compl. at ¶ 64.)  The Secretary of State was also furnished with a copy of the Amended Complaint.  (*Id.* at ¶ 65.)  Having received notice of the Amended Complaint, the Attorney General's Office, on behalf of the State of New Jersey, filed a Motion to Intervene, which was granted on March 29, 2021.  (Docket Entry No. 54.)  Similarly, on March 30, 2021, James Hogan, in his official capacity as the Gloucester County Clerk, filed a Motion to Intervene, which was granted the same day.  (Docket Entry Nos. 61 and 62.)

The County Clerk Defendants and the State of New Jersey responded to the Complaint with seven separate motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and

---

[1] Although the Bergen County Clerk was granted intervenor status with respect to the Initial Complaint, Plaintiffs later added the Bergen County as a party defendant in the Amended Complaint.  (*See* Docket Entry No. 33.)

[2] Specifically, the Amended Complaint added Plaintiffs Kreibich, Marchica, Lucide, McMillan, Spezakis, and NJWF.

12(b)(6). On May 31, 2022, the District Court issued an Order and Opinion, which granted in part, and denied, in part, Defendants' motions to dismiss. (Docket Entry Nos. 111 and 112.) The District Court determined that Plaintiffs had standing to bring certain causes of action in the Complaint, and that those causes of action stated a claim upon which relief could be granted. (*Id.*) Since then, the active Defendants have filed separate Answers to the Amended Complaint. (Docket Entry Nos. 129–135.)

As a result of the District Court's ruling, the Proposed Intervenors move to intervene in this matter on the basis that their rights are now directly implicated in the present action. Specifically, given the finding that Plaintiffs have subject matter jurisdiction to bring their claims, and that such claims state a claim upon which relief can be granted, the Proposed Intervenors argue that this matter now concretely implicates their constitutional rights. Four intervenors, including the Camden County Democrat Committee ("CCDC"), the Regular Democratic Organization of Union County, Inc. ("RDO-UC"), the Middlesex County Democratic Organization ("MCDO"), and the Burlington County Clerk, filed Motions to Intervene on July 21, 2022, July 25, 2022, August 2, 2022, and August 12, 2022, respectively. (Docket Entry Nos. 126, 128, 138, and 140.) Plaintiffs opposed the Motions on August 23, 2022. (Docket Entry No. 141.)

After these motions to intervene were fully briefed, four additional statutory Republican political party county committees, all of whom are represented by the same counsel, filed motions to intervene on August 31, 2022. (Docket Entry Nos. 150, 151, 152, and 153.) These entities include the Cumberland Regular Republican Organization, Inc. ("CRRO"), Morris County Republican Committee ("MCRC"), Republican Committee of Union County ("RCUC"), and Warren County Regular Republican Organization, Inc. ("WCRRO") (referred to herein as the "Putative Republican Intervenors"). Plaintiffs opposed these Motions on September 19, 2022.

Plaintiffs argue that:  (1) the CCDC, RDO-UC, MCDO, and Burlington County Clerk's motions to intervene failed to provide "a pleading that sets out the claim or defense for which intervention is sought" under Federal Rule of Civil Procedure ("Rule") 24(c); (2) the Proposed Intervenors are not entitled to intervention as of right under Rule 24(a)(2); and (3) the Proposed Intervenors are also not entitled to permissive intervention under Rule 24(b).  (*See* Docket Entry Nos. 141 and 160.)  All eight motions to intervene are now pending before the Court, which have been referred to the undersigned for adjudication and resolution.

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure ("Rule") 24(a)(2), a timely movant will be granted the right to intervene where the movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  To intervene as a matter of right under Rule 24(a)(2), it is axiomatic that the prospective intervenor establish that:  "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation."  *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005) (quoting *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir.1987)).  "In defining the contours of a 'significantly protectable' legal interest under Rule 24(a)(2), [the Third Circuit has] held that, 'the interest must be a legal interest . . ." [and] [t]he applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene.'"  *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366, 33 V.I. 311 (3d Cir. 1995).  The Court must "therefore determine whether the proposed intervenors

are real parties in interest." *Id.* Our courts liberally construe Rule 24(a) "in favor of intervention." *NLRB v. Frazier*, 144 F.R.D. 650, 655 (D.N.J. 1992).

