**BROWN & CONNERY, LLP**
William M. Tambussi, Esquire
Alyssa I. Lott, Esquire
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
(856) 854-8900
*Attorneys for Intervenor, Camden County Democratic Committee*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDY KIM, in his personal capacity as a candidate for U.S. Senate, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et al.,<br><br>Defendants. | Case No.: 3:24-cv-01098-ZNQ-TJB |
| CHRISTINE CONFORTI, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et al.,<br><br>Defendants. | Case No.: 3:20-cv-08267-ZNQ-TJB |

**BRIEF ON BEHALF OF INTERVENOR, CAMDEN COUNTY DEMOCRATIC COMMITTEE, IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CROSS-MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FED. R. CIV. P. 12(b)(1)**

BROWN & CONNERY, LLP
William M. Tambussi, Esquire
Alyssa I. Lott, Esquire
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
(856) 854-8900
*Attorneys for Intervenor, Camden County Democratic Committee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................iv

INTRODUCTION ..............................................................................................1

STATEMENT OF FACTS ...................................................................................3

    A.    The *Conforti* Matter.......................................................................3

    B.    The *Kim* Matter ...........................................................................5

LEGAL ARGUMENT.........................................................................................8

    A.    This Court Lacks Subject Matter Jurisdiction As
          Plaintiffs' Claims Are Moot.........................................................8

    B.    Plaintiffs Are Not Entitled To a Permanent Injunction
          Based Upon The Existing Record ....................................................14

          1.    Plaintiffs Cannot Demonstrate Actual Success On
               The Merits ................................................................15

          2.    Plaintiffs Have Not Shown Any Probability of
               Irreparable Injury Based On the Existing Record....................20

          3.    CCDC Will Be Harmed If This Court Were To
               Enter A Permanent Injunction .................................................22

          4.    The Public Interest Favors Denial of A Permanent
               Injunction Based On The Existing Record ...............................26

CONCLUSION ................................................................................................27

# TABLE OF AUTHORITIES

## <u>FEDERAL CASES</u>

*Am. Party of Tex. v. White*,
415 U.S. 767 (1974)......................................................................................24

*Children's Health Def., Inc. v. Rutgers, State Univ. of New Jersey*,
2022 U.S. Dist. LEXIS 171798 (D.N.J. Sept. 22, 2022) .........................9

*Church & Dwight Co. v. S.C. Johnson & Son*,
873 F. Supp. 893 (D.N.J. 1994) ......................................................14, 15

*Clark v. Governor of New Jersey*,
53 F.4th 769 (3d Cir. 2022)
*cert. denied, Clark v. Murphy*,
143 S. Ct. 2436 (2023)...................................................................10, 11

*CNA v. United States*,
535 F.3d 132 (3d Cir. 2008) ...............................................................8, 9

*Democratic-Republican Org. v. Guadagno*,
900 F.Supp.2d 447 (D.N.J. 2012),
*aff'd*, 700 F.3d 130 (3d Cir. 2012).............................................16, 17, 18, 19

*Eu v. S.F. Cty. Democratic Cent. Comm.*,
489 U.S. 214 (1989) ...........................................................................23

*Frank's GMC Truck Ctr., Inc. v. General Motors Corp.*,
847 F.2d 100 (3d Cir. 1988) ................................................................14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
528 U.S. 167 (2000) ...........................................................................11

*Genesis Healthcare Corp. v. Symczyk*,
569 U.S. 66 (2013).......................................................................10, 11

*Gould Elecs. Inc. v. United States*,
229 F.3d 169 (3d Cir. 2000) .................................................................9

*In re Kulp Foundry, Inc.*,
691 F.2d 1125 (3d Cir. 1982)...................................................................11

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
678 F.3d 235 (3d Cir. 2012) ...................................................................8

*In re Surrick*,
338 F.3d 224 (3d Cir. 2003)...................................................................10

*Kim v. Hanlon*,
99 F.4th 140 (3d Cir. 2024) ...................................................................23

*Kingdomware Technologies, Inc. v. United States*,
579 U.S. 162 (2016)...................................................................13

*Lackey v. Stinnie*,
No. 23-621, 604 U.S. __, slip op. (2025)...................................................15, 16

*Lewis v. Continental Bank Corp.*,
494 U.S. 472 (1990)...................................................................11

*Logan v. Garland*,
2024 U.S. Dist. LEXIS 214969 (D.N.J. Nov. 26, 2024) .......................10, 13, 14, 26

*Mayer v. Wallingford-Swarthmore Sch. Dist.*,
405 F. Supp. 3d 637 (E.D. Pa. 2019) ...................................................................9

*McLendon v. Continental Can Co.*,
908 F.2d 1171 (3d Cir. 1990)...................................................................15

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
549 F.2d 884 (3d Cir. 1977) ...................................................................9

*Murphy v. Hunt*,
455 U.S. 478 (1982)...................................................................11

*N.Y. State Bd. of Elections v. Lopez Torres*,
552 U.S. 196 (2008)...................................................................18, 19

*Salamon v. Knight*,
2024 U.S. Dist. LEXIS 207721 (D.N.J. Nov. 14, 2024) ........................................11

*Timmons v. Twin Cities Area New Party*,
520 U.S. 351 (1997)........................................................................19

*Toll Bros., Inc. v. Twp. Of Readington*,
555 F.3d 131 (3d Cir. 2009)................................................................10

*Turner v. Rogers*,
564 U.S 431 (2011)........................................................................13

