UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDY KIM, in his personal capacity as a candidate for U.S. Senate, et al.,<br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et al.,<br>　　　　　　　Defendants. | Case No.: 3:24-cv-1098-ZNQ-TJB<br><br><br>CIVIL ACTION |
| CHRISTINE CONFORTI, et al.,<br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>CHRISTINE GIORDANO HANLON, in her official capacity as Monmouth County Clerk, et al.,<br>　　　　　　　Defendants. | Case No.: 3:20-cv-08267-ZNQ-TJB<br><br><br>CIVIL ACTION |

**PLAINTIFFS' BRIEF IN RESPONSE TO ORDERS TO SHOW CAUSE**

**BROMBERG LAW, LLC**
43 West 43rd Street, Suite 32
New York, NY 10036-7424
212-859-5083
ybromberg@bromberglawllc.com
Attorneys for Plaintiffs

Of Counsel and On the Brief:
Brett M. Pugach (032572011)
Yael Bromberg, Esq. (036412011)
Flavio L. Komuves, Esq. (018891997)

**WEISSMAN & MINTZ LLC**
220 Davidson Avenue, Suite 410
Somerset, NJ 08873
732.563.4565
bpugach@weissmanmintz.com
Attorneys for Plaintiffs

## Table of Contents

Table of Authorities ................................................................................................................... ii

Introduction .................................................................................................................................1

Statement of Facts .......................................................................................................................2

Argument

The Orders To Show Cause Should Be Discharged ...................................................................2

1. The *Conforti* Plaintiffs intend to seek office by election in the future, and therefore satisfy the standing inquiry ................................................................................5

2. The *Kim* Plaintiffs intend to seek office by election in the future, and therefore satisfy the standing inquiry ................................................................................8

3. The Plaintiffs share a nexus to Bergen and Union Counties ............................................10

Conclusion .................................................................................................................................12

# Table of Authorities

*Blunt v. Lower Merion Sch. Dist.*,
    767 F.3d 247 (3d Cir. 2014)..................................................................................................4

*Friends of the Earth v. Laidlaw*,
    528 U.S. 167 (2000)..................................................................................................2, 11

*Hartnett v. Pa. State Educ. Ass'n*,
    963 F.3d 301 (3d Cir. 2020)..................................................................................................11

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977)..................................................................................................4

*Kim v. Hanlon,*
    99 F.4th 140 (3d Cir. 2024) ..................................................................................................8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)..................................................................................................2

*Merle v. United States*,
    351 F.3d 92 (3d Cir. 2003)..................................................................................................4, 5

*Road-Con, Inc. v. City of Philadelphia*,
    120 F.4th 346 (3d. Cir. 2024) ..................................................................................................6

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*,
    547 U.S. 47 (2006)..................................................................................................6

## INTRODUCTION

Plaintiffs U.S. Senator Andy Kim, Carolyn Rush, Sarah Schoengood (the "*Kim Plaintiffs*"), Christine Conforti, Arati Kreibich, Mico Lucide, Joseph Marchica, Kevin McMillan, Zinovia Spezakis, and New Jersey Working Families Alliance, Inc. (NJWFA) (the "*Conforti Plaintiffs*") (collectively, "Plaintiffs") respectfully respond to the Court's August 19, 2025 Orders to Show Cause "in writing why this matter should not be dismissed for lack of standing given that they have not alleged an intention to seek office by election in the future."

Filed with this brief are eight declarations. In total, they directly respond to the Orders by detailing that five of the individual *Conforti* plaintiffs and two of the *Kim* plaintiffs intend to run for re-election. Some will be running in a 2026 primary election; some have already run since the respective actions were originally filed. At least one will be running in a 2027 primary. And Senator Kim himself has already made the necessary filings with the Federal Elections Commission to run in a 2030 primary. All will continue to run for office. Moreover, the organizational plaintiff NJWFA will continue with its past practice of identifying and endorsing candidates for office, some of whom historically have also been members of NJWF, and continue its efforts in voter education and engagement. In addition to Senator Kim (a statewide candidate), these declarations come from people on ballots in every corner of the State. Far from abandoning the political sphere, these declarants continue to engage in it. And they want to continue their political or party service in the way the Court mandated in the 2024 primaries: on fair ballots that do not unconstitutionally disadvantage one candidate or another for spurious reasons. Collectively, they seek relief in this case that will *judicially* secure the rights they have earned. They do not wish to be injured again by midnight lawmaking by the Legislature, or outright defiance of the law by the county clerks.

