Paul Kaufman, Esq. (Id No. 003011974)
Jason S. Nunnermacker, Esq. (Id No. 034212003)
**DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP**
61 South Paramus Rd., Suite 250
Paramus, New Jersey 07652
T: (201) 928-1100
jnunnermacker@decotiislaw.com
*Attorneys for Defendant John S. Hogan, Bergen County Clerk*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## TRENTON VICINAGE

| | |
|---|---|
| CHRISTINE CONFORTI, ARATI MICO LUCIDE, JOSEPH MICO LUCIDE, JOSEPH MARCHICA, KEVIN MCMILLAN, ZINOVIA SPEZAKIS, and NEW JERSEY WORKING FAMILIES ALLIANCE, INC.<br><br>Plaintiffs,<br><br>vs.<br><br>CHRITINE GIORDANO HANLON, SCOTT M. COLABELLA, PAULA SOLLAMI COVELLO, JOHN S. HOGAN, EDWARD P. MCGETTIGAN, and E. JUNIOR MALDONADO,<br><br>Defendants. | CIV. A. No. 3:20-CV-08267-FLW-TJB<br><br>DOCKET NO:<br><br>CIVIL ACTION |

## MEMORANDUM OF FACT AND LAW IN OPPOSITION BY JOHN S. HOGAN TO PLAINTIFFS' ORDER TO SHOW CAUSE SUBMISSION

On the Brief:     Paul Kaufman
                  Jason S. Nunnermacker, Esq.

Date:     October 17, 2025

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES..................................................................... ii

PRELIMINARY STATEMENT ...............................................................1

ARGUMENT ..........................................................................................3

THE PLAINTIFFS' SUBMISSION CONFIRMS THAT THEY
LACK STANDING ..................................................................................3

I.    Only the Bergen Plaintiffs' alleged injuries are relevant to the
standing analysis with respect to the claims asserted against the
Bergen Clerk because they are the only plaintiffs who might
plausibly appear on a ballot in Bergen County. ...............................4

II.   None of the alleged flaws in the Revised Ballot Design Statue
will cause Bergen Plaintiffs an injury in fact sufficient to give
them standing to continue to continue his suit against the
Bergen Clerk....................................................................................5

III.  The result sought by Plaintiffs requires an impermissible
advisory opinion on a future challenge to a different statute
than the one Bergen Plaintiffs has challenged here......................12

CONCLUSION .....................................................................................13

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Constitution Party of Pa. v. Aichele,*
   757 F.3d 347 (3d Cir. 2014)......................................................................................4

*GBForefront, L.P. v. Forefront Mgmt. Grp., LLC,*
   888 F.3d 29 (3d Cir. 2018)........................................................................................4

*Hartnett v. Pennsylvania State Educ. Assoc.,*
   963 F.3d 301 (3d Cir. 2020)...............................................................................11, 12

*Herb v. Pitcairn,*
   324 U.S. 117 (1945)...........................................................................................11, 12

*Lewis v. Continental Bank Corp.,*
   494 U.S. 472 (1990) ................................................................................................3

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ................................................................................................3

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984) ...............................................................................................10

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016) ................................................................................................6

<u>Statutes</u>

*N.J.S.A.* 19:23-23.2(c)(2) ........................................................................................6, 7

ii

## PRELIMINARY STATEMENT

Defendant John Hogan in his official capacity as Clerk of Bergen County ("Defendant" or the "Bergen Clerk") respectfully submits this brief in opposition to the submission of Plaintiffs in response to the Court's August 19, 2025 Order that Plaintiffs "show cause in writing why this matter should not be dismissed for lack of standing given that they have not alleged an intention to seek office by election in the future." (Dkt. 268).