Separately, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The decision of whether to grant or deny intervention under Rule 24(b)(1)(B) is discretionary. *Brody By and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1124 (3d Cir. 1992).

### III.   DISCUSSION

The Court first addresses Plaintiffs' position that the first four motions to intervene, filed by CCDC, RDO-UC, MCDO, and the Burlington County Clerk, must be denied for the failure to meet the requirements for intervention under Rule 24(c). (Docket Entry No. 141, at 6.) Plaintiffs highlight that all motions to intervene under Rule 24 "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Failure to comply with the requirements of Rule 24(c) may result in the denial of a motion to intervene. *See Township of S. Fayette v. Allegheny County Housing Authority*, 183 F.R.D. 451 (W.D. Pa. 1998), *aff'd*, 185 F.3d 863 (3d Cir. 1999). As noted by Plaintiffs, said motions were not accompanied by any such pleading. Our courts, however, have not required strict compliance with Rule 24(c). Motions to intervene have been granted by courts within the Third Circuit despite a movant's failure to adhere precisely to the requirements of Rule 24(c), where the purpose of intervening was sufficiently clear. *See, e.g., United States ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 410-412 (W.D. Pa. 2006)

6

(permitting a motion to intervene despite lack of an attached pleading where the purpose of intervention was clear).

The Court finds the *Sheesley* decision, wherein the District Court in the Western District of Pennsylvania concluded that the movant's failure to attach a pleading to its motion to intervene was not a fatal defect, to be persuasive. The *Sheesley* court determined that granting such a dismissal—on a mere technicality—would run contrary to the thrust of the Federal Rules of Civil Procedure favoring adjudication of claims on the merits. *See Soliz v. Client Servs., Inc.*, Civ. Action No. 11-4210, 2011 WL 4343730, at *4 (D.N.J. Sept. 14, 2011) ("In general, the Federal Rules of Civil Procedure should be construed liberally so as to encourage ruling on the merits instead of technicalities."). Here, the Court finds that the pending motions to intervene present meritorious arguments in favor of intervention under Rule 24. Further, in attempt to alleviate any procedural defects, the CCDC, Burlington County Clerk, and MCDO have attached responsive pleadings to their reply briefs. (Docket Entry No. 146, at 13-43, Docket Entry No. 148-1, Docket Entry No. 149-2.) The Court shall not deny these Proposed Intervenors' motions on a technical deficiency. Instead, the Court finds that their failure to include a pleading pursuant to Rule 24(c) is not a prejudicial defect and not grounds for denying intervention.

Next, the Court addresses the parties' arguments concerning intervention as of right under Rule 24(a)(2). In their briefs, Plaintiffs and the Proposed Intervenors devote considerable attention to whether the Proposed Intervenors have satisfied the requirements for intervention as of right under Rule 24(a)(2). However, because it is clear that the Proposed Intervenors have satisfied the elements of permissive intervention under Rule 24(b)(1)(B), the Court need not consider intervention as of right. *See, e.g.*, *Donald J. Trump for President, Inc. v. Murphy*, 20-10753 (MAS) (ZNQ), 2020 U.S. Dist. LEXIS 211237, at *6 (D.N.J. September 23, 2020) (though the plaintiff's

7

arguments attacked the movants' right to intervention under Rule 24(a), "the Court need not further address these arguments beyond its previous findings because permissive intervention [was] granted pursuant to Rule 24(b)(1)(B).").

Each of the Proposed Intervenors have sought permissive intervention under Rule 24(b), which grants the Court discretion to allow intervention "[o]n timely motion" where the movants "[have] a claim or defense that shares with the main action a common question of law or fact." Rule 24(b)(1)(B). The decision of whether to grant or deny permissive intervention lies within the Court's discretion. *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1124 (3d Cir. 1992). Courts also "consider various factors, including whether the proposed intervenors will add anything to the litigation and whether the proposed intervenors' interests are already represented in the litigation." *Worthington v. Bayer Healthcare LLC*, Civ. No. 11-2793, 2011 WL 6303999, at *8 (D.N.J. Dec. 15, 2011) (citing *Hoots v. Pennsylvania*, 672 F.2d 1133, 1136 (3d Cir. 1982)). Finally, when considering whether to exercise its discretion and allow intervention under Rule 24(b), "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Rule 24(b)(3).