*United States ex rel. Atkinson v. Pa. Shipbuilding Co.*,
473 F.3d 506 (3d Cir. 2007) ...............................................................9

*United States v. Sanchez-Gomez*,
584 U.S. 381 (2018)........................................................................13

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State*,
454 U.S. 464 (1982)........................................................................10

*Williams v. Rhodes*,
393 U.S. 23 (1968)......................................................................23, 24

## STATE CASES

*Schundler v. Donovan*,
377, N.J. Super. 339 (App. Div. 2005) .....................................................18

## RULES

Fed. R. Civ. P. 12(b)(1) ...................................................................8

## INTRODUCTION

These cases involve constitutional challenges to New Jersey's primary election bracketing system and ballot position and placement system. Plaintiffs in both the *Conforti v. Hanlon* and *Kim v. Hanlon* matters (collectively, "Plaintiffs") instituted these actions seeking a declaration that New Jersey's primary election bracketing and ballot position placement system is unconstitutional. The *Kim* Plaintiffs also sought injunctive relief to ensure that the purported primacy effect and positional bias do not advantage bracketed candidates over other candidates running for the same office. The Camden County Democratic Committee ("CCDC") intervened in both the *Conforti* matter and *Kim* matter to protect its own and independent First Amendment rights. CCDC also opposed the preliminary injunction in the *Kim* matter. The district court granted the *Kim* Plaintiffs' motion for a preliminary injunction, which CCDC appealed. The Third Circuit affirmed the district court's order granting a preliminary injunction.

Plaintiffs filed a Motion for Summary Judgment. CCDC files the instant Opposition to Plaintiffs' Motion for Summary Judgment and Cross-Motion to Dismiss for Lack of Subject Matter Jurisdiction.[1]

---

[1] On March 14, 2025, CCDC filed a Motion to Deny a Permanent Injunction. *See* ECF No. 297. The Court conducted a conference on March 31, 2025 to address the posture of the pending Motions. *See* ECF No. 300. Following the conference, the Court advised Counsel for CCDC that "its motion for denial of permanent injunction [Docket Entry No. [297]] is dismissed with instructions to reframe as opposition or cross motion to Plaintiffs' summary judgment motion [Docket Entry No. [298]]." *Id.* CCDC maintains that its initial filing of a Motion to Deny a

For the reasons more fully explained below, Plaintiffs' motion for summary judgment seeking a permanent injunction should be denied and CCDC's cross-motion to dismiss should be granted because Plaintiffs' claims are moot, and there is sufficient time until the next primary election for Plaintiffs to seek injunctive relief should they sustain any harm to create a live case or controversy.  Second, a permanent injunction should be denied as Plaintiffs cannot demonstrate actual success on the merits of their claims or show that they will suffer irreparable harm absent a permanent injunction.  Lastly, a permanent injunction should be denied based on the existing record because (1) Plaintiffs have not produced any expert report that analyzes and opines on their entitlement for a permanent injunction; (2) this Court's order granting a preliminary injunction applied only to the 2024 Democratic Primary and there has been no decision as to whether the injunction would apply to the Republican party ballot, which is discriminatory to the Democratic party and gives rise to equal protection concerns; and (3) Plaintiffs have not submitted any proofs regarding the results of the 2024 Republican Primary, where use of a county-line ballot was permissible, which is relevant to the analysis of Plaintiffs' claims in these actions.

---

Permanent Injunction was procedurally proper and correct, and has found no authority to the contrary.

As such, Intervenor CCDC respectfully requests that this Court deny Plaintiffs' motion for summary judgment seeking a permanent injunction based on the existing record and grant its cross-motion to dismiss for lack of subject matter jurisdiction.

## STATEMENT OF FACTS

**A.    The *Conforti* Matter**

On January 25, 2021, Plaintiffs, Christine Conforti; Arati Kreibich; Mico Lucide; Joseph Marchica; Kevin McMillan, Zinovia Spezakis; and New Jersey Working Families Alliance, Inc. ("NJWF") (collectively "*Conforti* Plaintiffs"), filed their First Amended Complaint against Defendants, Christine Giordano Hanlon, in her official capacity as Monmouth County Clerk; Scott M. Colabella, in his official capacity as Ocean County Clerk; Paula Sollami Covello, in her official capacity as Mercer County Clerk; John S. Hogan, in his official capacity as Bergen County Clerk; Edward P. McGettigan, in his official capacity as Atlantic County Clerk; and E. Junior Maldonado, in his official capacity as Hudson County Clerk. *See* CCDC's Counterstatement of Material Facts [hereinafter, "CSMF"], at ¶ 1.

Plaintiffs Conforti and Kreibich were federal candidates for the July 7, 2020 Democratic Primary Election. *See* CSMF ¶ 2. Plaintiff Lucide was a candidate running for County Clerk in Atlantic County in the June 8, 2021 Democratic Primary Election and a "future" candidate who intends to run for Atlantic County Clerk in

2026.  *See* CSMF ¶ 3.  Plaintiff Marchica was a candidate running for party office on the County Committee in Mercer County from Hamilton Township's 27th Election District in connection with the July 7, 2020 Democratic Primary and, at the time of the filing of the First Amended Complaint, he intended to run again in 2022. *See* CSMF ¶ 4.  Plaintiff McMillan was an incumbent Township Committeeperson in Neptune Township and sought reelection to the Neptune Township Committee in connection with the July 7, 2022 Democratic Primary Election.  *See* CSMF ¶ 5.  At the time of the filing of the First Amended Complaint, he was "contemplating running for office again in the future[.]"  *See* CSMF ¶ 6.  Plaintiff Spezakis was a federal candidate in the July 7, 2020 Democratic Primary Election and, at the time of the First Amended Complaint, intended to run for the same congressional seat in the June 7, 2022 Democratic Primary Election.  CSMF ¶ 7.  Plaintiff NJWF "organizes campaigns to advance progressive policies and works to elect candidates who share its values and policy priorities."  *See* CSMF ¶ 8.