Indeed, it is not "absolutely clear" that this kind of continued injury to candidates "could not reasonably be expected to recur." *See Friends of the Earth v. Laidlaw*, 528 U.S. 167 (2000). These individuals have standing to maintain this action, which remains wholly justiciable under Article III of the Constitution, based on this Court's and the Third Circuit's prior findings; by the supplemental information in these declarations; and by a uniform body of case law that presumes injuries to a candidate in one election will follow him or her to the next election absent judicial intervention.

For these reasons, the Orders to Show Cause should be discharged, and the cases should proceed to judgment in favor of the Plaintiffs.

## STATEMENT OF FACTS

As for their Statement of Facts, Plaintiffs rely on the eight Declarations of Andy Kim, Arati Kreibich, Mico Lucide, Joseph Marchica, Kevin McMillan, Antoinette Miles, Carolyn Rush, and Zinovia "Zina" Spezakis, filed herewith.

## ARGUMENT

## THE ORDERS TO SHOW CAUSE SHOULD BE DISCHARGED

Article III standing requires an individual to demonstrate (1) an "injury in fact" or an "invasion of a legally protected interest" that is "actual or imminent" and "concrete and particularized"; (2) a "causal connection between the injury and the conduct complained of"; and (3) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

This Court has already found that all of the individual Plaintiffs in *Conforti* met the threshold for injury-in-fact. (*See Conforti*, ECF 111, Opinion denying seven motions to dismiss, pp. 14-17.) For example, in the 2020 Democratic Primary Election, Conforti, Kreibich,

2

Marchica, and McMillan were excluded from the preferential ballot draw and thus prohibited from having a chance to obtain the first ballot position, subjecting them to primacy bias. (*See generally Conforti* ECF 234-1, ¶53; *Conforti* ECF 33, ¶¶ 104, 110, 121, 124, 135, 145.) Conforti, Kreibich, Marchica, McMillan, and Spezakis were subjected to the weight of the line when their opponents were all featured on the county line. (*See Conforti* ECF 111, at pp. 14-16; *Conforti* ECF 33, ¶¶ 107, 112, 123, 137-38, 149-50.) Lucide, who ran in the 2021 Democratic Primary Election, was also subjected to the weight of the line.[1] (*See generally Conforti* ECF 234-1, ¶53.) Conforti, Kreibich, and McMillan were placed in Ballot Siberia, multiple columns away from their bracketed opponents, with blank gaps in between. (*See generally Conforti* ECF 234-1, ¶53; *Conforti* ECF 33, ¶¶ 103, 107, 109, 112, 120, 123, 144, 150.) Conforti was stacked in a column with an opponent, even though they were running against each other; Marchica was also forced to associate with candidates with whom he did not want to bracket, when he was featured in the same column as a particular candidate even though he was backing that candidate's opponent. (*See generally Conforti* ECF 234-1, ¶53; *Conforti* ECF 33, ¶¶ 115, 137, 139; *Conforti* ECF 111, p. 14.) The individual *Conforti* Plaintiffs were all found to have standing under the First and Fourteenth Amendment claims, and for the federal candidates, Conforti, Kreibich, and Spezakis, were also found to have standing under the Elections Clause claims. (*See Conforti* ECF 111, pp. 14-16.)

The Court also found that such injuries derived both from discretion in designing the ballot and enforcement of the ballot design laws, such that the "Candidate Plaintiffs' injuries derive from the current and future enforcement of the Bracketing Structure" and that those injuries "flow directly from" the county clerk defendants, thereby meeting the causation prong.

---

[1] At the time the *Conforti* motion to dismiss was briefed, the 2021 primary election had not yet taken place, but the Court found that Lucide had standing and rejected arguments that his claims were unripe. (*Conforti* ECF No. 111, pp. 23-24.)