While Arati Kreibich and Zinovia Spezakis ("Bergen Plaintiffs"), are the only plaintiffs in this action who has or could appear on a ballot in Bergen County[1], they cannot articulate what injury they might even theoretically suffer at the hands of the Bergen Clerk sufficient to give rise to Article III standing. *First*, Bergen Plaintiffs do not dispute that the so-called "county line," which they alleged forced them to associate with other candidates they otherwise would not, was replaced by an office block design pursuant to the Revised Ballot Design Statute. Instead, and as an obvious ploy to avoid recent binding Supreme Court precedent that holds that the preliminary injunction that plaintiffs obtained in the related case of Kim v. Hanlon,

---

[1] Zina Spezakis, a resident of Tenafly, Bergen County, states an intention to run for reelection to the Bergen County Democratic Committee in 2026 and vaguely states an intention to "seek out different offices for which to run." Dkt 273-1, page ID 3129 ¶¶10-11. Arati Kreibich, a resident of Glen Rock, Bergen County, states an intention to run in a Democratic party primary for Bergen County Clerk. Dkt 273-1, page ID 3071 ¶6.

does not render them prevailing parties for purposes of awarding their attorneys their fees. Bergen Plaintiffs point to perceived flaws in the Revised Ballot Design Statute and claims contradictorily that, on the one hand, they speculatively fear that the New Jersey Legislature and a future Governor will connive to reinstitute the "county line," and that, on the other, the Bergen Clerk will ignore the Legislature's current requirement that all primary ballots employ an office block design. Even if the "flaws" the Bergen Plaintiffs articulate implicated constitutional concerns, which they do not, and even if their fears were plausible, which they assuredly are not, the inescapable fact remains that the Bergen Plaintiffs no longer face the plausible prospect of an injury in fact that could be redressed by a legitimate order of this Court. Accordingly, the Bergen Plaintiffs and their co-plaintiffs lack Article III standing to continue their lawsuit against the Bergen Clerk.

*Second*, the statute that the Bergen Plaintiffs alleged caused them injury in the first instance has been repealed. While they certainly have the legal right to challenge any statute in a new matter by setting forth the facts as to the injury caused by a different statute, alleging a perceived and purely hypothetical injury caused by a different statute does not provide any support to address why they or any of their co-plaintiffs have standing in ***this*** matter against ***this*** Defendant, the Bergen Clerk. Here, the Bergen Plaintiffs' asserted harm is purely speculative and hypothetical.

## **ARGUMENT**

### **THE PLAINTIFFS' SUBMISSION CONFIRMS THAT THEY LACK STANDING**

The Supreme Court has held that to establish "the irreducible constitutional minimum of standing," the plaintiff bears the burden of proof as to three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up).  Because standing goes to the Court's subject matter jurisdiction, the plaintiff has the burden at all stages of litigation to demonstrate that he has suffered an injury in fact that can be redressed by an appropriate court order, *i.e.* that events following the filing of the suit have not rendered the plaintiff's claims moot.  *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (the "case-or-controversy requirements subsists through all stages of federal juridical proceedings, trial and appellate.  To sustain our jurisdiction … it is not enough that a dispute was very much alive when suit was filed….").  A court's subject matter jurisdiction, and hence the plaintiff's standing (or lack thereof) is subject to a "factual attack," which is "an argument that there is

3

no subject matter jurisdiction because the facts of the case … do not support the asserted jurisdiction." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). To resolve a factual challenge, the "court may look beyond the pleadings to ascertain certain facts." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 35 (3d Cir. 2018).