In exercising this discretion, the Court finds that the Proposed Intervenors have satisfied the elements of permissive intervention under Rule 24(b)(1)(B). Plaintiffs oppose permissive intervention asserting that the motions to intervene are not timely, having been filed two years after the filing of the initial Complaint, eighteen months after the Amended Complaint, and subsequent to the Court's issuance of an Opinion and Order granting and denying, in part, Defendants' Motions to Dismiss. (*See* Docket Entry No. 141, at 25.) Plaintiffs argue that the Putative Republican Intervenor's motions are "even more untimely" since they were filed nearly

a month after the briefing of the first four motions to intervene were completed.  (Docket Entry No. 160, at 5–6.)

While nearly two years have passed since the filing of the initial Complaint, it is well established that the "mere passage of time" alone does not render an application to intervene untimely.  *Mt. Top Condo. Ass'n*, 72 F.3d at 369.  To the extent the length of time that an applicant waits before applying for intervention is a factor in determining timeliness, the key consideration is "the point at which the applicant should have known, of the risk to its rights."  *U.S. v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1183 (3d Cir. 1994).  Plaintiffs argue that the Proposed Intervenors knew their rights were implicated when they "learned of the filing of the initial and Amended Complaint."  (Docket Entry No. 141.)

While the Proposed Intervenors may have been notified of the filing of the initial and Amended Complaint, the risk of the Proposed Intervenor's rights did not become readily apparent until May 31, 2022, when the District Court granted and denied in part the dispositive motions to dismiss.  As of May 31, 2022, the District Court had only just rendered a decision on certain critical procedural issues as to whether Plaintiffs have subject matter jurisdiction to pursue their causes of action—namely, whether Plaintiffs have Article III standing to bring their claims, whether their claims related to the 2020 Primary are moot, and further, whether their claims related to the 2021 Primary and future primaries are unripe.  The motions to intervene were filed shortly after the District Court rendered Its decision.  Accordingly, the Court does not find that the Proposed Intervenors' motions to intervene are untimely.

Further, the Court finds that Plaintiffs will not be prejudiced by the Proposed Intervenors' intervention, nor will granting the motions to intervene cause any significant delay to these proceedings.  Although Plaintiffs initiated this action over two years ago, this case remains in its

9

preliminary stages. *See Mt. Top Condo. Ass'n*, 72 F.3d at 369 ("While four years had elapsed before [filing a] motion to intervene, the critical inquiry is: what proceedings of substance on the merits have occurred?"). The existing Defendants and the State only recently filed Answers to Plaintiffs' Amended Complaint. No other substantive proceedings have occurred. The parties have yet to engage in written discovery, depositions, or settlement negotiations. *Mt. Top Condo. Ass'n*, 72 F.3d at 370 (even where "some written discovery and settlement negotiations had occurred," the Third Circuit declared a motion to intervene as timely "where there were no depositions taken, dispositive motions filed, or decrees entered during the four year period in question.") In this regard, Plaintiffs argue that relitigating matters already briefed in the Motions to Dismiss "will cause undue and unnecessary delay to the relief ultimately sought." (Docket Entry No. 141, at 27.) However, the Court is not persuaded that adding the Proposed Intervenors to the case at this preliminary juncture would result in undue delay due to repetitive and voluminous filings; to the contrary, supplemental briefing on issues critical to this litigation is anticipated to be beneficial to the Court. Put simply, at this early stage, the Court does not find that permitting intervention will unduly delay the adjudication of this litigation or prejudice the rights of the existing parties.

As a final argument against permissive intervention, Plaintiffs assert that all the Proposed Intervenors' motions should be denied because their interests are already represented by the active Defendants and these interests are nearly identical to those asserted by other parties. (Docket Entry No. 141, at 21; Docket Entry No. 141, at 31; Docket Entry No. 160, at 7, n.1.) On this point, the Court's decision to grant permissive intervention is largely discretionary. *See, e.g.*, *Donald J. Trump for President, Inc.*, 2020 U.S. Dist. LEXIS 211237, at *6. The Court finds that each of the respective applications to intervene set forth interests that are separate and distinct from existing

parties.[3]  The Court understands Plaintiffs' concerns that the intervention of more parties, "in an open-ended fashion in the future," will subject them to "burdensome additional briefings and other use of resources in a manner that is inefficient." (Docket Entry No. 141, at 26).  However, the Court's decision to grant the Proposed Intervenors' motions, does not mean that there will be an open-door policy for potential future litigants in this matter.  *See, e.g.*, *Donald J. Trump for President, Inc.*, 2020 U.S. Dist. LEXIS 211237, at *7.  Any additional prospective intervenors will be subjected to an analysis pursuant to Rule 24, including consideration of timeliness, prejudice, and delay.  That analysis becomes more stringent as this litigation progresses.