The *Conforti* Plaintiffs assert various claims and alleged constitutional violations concerning New Jersey's primary election system.  *See* CSMF ¶ 9. Specifically, the *Conforti* Plaintiffs claim that "New Jersey primary election ballots are configured to stack the deck for certain candidates at the expense of others, thereby undermining the integrity of elections and hindering our democracy."  *See* CSMF ¶ 10.  *Conforti* Plaintiffs seek a declaration that New Jersey's primary

election bracketing and ballot placement system is unconstitutional, and seek injunctive relief "to ensure that the primacy effect/positional bias and weight of the line do not continue to advantage bracketed candidates over other candidates running for the same office . . . ." *See* CSMF ¶ 11.

On July 21, 2022, CCDC filed a Motion to Intervene. *See* CSMF ¶ 12. On March 31, 2023, the district court granted CCDC's Motion to Intervene and found that CCDC satisfied the elements of permissive intervention. *See* CSMF ¶ 13.

## B.    The *Kim* Matter

On February 26, 2024, Plaintiffs, Andy Kim, in his personal capacity as a candidate for U.S. Senate; Andy Kim for New Jersey; Sarah Schoengood; Sarah for New Jersey; Carolyn Rush; and Carolyn Rush for Congress (collectively "*Kim* Plaintiffs"), filed a Verified Complaint against Defendants, the County Clerks, in their official capacities, in 19 of the 21 counties in New Jersey, excluding Salem and Sussex Counties. *See* CSMF ¶ 14. The *Kim* Plaintiffs' Verified Complaint asserts various claims challenging the constitutionality of New Jersey's primary election bracketing system and ballot position and placement system. *See* CSMF ¶ 15.

The *Kim* Plaintiffs seek a judgment that New Jersey's primary election bracketing and ballot placement system is unconstitutional. *See* CSMF ¶ 16. Specifically, *Kim* Plaintiffs seek a judgment that the following practices and the statutes that enable them violate the United States Constitution with respect to

primary elections in New Jersey: (1) ballots designed by columns or rows, rather than by office sought; (2) ballot draws that do not include a separate drawing for every office and where every candidate running for the same office does not have an equal chance at the first ballot position; (3) positioning candidates on the ballot automatically based upon a ballot draw among candidates for a different office; (4) placement of candidates such that there is an incongruous separation from other candidates running for the same office; (5) placement of candidates underneath another candidate running for the same office, where the rest of the candidates are listed horizontally, or to the side of another candidate running for the same office, where the rest of the candidates are listed vertically; and (6) bracketing candidates together on the ballot such that candidates for different offices are featured on the same column (or row) of the ballot.  *See* CSMF ¶ 17.  The *Kim* Plaintiffs also seek, among other things, judgment awarding *Kim* Plaintiffs all reasonable attorneys' fees, costs, and disbursements incurred in connection with bringing this action pursuant to 42 U.S.C. § 1988, and other applicable laws.  *See* CSMF ¶ 18.

Contemporaneous with the filing of the Verified Complaint, the *Kim* Plaintiffs filed a Motion for Preliminary Injunction, seeking to enjoin Defendant Clerks from preparing or using any ballot design in the then-upcoming 2024 primary election that, in *Kim* Plaintiffs' view, is unconstitutional and require Defendant Clerks to use for all voters an office-block ballot rather than a ballot organized by column or row.

*See* CSMF ¶ 19.  The *Kim* Plaintiffs also sought to enjoin Defendant Clerks from conducting draws for ballot positions that do not include a separate drawing for every office and candidate, and where every candidate running for the same office has an equal chance at the first ballot position.  *See* CSMF ¶ 20.

On March 4, 2024, CCDC filed a Motion to Intervene pursuant to Fed. R. Civ. P. 24 and an Opposition to *Kim* Plaintiffs' Request for Injunctive Relief.  *See* CSMF ¶ 21.  CCDC, a statutory non-profit regular Democratic Party Organization for Camden County, intervened to protect its First Amendment rights and opposed the request for injunctive relief.  *See* CSMF ¶ 22.  On March 14, 2024, this Court granted CCDC's motion to intervene, finding that CCDC satisfied the elements of permissive intervention under Fed. R. Civ. P. 24(b)(1)(B), and that CCDC "has defenses that share common questions of law and fact regarding the constitutionality of New Jersey's primary election system, as well as its administration and application of New Jersey's election laws."  *See* CSMF ¶ 23.