(*See Conforti* ECF 111, p. 16.) Such injuries were also deemed to be redressable by the county clerk defendants since declaratory and injunctive relief would prevent injuries to Plaintiffs. *Id.*

Organizations have associational standing, known as membership-based standing, to assert claims on behalf of its members who would otherwise have standing to bring claims themselves. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 279 (3d Cir. 2014). Such standing will be found where (1) the organization's members would have standing to sue on their own; (2) the organization's interests they "seek[] to protect are germane to its purpose;" and (3) neither the claim nor relief sought requires the individual member's participation. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). At the time the motion to dismiss was decided in *Conforti*, this Court found that NJWF had standing on the First and Fourteenth Amendment claims, since at least one of its members, Plaintiff Lucide, had standing to sue in his own right, and the other factors were met. (*See Conforti* ECF 111, p. 19.) The Court further found causation and redressability to be met for the same reasons as those set forth for the individual Plaintiffs. (*Id.*, p. 20.)

In the *Conforti* Opinion denying the seven motions to dismiss, this Court found that the individual Plaintiffs' claims could not be dismissed on mootness grounds, under the doctrine of "capable of repetition yet evading review." (*Id.*, pp. 20-22.) The Court acknowledged the reasonable expectation and general assumption that candidates will seek to run for office again in the future:

> The "capable of repetition yet evading review" doctrine is generally satisfied absent express statements that a plaintiff would not seek election. *Merle v. United States*, 351 F.3d 92, 94 (3d Cir. 2003) (holding that it was "reasonable to expect that Merle will wish to run for election either in 2004 or at some future date" without allegations of intent to do so.)

(*Id.*, p. 22.)

Moreover, after extensive recent briefing on various dispositive motions to dismiss/summary judgement in both *Kim* and *Conforti* – briefing that postdated this Court's March 2024 injunction and the March 2025 passage of the NBL, this Court again concluded that Plaintiffs' claims were not moot, and reaffirmed the same holding in the Court's decision on motion for reconsideration. (*Conforti*, Letter Order Denying Motions for Summary Judgment, ECF 253, pp. 3-5; *Conforti*, Letter Order denying Motions for Reconsideration, ECF 267, p. 3.) As such, Plaintiffs do not repeat such arguments at length here, but for ease of reference, direct the Court to the applicable prior briefs on the matter. (*See generally*, *Conforti*, Opp. Br. to Bergen Clerk's Motion for Reconsideration, ECF 260; *Conforti*, Pls.' Motion for Reconsideration and Reply Br., ECF 264, 266; *Kim*, Opp. Br. to Clerks' Motion for Reconsideration, ECF 330; Kim, Pls.' Motion for Reconsideration and Reply Br., ECF 325, 334.)

1. **The *Conforti* Plaintiffs intend to seek office by election in the future, and therefore satisfy the standing inquiry.**

In the Court's August 19, 2025 Text Order, the Court ordered Plaintiffs to show cause "why this matter should not be dismissed for lack of standing given that they have not alleged an intention to seek office by election in the future." (*Conforti* ECF 268.) The declarations accompanying this brief in response to the order to show cause illustrate that several *Conforti* Plaintiffs *did* run since the 2020/2021 elections which spurred this litigation, and that they will run in the future. It should be noted that the applicable standard is not that a candidate must affirmatively promise to seek a specific office on a specific future date, but whether there is a reasonable expectation that s/he may. The Third Circuit informs that a reasonable assumption is drawn that the candidate will run in the future, "absent express statements that a plaintiff would *not* seek election." *Merle*, 351 F.3d at 94 (emphasis added). Further, although the accompanying declarations detail Plaintiffs' various election history and continuing and future interest in

5

electoral bids, it is well established that only one plaintiff needs to establish standing for a case to proceed. "If at least one plaintiff has standing, the suit may proceed." *Road-Con, Inc. v. City of Philadelphia*, 120 F.4th 346, 354 (3d. Cir. 2024) (*quoting Biden v. Nebraska*, __ U.S. __, 143 S. Ct. 2355 (2023)); *see also Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006) ("the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.").