**I.    Only the Bergen Plaintiffs' alleged injuries are relevant to the standing analysis with respect to the claims asserted against the Bergen Clerk because they are the only plaintiffs who might plausibly appear on a ballot in Bergen County.**

While several Plaintiffs submitted declarations expressing their intention to run for office in the future and the supposed harm the Revised Ballot Design Statute will impose on them in connection therewith, only the Bergen Plaintiffs' alleged injuries (or lack thereof) in this matter are relevant for purposes of determining whether the Bergen Clerk is still a proper defendant to these proceedings. The Declarations filed by possible future candidates in Monmouth and Atlantic County have nothing to do with Bergen County (or Union County for that matter). This is so because the Bergen Plaintiffs are the only plaintiffs that have expressed a vague intention to appear on a ballot in Bergen County. While Plaintiff NJWFA claims to have a "nexus" to Bergen County because, in the past, it has endorsed Democratic Party primary candidates in Bergen County, the Certification of its Executive Director, Ms. Miles, ambiguously asserts, "NJWFA will continue identifying candidates, including its members, to endorse in the forthcoming elections in 2026

and thereafter" (Documents 273-1, Page Id 3096, ¶5).  There is no mention of any potential Bergen County candidate, indeed there cannot be, because that election is over a year from now.  Any standing purportedly asserted by NJWFA is specious, at best.

Accordingly, any order the Court might direct to the Bergen Clerk could only theoretically redress the Bergen Plaintiffs' alleged injuries, each of which are addressed below.[2]

## II.   None of the alleged flaws in the Revised Ballot Design Statue will cause Bergen Plaintiffs an injury in fact sufficient to give them standing to continue to continue his suit against the Bergen Clerk.

### 1.   The Bergen Clerk's supposed "discretion"

Bergen Plaintiffs purportedly fear that the Revised Ballot Design Statute "fails to cabin the county clerks' extensive discretion over ballot design."  (Kim Dec. ¶ 6). Not only do the Bergen Plaintiffs (or, for that matter, any of the other declarants) fail to describe what "discretion" the new statutory scheme provides the Bergen Clerk in designing primary election ballots, they likewise fail to explain how any such "discretion" will harm them in their future speculative campaigns. Indeed, even the Court has expressed doubt as to its prior ruling that the Revised Ballot Design Statue **might** impart some type of discretion to the county clerks that **could** result in an

---

[2] (Pls Brief 10).  Because the NJWFA is not a plaintiff in the *Kim* Action, the only action to which the Bergen Clerk is a party, the supposed "nexus" it has to Bergen County is irrelevant to the claims asserted against the Bergen Clerk.

injury of constitutional significance, recognizing that its original conclusion that "'the Revised Ballot Design Statute continues to vest the county clerks with discretion to organize the ballot in a way that favors certain candidates'" was at least debatable. (*See Kim* case, Dkt. 335 at 3 n.2). Bergen Plaintiffs' continued inability to articulate with any specificity how the Bergen Clerk's alleged "discretion" harms them, much less what that discretion entails, is fatal to their claim of Article III standing as they set forth no facts even suggesting that they have suffered a harm that is "particularized," which means a harm that affects the Declarant "in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation omitted).

### 2. "In-office bracketing"

Bergen Plaintiffs attack what they characterize as the "detrimental practice of in-office bracketing," which they describe as Revised Ballot Design Statute's permitting "candidates running for an office with two or more persons to be elected [to] choose to file a joint petition, be drawn for ballot position as a single unit, and be listed adjacent to one another on the ballot." (Kim Dec. ¶ 7). The statutory source of what Bergen Plaintiffs refer to as "in-office bracketing" is *N.J.S.A.* 19:23-23.2(c)(2), which instructs county clerks to "allow candidates for the same office

6

with multiple open seats[3] to associate in the same office block, using a common slogan or endorsement, next to or below the associated candidate names…."  This does not require or compel any individual seeking a "multiple open seat" office to align himself/herself with any other candidate for that office.  It simply permits that if multiple candidates, for example two candidates for two State Assemble seats, wish to be aligned on the ballot together, the county clerk must allow them to do so. It does not mandate it.    Plaintiffs' argument gives rise to significant First Amendment issues, including free speech and right of association that their opponents may have and which Plaintiffs ignore.