Finally, Plaintiffs request that, in the alternative, if the Court were inclined to allow intervention, the Court should exercise its powers under Rule 16 to appoint a lead counsel to speak and act on behalf of all such intervenors.  Plaintiffs request lead counsel must be appointed for two distinct groups: (1) the CCDC, RDO-UC, and MCDO; and (2) the Putative Republican

---

[3] The first intervenor, CCDC, is the statutory non-profit regular Democratic Party Organization for Camden County.  The CCDC "promotes and endorses Democrat candidates nominated in New Jersey primary elections, and is 'committed to serving the community by supporting and electing candidates at every level . . . for Camden County[.]" (Docket Entry No. 126-1, at 18, ¶ 9.)  The second intervenor, RDO, "is an organization dedicated to democratic principles and the highest ideals, supporting candidates for the nomination of the Democratic Party in primary elections for public offices, including United States Senate and Congress, State Senate and Assembly, Constitutional County offices, members of the Board of Commissioners, and municipal offices." (Docket Entry No. 128-2, at ¶ 4.)  The third intervenor, the MCDO, is a not-for-profit and the official Democratic Party organization for Middlesex County, which promotes and endorses Democratic candidates in Middlesex County. (Docket Entry No. 138-1.)  The fourth intervenor, the Office of the Burlington County Clerk, notes that its individual interests are clear, as Plaintiff has expressly identified the Burlington County Clerk as a party in interest to this litigation. (Docket Entry No. 140-1, at 3.)  Finally, the Putative Republican Intervenors include Republican Party organizations in Morris, Warren, Cumberland, and Union Counties, who are "registered with the New Jersey Election Law Enforcement Commission with its leadership being duly elected by County Committee members who themselves are chosen by Republican voters in a primary election every two years."

Intervenors. (Docket Entry No. 141, at 23-24; Docket Entry No. 160, at 8-9.) As part of this request, Plaintiffs refer to Rule 16(c)(2)(L), which instructs the Court to consider, in pretrial conferences: "the need for adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems."

Notably, the Putative Republican Intervenors agree that appointment of one lead counsel to represent their interests going forward in this matter is appropriate. (Docket Entry No. 161, at 8.) Recognizing Plaintiffs' requests, the Putative Republican Intervenors have filed one unified reply brief utilizing the same counsel. (*Id.*) Since this issue is not in dispute, William J. Palatucci, Esq., shall be appointed as lead counsel for the four Putative Republican Intervenors. With respect to Plaintiffs' request to appoint lead counsel for CCDC, RDO-UC, and MCDO, it appears that MCDO, in its reply brief, has opposed appointing lead counsel on its behalf. (Docket Entry No. 149, at 11-12.) The Court agrees with MCDO's position that there is no need to assign these groups with lead counsel at this time. Plaintiffs' request to appoint lead counsel for CCDC, RDO-UC, and MCDO, is denied, without prejudice. In the event issues arise in the future, Plaintiffs may renew their request to appoint lead counsel for these groups.

### IV.   CONCLUSION

For the reasons stated above, and for good cause shown,

**IT IS** on this 31st day of March, 2023,

**ORDERED** that the Motions to Intervene (Docket Entry Nos. 126, 128, 138, 140, 150, 151, 152, and 153) are **GRANTED**; and it is further

**ORDERED** that Plaintiffs' Request to Appoint Lead Counsel for the Putative Republican Intervenors is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' Request to Appoint Lead Counsel for CCDC, RDO-UC, AND MCDO, is **DENIED**, without prejudice, for the reasons consistent with this opinion; and it is

further

**ORDERED** that the Proposed Intervenors file their responsive pleadings no later than April 28, 2023; and it is further

**ORDERED** that the Clerk of Court terminate Docket Entry Nos. 126, 128, 138, 140, 150, 151, 152, and 153.

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**