On March 18, 2024, pursuant to Fed. R. Civ. P. 65, this Court conducted an evidentiary hearing on *Kim* Plaintiffs' Motion for Preliminary Injunction.  *See* CSMF ¶ 24.  This Court ultimately granted the *Kim* Plaintiffs' Motion for Preliminary Injunction.  *See* CSMF ¶ 25.  The CCDC appealed, and the Third Circuit ultimately upheld the district court's order granting the preliminary injunction.  *See* CSMF ¶ 26.  On May 9, 2024, the certified judgment of the Third Circuit was entered

in lieu of a formal mandate. *See* CSMF ¶ 27. On remand, the parties have engaged

in good-faith discussions to resolve these matters, and various county clerks have

entered into settlements with Plaintiffs in both the *Conforti* and *Kim* matters. *See*

CSMF ¶ 28. Intervenor CCDC now files the instant Opposition to Plaintiffs' Motion

for Summary Judgment and Cross-Motion to Dismiss for Lack of Subject Matter

Jurisdiction.

## LEGAL ARGUMENT

**A.    This Court Lacks Subject Matter Jurisdiction As Plaintiffs' Claims Are Moot.[2]**

A court must grant a motion to dismiss under Federal Rule of Civil Procedure

12(b)(1) if it lacks subject matter jurisdiction. *In re Schering Plough Corp.*

*Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012); *Fed. R.*

*Civ. P.* 12(b)(1). Under Rule 12(b)(1), an attack on subject matter jurisdiction may

be either a facial or a factual attack. *CNA v. United States*, 535 F.3d 132, 139 (3d

Cir. 2008). A facial attack "concerns an alleged pleading deficiency whereas a

factual attack concerns the actual failure of a plaintiff's claims to comport factually

with the jurisdictional prerequisites." *Id.* (internal quotation marks omitted and

citation omitted) (alteration omitted). In a facial attack, "the court looks only at the

---

[2] CCDC incorporates by reference the arguments set forth by Defendants Joanne Rajoppi and John S. Hogan in support of their Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction and Defendant Hogan's Motion for Summary Judgment, that Plaintiffs' claims are also moot because of the Legislature's adoption of a revised ballot design. *See Kim* Docket, ECF Nos. 295, 296; *Conforti* Docket, ECF No. 232.

allegations in the pleadings and does so in the light most favorable to the plaintiff." *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In a factual attack, "it is permissible for a court to review evidence outside the pleadings." *Id.* (citing *Gould Elecs. Inc. v. United States*, 229 F.3d 169, 176 (3d Cir. 2000)).

Challenges to mootness are factual attacks. *See*, *e.g.*, *Children's Health Def., Inc. v. Rutgers, State Univ. of New Jersey*, 2022 U.S. Dist. LEXIS 171798, at *11 (D.N.J. Sept. 22, 2022) ("A challenge for mootness is properly brought by a Rule 12(b)(1) motion and constitutes a factual attack on the jurisdictional facts; thus, the court may consider evidence outside the pleadings."); *Mayer v. Wallingford-Swarthmore Sch. Dist.*, 405 F. Supp. 3d 637, 640 (E.D. Pa. 2019) ("Mootness is a proper basis for a 12(b)(1) motion to dismiss because the mootness doctrine implicates jurisdictional matters."). In reviewing a Rule 12(b)(1) motion, "no presumption of truthfulness attaches to the allegations of the plaintiff." *CNA*, 535 F.3d at 139; *Mortensen*, 549 F.2d at 891. Further, the plaintiff bears the burden to establish jurisdiction, and the court has the authority to make factual findings beyond the pleadings that are decisive to the issue of jurisdiction. *CNA*, 535 F.3d at 145; *Atkinson*, 473 F.3d at 514.

9

"Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, 454 U.S. 464, 471 (1982). "The 'case' or 'controversy' requirement is enforced through a number of justiciability doctrines, which include . . . mootness[.]" *Logan v. Garland*, 2024 U.S. Dist. LEXIS 214969, at *10-11 (D.N.J. Nov. 26, 2024) (citing *Toll Bros., Inc. v. Twp. Of Readington*, 555 F.3d 131, 137 (3d Cir. 2009)). A "corollary to this case-or-controversy requirement is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013).   The existence of a case or controversy requires (1) "a legal controversy that is real and not hypothetical; (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication; and (3) a legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution." *In re Surrick*, 338 F.3d 224, 229-30 (3d Cir. 2003).

A case is moot and no longer justiciable when the parties no longer have a personal stake in the outcome. *Clark v. Governor of New Jersey*, 53 F.4th 769, 775 (3d Cir. 2022), *cert. denied, Clark v. Murphy*, 143 S. Ct. 2436 (2023). "A case will be considered moot, and therefore nonjusticiable as involving no case or controversy, if 'the issues presented are no longer 'live' or the parties lack a legally

10

cognizable interest in the outcome.'" *In re Kulp Foundry, Inc.*, 691 F.2d 1125, 1128 (3d Cir. 1982) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). "When a court can no longer grant effectual relief to the prevailing party, even where the lawfulness of the defendant's conduct that precipitated the suit remains hotly contested, the case is no longer justiciable." *Salamon v. Knight*, 2024 U.S. Dist. LEXIS 207721, at *7-8 (D.N.J. Nov. 14, 2024) (citing *Clark*, 53 F.4th at 775).

"A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp.*, 569 U.S. at 72 (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990)).

Here, intervening circumstances deprive all of these Plaintiffs of any "personal stake in the outcome of the lawsuit" and, therefore, these cases must be dismissed as moot. Regarding the *Conforti* matter, all of the *Conforti* Plaintiffs are former candidates in the 2020, 2021, or 2022 Democratic Primary Elections. *See Conforti* Docket, ECF No. 33, ¶¶ 19-48. These primaries have all passed. None of the *Conforti* Plaintiffs are current candidates running for any office. *Id.* Moreover, while some of the *Conforti* Plaintiffs have expressed a "future" intention to run, such

11

an intention is speculative at best and the respective *Conforti* Plaintiffs have not

sustained any theoretical harm for an election that has not yet occurred.