As to the *Conforti* Plaintiffs who have run for office since the lawsuit was filed: McMillan ran most recently for Neptune Township Committee in 2024, a position to which he was first elected in 1998 (McMillan Decl, ¶1); Marchica ran most recently for County Committee in Mercer County in 2024 (Marchica Decl., ¶6); Lucide in 2024 accepted an appointment to County Committee in Atlantic County in Hamilton Township (Lucide Decl., ¶1); and Spezakis ran most recently for County Committee in Bergen County in 2024 (Spezakis Decl., ¶2). Furthermore, several *Conforti* Plaintiffs have been elected and are current office holders: McMillan is currently on Neptune Township Committee serving as Deputy Mayor, and plans to run for reelection in 2027 (McMillan Decl., ¶2); Marchica is currently on County Committee in Mercer County, and plans to run for reelection in 2026 (Marchica Decl., ¶7); Lucide is currently on County Committee in Atlantic County, and plans to run for reelection in 2026 (Lucide Decl., ¶8); Spezakis is currently on County Committee in Bergen County, and plans to run for reelection in 2026 (Spezakis Decl., ¶¶ 10, 11).

In 2027, the office of Neptune Township Committee, for which McMillan will be running, has two open seats. (McMillan Decl., ¶2.) For the 2026 Democratic Primary, the office of County Committee in Mercer County for Hamilton Township's 27th Election District, for which Marchica will be running, has two open seats. (Marchica Decl., ¶7.) In 2026, the office of

6

County Committee in Atlantic County for Hamilton Township (male members), for which Lucide will be running, has 13 open seats since it is elected at large throughout the municipality. (Lucide Decl., ¶8.) In 2026, the office of County Committee in Bergen County for the Borough of Tenafly, for which Spezakis will be running, has two open seats. (Spezakis Decl., ¶9.) Each of these offices has multiple open seats, setting the stage for in-office bracketing, whereby "associated" candidates can be grouped together and drawn for position as a unit, but unassociated candidates are drawn on their own, and otherwise burdening associational rights of candidates in having to choose to bracket with other candidates with whom they may not want to associate. (*See Conforti* ECF 253, p. 4.) Moreover, Kreibich also plans to run for office in the upcoming 2026 and future elections. (Kreibich Decl., ¶6.) Kreibich intends to run for the office of Bergen County Clerk and for Democratic County Committee in Bergen County in the 2026 Democratic Primary. If unsuccessful in her bid for County Clerk, she also plans to run for County Commissioner in Bergen County in 2027, an office with two open seats. (*Id.*)

As for NJWF, to the extent its member Lucide has standing, it can assert associational standing on his behalf. (*See Conforti* ECF 111, p. 19.) Moreover, in summary judgment briefing, NJWF came forward with additional information concerning some of its additional members and endorsees from 2022-2025, including those who were subject to some of the remaining features of the county line system even under P.L. 2025, c.32, the new ballot law ("NBL"), purporting to respond to this Court's injunction. (*See Conforti*, ECF 249-2, ¶¶ 3-6.) This includes other individual *Conforti* Plaintiffs, such as Marchica and McMillan, and *Kim* Plaintiff Carolyn Rush. (*Id.*, ¶¶ 3-5.) This list also included various other members and endorsees, including, among numerous others, Daniel Park and Damali Robinson, who ran in the 2025 Democratic Primary for State Assembly in LD-37 and LD-38, respectively (*see id.*, ¶6); both legislative districts are

7

located, in whole or in part, in Bergen County. (Miles Decl., ¶¶ 3, 4.) As with Lucide, these individuals/NJWF members and endorsees would also independently have standing, and thus NJWF has membership-based standing to advance those claims. Additionally, offices such as General Assembly (and also many other local offices) have multiple open seats which would subject these members, similar to Lucide's "vote for two" election, to the ballot and associational harms related to and stemming from in-office bracketing. *See Conforti* ECF 253, p. 4.[2]

2. **The *Kim* Plaintiffs intend to seek office by election in the future, and therefore satisfy the standing inquiry.**

As with the *Conforti* Plaintiffs, the Plaintiffs in *Kim* were slated to be subjected to various constitutional injuries under the First and Fourteenth Amendment and the Elections Clause. (*See generally Kim* ECF 298-1, ¶¶ 37-52.) This Court found in its decision issuing a preliminary injunction that Kim, Schoengood, and Rush would be subject to imminent harm absent relief from the Court. (*See generally Kim*, Opinion granting Preliminary Injunction, ECF 194). *See also Kim v. Hanlon*, 99 F.4th 140 (3d Cir. 2024) (unanimously affirming this Court's opinion in a precedential decision). Among other injuries, this included harm to the associational rights of Kim in having to associate with candidates with whom he did not want to or did not even know in order to prevent an opponent from obtaining an unfair advantage. (*See Kim* ECF 289-1, ¶¶ 37-39, 45-51.) The associational rights of Schoengood and Rush were also similarly burdened. (*See id.*, ¶¶ 46, 51.) It also included harm from the weight of the line, the primacy effect, and Ballot Siberia, for Schoengood and Rush in counties where they were not featured on the county