Further, as set forth above, Plaintiff Arati Kreibich states an intention to run in a democratic party primary for Bergen County Clerk. Dkt 273-1, page ID 3071 ¶6.  The Bergen County Clerk's office is not a "multiple open seat" office.  There is only one Bergen County Clerk.  Therefore, by this plaintiff's own admission, he has no instant standing to challenge *N.J.S.A.* 19:23-23.2(c)(2).

As to Zina Spezakis, while she provides an intention to seek a county committee seat next year, which is a "multiple open seat" office, she is free to choose as her running mate she wants.  Importantly, she is equally allowed to not have a

---

[3] For example, State Assembly, municipal elections, local boards of election and county committee.

running mate but she should not be allowed to deprive her opponents of that same right.

### 3.  Supposedly "faulty ballot draw procedures"

Attempting to find something wrong with the Revised Ballot Design Statute that might impact them, even in the abstract and speculatively, Bergen Plaintiffs claim that the statute does not "modernize the ballot draw rules in New Jersey" because it "leav[es] in place a system where county clerks use their hands to grab at 'cards' or capsules' containing a candidate or candidates' names." (Kreibich Dec. ¶ 11). Actually, Bergen Plaintiffs do not dispute that such "ballot draws" are done at random and which has not been previously challenged.

Further, noticeably absent from the Complaint in this case is any reference to those "ballot draw rules," much less any assertion that they seek an order from the Court that would alter the ability of county clerks to "use their hands to grab at 'cards' or 'capsules.'" Incidentally, how else could someone retrieve capsules from sealed boxes?

And, of course, Dr. Pasek's report (submitted in the *Kim* matter) had nothing to do with the Revised Ballot Design Statute's methodology for determining candidate positioning within a single office block (*i.e.*, random draw). Rather, and to extent relied upon by the Bergen Plaintiffs in this matter, the portion of Dr. Pasek's

8

report to which addressed supposed flaws in the selection of the so-called "pivot point" in the now non-existent bracketing system.

In sum, the "ballot draw rules" of the Revised Ballot Design Statute have nothing to do with the complaint filed by the Bergen Plaintiffs, and, in any event, do not threaten them with an injury-in-fact for which they purport to seek redress. Accordingly, their generalized complaints about those "ballot draw rules" are not properly the subject of a lawsuit that they believe should ultimately be financed by the taxpayers of Bergen County.

### 4. Alleged fear that the Bergen Clerk will disobey the Revised Ballot Design Statute

Contradicting their claim that the Revised Ballot Design Statute confers the Bergen Clerk with "discretion" to design primary ballots in an unconstitutional fashion, Bergen Plaintiffs assert their fear that the Bergen Clerk *might* disobey the legislative mandate requires the continuation of their lawsuit over the now-defunct "county line." This argument is akin of arresting someone for a crime that he may commit in the future. To date, there is not a single instance cited in which the Bergen County Clerk is alleged to have failed to follow statutory requirements regarding ballot design.

Further, the only evidence Bergen Plaintiffs cite to support this theory of standing are supposed acts of the Camden County Clerk with whom he and certain *Kim* plaintiffs entered into a settlement. The fact that neither the Bergen Plaintiffs

nor any of their other co-plaintiffs (or those *Kim* plaintiffs) sued the Camden County Clerk for violating their settlement agreement or the Revised Ballot Design Statute for supposedly "design[ing] ballots with a single oval to support *en bloc* an entire slate of candidates" (Kim Dec. ¶ 8) reveals those fears to be an invention of their attorneys in the hopes of being awarded attorneys' fees.

But even if Bergen Plaintiffs' fear of the Bergen Clerk's disobedience with State law had some basis in reality, which it assuredly does not, it is not for a Federal court to order compliance with a State statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.")  Rather, the obvious mechanism to seek such compliance is a lawsuit in the Bergen County Superior Court, where a State judge can order a State or local official to comply with a statute passed by the State legislature.  Of course, given that neither the Bergen Plaintiffs nor any of the other parties or lawyers represent to have brought any such suits, makes clear that such claims are an entirely improper basis upon which to allow Bergen Plaintiffs' suit against the Bergen Clerk to continue.