Regarding the *Kim* matter, all of the *Kim* Plaintiffs' allegations and the

requested relief relate solely to the 2024 Democratic Primary. *See Kim* Docket, ECF

No. 1.  In fact, the Verified Complaint alleges that all three Plaintiffs were candidates

for the 2024 Democratic Primary only.  *Id.* ¶¶ 24-27.  In their Brief in Support of

Motion for Preliminary Injunction, Plaintiffs argue that "The Verified Complaint

and accompanying documents demonstrate that Plaintiffs are virtually certain to be

irreparably harmed by the Defendants' conduct in the upcoming June 4, 2024

Democratic Primary Election ("Primary Election") absent relief by this Court . . . ."

*See Kim* Docket, ECF No. 5-1, at 9.  The June 4, 2024 Democratic Primary has

already occurred.  Accordingly, Plaintiffs no longer have a live issue or a legally

cognizable interest in the outcome that would allow this case to remain justiciable

because the occurrence of the 2024 Democratic Primary renders this case moot.

This Court's Order granting Plaintiffs injunctive relief is likewise rendered

moot.  As stated, this Court made clear that "the preliminary injunction granted in

this case is, and must be, limited to the 2024 Democratic Primary Election."  *See*

*Kim* Docket, ECF No. 207.  Plaintiffs' allegations, requested relief, and the evidence

set forth in the record in support of Plaintiffs' claims related to the 2024 Democratic

Primary, which has passed.  This Court specifically "decline[d] to extend the scope

of its decision beyond the limitations of this present litigation." *Id.* Because the 2024 Democratic Primary has passed and this Court's Order extended no further, Plaintiffs' claims are moot and this Court cannot provide any relief. *See Logan*, 2024 U.S. Dist. LEXIS 214969, at *14-15 (denying plaintiff's motions for preliminary injunctions related to the U.S. election on November 5, 2024 stating, "As the election has already passed, the Court finds the Election Injunctions are moot, as the Court cannot offer any relief.").

A narrow exception to the mootness doctrine exists where the legal issue is capable of repetition yet evading review. *United States v. Sanchez-Gomez*, 584 U.S. 381, 391 (2018) (quoting *Kingdomware Technologies, Inc. v. United States*, 579 U.S. 162, 170 (2016)). To satisfy this exception, it is Plaintiffs' burden to establish "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Id.* (quoting *Turner v. Rogers*, 564 U.S 431, 439-40 (2011)).

Here, there is sufficient time between the next primary election for any of the Plaintiffs in either of these matters to seek injunctive relief. Thus, any future action will not be too short in duration to be litigated before the case becomes moot.

This Court recently denied as moot motions for preliminary injunctions related to the U.S. election on November 5, 2024, stating:

> Given there are four years before the next federal
> presidential election, and two years until the next midterm
> election, Plaintiff "will have ample time, if necessary, to
> bring a new motion for injunctive relief" meaning that
> "any future challenged action will not be 'too short in
> duration to be fully litigated before the case will become
> moot.'" . . . Therefore, the "capable of repetition"
> exception does not apply to Plaintiff's two Election
> Injunctions.

*Logan*, 2024 U.S. Dist. LEXIS 214969, at *14-15 (citations omitted).

Similarly, here, the capable of repetition exception does not apply because
there is ample time until the next primary election such that "any future challenged
action will not be 'too short in duration to be fully litigated before the case will
become moot.'" *Id.* (citations omitted).  As such, Plaintiffs' claims are moot.

**B.  Plaintiffs Are Not Entitled To A Permanent Injunction Based Upon The
Existing Record.**

Plaintiffs are not entitled to a permanent injunction based upon the existing
record because they cannot show actual success on the merits or irreparable harm in
the absence of relief.

"The grant of a permanent injunction is an 'extraordinary remedy, which
should be granted only in limited circumstances.'" *Church & Dwight Co. v. S.C.
Johnson & Son*, 873 F. Supp. 893, 903 (D.N.J. 1994) (quoting *Frank's GMC Truck
Ctr., Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)).  "The standard
for a permanent injunction is essentially the same as for a preliminary injunction
with the exception that the movant must demonstrate actual success on the merits

rather than showing a likelihood of success on the merits. *Id.* at 903. "A court must consider four factors when determining whether a permanent injunction should issue: (1) the moving party's success on the merits; (2) the probability of irreparable injury to the moving party in the absence of relief; (3) the potential harm to the non-moving party; and, if applicable, (4) the public interest." *Id.* "In granting injunctive relief, the court's remedy should be no broader than necessary to provide full relief to the aggrieved plaintiff." *McLendon v. Continental Can Co.*, 908 F.2d 1171, 1182 (3d Cir. 1990). Further, "a permanent injunction will issue only where a threat of harm exists, not just where potential harm exists." *Id.*

## 1. Plaintiffs Cannot Demonstrate Actual Success On the Merits.

The United States Supreme Court in *Lackey v. Stinnie* recently addressed the "transient nature of preliminary injunctions" and cautioned against equating the 'likelihood of success on the merits' with actual 'success' on the merits. *Lackey v. Stinnie*, No. 23-621, 604 U.S. __, slip op. at 6 (2025). There, the U.S. Supreme Court explained:

> Preliminary injunctions, however, do not conclusively resolve legal disputes. In awarding preliminary injunctions, courts determine if a plaintiff is likely to succeed on the merits—along with the risk of irreparable harm, the balance of the equities, and the public interest. The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, . . . and to balance the equities as the litigation moves forward. Crafting a preliminary injunction is an exercise of discretion and judgment, often

> dependent as much on the equities of a given case as the
> substance of the legal issues it presents. Such relief is also
> customarily granted on the basis of procedures that are less
> formal and evidence that is less complete than in a trial on
> the merits. As a result, we have previously cautioned
> against improperly equating 'likelihood of success' with
> 'success' and treating preliminary injunctions as
> tantamount to decisions on the underlying merits.