---

[2] It should also be emphasized that NJWF is a grassroots independent political organization who has in the past endorsed candidates for political office, and who will continue to endorse candidates for political office in the future, beyond the aforementioned 2025 endorsees, and who separately is engaged in voter education, voter engagement, and candidate development. (*Conforti* ECF 33, ¶¶ 48-56; *see also* Miles Decl., ¶2.) It therefore has a mission-driven interest in ensuring and protecting fair ballot design, much like the plethora of non-profit organizations across the nation who serve as plaintiffs in advancing voting rights challenges.

line. (*See id.*, ¶¶ 40-44, 52.) And, for Rush, it also included stacking whereby she was featured together on the same line of the ballot as opponent candidates who she was running against. (*See id.*, ¶ 45.)

Furthermore, after extensive recent briefing on various dispositive motions to dismiss/summary judgement in both *Kim* and *Conforti*, this Court again concluded that Plaintiffs' claims were not moot, and reaffirmed the same holding in the Court's decision on motion for reconsideration. (*See Kim*, ECF 321, pp. 3-5; ECF 335, p. 3.) As such, Plaintiffs do not repeat such arguments at length here, but for ease of reference, direct the Court to the applicable sections of their prior briefs on the matter. (*Kim*, ECF 302, pp. 3-27; *Conforti*, ECF 312, pp. 3-7; ECF 317, pp. 7-14).

Moreover, the declarations accompanying this brief in response to the order to show cause also address the issue of the *Kim* Plaintiffs running again. Indeed, Rush has already run for office since her 2024 congressional primary election, in the 2025 Democratic Primary for General Assembly in LD-1, which she won and is now advancing to the general election as the party's nominee. (Rush Decl., ¶¶ 2, 10). In her 2024 congressional primary election, flawed ballot design affected her: Rush ran in counties where more candidates were endorsed by the county party organization than there were open seats to be elected. (*See Kim* ECF 302-1, ¶3, Exhs. E, F, G, H). She was therefore stacked with her opponents. (Rush Decl., ¶7.) In 2025, under the NBL, Rush ran for General Assembly in the primary, a vote-for-two race that resulted in in-office bracketing, and succeeded in gaining the party's nomination for the general election.[3]

---

[3] The NBL enables in-office bracketing, whereby "associated" candidates can be grouped together and drawn for position as a unit, but unassociated candidates are drawn on their own, and otherwise burdening associational rights of candidates in having to choose to bracket with other candidates with whom they may not want to associate. (*See Kim* ECF 321, p. 4.) Nor does the NBL eliminate the possibility of a party continuing to endorse more candidates than there are seats available – i.e., stacking.

9

(Rush Decl., ¶2.) Should she gain office, she will run for re-election in 2027. (*Id.*, ¶3.) Should she lose the race, she will evaluate all her options and may run for this office, or for other elected positions. (*Id.*)

Separately, Senator Kim has already filed documentation, begun fundraising, and hired staff for his 2030 re-election run. (Kim Decl., ¶3).

### 3. The Plaintiffs share a nexus to Bergen and Union Counties.

Among the various Plaintiffs include those whose elections will inevitably fall within Bergen and/or Union County. For example, Kim will run for United States Senate, and therefore will be featured on the ballot in all 21 counties, including Bergen and Union. (Kim Decl., ¶1.) Kreibich will run for County Clerk and also for County Committee in Bergen County in 2026; should her bid for County Clerk prove unsuccessful, she will run for Bergen County Commissioner in 2027. (Kreibich Decl., ¶6.) Spezakis will run for County Committee in Bergen County in 2026. (Spezakis Decl., ¶10.) As for NJWF, its members and/or endorsees include Daniel Park and Damali Robinson, who in 2025 ran for General Assembly in LD-37 and LD-38, respectively, and are located in Bergen County. In 2024, NJWF endorsed Sue Altman for CD-7, which includes portions of Union County, as well as then-Congressman Andy Kim in his successful statewide bid for U.S. Senate. (Miles Decl., ¶¶ 3, 4.) (*See also* ECF 317-2, April 23, 2025 A. Miles Certification describing endorsees from Bergen and Union Counties in 2022 and 2024.) NJWF will continue to support its membership, current and future endorsees (which historically have included candidates running in Bergen and Union Counties), and will continue to engage in voter education and outreach, including as it relates to ballot design in Bergen and Union Counties. *See supra* n.2.