10

5.  Risk of repeal of the Revised Ballot Design Statute

Bergen Plaintiffs claim that they fear that the New Jersey Legislature and a future Governor might conspire to repeal the Revised Ballot Design Statue requirements.  The flaws in Bergen Plaintiffs' novel theory of standing are obvious. For starters, because **every** piece of legislation is subject to amendment or repeal by the Legislature. Bergen Plaintiffs' theory, if accepted, would open up the federal courts to litigation over laws that do not exist, which would turn the Constitution's longstanding prohibition on advisory opinions from Article III courts on its head. *Herb v. Pitcairn*, 324 U.S. 117, 126 (1945) ("We are not permitted to render an advisory opinion, and if the same judgment would be rendered by the state court after we corrected its views of federal laws, our review could amount to nothing more than an advisory opinion.").

The New Jersey's Legislature's supposed "gamesmanship," whether real or imagined, does not alter the outcome, for reasons the Third Circuit articulated in *Hartnett v. Pennsylvania State Educ. Assoc.*, 963 F.3d 301 (3d Cir. 2020).  There, the court agreed that a Supreme Court ruling that involuntary deductions from public employee paychecks to fund union political activities was unconstitutional rendered moot a challenge to a functionally equivalent Pennsylvania statute.  The court rejected the plaintiffs' argument that the union's cessation of involuntary deductions was a case of a voluntary and unilateral cessation of illegal activity to which it might

11

return at a later date. *Id.* at 306. As the court explained, the inquiry focuses on why the defendant ceased the challenged activity, contrasting a change of behavior "in the face of a court order," of which courts should be skeptical, with compliance with "a new statute or a ruling in a completely different case," which makes the "argument for mootness much stronger." *Id.* 306-07. Nowhere in *Hartnett* or any other caselaw cited by the Bergen Plaintiffs cite is it even suggested that courts can take into account future legislative action when determining standing much less how courts could conceivably conduct that inquiry.

### III.    The result sought by Plaintiffs requires an impermissible advisory opinion on a future challenge to a different statute than the one Bergen Plaintiffs has challenged here.

Bergen Plaintiffs offers only supposition to support the hypothetical impact the application of a different statute at some distant point in the future could possibly injure him. To accept Bergen Plaintiffs' challenge, would require this Court to adjudicate the constitutionality of a statute which is not the subject of Bergen Plaintiffs' pleading and would be based on Bergen Plaintiffs' assertions and assumptions as to what ***might*** happen in the future. This would require the Court to go well beyond the prohibition against issuing advisory opinions. *See Herb v. Pitcairn*, 324 U.S. at 126

12

## <u>CONCLUSION</u>

Bergen Plaintiffs' lawsuit is based on the premise that the "county line" unconstitutionally forced them and co-plaintiffs to associate with other political candidates they otherwise would not in order not to impact their electoral prospects. Now that the Legislature replaced the "county line" with an office block format, Plaintiffs do not face the possibility of an injury to their associational rights for the offices they intend to run for in the future.  The lack of any such injury still holds even with the Revised Ballot Design Statue's allowance for "in-office bracketing," for the reasons set forth above. Bottom line is that this is an attempt to evade a Supreme Court decision, directly on point, that precludes the Bergen Plaintiffs recovery of fees from the Bergen County Clerk.  Accordingly, all claims against the Bergen County Clerk must be dismissed with prejudice for lack of subject matter jurisdiction.

Dated: October 17, 2025

       Respectfully submitted,
**DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP**

By: *<u>/s/ Paul Kaufman</u>*
   Paul Kaufman, Esq.

   *<u>/s/ Jason Nunnermacker</u>*
   Jason S. Nunnermacker, Esq.