*Id.* (internal quotations and citations omitted).

Here, based upon the existing record, none of the Plaintiffs can demonstrate **actual** success on the merits. Plaintiffs do not allege that they have been denied access to the ballot. Rather, Plaintiffs' claims and alleged harms are grounded in ballot placement, which is not a constitutional harm for which the First Amendment provides a remedy. Indeed, the district court in *Democratic-Republican Org. v. Guadagno* previously rejected a request for emergent relief following a challenge to New Jersey's ballot placement system. There, the district court recognized the distinction between ballot access and ballot placement, stating that the latter is "a less important aspect of voting than access:

> Ballot access is recognized as an important aspect of
> voting rights . . . and it cannot be argued that placement on
> the ballot is more important than access to the ballot
> because placement is irrelevant without access. Thus, it
> necessarily follows that if a candidate's ballot access can
> be regulated by the state . . . a candidate's ballot placement
> can also be regulated, as placement is surely a less
> important aspect of voting than access.

*Democratic-Republican Org. v. Guadagno*, 900 F.Supp.2d 447, 456 (D.N.J. 2012), *aff'd*, 700 F.3d 130 (3d Cir. 2012) (internal citations omitted).

16

The district court further acknowledged that "States may treat candidates affiliated with political parties differently than unaffiliated candidates," *id.,* and ultimately held that:

> placing political party candidates on the left side of the ballot and all other candidates on the right side . . . does not violate Plaintiffs' constitutional rights. These statutes impose, at most, a minimal burden on Plaintiffs' ballot access. Because the Plaintiffs' burden, if any, is negligible, any reasonable regulatory interest provided by the State will ensure the statutes' constitutionality under *Anderson. Council of Alternative Political Parties v. Hooks*, 179 F.3d 64, 78 (3d Cir. 1999) . . . Here, the State has explained that the statute is grounded in the integrity of the election process by ensuring that voters can clearly identify which candidates are affiliated with political parties.

*Id.* at 459.

The Third Circuit substantially affirmed the district court's decision in *Democratic-Republican Org v. Guadagno* for the reasons set forth by the district court. The Third Circuit further found that the district court correctly applied the balancing test articulated by the U.S. Supreme Court in *Anderson*, and included the following:

> The District Court concluded that Plaintiffs failed to provide any support of evidence that the ballot placement provisions for political party candidates burdened their independent candidacies. Furthermore, the District Court recognized that New Jersey's interest in maintaining a manageable ballot sufficiently justified its statutory scheme. Additionally, it concluded that Plaintiffs failed to

17

> establish that prohibiting them from referencing the names
> of New Jersey's political parties in their ballot slogan
> impermissibly burdened their First Amendment rights,
> and that the State's interest of avoiding voter confusion
> justified the ballot slogan limitation.

*Guadagno*, 700 F.3d at 131.

Plaintiffs do not have a constitutional right to appear in first position on the primary ballot. Thus, any alleged advantage conferred to a candidate who obtains first position on the primary ballot because of the "luck of the draw" is not a constitutional injury that can be redressed through the First Amendment. *See Schundler v. Donovan*, 377, N.J. Super. 339, 349 (App. Div. 2005) ("we can discern no way of remedying the type of inequality that comes from 'the luck of the draw.'"). This is consistent with the U.S. Supreme Court's decision in *N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 205 (2008), wherein the Court stated that "[n]one of our cases establishes an individual's constitutional right to have a 'fair shot' at winning the party's nomination." And what constitutes a 'fair shot' is a reasonable question for legislative judgment, not a constitutional question:

> What constitutes a 'fair shot' is a reasonable enough
> question for legislative judgment, which we will accept so
> long as it does not too much infringe upon the party's
> associational rights. But it is hardly a manageable
> constitutional question for judges—especially judges in
> our legal system, where traditional electoral practice gives
> no hint of even the existence, must less the content, of a
> constitutional requirement for a 'fair shot' at party
> nomination.

18

*Id.* at 205-06.

States can enact regulations to ensure orderly elections. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) ("States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder."). The U.S. Supreme Court in *Lopez Torres* acknowledged that States should be free to do so without unnecessary government interference:

> The States can, within limits (that is, short of violating the parties' freedom of association), discourage party monopoly—for example, by refusing to show party endorsement on the election ballot. But the Constitution provides no authority for federal courts to prescribe such a course.

*Lopez Torres*, 552 U.S. at 208.

Here, Plaintiffs cannot demonstrate that they will actually succeed on the merits of their claims because they have not alleged any constitutional harm that can be remedied by the First Amendment. All of the Plaintiffs' harms are grounded in ballot placement. Plaintiffs do not allege that they have been denied access to the ballot. Plaintiffs do not allege any burden on the right to vote. Nor do they allege that voters have been denied the ability to elect a candidate of their choice. Plaintiffs' alleged harm is based solely on ballot placement, which not a constitutional harm for which the First Amendment can provide any relief. *See Guadagno*, 900 F.Supp.2d at 456, 458. For these reasons, Plaintiffs cannot

19

demonstrate actual success on the merits and, thus, a permanent injunction should be denied.