10

Here, the remaining county clerks bear a "*formidable burden* of showing that it is *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 190 (2000) (citation and internal quotations omitted) (emphasis added); *see also Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301 (3d Cir. 2020). This is true even if there has been some voluntary cessation of a challenged practice; such a change "does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth*, 528 U.S. at 190.

This Court has already recognized that the *Conforti* and *Kim* Plaintiffs' claims "have not been rendered moot by the Revised Ballot Design Statute" and that the exception to mootness – capable of repetition, yet evading review – applies because the NBL "does not address all of the issues raised by Plaintiffs" who bear a "very real likelihood of future harm." (ECF 253, pp. 4-5.)[4] The Court explained that the NBL "continues to vest the county clerks with discretion to organize the ballot in a way that favors certain candidates" including but not limited to, in determining the order of the candidates within the office block structure, and in allowing the continuation of "bracketing to some extent, albeit in the context of an office block structure," which can result in associational and other First Amendment harms to unfavored candidates. (*Id*.) The Court has also recognized that "further Legislative action can reasonably be expected" since the "Legislature has demonstrated a reluctance to act to change past ballot practices followed by a willingness to act to protect those same practices." (*Id.*, p. 5, n.3.) Plaintiffs agree: Even if the NBL were a complete response to the Court's injunction (though it isn't), even its

---

[4] In fact, this Court has already found that the *Conforti* Plaintiffs' claims are not moot on three separate occasions (denial of initial motion to dismiss, denial of recent dispositive motions, and denial of motion for reconsideration) and has already found that the *Kim* Plaintiffs' claims are not moot on two separate occasions (denial of recent dispositive motions and denial of motion for reconsideration).

11

meager protections are at risk of being repealed on little more than a whim. (*See, e.g.*, Kim Decl., ¶¶ 10-11; Miles Decl., ¶¶ 10-11).

* * *

The declarations accompanying Plaintiffs' response to the Order to Show Cause illustrate that future harm will occur because they have demonstrated an ongoing commitment to public service, and they have more than satisfied the applicable, relatively broad standard to satisfy standing here. They affirmatively state that they will run for office, and more than that, they have actually run again since these actions were originally filed. That is because these are good faith plaintiffs who seek to end primary ballot manipulation, once and for all, which can only be secured by the judiciary.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that they have standing to maintain their claims. Moreover, to the extent that the Court agrees that they have standing, Plaintiffs respectfully submit that these cases should proceed to judgment granting declaratory and final injunctive relief in favor of the Plaintiffs. Indeed, the only stated reason for denying Plaintiffs' motion for summary judgment is an inquiry as to whether they intend to run for office in the future. Plaintiffs submit that this brief and the accompanying eight declarations satisfy any such concerns. Moreover, the Court already agreed "that there is no factual dispute and Defendants have not sought to produce expert evidence," and already agreed that Plaintiffs' claims are not moot. (*Conforti*, ECF 267; *Kim*, ECF 335.) Therefore, nothing stands in the way of granting declaratory and final injunctive relief, which, in light of the fact that there is no genuine issue of material fact, Plaintiffs are entitled to as a matter of law.

Respectfully submitted,

| | |
|---|---|
| */s/ Flavio L. Komuves* | */s/ Yael Bromberg* |
| Flavio L. Komuves | Yael Bromberg |
| Brett M. Pugach | BROMBERG LAW LLC |
| WEISSMAN & MINTZ LLC | 43 West 43rd Street, Suite 32 |
| 220 Davidson Ave. | New York, NY 10036-7424 |
| Somerset, NJ 08873 | 212-859-5083 |
| 732.563.4565 | ybromberg@bromberglawllc.com |
| fkomuves@weissmanmintz.com | |
| bpugach@weissmanmintz.com | |

Dated: Somerset, New Jersey
        September 26, 2025

13