**2. Plaintiffs Have Not Shown Any Probability of Irreparable Injury Based On The Existing Record.**

Plaintiffs have not demonstrated any probability that they would suffer irreparable injury based upon the existing record. As set forth above in Section A, all of Plaintiffs' claims are moot. Furthermore, *Kim* Plaintiffs only sought a preliminary injunction regarding the June 4, 2024 primary, *see Kim* Docket, ECF No. 1, and this Court's order granting Plaintiffs' motion for a preliminary injunction applied only to the June 4, 2024 Democratic Primary. *See Kim* Docket, ECF Nos. 195, 207. The June 4, 2024 Democratic Primary has since passed. As such, Plaintiffs cannot demonstrate any probability of irreparable injury based on the existing record as this Court's Order applied to one primary as to one political party, which has since occurred, and there is currently no existing harm that a decision by this Court could rectify.

Notwithstanding, Plaintiffs have not shown any harm would result absent a permanent injunction based upon this record. Plaintiffs have not provided any expert report that analyzes and opines as to Plaintiffs' entitlement for a permanent injunction. The only reports submitted in this case were in support of Plaintiffs' motion for preliminary injunction, which undermine any contention that Plaintiffs are entitled to a permanent injunction based on the existing record.

20

For example, during her testimony at the preliminary injunction hearing, Dr. Julia Sass Rubin testified that she did not conduct any statistical analysis to determine whether any other factors other than the county line, such as incumbency, prior legislative experience, candidate popularity, name identification or recognition, endorsements, campaign financing, and fundraising could have contributed to a candidate's success in their election. *See Kim* Docket, ECF No. 230, Transcript of Preliminary Injunction Hearing, dated March 18, 2024, at 320:24-332:15). Similarly, in his report, Dr. Josh Pasek, in analyzing the effects of association or non-association, stated that "it is not possible to fully disentangle the effects of the line, of endorsements, of bracketing, of being listed toward of left side of the ballot, and of voter confusion at the same time while presenting voters with ballots that resemble those they could actually receive." *See Kim* Docket, ECF No. 1, Ex. B, Expert Report by Dr. Josh Pasek, at ¶ 173. However, as stated above, there are several other factors that Dr. Pasek, like Dr. Sass Rubin, did not analyze, including incumbency, campaign financing, fundraising, and name identification.[3] Absent any report evaluating the effect of any of these additional variables, Plaintiffs have not demonstrated that there is a consistent benefit conferred to those who bracket and a consistent harm to those who choose not to bracket sufficient to

---

[3] CCDC incorporates by reference the argument and analysis submitted by Counsel for Defendant, Joanne Rajoppi, on March 22, 2024, regarding the intended cross examination of Dr. Josh Pasek, in response to the Court's instruction during the preliminary injunction hearing that the parties provide any supplemental cross examination materials. *See Kim* Docket, ECF No. 165.

establish an irreparable injury to obtain a permanent injunction.

Nor have Plaintiffs submitted any proofs regarding the results of the 2024 Republican Primary. As stated above, this Court's order granting Plaintiffs' motion for a preliminary injunction applied only to the June 4, 2024 Democratic Primary. *See Kim* Docket, ECF Nos. 195, 207. Thus, the Republicans were permitted to utilize a county-line ballot in the 2024 primary. However, Plaintiffs have not submitted any expert report or evidence regarding the results of the 2024 Republican Primary, which could opine as to whether any consistent benefit or detriment was provided to those who chose to bracket and those who chose not to bracket. This information could further provide insight regarding whether any other variables other than the county line could have contributed to the success of any candidate. Without these proofs, a permanent injunction would be inappropriate on the existing record.

**3. CCDC Will Be Harmed If This Court Were To Enter A Permanent Injunction.**

CCDC would be harmed if this Court were to enter a permanent injunction based on the existing record. CCDC has maintained that it has an identifiable, significantly protectable legal interest in its freedom to associate with Democratic candidates for office as afforded by the First Amendment. This includes the right to not only endorse and identify candidates that share CCDC's ideologies and preferences, but to group the candidates in a manner that informs voters of the

22

individuals who constitute the association to advance their shared interests.  *See Kim v. Hanlon*, 99 F.4th 140, 154 (3d Cir. 2024); *See also Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214 (1989).  As argued above, Plaintiffs' alleged harm centers around ballot placement, which is not a constitutional harm for which the First Amendment provides a remedy.  However, as recognized in *Eu*, imposing limitations on political party organizations who wish to band together, i.e., bracket, while placing no restrictions on individuals acting alone, i.e., unbracketed, is a restraint on a political party organization's freedom of association.  *Eu*, 489 U.S. at 224-25.  Entry of a permanent injunction would impair CCDC's freedom to associate with Democratic candidates that share CCDC's ideologies and preferences.  *See Eu*, 489 U.S. at 224.

CCDC is further harmed by the fact that there is no decision extending this Court's preliminary injunction to the Republican Party, which gives rise to equal protection concerns as to the treatment of political parties and political party organizations.  "No State can pass a law regulating elections that violates the Fourteenth Amendment's command that 'No State shall . . . deny to any person . . . the equal protection of the laws.'" *Williams v. Rhodes*, 393 U.S. 23, 29 (1968).  "The Equal Protection Clause does not make every minor difference in the application of laws to different groups a violation of our Constitution.  But [the Court] ha[s] held many times that 'invidious' distinctions cannot be enacted without a violation of the

Equal Protection Clause." *Id.* at 30.  To assert an equal protection violation, a party must demonstrate "a discrimination against them of some substance." *Am. Party of Tex. v. White*, 415 U.S. 767, 781 (1974).

This Court's Order granting Plaintiffs' motion for a preliminary injunction implicates equal protection concerns because it limited the scope of the injunction to the 2024 Democratic Primary only.  On March 30, 2024, this Court clarified that the "preliminary injunction granted in this case is, and must be, limited to the 2024 Democratic Primary Election," and "decline[d] to extend the scope of its decision beyond the limitations of the present litigation." *See Kim* Docket, ECF No. 207.  As a result, Democratic political party organizations such as CCDC are restricted in their ability to freely associate with Democratic candidates in the primary and to communicate that association to the voters in a manner that readily identifies the individuals who constitute the association through the use of a ballot that features a "county line" and instead are required to utilize an office block ballot design. Conversely, Republican political party organizations are not limited in their abilities to freely associate with candidates through use of the "county line" ballot design, which communicates, in a more intelligible and organized way, the candidates these organizations align and associate with.  As such, CCDC would be harmed by the entry of a permanent injunction as the injunction does not apply to the Republican Party ballots which is discriminatory to Democratic political party organizations.

24

The distinction between political party factions and the unequal treatment in their ability to exercise their freedom to associate justifies denial of a permanent injunction.

Asking this Court to impose a permanent injunction that extends far beyond the relief that Plaintiffs seek and far beyond the scope of the preliminary injunction would cause harm to CCDC. The *Kim* Plaintiffs filed a Verified Complaint and a Motion for Preliminary Injunction seeking relief related solely to the June 4, 2024 Democratic Primary Election. *See Kim* Docket ECF No. 1 (defining "Primary Election" as the "upcoming June 4, 2024 Democratic Primary Election"); ECF No. 5-1, at 2 (same). This Court's Order specifically applied to one primary for one political party. *See Kim* Docket, ECF Nos. 195, 207. The June 4, 2024 Democratic Primary Election has passed. Thus, entering a permanent injunction that extends beyond the relief that Plaintiffs seek and beyond the relief provided in the motion for a preliminary injunction related to one party and one primary would be prejudicial to CCDC. Indeed, this Court, in limiting the injunction to the 2024 Democratic Primary stated that it "declines to extend the scope of its decision beyond the limitations of the present litigation." *See Kim* Docket, ECF No. 207. Granting a permanent injunction that extends beyond the June 4, 2024 Democratic Primary would be extending the preliminary injunction "beyond the limitations of the present litigation."

**4. The Public Interest Favors Denial of A Permanent Injunction Based On The Existing Record.**

The public interest favors denial of a permanent injunction based upon the existing record. As set forth in Section A, all of Plaintiffs' claims are moot as none of the Plaintiffs have a personal stake in the outcome of these lawsuits since the elections giving rise to their claims and alleged harms have already occurred. Granting a permanent injunction based upon alleged harms related to elections that (1) have since passed; (2) that extends far beyond the relief sought by Plaintiffs in their Complaints; and (3) beyond the scope of the preliminary injunction does not serve the public interest. Furthermore, should Plaintiffs run again for office and suffer a concrete harm that creates a live case or controversy, there is ample time until the next primary election for Plaintiffs to seek injunctive relief such that "any future challenged action will not be 'too short in duration to be fully litigated before the case will become moot.'" *Logan*, 2024 U.S. Dist. LEXIS 214969, at *14-15 (citations omitted).

The public interest also favors denial of a permanent injunction based on the existing record. As argued above in Sections B.2, the proofs in the existing record are insufficient to support a permanent injunction. Plaintiffs have not produced any expert report that analyzes and opines on the entitlement for a permanent injunction. Nor have Plaintiffs submitted any report regarding the results of the Republican ballot to demonstrate that there is a consistent benefit and consistent harm to those

who bracket and those who choose not to bracket.  The limited cross-examination conducted at the preliminary injunction hearing shows that the reports submitted by Plaintiffs in the existing record are fundamentally flawed.  *See* Section B.2, *supra.*

Lastly, the public interest favors denial of a permanent injunction based upon the unequal treatment between Democratic and Republican Ballots.  As set forth above in Section B.3, this Court's Order granting the preliminary injunction only applied to the 2024 Democratic Primary.  *See Kim* Docket, ECF No. 207.  There has been no decision regarding whether any injunction would apply to the Republican Party ballots.  Treating the Republican Party ballots differently than the Democratic Party ballots is discriminatory and raises equal protection concerns, which further justifies a denial of a permanent injunction based upon the existing record.

## CONCLUSION

For these reasons, Intervenor CCDC respectfully requests that Plaintiffs' Motion for Summary Judgment be denied and its Cross-Motion to Dismiss for Lack of Subject Matter Jurisdiction be granted.

Respectfully submitted,

**BROWN & CONNERY, LLP**

Dated:  April 14, 2025             /s/ William M. Tambussi
                                   William M. Tambussi, Esq.
                                   Alyssa I. Lott, Esq.
                                   *Attorneys for Intervenor, Camden*
                                   *County Democratic Committee*

27